IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

| | | |
|---|---|---|
| _____ | ) | |
| SEAH STEEL VINA CORPORATION, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Court Nos. 23-00256, 23-00257, |
| | ) | 23-00258 |
| UNITED STATES, | ) | |
|     Defendant, | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| BULL MOOSE TUBE COMPANY, *et al.*, | ) | |
|     Defendant-Intervenors. | ) | |
| _____ | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE ADMINSTRATIVE RECORDS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

STEPHEN C. TOSINI
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-5196
Email: stephen.tosini@usdoj.gov

September 23, 2024                    Attorneys for Defendant

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

|  |  |  |
|---|---|---|
| SEAH STEEL VINA CORPORATION,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>UNITED STATES,<br>　　　　Defendant,<br><br>　　　　and<br><br>BULL MOOSE TUBE COMPANY, *et al.*,<br>　　　　Defendant-Intervenors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Court Nos. 23-00256, 23-00257,<br>23-00258 |

## **ORDER**

On consideration of plaintiff's motion for judgment on the administrative records,

defendant's opposition, and all other pertinent papers, it is hereby

ORDERED that the motion is denied and, it is further

ORDERED that judgment is entered for the United States.


Dated: _____

　　　　New York, NY

_____

　　　　　　　　　JUDGE

## TABLE OF CONTENTS

**PAGE**

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORDS STATEMENT PURUSANT TO RULE 56.2 ........................... 1

    I.     Administrative Determinations Under Review ...................................................... 2

    II.    Issues Presented For Review ................................................................................ 2

STATEMENT OF FACTS ........................................................................................................ 3

    I.     Legal Framework For Circumvention Inquiries Under 19 U.S.C. § 1677j(b) ........ 3

    II.    Initiation Of Circumvention Inquiries ................................................................. 5

    III.   Preliminary Determinations ................................................................................. 6

    IV.   Final Determinations ............................................................................................ 9

SUMMARY OF THE ARGUMENT ..................................................................................... 11

ARGUMENT ......................................................................................................................... 12

    I.     Standard Of Review ........................................................................................... 12

    II.    Past Investigations Are Immaterial To Later Circumvention Inquiries ............... 13

          A.    Commerce Correctly Rejected SSV's Contentions Concerning The
                  Preclusive Effect Of Prior Findings ......................................................... 13

                1.    SSV Confuses Statutory Schemes ................................................. 14

                2.    SSV Misreads The Statute ............................................................. 15

                3.    The Legislative History Contradicts SSV's Contentions .............. 16

                4.    "Statutory Silence" Does Not Augment The Statute ................... 18

                5.    SSV's Initiation Claim Fails ......................................................... 19

                6.    SSV's All-Others Rate Argument Fails ......................................... 21

B.    Even If Prior AD/CVD Determinations On Inquiry Merchandise Were Relevant, They Would Not Bar Affirmative Determinations In This Case ........................................................................................................ 21

III.    Commerce's Assembly Or Completion Finding Is Supported By Substantial Evidence And In Accordance With Law ................................................................ 23

A.    Commerce Correctly Rejected SSV's "Essential Character" Argument ....................................................................................................... 23

B.    Commerce's Minor Or Insignificant Finding Is Supported By Substantial Evidence And In Accordance With Law ............................... 27

1.    Commerce Correctly Rejected SSV's U.S. Industry Comparator Argument ................................................................................................ 27

2.    Commerce's Paragraph (b)(3) Analyses Are Supported By Substantial Evidence ................................................................... 29

i.    The (b)(3) Factors Are Discretionary .............................. 29

ii.    SSV Misapprehends The Evidence On The (b)(3) Factors ................................................................................. 31

CONCLUSION ......................................................................................................... 33

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Al Ghurair Iron & Steel LLC v. United States*,
   65 F.4th 1351 (Fed. Cir. 2023) ........................................................................... *passim*

*Bates v. United States*,
   522 U.S. 23 (1997) ............................................................................................... 30

*Bell Supply Company, LLC v. United States*,
   888 F.3d 1222 (Fed. Cir. 2018) ....................................................................... 24, 26

*Bestfoods v. United States*,
   165 F.3d 1371 (Fed. Cir. 1999) ........................................................................... 24

*Consolidated Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ............................................................................................. 12

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) ............................................................................................. 12

*FAG Italia S.p.A. v. United States*,
   291 F.3d 806 (Fed. Cir. 2002) ............................................................................. 19

*Fujitsu Gen. Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) ............................................................................. 12

*Goldilink Indus. Co. v. United States*,
   431 F.Supp.2d 1323 (Ct. Int'l Trade 2006) .......................................................... 13

*Hyundai Elec. & Energy Sys. Co. v. United States*,
   15 F.4th 1078 (Fed. Cir. 2021) ...................................................................... 13, 21

*Lignite Energy Council v. United States EPA*,
   198 F.3d 930 (D.C. Cir. 1999) .............................................................................. 4

*Meridian Prods., LLC v. United States*,
   851 F.3d 1375 (Fed. Cir. 2017) ........................................................................... 12

*NTN Bearing Corp. of Am. v. United States*,
   747 F. Supp. 726 (Ct. Int'l Trade 1990) .............................................................. 28

*Perrin v. United States*,
   444 U.S. 37 (1979) ............................................................................................... 23

*Pulsifer v. United States,*
  601 U.S. 124 (2024)................................................................................ 15

*Russello v. United States,*
  464 U.S. 16 (1983).................................................................................. 30

*Smith v. United States,*
  508 U.S. 223 (1993)................................................................................ 23

*Southern California Edison Co. v. Federal Energy Regulatory Commission,*
  195 F.3d 17 (D.C. Cir. 1999) ................................................................. 19

*Usinor v. United States,*
  342 F.Supp.2d 1267 (Ct. Int'l Trade 2004) .......................................... 13

## STATUTES

19 U.S.C. § 1516a(b)(1)(B) ...................................................................... 12

19 U.S.C. § 1671 ....................................................................................... 14

19 U.S.C. § 1671(a) .................................................................................. 15

19 U.S.C. § 1671(d) .................................................................................. 14

19 U.S.C. § 1671d(c)(1)(B)(i)(I) ............................................................. 15

19 U.S.C. § 1673 ....................................................................................... 14

19 U.S.C. § 1673(2) .................................................................................. 15

19 U.S.C. § 1673d(c)(1)(B)(i)(II) ............................................................ 15

19 U.S.C. § 1677(b)(1)(B) .......................................................................... 5

19 U.S.C. § 1677j ...................................................................................... 21

19 U.S.C. § 1677j(a)-(d) ........................................................................... 16

19 U.S.C. § 1677j(b) ......................................................................... *passim*

19 U.S.C. § 1677j(b)(1) .......................................................................... 4, 7

19 U.S.C. §§ 1677j(b)(1)(A)-(B) ............................................................... 7

19 U.S.C. §§ 1677j(b)(2)(A)-(E) ............................................................... 7

19 U.S.C. § 1677j(b)(1)(B) .................................................................................. 5

19 U.S.C. § 1677j(b)(1)(C) ............................................................................. 4, 7

19 U.S.C. § 1677j(b)(1)(D) .................................................................................. 8

19 U.S.C. § 1677j(b)(1)(E) .................................................................................. 8

19 U.S.C. § 1677j(b)(2) .............................................................................. *passim*

19 U.S.C. § 1677j(b)(3) .............................................................................. *passim*

19 U.S.C. § 1677j(f) .................................................................................... 14, 20

19 U.S.C. § 16713(d) ........................................................................................ 14

## **REGULATIONS**

19 C.F.R. § 134.1(b) ......................................................................................... 25

19 C.F.R. § 134.11 ............................................................................................ 25

19 C.F.R. § 351.225(h) ....................................................................................... 4

19 C.F.R. § 351.226 ..................................................................................... 19, 20

19 C.F.R. § 351.226(c)(iv) ............................................................................... 21

## **ADMINISTRATIVE DETERMINATIONS**

*Circular Welded Carbon Quality Steel Pipe from China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders,*
  88 Fed. Reg. 77,287 (Dep't Commerce Nov. 9, 2023) ................................................ 2

*Certain Welded Carbon Steel Standard Pipes and Tubes from India: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*,
  88 Fed. Reg. 77,279 (Dep't Commerce Nov. 9, 2023) ................................................ 2

*Certain Circular Welded Non-Alloy Steel Pipe from Korea: Final Affirmative Determination of Circumvention of the Antidumping Order*,
  88 Fed. Reg. 77,270 (Dep't Commerce Nov. 9, 2023) ................................................ 2

*Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea*,
  88 Fed. Reg. 21,989 (Dep't Commerce Apr. 12, 2023) ............................................... 6

*Certain Welded Carbon Steel Standard Pipes and Tubes from India*,
  88 Fed. Reg. 21,994 (Dep't Commerce Apr. 12, 2023) ............................................... 6

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China*,
  88 Fed. Reg. 21,975 (Dep't Commerce Apr. 12, 2023) ............................................................ 6

*Certain Welded Carbon Steel Standard Pipes and Tubes from India: Final Negative Determinations of Circumvention of the Antidumping Duty Order*,
  88 Fed. Reg. 12,917 (Dep't Commerce March 1, 2023) ........................................................ 27

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders*,
  87 Fed. Reg. 47,711 (Dep't Commerce Aug. 4, 2022) .............................................................. 6

*Circular Welded Carbon-Quality Steel Pipe From the Socialist Republic of Vietnam: Final Determination of Sales at Less Than Fair Value*,
  81 Fed. Reg. 75,042 (Oct. 28, 2016) ........................................................................................ 9

*Circular Welded Carbon-Quality Steel Pipe from India, Oman, the United Arab Emirates, and Vietnam*, Investigation Nos. 701-TA-482-484 and 731-TA-1191-1194 (Final), United States International Trade Commission (ITC) Pub. 4362 (December 2012) ........................................... 9

*Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam: Notice of Final Determination of Sales at Less Than Fair Value*,
  77 Fed. Reg. 64,483 (Dep't Commerce Oct. 22, 2012) ............................................................ 9

*Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam: Final Negative Countervailing Duty Determination*,
  77 Fed. Reg. 64,471 (Dep't Commerce Oct. 22, 2012) ............................................................ 9

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*,
  73 Fed. Reg. 42,547 (Dep't Commerce July 22, 2008) ............................................................ 5

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*,
  73 FR 42,545 (Dep't Commerce July 22, 2008) ...................................................................... 5

*Circular Welded Carbon-Quality Steel Pipe from Oman, Pakistan, the United Arab Emirates, and Vietnam*, Investigation Nos. 701-TA-549 and 731-TA-1299, 1300, 1302 and 1303 (Final), USITC Pub. 4651 (*2016 Injury Investigation*) ................................................................ 9

*Certain Circular Welded Non-Alloy Steel Pipe from Korea*,
  57 Fed. Reg. 49,453 (Dep't. Commerce Nov. 2, 1992) ............................................................ 5

*Certain Welded Carbon Steel Standard Pipes and Tubes from India*,
  51 Fed. Reg. 17,384 (Dep't Commerce May 12, 1986) ............................................................ 5

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

———————————————————————————
                                                    )
SEAH STEEL VINA CORPORATION,                        )
     Plaintiff,                                   )
                                                    )
     v.                                           )        Court Nos. 23-00256, 23-00257,
                                                    )                  23-00258
UNITED STATES,                                      )
     Defendant,                                   )
                                                    )
     and                                          )
                                                    )
BULL MOOSE TUBE COMPANY, *et al.*,                  )
     Defendant-Intervenors.                       )
———————————————————————————

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORDS**

Defendant, the United States, respectfully responds to SeAH Steel Vina Corporation's

(SSV) motion for judgment on the administrative records.  Brief of Plaintiff SeAH Steel VINA,

No. 23-00256 (Ct. Int'l Trade June 17, 2024), ECF No. 38 (SSV Br.).  SSV challenges the

Department of Commerce's (Commerce) final affirmative determinations of circumvention of:

(1) the antidumping (AD) and countervailing duty (CVD) orders on circular welded carbon

quality steel pipe (circular welded pipe) from China; (2) the AD order on certain welded carbon

steel standard pipes and tubes (pipes and tubes) from India; and (3) the AD order on circular

welded pipe from the Republic of Korea (Korea).  The Court should deny SSV's motion and

enter judgment for the United States because the final determinations are supported by

substantial evidence.

### STATEMENT PURUSANT TO RULE 56.2

**I.    Administrative Determinations Under Review**

The determinations under review are: *Certain Circular Welded Non-Alloy Steel Pipe from Korea: Final Affirmative Determination of Circumvention of the Antidumping Order*, 88 Fed. Reg. 77,270 (Dep't of Commerce Nov. 9, 2023) (*Korea Final Determination*) and accompanying Issues and Decisions Memorandum (IDM) (256-APPX007525-007573);[1] *Certain Welded Carbon Steel Standard Pipes and Tubes from India: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,279 (Dep't of Commerce Nov. 9, 2023) (*India Final Determination*) and accompanying IDM (257-APPX007521-007569); and *Circular Welded Carbon Quality Steel Pipe from China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders,* 88 Fed. Reg. 77,287 (Dep't of Commerce Nov. 9, 2023) (*China Final Determinations*) and accompanying IDM (258-APPX007516-007563) (collectively, the *Final Determinations*).  The period of each inquiry is January 1, 2017, through December 31, 2021.

**II.    Issues Presented For Review**

1.    Whether Commerce lawfully determined that prior AD/CVD findings concerning alleged inquiry merchandise are immaterial to its circumvention analyses.

2.    Whether Commerce's determination that the statutory terms "assembled" and "completed" do not require inquiry merchandise assembled or completed in the third country to

---

[1] Consistent with SSV's brief, SSV Br. at 2, n.2, citations to the Joint Appendix for Ct. No. 23-00256 (Korea) are designated with "256-APPX," Ct. No. 23-00257 (India) are designated with "257-APPX," Ct. No. 23-00258 (China) are designated with "258-APPX."

share the same "essential character" as its order-country input is supported by substantial evidence and in accordance with law.

3.      Whether Commerce's comparison of SSV's pipe production in Vietnam with the entire process of producing pipe from raw materials in its "minor or insignificant" processing analysis under 19 U.S.C. § 1677j(b)(2) is supported by substantial evidence.

4.      Whether Commerce's determination that the overall weight of the statutory factors supported affirmative determinations is supported by substantial evidence.

## STATEMENT OF FACTS

**I.      Legal Framework For Circumvention Inquiries Under 19 U.S.C. § 1677j(b)**

To prevent circumvention of antidumping and countervailing duty orders, the statute permits Commerce to include within the scope of an order merchandise completed in a foreign country other than the order country if certain criteria are met. 19 U.S.C. § 1677j(b). Commerce may do so if:

(A) {the} merchandise imported into the United States is of the same class or kind as any merchandise produced in a foreign country that is the subject of {an order},

(B) before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which . . . is subject to the order . . .or . . . produced in a foreign country . . . to which such order . . . applies,

(C) the process of assembly or completion in the foreign country . . . is minor or insignificant,

(D) the value of the merchandise produced in the foreign country . . . is a significant portion of the total value of the merchandise exported to the United States, and

(E) action is appropriate . . . to prevent evasion of such order . . . .

19 U.S.C. § 1677j(b)(1); *see also* 19 C.F.R. § 351.225(h) (explaining that Commerce "may include within the scope of an antidumping or countervailing duty order, at any time such order is in effect, imported merchandise completed or assembled in a foreign country other than the country to which the order applies").

In determining whether the process of assembly or completion in the third country is "minor or insignificant" under 19 U.S.C. § 1677j(b)(1)(C), the statute directs Commerce to "take into account":

(A) the level of investment in the foreign country,

(B) the level of research and development in the foreign country,

(C) the nature of the production process in the foreign country,

(D) the extent of the production facilities in the foreign country, and

(E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2). No single factor controls. 19 C.F.R. § 351.225(h); Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (SAA), at 893 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040. Additionally, when, as here, Congress has prescribed factors but not their relative weight, the agency is granted "a great degree of discretion in balancing them." *See Lignite Energy Council v. United States EPA*, 198 F.3d 930, 933 (D.C. Cir. 1999) (holding that the Environmental Protection Agency was granted a discretion to balance factors in 42 U.S.C. § 7411(a)(1) because no one factor was controlling).

The statue identifies additional, non-exhaustive, discretionary "factors to consider" in determining whether to include merchandise completed in a third country within the scope of an order. Commerce thus will "take into account such factors as --":

4

(A) the pattern of trade, including sourcing patterns,

(B) whether the manufacturer or exporter of the merchandise . . . described in {19 U.S.C. § 1677j(b)(1)(B)} is affiliated with the person who uses the merchandise described in {19 U.S.C. § 1677j(b)(1)(B)} to assemble or to complete in the foreign country the merchandise that is subsequently imported into the United States; and

(C) whether imports into the foreign country of the merchandise described in {19 U.S.C. § 1677(b)(1)(B)} have increased after the initiation of the investigation that resulted in the issuance of such order . . . .

19 U.S.C. § 1677j(b)(3).

Congress intended to "authorize {Commerce} to apply . . . orders in such a way as to prevent circumvention and diversion of U.S. law."  Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71 (S. Rept.), at 101 (1987).  Commerce possesses "substantial discretion in interpreting these terms, and invoking these measures, so as to allow it flexibility to apply the provisions in an appropriate matter . . . {and to} use {its} authority "to the fullest extent possible to combat diversion and circumvention of the antidumping and countervailing duty laws."  *Id.* at 100.

## II.    Initiation Of Circumvention Inquiries

Commerce published AD orders on pipes and tubes from India and circular welded pipe from Korea.  *Certain Welded Carbon Steel Standard Pipes and Tubes from India*, 51 Fed. Reg. 17,384 (Dep't of Commerce May 12, 1986) (*India Order*); *Certain Circular Welded Non-Alloy Steel Pipe from Korea,* 57 Fed. Reg. 49,453 (Dep't. of Commerce Nov. 2, 1992) (*Korea Order*). Commerce also published the AD and CVD orders on circular welded pipe from China.  *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 42,547 (Dep't of Commerce July 22, 2008); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 FR 42,545 (Dep't of Commerce July 22, 2008) (*China Orders*).

Domestic interested parties submitted inquiry requests alleging circumvention of those orders, and Commerce initiated the requested circumvention inquiries. *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 47,711 (Dep't of Commerce Aug. 4, 2022). Commerce initiated these inquiries on a country-wide basis to determine whether imported circular welded pipe completed in Vietnam from Korea-origin hot-rolled steel circumvent the *Korea Order*, whether imported pipes and tubes completed in Vietnam from India-origin hot-rolled steel circumvent the *India Order*, and whether imported circular welded pipe completed in Vietnam from China-origin hot-rolled steel circumvents the *China Orders*. *Id*. at 47,711-12. Commerce selected SSV and Vietnam Haiphong Hongyuan Machinery Manufacturing Co., Ltd. (Vietnam Haiphong) as the mandatory respondents in each inquiry. 256-APPX001610-001616; 257-APPX001633-001639; 258-APPX001852-001859. Commerce later concluded that Vietnam Haiphong did not produce or export inquiry merchandise.

### III.    Preliminary Determinations

Commerce preliminarily found circumvention. *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea*, 88 Fed. Reg. 21,989 (Dep't of Commerce Apr. 12, 2023) (*Korea Preliminary Determination*) and accompanying Preliminary Decision Memorandum (PDM) (256-APPX007002-007025); *Certain Welded Carbon Steel Standard Pipes and Tubes from India*, 88 Fed. Reg. 21,994 (Dep't of Commerce Apr. 12, 2023) (*India Preliminary Determination)* and accompanying PDM (257-APPX007015-APPX007038); *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China*, 88 Fed. Reg. 21,975 (Dep't of

Commerce Apr. 12, 2023) (*China Preliminary Determinations*) and accompanying PDM (258-APPX007036-007060) (collectively, the *Preliminary Determinations*).

Commerce preliminarily found that imported circular welded pipe completed in Vietnam from Korea-origin hot-rolled steel is circumventing the *Korea Order*, that imported pipes and tubes completed in Vietnam from India-origin hot-rolled steel are circumventing the *India Order*, and that imported circular welded pipe completed in Vietnam from China-origin hot-rolled steel is circumventing the *China Orders*. 256-APPX007002; 257-APPX007015; 258-APX007036. Commerce evaluated the statutory circumvention criteria set forth at 19 U.S.C. § 1677j(b)(1).

Evaluating the first two of these criteria, 19 U.S.C. §§ 1677j(b)(1)(A)-(B), Commerce preliminarily found in each inquiry that the pipe at issue is of the same class or kind as that subject to the relevant order and is completed or assembled in a foreign country (Vietnam) from merchandise (hot-rolled steel) originating from the relevant order country. 256-APPX007011-007013; 257-APPX007024-007026; 258-APPX007047-007049.

Evaluating the third criterion, 19 U.S.C. § 1677j(b)(1)(C), Commerce preliminarily found in each inquiry that the process of assembly or completion of the relevant pipe in Vietnam from order-country hot-rolled steel is minor or insignificant. 256-APPX007013-007019; 257-APPX007026-007032; 258-APPX007049-007054. Commerce analyzed the five sub-factors the statute directs it to "take into account." 19 U.S.C. §§ 1677j(b)(2)(A)-(E). With respect to these factors, Commerce preliminarily found in each inquiry that: (1) investment in the production of the relevant pipe from hot-rolled steel in Vietnam, as compared to investment in the production of hot-rolled steel in each order country, is minor and insignificant; (2) while there are little to no research and development (R&D) expenses related to the production of the relevant pipe in Vietnam, this was "not informative" because there is no information on the record concerning

R&D expenses related to the production of hot-rolled steel in the order countries; (3) the production of pipe from hot-rolled steel in Vietnam is less complex and significant than the production of hot-rolled steel in each order country; (4) the extent of the production facilities in Vietnam for manufacturing the relevant pipe from hot-rolled steel is minor and insignificant compared to the extent of the hot-rolled steel production facilities in each order country; and (5) the value of the processing performed in Vietnam represents a small proportion of the value of the relevant pipe that is imported into the United States from Vietnam.  256-APPX007013-007019; 257-APPX007026-007032; 258-APPX007049-007054.

Evaluating the fourth criterion under 19 U.S.C. § 1677j(b)(1)(D), Commerce preliminarily found in each inquiry that the value of each order-country's hot-rolled steel constitutes a significant portion of the total value of the pipe exported to the United States from Vietnam.  256-APPX007019; 257-APPX007032; 258-APX007055.

Turning to the 19 U.S.C. § 1677j(b)(3) factors, Commerce evaluated in each inquiry the relevant patterns of trade and sourcing, affiliation, and whether imports of hot-rolled steel into Vietnam from each order country had increased.  256-APPX007019-007023; 257-APPX007032-00736; 258-APX007055-007058.  Commerce preliminarily determined these additional factors to be mixed in each inquiry, noting that none is dispositive on its analysis.  256-APPX007024; 257-APPX00737; 258-APX007059.

Lastly, based on its evaluation of the statutory criteria and factors, Commerce preliminarily determined under 19 U.S.C. § 1677j(b)(1)(E) that action was appropriate to prevent evasion of the orders.  *Id.*  Commerce preliminarily determined to include imported circular welded pipe completed in Vietnam from Korea-origin hot-rolled steel within the scope of the *Korea Order*, imported pipes and tubes completed in Vietnam from India-origin hot-rolled steel

within the scope of the *India Order*, and imported circular welded pipe completed in Vietnam

from China-origin hot-rolled steel within the scope of the *China Orders*.  *Id.*

## IV.    Final Determinations

Commerce continued to find that merchandise completed or assembled in Vietnam from

Korea, India, and China-origin hot-rolled steel circumvent the orders.  256-APPX007525; 257-

APPX007521; 258-APPX007516.

Commerce addressed SSV's argument that its inquiry merchandise cannot be included

within the orders under the circumvention statute because its products had supposedly been

found non-dumped, non-subsidized, and non-injurious in previous AD/CVD investigations (the

*Pipe from Vietnam AD/CVD Investigations*).[2]  256-APPX007541-007543; 257-APPX007537-

007539; 258-APPX0070532-007535.  Commerce rejected this contention, explaining that 19

U.S.C. § 1677j(b) "outlines Commerce's criteria for analyzing potential circumvention," and

"does not direct that Commerce must consider negative final determinations" in past

investigations on merchandise from the inquiry country as one of these criteria.  *Id.*  Accordingly,

---

[2] The *Pipe from Vietnam AD/CVD Investigations* comprise an AD and a CVD
investigation completed in 2012, and an AD investigation completed in 2016.  *See Circular
Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam: Notice of Final
Determination of Sales at Less Than Fair Value*, 77 Fed. Reg. 64,483 (Dep't of Commerce Oct.
22, 2012) (*2012 AD Investigation*); *Circular Welded Carbon-Quality Steel Pipe from the
Socialist Republic of Vietnam: Final Negative Countervailing Duty Determination*, 77 Fed. Reg.
64,471 (Dep't of Commerce Oct. 22, 2012) (*2012 CVD Investigation*) and *Circular Welded
Carbon-Quality Steel Pipe from India, Oman, the United Arab Emirates, and Vietnam*,
Investigation Nos. 701-TA-482-484 and 731-TA-1191-1194 (Final), United States International
Trade Commission (ITC) Pub. 4362 (December 2012) (*2012 Injury investigation*).  *See also
Circular Welded Carbon-Quality Steel Pipe From the Socialist Republic of Vietnam: Final
Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 75,042 (Oct. 28, 2016) (*2016 AD
investigation*) and *Circular Welded Carbon-Quality Steel Pipe from Oman, Pakistan, the United
Arab Emirates, and Vietnam*, Investigation Nos. 701-TA-549 and 731-TA-1299, 1300, 1302 and
1303 (Final), USITC Pub. 4651 (*2016 Injury Investigation*).

Commerce found it "immaterial that previously investigated pipe from Vietnam, which may include inquiry merchandise, is not otherwise covered by orders on Vietnamese products." *Id*.

Commerce likewise rejected SSV's argument that its production of pipe in Vietnam from order-country hot-rolled steel cannot constitute "assembly or completion" under the circumvention statute because hot-rolled steel and finished pipe lack the same "essential character." 256-APPX007544-007548; 257-APPX007540-007544; 258-APPX007536-007541. Commerce explained that binding U.S. Court of Appeals for the Federal Circuit precedent, legislative history, and agency practice support finding SSV's production of pipe from hot-rolled steel to constitute "assembly or completion" under the statute. *Id*. (citing among other things *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351 (Fed. Cir. 2023)).

Commerce also declined SSV's invitation to depart from its practice of using hot-rolled steel production in the order-countries as the comparator in its "minor or insignificant" analysis under 19 U.S.C. § 1677j(b)(2) in favor of SSV's preferred comparator of pipe production in the United States using hot-rolled steel as the primary input. 256-APPX007548-007557; 257-APPX007544-007553; 258-APPX007541-007550. Commerce explained that its methodology was reasonable, consistent with practice, and supported by Federal Circuit precedent. *Id*.

Lastly, Commerce rejected SSV's argument that the patterns of trade and affiliation factors under 19 U.S.C. § 1677j(b)(3) did not support evasion. 256-APPX007557-007562; 257-APPX-007553-007558; 258-APPX007550-007555. Commerce reiterated that the evidence with respect to the (b)(3) factors was mixed overall, and that no factor is dispositive. *Id*. Rather, it observed that circumvention determinations are based on the totality of the statutory factors, including the mandatory (b)(1) factors for circumvention findings, which were satisfied here. Commerce thus found that the totality of the evidence supported affirmative determinations. *Id*.

## SUMMARY OF THE ARGUMENT

Commerce's determinations are supported by substantial evidence and in accordance with law. SSV's claim that previous negative determinations inoculate it against circumvention findings confuses statutory schemes and misreads the law. And SSV's "statutory silence" cases prevent SSV from augmenting the circumvention statute with requirements nowhere expressed or contemplated by Congress. Moreover, even if past negative AD/CVD determinations were relevant to later circumvention inquiries, which they are not, they would remain nonbinding. And, in any event, SSV fails in its attempt to prove that the earlier proceedings involve the inquiry merchandise at issue here.

Similarly inapt is SSV's argument that its pipe production in Vietnam from order-country hot-rolled steel does not constitute "assembly or completion" under the circumvention statute. SSV's narrow reading of these terms is contradicted by their ordinary meanings, binding Federal Circuit precedent, and legislative history. SSV's reading also conflates two distinct Commerce analyses and would prevent the statute from serving its purpose. Indeed, SSV's reading is in fact so narrow it would render the circumvention statute superfluous.

Equally misplaced is SSV's argument that Commerce must depart from its normal practice and use SSV's preferred comparator in its "minor or insignificant" analysis under 19 U.S.C. § 1677j(b)(2). SSV makes no attempt to rebut any of Commerce's rationales for rejecting this argument administratively, including failing to explain why binding Federal Circuit precedent does not require rejection of this claim.

Lastly, SSV wrongly contends that the 19 U.S.C. § 1677j(b)(3) factors compel a finding of non-circumvention. Commerce explained that the (b)(3) factors were, in fact mixed overall, and thus contain substantial evidence in support of a circumvention finding. And in any event,

the (b)(3) factors are not controlling on circumvention analyses.  In essence, SSV impermissibly asks the Court to reweigh the evidence and the Court should reject its claim for that reason.

## ARGUMENT

### I.    Standard Of Review

Commerce's determinations shall be sustained if "supported 'by substantial evidence on the record' and otherwise 'in accordance with law.'"  *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017) (citing 19 U.S.C. § 1516a(b)(1)(B)).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial evidence may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

"{T}he antidumping statute reveals tremendous deference to the expertise of the Secretary of Commerce in administering the antidumping law."  *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996) (internal citations omitted).  "Antidumping and countervailing duty determinations involve complex accounting decisions of a technical nature, for which agencies possess far greater expertise than courts."  *Id.* (internal citations omitted).  "This deference is both greater than and distinct from that accorded the agency in interpreting the statutes it administers, because it is based on Commerce's technical expertise in identifying, selecting and applying methodologies to implement the dictates set forth in the governing statute, as opposed to interpreting the meaning of the statute itself where ambiguous."  *Id.*

Importantly, "Commerce is not bound by its prior determinations," *Al Ghurair*, 65 F.4th at 1360, and "each administrative review is a separate exercise of Commerce's authority that

allows for different conclusions based on different facts in the record." *Hyundai Elec. & Energy Sys. Co. v. United States*, 15 F.4th 1078, 1089 (Fed. Cir. 2021).

Furthermore, "The {C}ourt may not substitute its judgment for that of the agency when the choice is between two fairly conflicting views, even though the {C}ourt would justifiably have made a different choice had the matter been before it *de novo*." *Goldilink Indus. Co. v. United States*, 431 F.Supp.2d 1323, 1326 (Ct. Int'l Trade 2006) (internal citations omitted). Likewise, the Court may not "reweigh the evidence or substitute its own judgment for that of the agency{.}" *Usinor v. United States*, 342 F.Supp.2d 1267, 1272 (Ct. Int'l Trade 2004).

## II.    Past Investigations Are Immaterial To Later Circumvention Inquiries

### A.    Commerce Correctly Rejected SSV's Contentions Concerning The Preclusive Effect Of Prior Findings

SSV contends that Commerce may not find circumvention because SSV's merchandise was allegedly previously determined non-dumped, non-subsidized, and non-injurious.  But such alleged prior determinations are not among the factors that the circumvention statute directs Commerce to consider, let alone a free pass to circumvent.  Far from precluding finding circumvention, the alleged negative prior findings were in fact immaterial to the analysis the circumvention statute directs Commerce to perform.  256-APPX007541-007543; 257-APPX007537-007539; 258-APPX0070532-007535.

Rather than applying SSV's counter-textual analysis, Commerce applied the law as written.  Commerce evaluated the criteria and factors that 19 U.S.C. § 1677j(b) directs it to assess.  *Id.*  The Court should sustain Commerce's faithful application of the statute over the textually untethered analysis suggested by an interested party.

1.    **SSV Confuses Statutory Schemes**

SSV maintains at pages 11-16 of its brief that years-old negative AD or CVD investigations inoculate against future circumvention findings. This confuses the statutory elements for *AD or CVD investigations* with those for *circumvention inquiries*. In an investigation, for Commerce to issue an order, it must determine that subject merchandise dumped or subsidized, and the ITC must determine it to materially injure, or threaten material injury to, a domestic industry. 19 U.S.C. §§ 1671, 1673. In a circumvention inquiry under section 1677j(b), the criteria are entirely different, focusing on, *e.g.*, whether the completion of that merchandise in the inquiry country from the order country input is minor or insignificant. 19 U.S.C. § 1677j(b). In short, SSV confuses, conflates, and inappropriately collapses the criteria in AD/CVD investigations with the criteria for circumvention inquiries. These are separate and distinct statutory pathways by which merchandise can be made subject to the discipline of an order, with separate and distinct statutory criteria for doing so. The differences in terminology the statute uses for the two distinct types of proceedings further highlights SSV's error. The statute refers to AD/CVD examinations as "investigations." 19 U.S.C. §§ 1671d; 1673d. It refers to circumvention examinations as "inquiries." 19 U.S.C. § 1677j(f).

And SSV's own brief illustrates the point. Conspicuously absent from its argument at pages 11-15 concerning what the "statutory scheme" supposedly requires for circumvention determinations is any reference to the circumvention statute itself, 19 U.S.C. § 1677j(b). In place of discussing the statutory scheme for *circumvention inquiries*, SSV instead discusses only those governing AD and CVD investigations. SSV Br. at 11-15 (discussing 19 U.S.C. § 1671d (CVD investigations) and 19 U.S.C. § 16713d (AD investigations)).

And lastly, one cannot abandon common sense.  Logically, merchandise that Commerce brings within an order's scope via a circumvention inquiry is likely merchandise that has not been found dumped/subsidized and injurious in an investigation.  If merchandise had been found dumped/subsidized and injurious, then it would already be subject to orders.

## 2.    SSV Misreads The Statute

SSV invents a "fundamental rule" underpinning the statute that appears to require separate investigations of inquiry merchandise because respondents whose sales are found not to have dumped or who have been found not to have received subsidies are excluded from any orders issued after investigations.  SSV Br. at 2.  This argument misapprehends the circumvention statute.  Previous negative determinations from years before the circumvention inquiry cannot inoculate SSV.

If it were true that AD/CVD duties may only be imposed on merchandise determined to be dumped/subsidized and injurious, that is, the determinations made in AD/CVD investigations, then this would mean that circumvention inquiries are superfluous, because the only pathway to protection from unfair trade would be AD/CVD investigations.  In other words, if SSV were correct, then there would be no reason for Congress to include the circumvention provisions in the statute, because the only relevant examinations would be AD/CVD investigations.  *See*, *e.g.*, *Pulsifer v. United States*, 601 U.S. 124, 125 (2024) ("That kind of superfluity, in and of itself, refutes Pulsifer's reading").  Further undercutting SSV's "fundamental rule" is the fact that Commerce need not investigate every respondent.  *See* 19 U.S.C. §§ 1671d(c)(1)(B)(i)(I) ("all others" rates), 1673d(c)(1)(B)(i)(II) (same).  Similarly, the ITC makes injury determinations on country-wide (or multiple countries) basis.  19 U.S.C. §§ 1671(a), 1673(2).

SSV's view that only merchandise determined dumped/subsidized and injurious can be subject to AD/CVD orders is doubly wrong.  First, as discussed, it is wrong as a matter of statutory construction.  Second, it is wrong as a practical matter.  Agreeing with SSV that the law's unwritten, yet nevertheless "fundamental" rule is that only merchandise found dumped/subsidized and injurious can be subject to AD/CVD orders would have far-reaching, negative implications for this law's effectiveness.  Merchandise that has not been found dumped/subsidized and injurious is routinely brought within orders' scopes in circumvention inquiries because Congress addressed the circumvention problem by including distinct statutory provisions, 19 U.S.C. §§ 1677j(a)-(d), in the statute.  SSV's view of the statute would effectively render the circumvention statute a nullity, reopening the very loopholes that Congress intended to close.  S. Rep. No. 100-71, at 101 (1987).

### 3.    The Legislative History Contradicts SSV's Contentions

SSV contends that the statute's legislative history compels the conclusion that merchandise found non-dumped, non-subsidized or non-injurious in an AD/CVD investigation on one country cannot be brought within the scope of an order on another under the circumvention statute.  SSV Br. at 16-18.  The history establishes the opposite.

SSV relies primarily on the Report of the House Ways and Means Committee accompanying the Trade and International Economic Policy Reform Act of 1987.  SSV Br. at 16-18 (citing H. Rep. No. 100-40, Part 1, at 134 (1987) (H. Rep. 100-40)).  In contrast to SSV's argument, this report expressly states that "the bill adds new section {1677(b)} to allow the Commerce Department to prevent evasion of an order {by bringing merchandise within that order's scope} . . . *if the conditions set forth in the subsection are met*."  *Id.*  (emphasis added).  "{I}f the conditions set forth in the subsections are met" means exactly that – Commerce may

find circumvention if the circumvention statute's conditions are met – nothing less and nothing more.  Again, nowhere among the "conditions set forth in the subsection" are the requirements that SSV attempts to engraft onto the statute.

Moreover, SSV's extra-textual bar to affirmative circumvention determinations contravenes Congress's intention that the purpose of the circumvention statute is to prevent the "evasion" of AD/CVD orders.  S. Rep. No. 100-71 at 101 (1987); *see also* H. Rep. 100-40 at 134 ("the bill adds new section {1677(b)} to allow the Commerce Department to prevent evasion of an order . . .  if the conditions set forth in the subsection are met.").  In short, even if all of the conditions set forth in section 1677j(b) were met, SSV's reading would keep open the very "loopholes . . . seriously undermining{ing} the effectiveness of the {trade} remedies" that this statue was meant to close, "frustrat{ing} the purpose for which these laws were enacted."  S. Rep. 100-71 at 101.

SSV also relies on a list of examples of circumvention from the legislative history.  SSV Br. at 17-18 (citing H. Rep. 100-40 at 134).  Not one of these examples indicates, in any way, that Commerce cannot find circumvention where merchandise has been previously examined in AD/CVD investigations that did not result in orders.  Rather, they support circumvention findings in precisely the circumstances of this case.  One example from the history SSV cites, concerning steel sheet cut to length in a "third county" before export to the United States, maps precisely onto the circumstances of this case.  *Id*. at 18 (citing H. Rep. 100-40 at 134).  Both in that example and here, unfinished merchandise (in the example, uncut steel sheet; here, hot-rolled steel) is sent from an origin country (China, India, and Korea in this case) to a "third country" (here, Vietnam) for minor completion (in the example, by cutting; here, by slitting and

welding) into finished merchandise of the same class or kind as that subject to an order in the origin country and then exported to the United States.

From this and the other illustrative examples in the history that are supportive of Commerce's determinations, SSV extrapolates to the following conclusion: "In all of these cases, the concern expressed by Congress was that products subject to an *existing* antidumping order might be shipped in incomplete form and completed elsewhere."  SSV Br. at 18 (emphasis in original).   And, as SSV describes, products "subject to an existing antidumping duty order" (circular welded pipe and pipe and tube from China, India, and Korea) were shipped in "incomplete form" (as hot-rolled steel) and "completed elsewhere" (in Vietnam).  *Id*.  In sum, SSV itself has proven that Congress's intent expressed in legislative history compels the conclusion that SSV's merchandise exported from Vietnam circumvents the orders.

### 4.    "Statutory Silence" Does Not Augment The Statute

SSV wrongly contends at page 19 of its brief that Commerce reasoned below that it "was permitted to treat SSV's production of circular welded pipe as circumvention" based on "statutory silence" "because the statute does not explicitly prohibit circumvention inquiries on products that have been investigated and found not to be dumped or subsidized."

But Commerce explained that 19 U.S.C. § 1677j(b) "outlines Commerce's criteria for analyzing potential circumvention," and "does not direct that Commerce must consider negative final determinations."  Accordingly, Commerce found the supposed previous negative determinations on SSV's inquiry merchandise "immaterial."  256-APPX007542; 257-APPX007539; 258-APPX007534.

In other words, far from finding the statute to be silent, Commerce found the statute to be explicit: it identifies all criteria for assessing circumvention.  Accordingly, Commerce did not

18

rely on statutory silence for its authority to perform its circumvention analysis, but rather, it followed the statute's explicit direction.

For this reason, SSV's reliance on *FAG Italia* and *California Edison* are misplaced.  SSV Br. at 19-20 (citing *FAG Italia S.p.A. v. United States*, 291 F.3d 806, 817 (Fed. Cir. 2002); *Southern California Edison Co. v. Federal Energy Regulatory Commission*, 195 F.3d 17, 24 (D.C. Cir. 1999)).  Those cases represent the inverse of this case.  In *FAG Italia*, the issue was that Commerce was performing an inquiry nowhere provided for in the statue, on the theory that it is permitted to conduct inquiries that the statue does not expressly prohibit.  *FAG Italia S.p.A.*, 291 F.3d at 814-817.  Here, by contrast, Commerce performed inquiries expressly provided for in the statute.  In *California Edison*, the issue was that FERC was "assum{ing} a new category" of allowable uses for non-green fuel sources nowhere identified in its statute or regulations, on the theory that they did not expressly disallow these non-identified uses for such fuel sources. *California Edison Co.*, 195 F.3d at 24.  Here, again by contrast, Commerce (unlike SSV) is not assuming anything outside the statute, but rather, it followed 19 U.S.C. § 1677j(b), as written.

In each of the cases upon which SSV relies, the courts found unlawful agency action nowhere allowed in the pertinent statue.  Yet, what the courts found unlawful in *FAG Italia* and *California Edison* is what SSV suggests here: that Commerce should have declined to perform a circumvention analysis as directed by the statute based on some unstated congressional intent.

### 5.    SSV's Initiation Claim Fails

SSV contends that the prior negative AD/CVD findings not only precluded Commerce from reaching affirmative *determinations* in these inquiries, but also from even *initiating* them. SSV Br. at 20-22.  There is no such bar to initiation.  *See* 19 C.F.R. § 351.226 (initiation criteria).

19

Indeed, even SSV concedes at page 20 of its brief that the regulatory criteria for initiating these inquiries were met.  Notwithstanding its admission, SSV contends that the initiation was nevertheless unlawful.  *Id*. at 20-21.  SSV appears to contend that: (1) "attempts have been made" to amend the circumvention statute to allow initiation even when doing so is "not warranted" because proposed inquiry merchandise has been subject to prior negative AD/CVD determinations; (2) these attempts have failed; and (3) Commerce is now trying to achieve this amendment through the backdoor via its circumvention inquiry initiation regulations.  *Id*.  Thus, in SSV's apparent view, the Court should not allow Commerce to initiate inquiries where there have been prior negative AD/CVD findings on proposed inquiry merchandise, as this represents an attempt by the agency to impermissibly amend the statute via regulatory fiat in the face of its failure to do permissibly via Congress.  *Id*.

SSV's apparent position is wrong on many levels.

First, the "attempts" to amend the statute that SSV references post-date Commerce's initiation regulations and, thus, the regulation cannot be a reaction to those "attempts."  The earliest proposed legislation SSV cites is from 2022.  SSV Br. at 21 (citing America COMPETES Act of 2022, H.R. 4521, 117th Cong. § 102201 (as passed by House, Feb. 2022)).  But the regulation pre-dates this.  *See*, *e.g.*, 2021 historical version of 19 C.F.R. § 351.226, available at https://www.ecfr.gov/on/2021-11-04/title-19/chapter-III/part-351/subpart-B/section-351.226

Second, SSV assumes that the statute includes the unstated requirement that, for Commerce to initiate, there cannot be an earlier negative determination on proposed inquiry merchandise, that the proposed legislation it cites attempted to remove this requirement, and that Commerce via its regulations has done what it could not achieve permissibly via this proposed legislation.  SSV is wrong on all counts.  The circumvention statute lacks any such requirement.

*See* 19 U.S.C. § 1677j(f) (the only statutory requirement connected to initiation is that Commerce must, "to the extent practicable," make its circumvention determination within 300 days of initiation). Accordingly, neither the proposed legislation nor Commerce's regulations can be attempts to remove it. Third, and importantly, the initiation regulations in no way amend or countermand the circumvention statute; rather, they track and mirror it. For example, they require a circumvention inquiry request to include "a statement of the requestor's position as to the nature of the alleged circumvention *under section 781 of the Act* {19 U.S.C. § 1677j}." 19 C.F.R. § 351.226(c)(iv) (emphasis added).

### 6. SSV's All-Others Rate Argument Fails

SSV contends that Commerce was "not permitted" to apply the all-others rates from the *Korea*, *India*, and *China Orders* as the cash deposit rates for its inquiry merchandise, as this merchandise was supposedly subject to negative determinations. SSV Br. at 22-24. This claim fails for the same basic reason as the others. Just as its alleged negative determinations are immaterial to the initiation of, and determination in, a circumvention inquiry, they are likewise immaterial to the cash deposit rate applied as the result of such an inquiry.

### B. Even If Prior AD/CVD Determinations On Inquiry Merchandise Were Relevant, They Would Not Bar Affirmative Determinations In This Case

Even if the negative findings in the prior *Pipe from Vietnam AD/CVD Investigations* were relevant to the instant circumvention inquiries, which they are not, SSV's claim concerning their preclusive effects would still fail. As the Federal Circuit has recognized, "Commerce is not bound by its prior determinations," *Al Ghurair*, 65 F.4th at 1360, and "each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record." *Hyundai*, 15 F.4th 1078, 1089 (Fed. Cir. 2021). Accordingly, even if the earlier determinations were relevant, they did not compel negative determinations,

contrary to what SSV suggests. Indeed, the facts on the "different" records here that cover a different period of examination and concern different issues than the prior *Pipe from Vietnam AD/CVD Investigations* support the circumvention determinations here.

SSV's first problem is a failure of proof. SSV grounds its case on the premise that its inquiry merchandise was subject to negative dumping, subsidization, and injury determinations in the *Pipe from Vietnam AD/CVD Investigations*. But SSV has not established this premise.

SSV's inquiry merchandise is not all of the circular welded pipe or pipe and tube that it produces in Vietnam. Rather, it is only the circular welded pipe/pipe and tube that SSV completes or assembles in Vietnam from hot-rolled steel imported from China, India, or Korea. But SSV has not even alleged in its brief, let alone established, that its merchandise examined in the *Pipe from Vietnam AD/CVD Investigations* was made from hot-rolled steel imported from these sources. Rather, it has simply stated that it was made from "imported steel coil," without disclosing the source(s) of that coil. SSV Br. at 13 (citing Memorandum to The File, "Analysis for the Preliminary Determination of the Antidumping Duty Investigation of Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam (Vietnam): SeAH Steel VINA Corporation (SeAH VINA), available at ECF No. 40-1 (Ct. No. 23-00256)). SSV also cites its comments opposing the initiation of the inquiries challenged here, SSV Br. at 13, n.22, in which it does state that its merchandise examined in the *2016 AD Investigation* contained hot-rolled coil from China and Korea (even in these comments SSV appears to concede that there is no evidence that this merchandise was made from hot-rolled coil from India). 256-APPX001445-001647; 257-APPX001384-001385; 258-APPX001622-001623. It provides no other evidence.

Moreover, even if SSV's merchandise examined in the earlier investigations contained hot-rolled steel from the pertinent sources, it would not be inquiry merchandise. The 2017-2021

period examined in the circumvention inquiries post-dates the periods examined in the *Pipe from Vietnam AD/CVD Investigations* (2010 and 2015). Accordingly, the long past determinations that SSV reference concern different merchandise than this case.

Lastly, SSV cites the wrong previous proceedings. Rather than the Vietnam investigations, the relevant proceedings involve the orders on merchandise from China, India, and Korea. SSV does not, and cannot, contest that affirmative determinations underlying those orders. As Commerce explained, each "inquiry is classified under the order on pipe from the subject country, in which Commerce and the ITC have previously found evidence of injurious dumping and subsidization." 256-APPX007543; 257-APPX007539; 258-APPX0017534.

## III. Commerce's Assembly Or Completion Finding Is Supported By Substantial Evidence And In Accordance With Law

### A. Commerce Correctly Rejected SSV's "Essential Character" Argument

SSV contends that its production of pipe from hot-rolled steel cannot constitute "assembly or completion" under the circumvention statute because hot-rolled steel and pipe lack the same "essential character." SSV Br. at 4, 23-33. Neither "assembly" nor "completion" is defined by the statute. "When a word is not defined by statute, {courts} normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993) (citing *Perrin v. United States*, 444 U.S. 37, 113 (1979)). SSV's proposed interpretations of the words "assembly" and "completion" do not accord with their ordinary or natural meanings, because they seek to impose categorical limitations on these terms that are not required in

ordinary usage.[3]  The Court should reject SSV's limited reading of "assembly or completion" because it is contradicted by the ordinary meanings of these terms.

First and foremost, SSV's reading contradicts the reading compelled by *Bell Supply Co., LLC v. United States*, 888 F.3d 1222 (Fed. Cir. 2018).  "{T}he process of 'assembly or completion' may still be minor or insignificant, and undertaken for the purpose of evading an AD or CVD order," even if, as a result of this process, "*a product assume{s} a new identity*."  *Bell Supply*, 888 F.3d at 1230 (emphasis added).  To that end, if the final product "assume{s} a new identity," *id*., as the result of its manufacturing process, it has a different essential character than its input because the input "loses its identity" when manufactured into finished good with "a new, name, *character* and use."  *Bestfoods v. United States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999)) (emphasis added).  Contrary to SSV's narrow reading, "even where an article is substantially transformed, Commerce can still find that it is subject to an order after conducting a circumvention inquiry."  *Bell Supply*, 888 F.3d at 1231.

SSV nevertheless attempts to sow confusion by conflating distinct Commerce analyses.  Commerce assesses whether a production process imparts a finished good's "essential character" as part of its substantial transformation analysis in scope proceedings, not circumvention analyses.  The "anti-circumvention provision" is "separate from the substantial transformation analysis."  *Bell Supply*, 888 F.3d at 1299.

---

[3] "Assembly" is "the fitting together of manufactured parts into a complete machine, structure, or unit of a machine." https://www.merriam-webster.com/dictionary/assembly.  There is no requirement in this definition that the "parts" need to have the same "essential character" as the "complete . . . unit."  "Completion" is "the act or process of completing." https://www.merriam-webster.com/dictionary/completion.  Likewise, there is no requirement in this definition that "the act or process of completing" something not impart its "essential character."

Moreover, SSV's misreading of the circumvention statute would prevent Commerce from combatting even paradigmatic examples of order evasion.  The *Diamond Sawblades* inquiry is a good example.  *Diamond Sawblades* IDM at 6-11.  There, diamond sawblades that would have been subject to an order if shipped to the United States directly from the order country (China) were first transshipped in incomplete form (as cores and sawblades) to a third country (Thailand) for minor or insignificant processing (the joining of the cores and sawblades), before being shipped to the United States, now free of AD duties.  *Id.*  This is quintessential circumvention.  Yet, under SSV's reading, Commerce could not combat it because core and sawblade components lack the same "essential character" as finished sawblades.  This cannot be the case.

SSV's reading is in fact so narrow that it would render the circumvention statute superfluous.  Under SSV's proposal, to avoid imparting new essential characteristics on an input, "assembly or completion" can only encompass the "final step" of processing that input.  SSV Br. at 26.  This would limit "assembly or completion" to, *e.g.*, the final testing, strengthening, or finishing of a product.  But, using one of the inquiries here as an example, there is no question that pipe from China that only goes through final testing in Vietnam before being imported into the United States is already subject to the *China Orders*, as it is clearly pipe from China.  Indeed, under this scenario, it would have to be marked as having China as its country of origin under customs regulations.  19 C.F.R. §§ 134.1(b); 134.11.  If "assembly or completion" only encompassed the *de minimis* third country processing that SSV suggests, then there would be no role for circumvention inquiries to play, because it would already be clear that the inquiry merchandise is subject to the pertinent order.

In contrast, 19 U.S.C. § 1677j(b)(2) directs Commerce to weigh multiple factors to determine if third country assembly or completion is minor or insignificant.  SSV's "final step"

reading of "assembly or completion" would displace this congressionally-mandated analysis.  As discussed, third-country processing would necessarily need to be *de minimis* to satisfy SSV's proposed "last step in the production process" reading of assembly or completion.  Such "assembly or completion" would, by definition, be "minor or insignificant."  Consequently, under SSV's reading, once Commerce establishes that third country processing qualifies as "assembly or completion," it would have established it to be minor or insignificant, and there would be no need for it to proceed to weigh the 19 U.S.C. §1677j(b)(2) "minor or insignificant" factors.  In other words, SSV in essence seeks to replace the congressionally mandated multi-factor "minor or insignificant" weighing analysis with a single and controlling "final step" test.

To substantiate its "same essential character" reading of "assembly or completion," SSV weaves a complex historical context argument at pages 25-33 of its brief.  SSV attempts to connect strings from the historical context of the color televisions proceeding of the 1980s, to the 1988 Omnibus Act, to the General Rules of Interpretation (which, as Commerce explained, are not controlling in circumvention inquiries).  *Id*.  Of course, the Federal Circuit's admonition that "even where an article is substantially transformed, Commerce can still find that it is subject to an order after conducting a circumvention inquiry," *Bell Supply*, 888 F.3d at 1231, readily disposes of SSV's historical context argument.

Similarly, the legislative history itself states that the circumvention statute covers scenarios in which an article is "technically transform{ed} into a differently designated article." S. Rep. 100-71 at 101.  Moreover, the examples indicate that the statute is meant to address scenarios in which the input and the finished good have different essential characters.  Returning to the cut-to-length steel sheet example discussed above, for example, uncut sheet and cut-to-length sheet would not appear to have the same essential character, as the former cannot be used

in any of the same applications as the latter.  H. Rep. 100-40 at 134.  And lastly, SSV's narrow

and rigid reading of "assembly or completion" is antithetical to Congress's intent, expressed in

the legislative history, that Commerce is to have "substantial discretion in interpreting these

terms, and {in} invoking these measures, so as to allow it the flexibility to apply the provisions

in an appropriate matter . . . {and to} use {its} authority to the fullest extent possible to combat

. . . circumvention of the antidumping and countervailing duty laws."  S. Rep. 100-71 at 100.

### B. Commerce's "Minor Or Insignificant" Finding Is Supported By Substantial Evidence And In Accordance With Law

#### 1. Commerce Correctly Rejected SSV's U.S. Industry Comparator Argument

SSV contends that its processing of hot-rolled steel into pipe "cannot be considered"

minor or insignificant because it is "essentially identical" to "the operations performed by U.S.

{pipe} producers."  SSV Br. at 33-34.  SSV's attempt to upend Commerce's consistent,

longstanding, and judicially approved use of upstream input production as the comparator in its

"minor or insignificant" analysis fails.

As Commerce observed, in evaluating the factors that 19 U.S.C. § 1677j(b)(2) directs it

to take into account in determining whether third country assembly or completion is minor or

insignificant, it compared the level of investment, R&D, production process, and production

facilities connected with SSV's manufacturing of pipe from hot-rolled steel in Vietnam to the

level of investment, R&D, production process, and production facilities connected with the

manufacturing of hot-rolled steel in each of the order countries.  256-APPX007552-007557; 257-

APPX007548-007553; 258-APPX007545-007550.  Using hot-rolled steel production in the order

countries as the comparator for its "minor or insignificant" analysis (instead of SSV's proposed

comparator of pipe production in the United States), Commerce noted, was consistent with its

normal practice. *Id*. Taking just one example from the many Commerce cited, in *Pipe and Tube from India (UAE and Oman)*, a circumvention inquiry involving, as here, pipe made from imported hot-rolled steel, Commerce, as here, compared pipe production from hot-rolled steel in the inquiry countries to hot-rolled steel production in the order country. *Id*. (citing *Certain Welded Carbon Steel Standard Pipes and Tubes from India: Final Negative Determinations of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 12,917 (Dep't of Commerce March 1, 2023) and accompanying IDM (*CWP from India* IDM) at Comment 6).

Moreover, comparing downstream production in Vietnam of finished pipe from order-country hot-rolled steel to upstream production in the order country of that hot-rolled steel itself allows Commerce to discern what portion of the *total* pipe production process (production of hot-rolled steel through production of finished pipe) this downstream production accounts for, which is a reasonable basis for determining if it is minor or insignificant. *Id*.

The Federal Circuit sustained Commerce's methodology of comparing the downstream production of the finished inquiry merchandise to the upstream production of the input in its 19 U.S.C. § 1677j(b)(2) "minor or insignificant" analysis. *Al Ghurair*, 65 F.4th at 1360. Indeed, in *Al Ghurair* as in this case, the plaintiff had contended "that Commerce legally erred by comparing {the} investment to make {subject merchandise} with Chinese manufactures' investment to make {the input of} hot-rolled or cold-rolled steel." *Id*. The Court readily disposed of this argument, explaining that Al Ghurair "provides no binding authority supporting this argument." *Id*. Although SSV cited this Court's underlying decision in *Al Ghurair* for a different purpose at page 35 of its brief, SSV does not acknowledge Federal Circuit's teaching.

Lastly, as this Court has long held, "absent a showing of unreasonableness on the part of the agency, its choice of methodology shall be sustained." *NTN Bearing Corp. of Am. v. United*

28

*States*, 747 F. Supp. 726, 736 (Ct. Int'l Trade 1990).  SSV has not shown, and indeed cannot show, in light of binding Federal Circuit precedent, that Commerce's methodological choice of using hot-rolled steel production in the order-country as the comparator to be unreasonable.

**2.**    **Commerce's Paragraph (b)(3) Analyses Are Supported By Substantial Evidence**

The Court should reject SSV's challenges to Commerce's analysis of the factors set forth in 19 U.S.C. § 1677j(b)(3) because (1) those factors are discretionary; and (2) Commerce lawfully weighed these factors, some of which supported an affirmative circumvention finding.

**i.**    **The (b)(3) Factors Are Discretionary**

SSV wrongly contends at pages 35-41 of its brief that the discretionary and non-exhaustive paragraph (b)(3) factors compel negative circumvention determinations.  Commerce assessed the totality of the statutory factors, including all mandatory (b)(1)(A)-(D) factors, and reasonably found that, on the whole, they supported affirmative determinations here.  256-APPX007558-007560; 257-APPX007554-007556; 258-APPX007551-007553.

SSV contends that the (b)(3) factors precluded Commerce from reaching affirmative determinations, because, allegedly, "none" supported such outcomes.  SSV Br. at 35.  SSV's argument hinges on the false premise that the (b)(3) factors are dispositive on Commerce's circumvention analyses.  But none of the (b)(3) factors, either individually or collectively, are controlling.  256-APPX007558-007560; 257-APPX007554-007556; 258-APPX007551-007553.  Rather, Commerce considers these factors holistically, along with both the (b)(1) criteria and the (b)(2) "minor or insignificant" factors.  *Id*.

Congress directed that Commerce "shall take into account *such factors as*—" the three factors.  19 U.S.C. § 1677j(b)(3).  This language does not compel any result based on the agency's consideration of the three factors.  And in the immediately preceding paragraph (b)(2),

29

Congress excluded the "such . . . as" qualification contained in paragraph (b)(2).  19 U.S.C.

§ 1677j(b)(2) (in making "minor or insignificant" determination, Commerce "shall take into

account—").  It is axiomatic that, "'where Congress includes particular language in one section

of a statute but omits it in another section of the same Act, it is generally presumed that Congress

acts intentionally and purposely in the disparate inclusion or exclusion.'"  *Bates v. United States*,

522 U.S. 23, 29-30 (1997) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Contrary to SSV's blinkered view of the statute, and consistent with the statute's plain

meaning, Commerce reaches its circumvention determinations based on the weight of the

evidence with respect to the totality of these criteria and factors, not just the (b)(3) factors.  This

is no novel legal position.  *See*, *e.g.*, *Al Ghurair*, 65 F.4th at 1363 (sustaining Commerce's

affirmative determination where the weight of the evidence with respect to its "multi-factor"

statutory circumvention analysis supported it, despite error with respect to (b)(2) sub-factor).

Thus, even if all the (b)(3) factors categorically support negative determinations (which is not the

case here, as discussed below), this would not compel negative results.  If other statutory criteria

and factors in (b)(1) and (b)(2) supportive of affirmative determinations outweigh the (b)(3)

factors, then such determinations are both reasonable and lawful.

Indeed, SSV's attempt to read the (b)(3) factors as controlling turns the statute on its

head.  The SAA directs that (b)(1) contains the "mandatory factors" for affirmative

circumvention determinations.  SAA at 893.  So, by their plain language, the (b)(3) factors are

*not* mandatory.  The text further confirms this, directing only that Commerce is to "*consider*"

factors "such . . . as" the (b)(3) factors in "determining whether to include merchandise" in an

order, not that Commerce shall treat these factors as mandatory.  19 U.S.C. § 1677j(b)(3)

(emphasis added).  But, under SSV's reading, the discretionary factors that Commerce is to

merely "consider" are elevated in importance above the "mandatory" factors, contravening the subordinate role the statute and the legislative history indicate they are meant to play.

And giving undue weight to the (b)(3) factors, much less the controlling weight that SSV would prefer, runs afoul of the SSA's instruction that the "focus" of circumvention inquiries is to be "on the question of whether minor or insignificant assembly or completion is taking place." SAA at 894. SSV wrongly attempts to "re-focus" Commerce's circumvention analysis away from this core "question" and to the (b)(3) factors, contrary to what the SAA directs.

In sum, rather than being outcome determinative, as SSV erroneously suggests them to be, the (b)(3) factors are but some of the larger number of discretionary factors that Commerce weighs in determining whether to reach affirmative determinations. Indeed, the statute and the SSA indicate that the (b)(3) factors are in fact of secondary importance in Commerce's circumvention analyses.

### ii.    SSV Misapprehends The Evidence On The (b)(3) Factors

SSV advances the false premise that all the (b)(3) factors categorically weigh against affirmative determinations. While, as Commerce expressly acknowledged in each inquiry, SSV was not affiliated with its order-country hot-rolled steel suppliers, as it also correctly noted in each, the evidence regarding the (b)(3) factors was "mixed" overall. 256-APPX007024; 257-APPX00737; 258-APX007059.

For example, with respect to patterns of trade, there was evidence in each of the inquiries that supported affirmative determinations. In both the India and China inquiries, for instance, the country-wide data showed that imports of hot-rolled steel into Vietnam from these countries had increased during the inquiry period, as had exports of finished inquiry pipe from Vietnam to the United States. 257-APPX007033-007034; 258-APPX007055-007056. Likewise, in the Korea

inquiry, SSV's company-specific data showed an "increase in the quantity of {its} CWP exports to the United States produced from {hot-rolled steel} imported from Korea."  256-APPX007020.

With respect to input imports, evidence in the Korea and China inquiries likewise supported affirmative determinations.  The country-wide data in both showed increased imports of hot-rolled steel into Vietnam.  257-APPX007033-007034; 258-APPX007055-007056.

SSV mischaracterizes both these factors as supporting negative determinations.  With respect to patterns of trade, for example, SSV omits reference to the country-wide data discussed above in favor of company-specific data.  SSV Br. at 37-38.  But this overlooks the country-wide nature of circumvention inquiries.  *Initiation*, 87 Fed. Reg. 47,711.

SSV also incorrectly maintains that Commerce reaches affirmative determinations "only when" certain patterns of trade are present.  SSV Br. at 37.  As Commerce explained, there is no "'requirement that a certain pattern of trade must be established for . . . affirmative circumvention finding{s}. . . {which} are based on the totality of the circumstances and our consideration of the facts of each individual case.'"  256-APPX007021; 257-APPX007034; 258-APPX007057 (quoting *CWP from India* IDM at 9-10).

Moreover, even regarding its company-specific data, SSV makes much of the fact that its "total exports" to the United States declined but it neglected to mention that its exports to the United States of pipe made from Korea-origin hot-rolled steel increased.  Similarly, with respect to input imports, SSV omits the country-wide data addressed above.  SSV Br. at 39-40.

In sum, even if the (b)(3) factors were controlling, they did not categorically weigh against affirmative determinations, contrary to what SSV suggests.  Evidence with respect to (b)(3)(A) (pattern of trade) in each inquiry supported affirmative determinations, as did evidence with respect to (b)(3)(C) (imports of inputs) in the China and India inquiries.  SSV is only able to

present these factors as if they categorically weighed against affirmative circumvention determinations by omitting data.

Finally, and although it is careful not to use these terms, SSV, in essence, asks the Court to reweigh the evidence in its favor by placing greater weight on the (b)(3) factors than Commerce did. This is inconsistent with the Court's standard of review and should be rejected.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain the *Final Determinations* and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ *Franklin E. White, Jr.*
FRANKLIN E. WHITE, JR.
Assistant Director

/s/ *Stephen C. Tosini*
STEPHEN C. TOSINI
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-5196
Email: stephen.tosini@usdoj.gov

September 23, 2024                    Attorneys for Defendant

## CERTIFICATION OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court and the Court's order of April 9, 2024, allowing a response brief not to exceed 14,000 words, that this brief contains 9,223 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Stephen C. Tosini