## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| SEAH STEEL VINA CORPORATION, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| *v.* ) | |
| ) | |
| UNITED STATES, ) | Court Nos. 23-256, 23-257, 23-258 |
| ) | |
| *Defendant,* ) | **PUBLIC DOCUMENT** |
| ) | |
| *and* ) | |
| ) | |
| BULL MOOSE TUBE COMPANY; ) | |
| MARUICHI AMERICAN CORPORATION; ) | |
| WHEATLAND TUBE COMPANY; THE ) | |
| UNITED STEEL, PAPER AND FORESTRY, ) | |
| RUBBER, MANUFACTURING, ENERGY, ) | |
| ALLIED INDUSTRIAL AND SERVICE ) | |
| WORKERS INTERNATIONAL UNION, ) | |
| AFL-CIO, CLC; NUCOR TUBULAR ) | |
| PRODUCTS INC., ) | |
| ) | |
| *Defendant-Intervenors.* ) | |
| ) | |

---

### DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Roger B. Schagrin
Jeffrey D. Gerrish
Nicholas C. Phillips
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
*Counsel to Bull Moose Tube Company;*
*Maruichi American Corporation; Wheatland*
*Tube Company; The United Steel, Paper and*
*Forestry, Rubber, Manufacturing, Energy,*
*Allied Industrial and Service Workers*
*International Union, AFL-CIO, CLC*

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Jake R. Frischknecht, Esq.
Theodore P. Brackemyre, Esq.
Kimberly A. Reynolds, Esq.
Paul A. Devamithran, Esq.
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
*Counsel to Nucor Tubular Products Inc.*

October 15, 2024

# <u>TABLE OF CONTENTS</u>

I.   RULE 56.2 STATEMENT ............................................................................ 1

  A.  Administrative Determination Under Review .................................................. 1

  B.  Issues Presented For Review ........................................................................ 2

II.  STATEMENT OF FACTS ............................................................................ 3

III.  STANDARD OF REVIEW ........................................................................ 11

IV.  SUMMARY OF THE ARGUMENT ........................................................ 12

V.   ARGUMENT .............................................................................................. 14

  A.  Commerce Was Not Bound by Previous Determinations Regarding SSV's Circular Welded Pipe Imports ............................................................................ 14

    1.  Each Agency Determination is Independent ............................................ 15

    2.  The Anticircumvention Statute Does Not Require Any Consideration of Previous AD/CVD Investigations ........................................................ 16

  B.  Commerce Lawfully Determined that Finishing Steel Coil into Pipe is a "Process of Assembly or Completion" ............................................................................ 20

    1.  The Process of Assembly or Completion Has Nothing to Do with Essential Character ................................................................................ 21

    2.  The Process of Assembly or Completion Is Not Limited to the Final Step of Processing………..... ........................................................................ 23

    3.  SSV's Reliance on Legislative History Is Unpersuasive .......................... 25

  C.  Commerce's Determination that SSV's Processing Was "Minor or Insignificant" Was Lawful ................................................................................................ 28

  D.  Commerce Was Not Required to Make Affirmative Findings Under 19 U.S.C. §1677j(b)(3) ........................................................................................ 31

VI.  CONCLUSION ........................................................................................ 33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357
    (Ct. Int'l Trade 2021) *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023) ............................................ passim

*Bell Supply Co., LLC v. United States*, 888 F.3d 1222 (Fed. Cir. 2018) ..................................... 21

*Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 (1974) ........................ 11

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) ............................................................ 11

*Consolo v. Federal Maritime* Comm'n, 383 U.S. 607 (1966) ....................................................... 11

*Exxon Mobil Corp v. Allapattah Services, Inc.*, 545 U.S. 546 (2005) ......................................... 27

*FAG Italia S.p.A. v. United States*, 291 F.3d 806 (Fed. Cir. 2022) ............................................ 19

*Garland v. Cargill*, 602 U.S. 406 (2024) .................................................................................... 25

*Hlds (B) Steel Sdn Bhd v. United States*, 2024 WL 244937 (Ct. Int'l Trade 2024) ...... 6, 21, 24, 30

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ........................................................................................ 24

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ........................................................................................ 19

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ............................ 11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29 (1983) ........................................... 11

*Nature's Touch Frozen Foods (West) Inc. v. United States*,
639 F. Supp. 3d 1287 (Ct. Int'l Trade 2023) ............................................................................ 18

*NEXTEEL Co., Ltd. v. United States*, 461 F. Supp. 3d 1336 (Ct. Int'l Trade 2020) ................... 28

*Northwest Environmental Defense Center v. Bonneville Power Admin.*,
    477 F.3d 668 (9th Cir. 2007) ................................................................................................ 19

*Nucor Corp. v. United States*, 414 F.3d 1331 (Fed. Cir. 2005) ................................................... 15

*PrimeSource Building Products, Inc. v. United States*, 111 F.4th 1320 (Fed. Cir. 2024) ............ 32

*Samsung International, Inc. v. United States*, 867 F. Supp. 2d 1330 (Ct. Int'l Trade 2012) ........ 27

*SKF USA, Inc. v. United States*, 537 F.3d 1372 (Fed. Cir. 2008) ................................................ 16

*Smith v. United States*, 508 U.S. 223 (1993) ............................................................................. 24

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994) ...... 11

*The Emily*, 9 Wheat. 381, 22 U.S. 381 (1824) ........................................................................... 25

*U.K. Carbon and Graphite Co., Ltd. v. United States*, 931 F. Supp. 2d 1322
(Ct. Int'l Trade 2013) .............................................................................................................. 32

*U.S. Steel Corp v. United States*, 637 F. Supp. 2d 1199

(Ct. Int'l Trade 2009), *aff'd*, 621 F.3d 1351 (Fed. Cir. 2010) .................................................. 15

*U.S. v. Thompson/Center Arms Co.*, 504 U.S. 505 (1992) ........................................................ 25

*United States v. Menasche*, 348 U.S. 528 (1955) ..................................................................... 23

**Statutes and Regulations**

19 C.F.R. §351.226(c)-(d) ........................................................................................................ 20

19 U.S.C. §1516a(b)(1)(B)(i) .................................................................................................... 11

19 U.S.C. §1677(9) .................................................................................................................. 28

19 U.S.C. §1677(9)(C),(D) ....................................................................................................... 29

19 U.S.C. §1677(j)(b)(2) ........................................................................................................... 29

19 U.S.C. §1677j ................................................................................................................. 17, 19

19 U.S.C. §1677j(b) ........................................................................................................... passim

19 U.S.C. §1677j(b)(1) ...................................................................................................... passim

19 U.S.C. §1677j(b)(1)(A)-(D) ................................................................................................ 10

19 U.S.C. §1677j(b)(1)(B) ................................................................................................... 20, 22

19 U.S.C. §1677j(b)(1)(B)(i)-(ii) ............................................................................................. 22

19 U.S.C. §1677j(b)(1)(C) ....................................................................................................... 20

19 U.S.C. §1677j(b)(2) ............................................................................................................ 3, 8

19 U.S.C. §1677j(b)(2)(A)-(E) .......................................................................................... 29, 32

19 U.S.C. §1677j(b)(2)(C) ....................................................................................................... 24

19 U.S.C. §1677j(b)(2)(E) ....................................................................................................... 24

19 U.S.C. §1677j(b)(3) ...................................................................................................... passim

19 U.S.C. §1677j(b)(3)(B)) ........................................................................................................ 5

**Administrative Decisions**

*Certain Circular Welded Non-Alloy Steel Pipe from Korea*, 57 Fed. Reg. 49,453

   (Dep't Commerce Nov. 2, 1992) ........................................................................................... 2

*Certain Circular Welded Non-Alloy Steel Pipe from Korea: Final Affirmative*

   *Determination of Circumvention of the Antidumping Order*, 88 Fed. Reg. 77,270

   (Dep't Commerce Nov. 9, 2023) and accompanying Issues and Decision Memorandum......... 1

*Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea:*

*Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order*,
88 Fed. Reg. 21,989 (Dep't Commerce Apr. 12, 2023) and accompanying Preliminary
Decision Memorandum ................................................................................................. 6

*Certain Corrosion-Resistant Steel Products From the People's Republic of China:*
*Affirmative Final Determination of Circumvention Involving the United Arab Emirates*,
85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020) ...................................... 6, 32

*Certain Corrosion-Resistant Steel Products from the People's Republic of China:*
*Affirmative Final Determination of Circumvention Involving the United Arab Emirates*,
85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020) and accompanying Issues and
Decision Memorandum at VII ...................................................................................... 4

*Certain Welded Carbon Steel Standard Pipes and Tubes from India*, 51 Fed. Reg. 17,384
(Dep't Commerce May 12, 1986) ................................................................................ 2

*Certain Welded Carbon Steel Standard Pipes and Tubes from India: Final Affirmative*
*Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,279
(Dep't Commerce Nov. 9, 2023) and accompanying Issues and Decision Memorandum ......... 1

*Certain Welded Carbon Steel Standard Pipes and Tubes From India: Preliminary Affirmative*
*Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg 21,994
(Dep't Commerce Apr. 12, 2023) and accompanying Preliminary Decision Memorandum ..... 7

*Circular Welded Carbon Quality Steel Pipe from China: Final Affirmative Determination*
*of Circumvention of the Antidumping Duty and Countervailing Duty Orders*,
88 Fed. Reg. 77,287 (Nov. 9, 2023) and accompanying Issues and Decision Memorandum .... 2

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*,
73 Fed. Reg. 42,545 (Dep't Commerce July 22, 2008) ............................................ 2

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China:*
*Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and*
*Countervailing Duty Orders*, 88 Fed. Reg. 21,975 (Dep't Commerce Apr. 12, 2023) and
accompanying Preliminary Decision Memorandum .................................................. 7

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China;*
*Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea;*
*Certain Welded Carbon Steel Standard Pipes and Tubes from India: Initiation of*
*Circumvention Inquiries on the Antidumping and Countervailing Duty Orders*,

87 Fed. Reg. 47,711 (Dep't Commerce Aug. 4, 2022) .............................................. 6

*Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam*,

    77 Fed. Reg. 64,471 (Dep't Commerce Oct 22, 2012) ........................................ 15

*Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam*,

    81 Fed. Reg. 75,042 (Dep't Commerce Oct. 28, 2016) ....................................... 15

*Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam:*

    *Notice of Final Determination of Sales at Less Than Fair Value*, 77 Fed. Reg. 64,483

    (Dep't Commerce Oct. 22, 2012) ....................................................................... 15

*Oil Country Tubular Goods From the People's Republic of China: Final Affirmative*

    *Determinations of Circumvention*, 86 Fed. Reg. 67,443 (Dep't Commerce Nov. 26, 2021) ..... 6

**Other Authorities**

Senate Finance Committee on the Omnibus Trade Act of 1987, S. Rep. No. 100-71 (1987) ...... 27

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R.

    Rep. No. 103-316, vol. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4216 ("SAA") .... 4, 32

On behalf of Defendant-Intervenors Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Nucor Tubular Products Inc. ("Defendant-Intervenors"), we hereby submit this response in opposition to the motion for judgment on the agency record and accompanying brief filed by SeAH Steel VINA Corporation ("SSV" or "Plaintiff") in the above-captioned action. *See* Motion of Plaintiff SeAH Steel VINA Corporation for Judgment on the Agency Record (June 17, 2024), ECF No. 38 ("Pl.'s Br."). For the reasons discussed below, Defendant-Intervenors respectfully request that this Court reject the arguments raised by SSV and affirm the final determinations of the U.S. Department of Commerce ("Commerce") in the underlying circumvention inquiries on circular welded steel pipe ("circular welded pipe" or "CWP") from Korea, India, and China.

## I.      RULE 56.2 STATEMENT

### A.  Administrative Determination Under Review

SSV's appeal arises from three affirmative determinations of circumvention published in the Federal Register on November 9, 2023: *Certain Circular Welded Non-Alloy Steel Pipe from Korea: Final Affirmative Determination of Circumvention of the Antidumping Order*, 88 Fed. Reg. 77,270 (Dep't Commerce Nov. 9, 2023) and accompanying Issues and Decision Memorandum (256-Appx007525); *Certain Welded Carbon Steel Standard Pipes and Tubes from India: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,279 (Dep't Commerce Nov. 9, 2023) and accompanying Issues and Decision Memorandum (257-Appx007521); *Circular Welded Carbon Quality Steel Pipe from China:*

1

*Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 Fed. Reg. 77,287 (Nov. 9, 2023) and accompanying Issues and Decision Memorandum (258-Appx007516) (collectively, the "Final Determinations" and "IDM"). SSV challenged all three Final Determinations on the basis of identical legal arguments.[1]

## B. Issues Presented For Review

1. Did Commerce lawfully determine that its 2012 and 2015 antidumping duty ("AD") and countervailing duty ("CVD") investigations of circular welded pipe exported from Vietnam to the United States by SSV, and the injury determinations of the U.S. International Trade Commission (the "Commission") in those investigations, had no binding effect on Commerce's determination that SSV's circular welded pipe was circumventing the AD/CVD orders on circular welded pipe from Korea, India, and China (the "Orders")[2]?

   Defendant-Intervenors' Position: Yes. Commerce was not bound by prior determinations regarding SSV's imported pipe because it is axiomatic that each administrative proceeding is a separate exercise of agency authority on the basis of the record unique to that proceeding. The records of these prior determinations considered imports that entered the United States prior to the period of inquiry for Commerce's circumvention determination and therefore have no bearing on whether SSV was circumventing the Orders. In addition, AD/CVD investigations and circumvention inquiries are entirely separate categories of administrative proceedings that consider different statutory factors, and the issue of whether or not imports have been dumped or subsidized simply is not relevant to a circumvention determination.

2. Was Commerce's determination that SSV's processing of hot-rolled steel coil into circular welded pipe in Vietnam constituted a "process of assembly or completion" supported by substantial evidence and in accordance with law?

   Defendant-Intervenors' Position: Yes. SSV contrives a technical definition for "completion" that is entirely absent from the statute and from court precedent, which has repeatedly upheld Commerce's determinations that the production of finished steel products from steel coil constitutes "completion." SSV's claim that input merchandise

---

[1] Accordingly, the Court's Scheduling Order issued on April 9, 2024 (ECF No. 35) consolidated briefing for SSV's appeal of each of the Final Determinations while maintaining separate administrative records on the docket of each appeal. Defendant-Intervenors' brief cites to the Joint Appendix for Ct. No. 23-256 (Korea) as "256-Appx," the Joint Appendix for Ct. No. 23-257 (India) as "257-Appx," and the Joint Appendix for Ct. No. 23-258 (China) as "258-Appx."

[2] *See Certain Circular Welded Non-Alloy Steel Pipe from Korea*, 57 Fed. Reg. 49,453 (Dep't Commerce Nov. 2, 1992); *Certain Welded Carbon Steel Standard Pipes and Tubes from India*, 51 Fed. Reg. 17,384 (Dep't Commerce May 12, 1986); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 42,547 (Dep't Commerce July 22, 2008); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 42,545 (Dep't Commerce July 22, 2008).

and finished merchandise must share an essential character in order to be "completed" would eviscerate the anticircumvention statute while violating its plain meaning.

3.  Was Commerce's determination that SSV's production process was "minor or insignificant," which Commerce reached by comparing SSV's production process to the process necessary to produce hot-rolled steel, supported by substantial evidence and in accordance with law?

    Defendant-Intervenors' Position: Yes. Commerce's comparative methodology for determining whether a production process is "minor or insignificant" has been upheld by this Court and the Federal Circuit, which have both rejected SSV's alternative methodology. Commerce explained the rationale behind its methodology and analyzed SSV's production process under each factor enumerated under 19 U.S.C. §1677j(b)(2).

4.  Was Commerce's analysis of the three "factors to consider" under 19 U.S.C. §1677j(b)(3) supported by substantial evidence and in accordance with law?

    Defendant-Intervenors' Position: Yes. Commerce analyzed these factors and determined that they were mixed but that the totality of the evidence weighed in favor of a circumvention determination. SSV falsely claims that affirmative findings under the three § 1677j(b)(3) "factors to consider" are a prerequisite to a circumvention determination, before backtracking and conceding that Commerce merely failed to explain the other factors on which Commerce based its decision. Because Commerce did explain those factors, its determination was supported by substantial evidence and in accordance with law.

## II.    STATEMENT OF FACTS

Under Section 781(b) the Tariff Act of 1930, as amended (19 U.S.C. §1677j(b)),

Commerce may find circumvention of an existing antidumping or countervailing duty order if

(A) merchandise imported from a third country (that is, other than the United States or the

country subject to the order) is the same class or kind as merchandise subject to an order; (B)

before importation into the United States, the merchandise is completed or assembled in the third

country from merchandise made in the country subject to the order; (C) the process of assembly

or completion in the third country is minor or insignificant; (D) the value of the merchandise

produced in the country subject to the order is a significant portion of the total value of the

merchandise exported to the United States; and (E) Commerce determines that action is

appropriate to prevent evasion of the order. *See* 19 U.S.C. §1677j(b)(1). These are the "so-called mandatory factors" for a circumvention finding. Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. 1, at 892 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4216 ("SAA"). Merchandise that meets these factors may be brought under the scope of the existing antidumping or countervailing duty order without the need to file a petition for a new order. *See Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357, 1365 (Ct. Int'l Trade 2021) ("*Al Ghurair CIT*"), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023). ("To find that imported merchandise completed in a third country falls within the scope of the AD/CVD order, Commerce must show that the merchandise meets all criteria under section 1677j(b)(1).").

Additionally, the statute provides that Commerce's circumvention determination must also "take into account" three additional factors under 19 U.S.C. §1677j(b)(3): (A) the pattern of trade, including sourcing patterns; (B) whether the manufacturer or exporter of the input product is affiliated with the party in the third country that assembles or completes the goods imported into the United States; and (C) whether the country subject to the order has increased exports of the input products to the third country after Commerce initiated the investigation that led to the order. *See* 19 U.S.C. §1677j(b)(3). These are factors that Commerce must consider "before deciding to include imported parts within the scope of an antidumping or countervailing duty order," but Commerce is under no requirement to make affirmative findings under these factors in order to find circumvention of an order. SAA at 894; *see e.g. Certain Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Final Determination of Circumvention Involving the United Arab Emirates*, 85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020) and accompanying Issues and Decision Memorandum at VII (finding no affiliation

under §1677j(b)(3)(B)); *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351 (Fed. Cir. 2023) ("*Al Ghurair CAFC*") (affirming Commerce's circumvention determination despite no finding of affiliation).

On May 17, 2022, Defendant-Intervenors alleged to Commerce that circular welded pipe imports from Vietnam were circumventing the Orders.[3] Defendant-Intervenors explained that in order to avoid the Orders, steel producers in Korea, India, and China were shipping hot-rolled steel coil ("steel coil" or "HRS") to Vietnam to be finished into circular welded pipe and exported duty-free to the United States. *See* Circumvention Allegations at 256-Appx001011, 257-Appx001008, 258-Appx001009. This strategy is effective because the steel coil input represents the overwhelming majority of the value of the final pipe product. As Defendant-Intervenors explained – and Commerce has repeatedly found in similar cases – the production of steel coil is highly capital-intensive and requires extensive facilities and equipment (such as blast furnaces) to melt, refine, cast, and roll metal, whereas the operations necessary to finish steel coil into pipe are comparatively minor, consisting of slitting, forming, and welding the coil, cutting it to length, and applying certain treatments such as coatings or heat treatment. *See* Circumvention Allegations at 256-Appx001024-031, 257-Appx001020-027, 258-Appx001022-029 Accordingly, Defendant-Intervenors calculated that Korean, Indian, and Chinese steel coil represented 81.7 percent, 82.7 percent, and "at least 70 percent," respectively, of the value of the pipe imported

---

[3] *See* Letter to Commerce re: *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea – Request for Circumvention Inquiry* (May 17, 2022), 256-Appx001000 ("Korea Circumvention Allegation"); Letter to Commerce re: *Certain Welded Carbon Steel Standard Pipes and Tubes from India – Request for Circumvention Inquiry* (May 17, 2022), 257-Appx001000 ("India Circumvention Allegation"); Letter to Commerce re: *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China – Request for Circumvention Inquiry* (May 17, 2022), 258-Appx001000 ("China Circumvention Allegation") (collectively the "Circumvention Allegations").

into the United States from Vietnam.[4] *See* Circumvention Allegations at 256-Appx001031-032, 257-Appx001027, 258-Appx001029.

Defendant-Intervenors' allegation fit squarely within Commerce's practice of finding circumvention of orders on finished steel products based on the export of the key steel coil input to third countries for finishing into such steel products, including pipe products. *See, e.g.*, *Oil Country Tubular Goods From the People's Republic of China: Final Affirmative Determinations of Circumvention*, 86 Fed. Reg. 67,443 (Dep't Commerce Nov. 26, 2021), *upheld*, *Hlds (B) Steel Sdn Bhd v. United States*, 2024 WL 244937 (Ct. Int'l Trade 2024) (Baker, J.); *Certain Corrosion-Resistant Steel Products From the People's Republic of China: Affirmative Determination of Circumvention Involving the United Arab Emirates*, 85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020), *upheld*, *Al Ghurair CIT*, *Al Ghurair CAFC*. Commerce subsequently initiated anti-circumvention inquiries and named SSV as a mandatory respondent. *See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 47,711 (Dep't Commerce Aug. 4, 2022); 256-Appx001610, 257-Appx001633, 258-Appx001852. For the circumvention proceedings, Commerce established a period of inquiry that considered whether Vietnamese imports that entered the United States between January 1, 2017 and December 31, 2021 circumvented the orders on circular welded pipe from Korea, India, and China.[5]

---

[4] The relatively higher share of value Defendant-Intervenors calculated for Korean and Indian steel coil as compared to Chinese steel coil reflects the fact that Chinese steel is produced under highly distorted non-market conditions – and yet nonetheless represents the overwhelming majority of the value of finished pipe.
[5] *See Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 21,989 (Dep't Commerce Apr. 12, 2023) and accompanying Preliminary Decision Memorandum (256-Appx007002) at 007006; *Certain Welded Carbon Steel Standard Pipes and Tubes From India: Preliminary Affirmative Determination of Circumvention of*

On April 12, 2022, Commerce published its preliminary determinations in all three circumvention inquiries, finding that the mandatory factors under 19 U.S.C. §1677j(b)(1) had been met and that circular welded pipe imports from Vietnam were circumventing the AD orders on circular welded pipe from Korea, India, and China and the CVD order on circular welded pipe from China. *See* PDM, 256-Appx007002, 257-Appx007015, 258-Appx007036. In response to Commerce's affirmative preliminary determinations, SSV submitted a case brief that made many of the arguments considered in this appeal: that (1) previous AD/CVD investigations of SSV's imported pipe that did not result in orders precluded Commerce from finding that subsequent imports were circumventing existing orders; (2) the production of circular welded pipe from steel coil does not constitute "assembly or completion" within the meaning of the anticircumvention statute; (3) compared to other circular welded pipe producers, including Defendant-Intervenors, SSV's production process is not "minor or insignificant"; and (4) Commerce's findings on the 19 U.S.C. §1677j(b)(3) factors – specifically pattern of trade and affiliation – compelled a negative circumvention determination. *See* Second Case Brief of SeAH Steel VINA Corporation (June 1, 2023), 256-Appx007302, 257-Appx007316, 258-Appx007310.

Commerce's Final Determinations and IDM considered and rejected these arguments. First, Commerce determined that it was not bound by the results of prior investigations of SSV's pipe imports. It demonstrated that under well-established precedent, each agency proceeding is independent and not binding on future agency proceedings, that Commerce's circumvention inquiry covered imports from a different, more recent period than did prior investigations, and

---

*the Antidumping Duty Order*, 88 Fed. Reg 21,994 (Dep't Commerce Apr. 12, 2023) and accompanying Preliminary Decision Memorandum (257-Appx007015) at 007018; *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 Fed. Reg. 21,975 (Dep't Commerce Apr. 12, 2023) and accompanying Preliminary Decision Memorandum (258-Appx007036) at 007040 (collectively, "PDM").

that a circumvention inquiry under 19 U.S.C. §1677j(b) is fundamentally different from an

AD/CVD investigation and requires neither that inquiry merchandise be dumped or subsidized

nor that Commerce consider negative determinations from prior proceedings. *See* IDM at 256-

Appx007539-40, 257-Appx007535-37, 258-Appx007530-32. Second, Commerce rejected SSV's

preferred definition of "completed" as referring only to the final processing step necessary to

turn an "incomplete" good into a finished product with which it shares the same essential

character. *See id.* at 256-Appx007546-48, 257-Appx007542-44, 258-Appx007538-41.

Commerce relied on Federal Circuit precedent holding that a process of assembly or completion

can result in a product assuming a new identity and concluded that SSV had arrived at its

definition of "completed" by inappropriately injecting concepts from the General Rules of

Interpretation governing the Harmonized Tariff Schedule of the United States ("HTSUS") into

the anticircumvention statute.

    Third, Commerce supported its finding that the process for finishing steel coil into

circular welded pipe is minor or insignificant by analyzing SSV's process under the statutory

factors that Commerce is required to consider in making such a finding. *See* 19 U.S.C.

§1677j(b)(2) (requiring that Commerce consider (A) the level of investment in the third country;

(B) the level of research and development ("R&D") in the third country; (C) the nature of the

production process in the third country; (D) the extent of production facilities in the third

country; and (E) whether the value of the processing performed in the third country represents a

small proportion of the value of the merchandise imported into the United States). Commerce

affirmed its preliminary finding on each statutory factor. It found that "{t}he level of investment

for the stages of the pipe production process (*i.e.*, slitting, forming, welding, finishing, and or

galvanizing) is minimal when compared to the level of investment of the {Korean, Indian, and

Chinese} steel producers that begin by producing HRS coil," pointing to the estimated average cost of $3 to 4.9 billion for an integrated steel mill in a subject country. IDM at 256-Appx007552, 257-Appx007548, 258-Appx007545 (citing to PDM at 256-Appx007015, 257-Appx007028, 258-Appx007051). Commerce next noted SSV's concession that it "does not engage in R&D activities to produce {circular welded pipe} in Vietnam." PDM at 256-Appx007015, 257-Appx007028, 258-Appx007051.[6] Commerce then found that the nature of SSV's production process was minor compared to the "extensive and massive processes" used in the steel coil phase of pipe production. *Id.* at 256-Appx007017, 257-Appx007030, 258-Appx007052. Finally, Commerce affirmed its preliminary finding that the value added by SSV's production in Vietnam represented a small proportion of the value of the merchandise as imported into the United States. IDM at 256-Appx007553, 257-Appx007549, 258-Appx007545. Commerce's IDM confirmed that "the value of HRS imported from a subject country is many times the value of processing performed in Vietnam to complete pipe from HRS, given substantial differences in the levels of investment, production processes, and production facilities/equipment, respectively, in the upstream versus downstream production phases." *Id.* at 256-Appx007557, 257-Appx007553, 258-Appx007549-50.

Commerce rejected SSV's argument that Commerce should have compared its levels of investment, production process, and production facilities to those of domestic pipe producers that also start with purchased steel coil. *Id.* at 256-Appx007555, 257-Appx007551, 258-Appx007548. Rather, Commerce explained that in a circumvention context, the proper comparison is between the level of investment, production process, and production facilities of the third country pipe

---

[6] Because Commerce found that the Defendant-Intervenors had not put "quantitative information" on the record regarding R&D expenses associated with producing steel coil, Commerce determined that this factor was not informative in the circumvention inquiry. PDM at 256-Appx007015-16, 257-Appx007028-29, 258-Appx007051-52.

producer relative to those "required for the entire production process, commencing in the subject country, from the production of primary iron and steel input (*i.e.*, HRS) from basic materials to the completion stage of finished pipe." *Id*. This is because a circumvention inquiry is concerned with "whether a producer would reasonably move its further processing across borders to avoid an order," and if such further processing of steel coil into pipe is minor compared to the production of steel coil, it is more likely that producers in the country subject to an order would move these minor operations to a third country. *Id.* at 256-Appx007553-54, 257-Appx007549-50, 258-Appx007546-47. As Commerce explained, this comparative method has been upheld by the Federal Circuit. *See Al Ghurair CAFC* at 1360-61 (rejecting plaintiff's identical argument and upholding finding of minor processing "where Commerce analyzed the imported goods in terms of the entire manufacturing process, not just the final steps.").

Lastly, Commerce followed the directive of the statute to "take into account" the factors under 19 U.S.C. §1677j(b)(3). It concluded that these factors were "mixed" and determined that a circumvention finding was appropriate on the basis of the satisfaction of the mandatory factors under 19 U.S.C. §1677j(b)(1)(A)-(D). IDM at 256-Appx007559, 257-Appx007555, 258-Appx007552. Commerce stated that under the terms of the statute, neither affiliation nor the pattern of trade are dispositive factors that are required to make an affirmative determination of circumvention. *Id.* at 256-Appx007558-62, 257-Appx007554-58, 258-007551-55. Instead, Commerce determined that "based upon our analysis of all statutory factors under section 781(b) of the Act, . . . the totality of the evidence indicates that inquiry merchandise is circumventing the order." *Id.* at 256-007562, 257-Appx007558, 258-Appx007555.

On December 6, 2024, SSV filed summonses at the Court to initiate the present actions. On January 5, 2024, SSV filed complaints challenging Commerce's determinations in each of

the three circumvention inquiries as arbitrary and capricious, unsupported by substantial evidence on the record, and otherwise not in accordance with law. *See* Complaint (Jan. 5, 2024), Ct. No. 23-256, ECF No. 9; Complaint (Jan 5, 2024), Ct. No. 23-257, ECF No. 9; Complaint (Jan. 5, 2024), Ct. No. 23-258, ECF No. 9.

## III.    STANDARD OF REVIEW

The Court will uphold a determination by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "{T}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime* Comm'n, 383 U.S. 607, 620 (1966). Thus, the Court must decide whether "the administrative record contain{s} substantial evidence to support" Commerce's decision and whether that decision was "rational." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (stating that it is not the weight of the evidence, but whether it reasonably supports a rational decision that is evaluated by a reviewing court). Although Commerce must, under the standard, "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made," the court "will . . . 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983) (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

**IV.    SUMMARY OF THE ARGUMENT**

SSV's argument is, at base, a complaint that Commerce ruled on the basis of the anticircumvention statute as it is, not the statute that SSV attempts to invent in its brief. To derive its preferred meaning, SSV employs a Rube Goldberg-like interpretive process based on strained inferences from legislative history, dictionary definitions, and entirely different statutes, while almost completely failing to cite to *any* relevant case law. The result is a crabbed interpretation of the anticircumvention statute that is profoundly at odds with the plain meaning, the statutory structure, precedent from this Court and the Federal Circuit, and common sense. Because Commerce's Final Determinations find support from each of these sources, they were supported by substantial evidence and in accordance with law.

First, Commerce correctly found that it was not bound by the results of previous Commerce and Commission investigations of SSV's imported circular welded pipe. As Commerce rightly noted, it is axiomatic that each agency determination is an independent exercise of authority, based on the unique record of that proceeding, and does not bind the agency's future determinations on a separate record. Here, Commerce's circumvention inquiry considered imports made during an entirely different period of time than was examined in previous AD/CVD investigations, making the records in the different proceedings completely distinct and incapable of comparison. Further, although the anticircumvention statute directs Commerce to consider many different factors when making its determination, Commerce correctly found that it requires neither that inquiry merchandise is dumped or subsidized nor that Commerce consider negative determinations from prior proceedings.

Second, Commerce correctly determined that SSV's production process in Vietnam constituted a "process of assembly or completion" as contemplated by the anticircumvention statute. SSV imagines that "completion" is a term of art, the meaning of which can be derived from Congressional committee reports, the dictionary, and the General Rules of Interpretation governing the HTSUS. Commerce rejected this contrived and results-oriented interpretation and cited binding Federal Circuit precedent that forecloses SSV's theory. Commerce also determined that the HTSUS General Rules of Interpretation are not probative in a circumvention context. Commerce's findings are in harmony with the plain meaning and structure of the anticircumvention statute, which would become both absurd and ineffective if SSV's artificial reading of "completion" were applied.

Third, SSV's argument that Commerce used the wrong comparator when determining whether the production process was minor or insignificant has been made before – and rejected by the Federal Circuit in precedent cited by Commerce. The agency both explained why it compared SSV's production process to that of an integrated producer that starts by producing steel coil and conducted an analysis of these processes under each of the factors enumerated by the anticircumvention statute.

Fourth, SSV wrongly contends that the three "factors to consider" under 19 U.S.C. §1677j(b)(3) are necessary preconditions to an affirmative circumvention determination, despite clear statutory language that these factors must only be "take{n} into account." Commerce did take these factors into account. It determined that they were mixed but found that the totality of the evidence adduced under the mandatory statutory factors in 19 U.S.C. §1677j(b)(1) supported an affirmative finding of circumvention. SSV ultimately concedes that Commerce may make a determination on the basis of these mandatory statutory factors but claims that Commerce failed

13

to explain its reasoning. Commerce's detailed IDM renders this claim completely devoid of merit.

## V. ARGUMENT

### A. Commerce Was Not Bound by Previous Determinations Regarding SSV's Circular Welded Pipe Imports

SSV believes that the results of two previous investigations of SSV's circular welded pipe imports, conducted in 2011 and 2015, bound Commerce's 2023 circumvention inquiry. *See* Pl.'s Br. at 11. In 2011, Commerce determined that SSV's circular welded pipe was being dumped, but the Commission found that the domestic industry was not injured as a result of SSV's dumping and no order resulted. *See id.* at 11-12. In 2015, Commerce made a negative dumping determination. *See id.* at 12. SSV contends that these two prior investigations had a prospective effect, precluding Commerce's circumvention inquiry from including SSV's subsequent imports within the scope of the Orders. SSV believes this because it infers from the "statutory scheme" that "when a company is individually examined in an investigation (as SSV has been), that company may only be subject to an antidumping or countervailing duty order if its own exports have been found to have been above *de minimis* dumping or subsidies." *Id.* at 14. According to SSV, it "cannot be subject to the legal consequences of an antidumping or countervailing duty order unless and until there is a new investigation of CWP from Vietnam that results in affirmative findings of injurious dumping and injurious subsidies with respect to SSV." *Id.* at 15. SSV's view of the statutory scheme – which is supported only by attenuated inferences from legislative history – is entirely unpersuasive and contradicted by long-standing precedent and the plain text of the statute.

### 1. Each Agency Determination is Independent

SSV's most immediate problem is the axiomatic principle that, in Commerce's words, "each segment and proceeding presents unique facts and are independent of each other." IDM at 256-Appx007540, 257-Appx007536, 258-Appx007531. Indeed, "as a matter of law, each agency determination is *sui generis*, involving a unique combination and interaction of many variables, and therefore a prior administrative determination is not legally binding on other reviews before this court." *U.S. Steel Corp v. United States*, 637 F. Supp. 2d 1199, 1218 (Ct. Int'l Trade 2009), *aff'd*, 621 F.3d 1351 (Fed. Cir. 2010); *see also Nucor Corp. v. United States*, 414 F.3d 1331, 1340 (Fed. Cir. 2005) ("{A} particular circumstance in a prior investigation cannot be regarded by the {agency} as dispositive of the determination in a later investigation."). The most important such circumstance unique to each Commerce proceeding referenced by SSV is the period of investigation. The circumvention inquiry at issue in this case examined imports of SSV circular welded pipe that entered the United States between January 1, 2017 and December 31, 2021. *See* PDM at 256-Appx007006, 257-Appx007018, 258-Appx007040. By contrast, the 2011 and 2015 investigations examined SSV circular welded pipe imported between January 1, 2010 through April 1, 2011[7] and April 1, 2015 through September 30, 2015, respectively. *See Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam: Notice of Final Determination of Sales at Less Than Fair Value*, 77 Fed. Reg. 64,483 (Dep't Commerce Oct. 22, 2012)*; Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam*, 77 Fed. Reg. 64,471 (Dep't Commerce Oct 22, 2012); *Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam*, 81 Fed. Reg. 75,042 (Dep't Commerce Oct. 28, 2016). The circumvention inquiry therefore "covers a different, and more recent, period than the prior

---

[7] The countervailing duty investigation had a period of investigation of January 1, 2010 to December 31, 2010 and the antidumping duty investigation had a period of investigation of April 1, 2011 to September 30, 2011.

AD and CVD investigations of CWP from Vietnam" and concerned entirely different imports than the 2011 and 2015 investigations. IDM at 256-Appx007540, 257-Appx007536, 258-Appx007531. The prior investigations have no probative value concerning whether or not SSV's more recent imports were circumventing the Orders.

The limited and backward-looking periods of investigation set by Commerce reflect the "inherently *retrospective* nature" of the American AD/CVD system. *See SKF USA, Inc. v. United States*, 537 F.3d 1372, 1380-81 (Fed. Cir. 2008) (emphasis added). Indeed, Commerce's finding that SSV circular welded pipe was dumped during the 2011 investigation, but not during the 2015 investigation, demonstrates the lack of any prospective binding effect of one Commerce determination on subsequent determinations. It also demonstrates the lack of interchangeability between a given producer's exports from one period of investigation to the next, contrary to SSV's assumption that past AD/CVD determinations constitute totalizing judgments about *all* of its exports. *See* Pl.'s Br. at 6-7. Negative determinations in prior AD/CVD investigations therefore did not forever insulate SSV from anti-circumvention inquiries regarding future imports.

### 2. The Anticircumvention Statute Does Not Require Any Consideration of Previous AD/CVD Investigations

But even beyond the time period considered, the issue of whether or not imports have been dumped or subsidized simply is not relevant to a circumvention determination. AD/CVD investigations and circumvention inquiries are entirely separate categories of administrative proceedings that consider different statutory factors. As Commerce found, "{a}lthough an affirmative circumvention determination means that Commerce may include the inquiry merchandise within the scope of an order, this is not equivalent to finding that inquiry merchandise is being dumped or unfairly subsidized . . . . Commerce is not required to calculate

dumping margins or subsidy rates as part of its circumvention analysis." IDM at 256-Appx007543, 257-Appx007539, 258-Appx007534. The purpose of a circumvention determination is to bring merchandise on which there is no AD/CVD order within the scope of an existing AD/CVD order, *without* the need to show that the circumvented merchandise has been sold for less than fair value or subsidized by the exporting country. SSV's claim that it "cannot be subject to the legal consequences of an antidumping or countervailing duty order" without a new AD/CVD determination conspicuously ignores that Congress passed a statute, 19 U.S.C. §1677j, that provides a procedure to do exactly that. Pl.'s Br. at 15.

The text of that statute empowers Commerce to include "merchandise imported into the United States" within the scope of an existing AD/CVD order if that merchandise meets certain conditions. Congress enumerated five such mandatory conditions and required the consideration of additional factors in the course of Commerce's circumvention determination. *See* 19 U.S.C. §1677j(b). *None* of these mandatory conditions or factors relate to whether the imported merchandise has previously been the subject of an AD/CVD determination. Faced with the obvious conclusion that Congress's statute lacks a provision that would exclude SSV's merchandise, SSV instead inverts the inquiry, framing the lack of any exclusion for merchandise originating from previously-investigated producers as Congress's failure to "explicitly authorize" the *inclusion* of such merchandise within a circumvention determination. Pl.'s Br. at 19. Based on the premise that "the statute's silence does not confer authority on Commerce to conduct a circumvention inquiry on Vietnamese CWP that had been previously investigated," SSV believes that Commerce acted outside of its statutory authority. *Id.* at 20.

SSV's argument is an attempt to re-write the statute and read in provisions that are absent from its plain text. Congress structured 19 U.S.C. §1677j to apply to "merchandise imported to

the United States" and then narrowed this category with enumerated conditions. SSV simply wants the Court to further narrow the anticircumvention statute by adding an additional condition that Congress could have, but did not, enumerate. *See Nature's Touch Frozen Foods (West) Inc. v. United States*, 639 F. Supp. 3d 1287, 1308 (Ct. Int'l Trade 2023) (adopting the "principle that it is improper to infer a{n} . . . exclusion where none is present in the plain text" of a statute.). However, *all* merchandise that meets the statute's requirements is properly subject to a circumvention determination. This principle was made clear in *Al Ghurair CIT*, which similarly considered, and rejected, plaintiff's attempt to read an exclusion into the statute that was absent from its text. In that case, plaintiff argued that Commerce was prohibited from finding that merchandise had circumvented an AD/CVD order where the investment in the third-country production facility predated the order. The Court declined to read such an exclusion into the statute: "For the statute to be read to exclude affirmative findings of circumvention in any circumstance in which there was a pre-existing facility in a third country would create a de facto exception to the statute. The plain text of the statute does not support the creation of such an exception by this court." *Al Ghurair CIT* at 1370. This Court should likewise reject SSV's analogous attempt to create an exclusion for the exports of previously-investigated producers. If Congress thought that such merchandise should be exempt from a circumvention investigation, it would have said so.

Congress most certainly did not say so in the committee reports that accompanied the passage of the 1988 Omnibus Trade and Competitiveness Act (the "Omnibus Act"). SSV cites general statements in these reports, such as "foreign exporters have developed several methods for evading existing provisions" and "parties subject to these orders have often been able to circumvent or evade the order by making slight changes in their method of production or

shipment," and concludes that these statements "confirm{} that the circumvention provisions had a limited purpose of combating actions taken by foreign exporters to evade the reach of an existing order, and not to permit duties to be imposed on products after {negative} investigations by the relevant agencies." Pl.'s Br. at 17, 18-19. However, the statements that SSV cites simply do not stand for the proposition claimed. They are entirely silent regarding any effect created by prior AD/CVD investigations on a circumvention inquiry, and it is thus impossible to conclude from these sources what Congress thought about the question. Even if they did speak to the question, "indicia in committee reports and other legislative history . . . do not establish any legal requirements on {an} agency." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *see also Northwest Environmental Defense Center v. Bonneville Power Admin.*, 477 F.3d 668, 682-83 (9th Cir. 2007) (collecting cases for the proposition that "it is contrary to law for an agency to conclude that it is legally bound by language in a congressional committee report.").

SSV's citation to *FAG Italia S.p.A. v. United States*, 291 F.3d 806 (Fed. Cir. 2022), is likewise misplaced. There, the court considered the sweeping claim that Commerce "enjoys plenary power to engage in any activity related to its field of authority not specifically prohibited by Congress." *FAG Italia*, 291 F.3d at 815-16.  The court rejected this expansive conception of agency authority because it was grounded in the absence of statutory text rather than its presence. *Id.* at 816.  Here, however, Congress *has* granted the agency the authority to bring all "merchandise imported into the United States" that satisfies the requirements of 19 U.S.C. §1677j under an affirmative circumvention determination. *FAG Italia*'s holding that "the absence of a statutory provision cannot be the source of agency authority" has no relevance in a situation where, as here, the plain text of the statute is the source of the agency's authority. *Id.*

SSV's final two arguments are simple rephrasings of the same fundamental misunderstanding of the statutory regime. First, SSV claims that Commerce could not initiate the circumvention inquiry because its regulation setting forth the initiation standard, 19 C.F.R. §351.226(c)-(d), cannot overcome "the established statutory scheme" and "the text and legislative history of the anticircumvention statute," which purportedly "do{} not authorize Commerce to use the circumvention inquiry process for previously investigated products subject to a negative determination." Pl.'s Br. at 21-22. Because SSV has no basis for its claims about what the established statutory scheme and the text and legislative history of the statute provide, its argument is meritless. Likewise, SSV argues that Commerce could not use the all-others rates from the AD/CVD investigations of circular welded pipe from Korea, India, and China as the cash deposit rate for SSV's imports, also because this "improperly punishes a company that was fully investigated and was found not to be dumping or subsidized." SSV ignores that it engaged in an entirely separate category of malfeasance – i.e., circumvention – and that the appropriate remedy under the statute was applied to address that malfeasance.

### B. Commerce Lawfully Determined that Finishing Steel Coil into Pipe is a "Process of Assembly or Completion"

In order for merchandise to become subject to a circumvention determination, 19 U.S.C. §1677j(b)(1)(B) requires that "before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which . . . is produced" in the country subject to an AD/CVD order. Section 1677j(b)(1)(C) further requires that "the process of assembly or completion in the foreign country . . . is minor or insignificant." SSV argues that "Commerce failed to address relevant legislative history and did not adequately explain how 'production' of a finished good constitutes 'assembly or completion.'" Pl.'s Br. at 25. SSV's theory is that the term "completion" has a technical meaning: the final step of

transformation of an incomplete item into a finished product, where the incomplete item already possesses the essential character of the finished product. *See* Pl.'s Br. at 26, 29-30. SSV seeks support for its theory in the dictionary, the legislative history of the Omnibus Act, and in the General Rules of Interpretation governing the HTSUS. SSV concludes that "{b}ecause steel coils do not have the 'essential characteristics' of steel pipe, the production of pipe from imported coils does not constitute 'completion' of steel pipe within the meaning of the statute." Pl.'s Br. at 30. SSV's attempt to construct a narrow and technical definition for the term "completion" is at odds with the plain meaning and structure of the anticircumvention statute, as well as precedent from this Court and the Federal Circuit.

1. **The Process of Assembly or Completion Has Nothing to Do with Essential Character**

Commerce found that that SSV's processing of steel coil into circular welded pipe constituted a process of assembly or completion for purposes of the anticircumvention statute and rejected SSV's essential character argument, finding that "although . . . the essential characteristics of HRS and pipe are different, we disagree that this fact precludes pipe from being treated as a product that is 'completed or assembled' from HRS." IDM at 256-Appx007547, 257-Appx007543, 258-Appx007540. The courts have consistently upheld circumvention determinations finding, as Commerce did here, that processing steel coil into finished steel products, including pipe products, constitutes assembly or completion. *See Al Ghurair CIT* and *CAFC*; *see also Hlds (B) Steel Sdn Bhd v. United States*, 2024 WL 244937 (Ct. Int'l Trade 2024) (Baker, J.). Federal Circuit precedent cited by Commerce also clearly supports its finding that it is *not* necessary for input merchandise exported for processing in a third country to share the same essential character as the circumvented finished product imported into the United States. *See Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1230 (Fed. Cir. 2018) ("{E}ven if a

product *assumes a new identity*, the process of 'assembly or completion' may still be minor or insignificant, and undertaken for the purpose of evading an AD or CVD order.") (emphasis added).

To illustrate this point, the court in *Bell Supply* provided the example of "hot-rolled steel or cold-rolled steel from China {that is} 'substantially transformed' when it is processed into corrosion-resistant steel in Vietnam" and derived the principle that "even where an article is substantially transformed, Commerce can still find that it is subject to an AD or CVD order after conducting a circumvention inquiry." *Id.* at 1230-31. The Federal Circuit again confirmed this principle when it upheld Commerce's circumvention determination in *Al Ghurair CAFC*, which also concerned the processing of hot-rolled and cold-rolled steel into corrosion resistant steel, explaining that "the most complex processing occurred in China and . . . the UAE producers merely *completed final, relatively minor processing steps*." *Al Ghurair CAFC* at 1361 (emphasis added). Thus, under binding precedent, the anticircumvention statute does not require an input product to share the same essential character as the final product in order to be "completed." SSV cites no precedent stating otherwise because there is none.

SSV's theory is wrong for another reason: it would render part of the anticircumvention statute meaningless. Goods that share an essential character are necessarily subject to the same AD/CVD order. Yet 19 U.S.C. §1677j(b)(1)(B) provides that circumvented merchandise may be completed or assembled in a third country from input merchandise that is either (i) subject to the AD/CVD order itself or (ii) is produced in the third country which is subject to the AD/CVD order. *See* 19 U.S.C. §1677j(b)(1)(B)(i)-(ii). If the input merchandise was required to share an essential character with the final product, both categories of merchandise would always be subject to the same AD/CVD order, fulfilling subpart (i) in all cases and rendering subpart (ii)

mere surplusage. The Court must avoid this absurd result. *See United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute{.}").

**2.    The Process of Assembly or Completion Is Not Limited to the Final Step of Processing**

Nor does "completion" "refer{} only to the final step" of processing, as SSV claims. Pl.'s Br. at 26. Binding precedent once again definitively forecloses that argument. *See Al Ghurair CIT* at 1366, *aff'd, Al Ghurair CAFC*. In *Al Ghurair*, the third-country production process included "trimming, pickling, cold rolling, hot-dip galvanizing, coating, slitting and cutting." *See id*. Similarly, here, Commerce found that the "process of assembly or completion . . . mostly consists of slitting, welding, forming, testing, finishing, and galvanizing." IDM at 256-Appx007547, 257-Appx007543, 258-Appx007539. In both cases, the company performing the third-country processing used several different processing steps to turn steel coil into a finished steel product. Yet SSV provides no basis whatsoever to distinguish this Court's and the Federal Circuit's approval of the circumvention determination in *Al Ghurair* from Commerce's Final Determinations now under review.

In lieu of positive law, SSV supports its restrictive "final step" understanding of the term "completion" with a dictionary definition that defines the verb "complete" as meaning "to bring to an end and especially into a perfected state" or "to make whole or perfect." Pl.'s Br. at 25. That definition does not actually require that such completion occur with a single, final step, and other dictionary definitions of "complete" explicitly refer to a process. *See, e.g.*, *Complete*, Webster's Encyclopedic Unabridged Dictionary (New Revised ed. 1996) ("To make whole or entire . . . . Complete implies that a certain unit has all its parts, fully developed or perfected, and may apply to a process or purpose carried to fulfillment.") This comports with the ordinary usage

of the term, as in "complete a puzzle" or "the project took months to complete." As the U.S. Supreme Court has recognized, "{w}hen interpreting a statute, we must give words their 'ordinary or natural' meaning." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993)).

The clearest evidence that Congress did not intend such a restrictive definition of "completion" is in the plain text of the statute, which, in the words of this Court, "equates 'completion or assembly' with 'production process.'" *Hlds (B) Steel*, 2024 WL 244937 at *4. Section 1677j(b)(2)(C) directs Commerce, in determining whether the process of assembly or completion is minor or insignificant, to take into account considerations including "the nature of the *production process* in the {third} country" (emphasis added). Further, §1677j(b)(2)(E) refers to "the value of the *processing* performed in the {third} country." If "completion" were a carefully chosen term of art, as SSV argues, Congress would not have referred interchangeably to a "production process" and to "processing" within the same statute.

Further, if "completion" did "refer only to the final step" of processing, the anticircumvention statute would become unworkable. In complex supply chains, there is no clear way to identify which step is truly "final." *Al Ghurair CAFC* recounts that the plaintiff "create{s} the end {} products by further processing the hot-rolled steel . . . and by completing any additional post-processing steps necessary to meet customer demands (recoiling, cutting to size, etc.)." Would this latter group of steps be included? What about product testing? The difficulty that this creates is apparent in the fact that SSV did not even attempt to identify which step in its own production process it considers "final." If SSV's rule were adopted, in a best-case scenario, circumvention inquiries would devolve into unresolvable disputes about where to draw the line. In a worst-case scenario, circumvention inquiries would vanish entirely, as third country

processors would simply take care to ensure that their facilities performed more than one processing "step," no matter how minor. This would short-circuit the statute's concern with whether the respondent's processing is minor or insignificant, as respondents could claim that by virtue of performing more than one processing step, they are not engaged in assembly or completion and are therefore outside of the statute's purview. That is not what Congress intended. "{T}he presumption against ineffectiveness . . . weighs against interpretations of a statute that would 'rende{r} the law in a great measure nugatory, and enable offenders to elude its provisions in the most easy manner." *Garland v. Cargill*, 602 U.S. 406, 408 (2024) (quoting *The Emily*, 9 Wheat. 381, 389, 22 U.S. 381 (1824)).

### 3.  SSV's Reliance on Legislative History Is Unpersuasive

Finding no support in either the statutory text or the case law, SSV ultimately depends on legislative history, "that last hope of lost interpretive causes{.}" *U.S. v. Thompson/Center Arms Co.*, 504 U.S. 505, 521 (1992) (Scalia, J., concurring). SSV recounts the history of the *Color Televisions* proceeding, in which Commerce was forced to classify separately imported shipments of color picture tubes and circuit boards as "incomplete televisions" to prevent the evasion of its order on color televisions by importers who would assemble these components in the United States. *See* Pl.'s Br. at 26-28. According to SSV, because the inclusion of picture tubes and circuit boards, which are not televisions, within the scope of an order on televisions was seen as legally dubious under the existing statutory scheme, Congress passed the anticircumvention statute authorizing Commerce to do so. From this, SSV concludes that "the term 'completed or assembled' must be understood as the process by which an 'incomplete' product is turned into a finished item." *Id*. at 28. However, SSV's example undermines its conclusion. In passing the anticircumvention statute, Congress absolved Commerce from

bothering with the distinction that forced it to classify color picture tubes and circuit boards as "incomplete televisions" and instead directed the inquiry toward whether the processing that occurs is "minor or insignificant."

Moreover, SSV's entire discussion on this point is inapposite, as the cited committee report discusses the *Color Televisions* proceeding as an example of "assembly." *See id.* at 28 (citing H. Rept. No. 100-40, Part 1). As SSV's own brief makes clear, Congress included both "assembly" *and* "completion" in the statute and the two terms have two different meanings. *See id.* at 25. It is therefore unclear what relevance SSV believes this legislative history could have for the meaning of "completion."

Undeterred, SSV next triangulates to *another* statutory context – the General Rules of Interpretation of the HTSUS, which, for customs classification purposes, permits an "incomplete" article to be classified in the same tariff heading as the completed article if the two articles share an essential character. Pl.'s Br. at 29. According to SSV, this means that "an 'incomplete' article must already have the 'essential character' of the completed item" and, together with the legislative history, "confirm{s} that Congress was referring to a specific concept when it used the term 'completed or assembled' in the anticircumvention provisions." Pl.'s Br. at 29. This is a curious theory of Congressional draftsmanship – one might have expected Congress to simply put this "specific concept" in the anticircumvention statute, rather than leave clues in the definitions of different terms in different statutes and hope that intrepid lawyers would piece its meaning together. At any rate, SSV's theory is again refuted by the same *Color Televisions* example: picture tubes and circuit board do not share an essential character with televisions. *See* HTSUS (classifying picture tubes at heading 8540 and circuit boards at heading 8529, separate from televisions at heading 8528); *Samsung International, Inc. v. United*

*States*, 867 F. Supp. 2d 1330, 1337 (Ct. Int'l Trade 2012) ("Heading 8529 applies only to 'parts' used with articles classified in . . . 8528. A part is distinguished from a finished product *and from an unfinished product that possesses the essential character of the finished product.*"). SSV is ultimately hoist by its own petard, failing entirely to disturb Commerce's finding that "the HTSUS General Rules of Interpretation are not probative to whether the inquiry merchandise may be found to circumvent" the Orders. IDM at 256-Appx007548, 257-Appx007544, 258-Appx007540.

SSV goes on to cite to the House Ways and Means Committee report for the proposition that Congress only intended the anticircumvention statute to apply to "slight" changes in production and not to wholesale offshoring. It cites the report's invocation of pipe threading as an illustrative example of circumvention, which SSV reads to exclude more extensive pipe processing from the reach of the anticircumvention statute. Pl.'s Br. at 30-33. SSV's use of legislative history confirms the adage that "{j}udicial investigation of legislative history has a tendency to become . . . an exercise in looking over a crowd and picking out your friends." *Exxon Mobil Corp v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005). For instance, SSV surely skipped over this unwelcome face in the crowd:

> While these subsections grant the Commerce Department substantial discretion in interpreting these terms, and invoking these measures, so as to allow it flexibility to apply the provisions in an appropriate manner, the Committee expects the Commerce Department to use this authority to the fullest extent possible to combat diversion and circumvention of the antidumping and countervailing duty laws.

Report of the Senate Finance Committee on the Omnibus Trade Act of 1987, S. Rep. No. 100-71 (1987) at 100. SSV fails to articulate a persuasive theory about why the Court should disregard *this* legislative history and instead credit *that other* legislative history. The Court should conclude, as others have, that legislative history is "often murky, ambiguous, and contradictory"

and should instead rule on the basis of the plain statutory text and clear precedent. *Exxon Mobil*, 545 U.S. at 568. On that basis, Commerce's determination that SSV's processing of steel coil into circular welded pipe was a "process of assembly or completion" should unquestionably be upheld.

### C. Commerce's Determination that SSV's Processing Was "Minor or Insignificant" Was Lawful

Commerce determined that the operations performed by SSV to process steel coil into circular welded pipe were minor or insignificant compared to the operations needed for "the entire production process" of circular welded pipe, beginning with the production of steel coil. *See* IDM at 256-Appx007552-55, 257-Appx007548-51, 258-Appx007544-48. SSV half-heartedly argues that Commerce used the wrong comparator and should have instead weighed SSV's process against that of equivalent pipe producers who do not manufacture their own steel but, like SSV, simply purchase steel and finish it into pipe. Pl.'s Br. at 33. SSV converts this into a standing argument, claiming that because Defendant-Intervenors "employ the same processes as SSV," they have "no legitimate grounds to complain about the limited production processes performed by their foreign competitors" and, as mere "minor" processors, "have no standing to claim to be part of the U.S. industry producing CWP." Pl.'s Br. at 34.

As an initial matter, because SSV never previously argued before Commerce that Defendant-Intervenors lacked standing to bring their circumvention claim, SSV failed to exhaust its administrative remedies and its argument is waived. *See* Second Case Brief of SeAH Steel VINA Corporation (June 1, 2023), 256-Appx007302, 257-Appx007316, 258-Appx007310; *NEXTEEL Co., Ltd. v. United States*, 461 F. Supp. 3d 1336, 1343-44 (Ct. Int'l Trade 2020) (collecting cases). Were the argument not waived, it would fail on the merits, as Defendant-Intervenors derived their administrative standing from 19 U.S.C. §1677(9)'s definition of

"interested party" as covering manufacturers of the domestic like product and certified unions representative of the industry engaged in such manufacture. *See* 19 U.S.C. §1677(9)(C), (D). The methods used by Defendant-Intervenors to manufacture the domestic like product, and any equivalency with those of SSV, are not relevant to standing and are wholly inapposite to certified unions.

More substantively, Commerce carefully explained its determination that SSV's completion of circular welded pipe in Vietnam from imported steel coil was minor or insignificant under the five factors that 19 U.S.C. §1677(j)(b)(2) directs Commerce to consider: the level of investment, the level of R&D, the nature of the production process, the extent of the production facilities, and whether the value of the third-country processing represents a small proportion of the value of the merchandise imported into the United States. 19 U.S.C. §1677j(b)(2)(A)-(E); IDM at 256-Appx007552, 257-Appx007548, 258-Appx007544. The methodology Commerce used to analyze these factors compared the levels of investment, R&D, etc. required to complete steel coil into circular welded pipe with those "required for the entire production process, commencing in the subject country, from the production of primary iron and steel input (*i.e.*, HRS) from basic materials to the completion stage of finished pipe." IDM at 256-Appx007555, 257-Appx007551, 258-Appx007548. Commerce explained that this methodology "reasonably rests on the premise that the entirety of the production process of inquiry merchandise (in this case, finished CWP) commences with the production of the input or component made in and imported from the subject country (in this case, HRS) that is consumed in the production of inquiry merchandise." *Id.* at 256-Appx007553, 257-Appx007549, 258-Appx007546. It explained the practical rationale for this methodology: if the finishing steps from steel coil to circular welded pipe are minor compared to the entire production process for circular

welded pipe commencing with the production of the steel coil, it becomes more likely that a producer "would reasonably move its further processing across borders to avoid an order." *Id.* at 256-Appx007554, 257-Appx007550, 258-Appx007546.

Finally, Commerce demonstrated that the court in *Al Ghurair CAFC* had considered the precise argument made by SSV – that Commerce improperly compared its third-country processing to the production of steel coil – and rejected it, affirming Commerce's methodology. *Id.* at 256-Appx007554-55, 257-Appx007550-51, 258-Appx007547-48; *see also Al Ghurair CAFC* at 1360 (rejecting plaintiff's argument that "Commerce legally erred by comparing {plaintiff's} investment to make {corrosion-resistant steel} with Chinese manufacturers' investment to make hot-rolled or cold-rolled steel" and approving Commerce's comparative methodology where "Commerce analyzed the imported goods in terms of the entire manufacturing process, not just the final steps."). Commerce noted that SSV "did not present arguments demonstrating how this inquiry is factually distinguishable or should be treated differently than the circumstances at issue in *Al Ghurair.*" IDM at 256-Appx007555, 257-Appx007551, 258-Appx007547-48; *see also Hlds (B) Steel*, 2024 WL 244937 at *2-3 (considering the same improper comparison argument and finding that, as in *Al Ghurair*, "the Department reasonably explained why it compared the production of oil piping in Brunei and the Philippines to the Chinese production of the steel components of that piping."). The same is true now. SSV utterly failed to engage with Commerce's explanation of its comparative methodology, or with the Federal Circuit's determination that Commerce's methodology is lawful. This dooms its meritless claim that Commerce was legally required to make its circumvention determination under some other methodology.

### D.  Commerce Was Not Required to Make Affirmative Findings Under 19 U.S.C. §1677j(b)(3)

The anticircumvention statute at 19 U.S.C. §1677j(b) is structured to require the

satisfaction of five factors, (A) through (E), before Commerce may issue an affirmative

circumvention determination. *See* 19 U.S.C. §1677j(b)(1) (providing that "if" factors (A) through

(E) are satisfied, Commerce "may include such imported merchandise within the scope" of an

AD/CVD order). A separate paragraph of the statute, §1677j(b)(3), provides that "in determining

whether to include merchandise assembled or completed in a foreign country in an {AD/CVD}

order or finding under paragraph (1), the administering authority *shall take into account*" three

additional factors: the pattern of trade, affiliation, and whether imports of the input merchandise

into the third country have increased. 19 U.S.C. §1677j(b)(3) (emphasis added).

In its brief, SSV tries to create the impression that the three §1677j(b)(3) factors must not

merely be "take{n} into account" but affirmatively satisfied as a precondition to a determination

of circumvention. *See* Pl.'s Br. at 35 (titling the relevant subsection "Commerce May Only

Expand the Coverage of an Order under the Circumvention Provisions If the Factors Set Forth in

19 U.S.C. §1677j(b)(3) Support Such Expansion"). That impression is false. As the structure and

text of §1677j(b) make clear, Congress knows how to create necessary conditions for an

administrative determination when it so chooses. If the three §1677j(b)(3) factors were necessary

conditions for a circumvention determination, Congress could have easily included them with the

five §1677j(b)(1) factors. Instead, Congress segregated the three §1677j(b)(3) factors in a

separate paragraph titled "Factors to Consider," outside of the "if-then" structure of §1677j(b)(1),

and required only that Commerce "take into account" these factors. Because the statute does not

require more, Commerce appropriately determined that "{i}n considering the pattern of trade,

affiliation, and imports of HRS from the subject country, as directed by section 781(b)(3) of the

Act, we determined that these factors are mixed, *but none of them are dispositive in our circumvention analysis*." IDM at 256-Appx007559, 257-Appx007555, 258-Appx007552 (emphasis added).

Commerce's determination is supported by the law. The SAA refers to §1677j(b)(1)(A)-(E) as "the so-called mandatory factors" and only later refers to §1677j(b)(3) as containing factors that Commerce will "consider." *SAA* at 893.[8] Likewise, this Court has found that "{t}o find that imported merchandise completed in a third country falls within the scope of an AD/CVD order, Commerce *must* show that the merchandise meets all the criteria under section 1677j(b)(1)," whereas "none of the factors listed under . . . 19 U.S.C. § 1677j(b)(3) is controlling." *Al Ghurair CIT* at 1365 (emphasis added); *U.K. Carbon and Graphite Co., Ltd. v. United States*, 931 F. Supp. 2d 1322, 1330 (Ct. Int'l Trade 2013). Indeed, in *Al Ghurair CIT* and *Al Ghurair CAFC*, the courts affirmed Commerce's determination of circumvention of the AD/CVD orders on Chinese corrosion-resistant steel completed in the United Arab Emirates, despite Commerce's finding that the UAE exporters "are not affiliated with any Chinese producer and/or exporter of HRS{.}" Issues and Decision Memorandum accompanying *Certain Corrosion-Resistant Steel Products From the People's Republic of China: Affirmative Final Determination of Circumvention Involving the United Arab Emirates*, 85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020), at 8. This outcome would be impossible if the §1677j(b)(3) "factors to consider" were necessary conditions for a circumvention determination.

Curiously, SSV appears to concede this point at the end of its argument, admitting that "{i}t is true that the statute does permit Commerce to rely on 'other factors' beyond the three specified in the statute when deciding whether or not to take anticircumvention action." Pl.'s Br.

---

[8] The SAA "is the congressionally mandated 'authoritative expression' of the Tariff Act in judicial proceedings." *PrimeSource Building Products, Inc. v. United States*, 111 F.4th 1320, 1329 (Fed. Cir. 2024).

at 40-41. SSV pivots and claims that "Commerce completely failed to identify what 'other factors' and what record evidence supported its decision to take anticircumvention action against SSV's exports." *Id.* at 41. This is a remarkable claim. Prior to its discussion of the three §1677j(b)(3) factors, Commerce spent 19 pages of its IDM carefully analyzing SSV's arguments under the standard set forth in §1677j(b)(1). Thus, in context, Commerce's finding that "placing more weight on the patterns of trade is not appropriate when other factors support an affirmative determination" is not a failure to explain its reasoning; it is a reference to the rest of Commerce's IDM, containing a thorough analysis of each statutory factor. IDM at 256-Appx007562, 257-Appx007558, 258-Appx007554-55. Commerce made this clear by stating that it "determined that the *totality of factors in this inquiry* warrant an affirmative finding of circumvention" and that "based upon *our analysis of all statutory factors under section 781(b) of the Act*, including patterns of trade, we find *the totality of the evidence* indicates that inquiry merchandise is circumventing the {orders}." *Id.* at 256-Appx007559 and 007562, 257-Appx007555 and 007558, 258-Appx007552 and 007555 (emphasis added). SSV's claim that Commerce "completely failed to identify . . . what record evidence supported its decision" blatantly ignores Commerce's entire §1677j(b)(1) analysis.

## VI.    CONCLUSION

For these reasons, Defendant-Intervenors respectfully request that the Court deny SSV's motion for judgment on the agency record and sustain Commerce's Final Determinations in full.

Respectfully submitted,

*/s/* Jeffrey D. Gerrish___
Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.
Nicholas C. Phillips, Esq.*
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
*Counsel to Bull Moose Tube Company; Maruichi American Corporation; Wheatland Tube Company; The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

*Only admitted in New York. Practice limited to matters before federal courts and agencies.

*/s/* Robert E. DeFrancesco, III___
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Jake R. Frischknecht, Esq.
Theodore P. Brackemyre, Esq.
Kimberly A. Reynolds, Esq.
Paul A. Devamithran, Esq.
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
*Counsel to Nucor Tubular Products Inc.*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing response brief contains 10,723 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in this Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

Dated:  October 15, 2024                      /s/ Jeffrey D. Gerrish
                                                     Jeffrey D. Gerrish

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE**

|  |  |  |
|---|---|---|
| SEAH STEEL VINA CORPORATION, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| UNITED STATES, | ) | Court Nos. 23-256, 23-257, 23-258 |
| | ) | |
| *Defendant,* | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| BULL MOOSE TUBE COMPANY; | ) | |
| MARUICHI AMERICAN CORPORATION; | ) | |
| WHEATLAND TUBE COMPANY; THE | ) | |
| UNITED STEEL, PAPER AND FORESTRY, | ) | |
| RUBBER, MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTRIAL AND SERVICE | ) | |
| WORKERS INTERNATIONAL UNION, | ) | |
| AFL-CIO, CLC; NUCOR TUBULAR | ) | |
| PRODUCTS INC., | ) | |
| | ) | |
| *Defendant-Intervenors.* | ) | |

## <u>ORDER</u>

Upon consideration of Plaintiff's Rule 56.2 motion for judgment on the agency record,

the responses in opposition, and all other papers and pleadings herein, it is hereby

**ORDERED** that the motion is denied, and it is further

**ORDERED** that the challenged decision of the U.S. Department of Commerce is

affirmed.

_____
Hon. Stephen A. Vaden, Judge

Dated: _____, 2024
        New York, New York