A-580-809
Remand
Slip Op. 25-157
**Public Document**
E&C/OI:  DV

**Final Results of Redetermination Pursuant to Court Remand**
***Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea***
***SeAH Steel VINA Corporation v. United States*,**
**Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025)**

**I.      SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of

redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT or

the Court) in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-

157 (CIT December 16, 2025) (*Remand Order*).  These final results of redetermination concern

*Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea:  Final Affirmative*

*Determination of Circumvention of the Antidumping Duty Order*, 88 FR 77270 (November 9,

2023) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

In the *Remand Order*, the Court remanded the *Final Determination* to Commerce to

explain what other factors, besides those under section 781(b)(1)(A)-(D) of the Tariff Act of

1930, as amended (the Act), supported its affirmative finding under section 781(b)(1)(E) of the

Act.[1]

On remand, we have reconsidered our determination in the *Final Determination* and

continue to find that Commerce's affirmative determination of circumvention is appropriate to

prevent evasion of the *Order*[2] pursuant to section 781(b)(1)(E) of the Act.  In making this

---

[1] *See Remand Order* at 21-28.
[2] *See Notice of Antidumping Duty Orders: Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and Venezuela, and Amendment to Final Determination of Sales at Less Than Fair Value:  Certain Circular Welded Non-Alloy Steel Pipe from Korea*, 57 FR 49453 (November 2, 1992) (*Order*).

redetermination, pursuant to the Court's *Remand Order*,[3] we considered the factors under section 781(b)(3) of the Act and find that patterns of trade show that U.S. imports of certain circular welded nonalloy steel pipe (CWP) from the Socialist Republic of Vietnam (Vietnam) have increased. In making this determination, we accounted for and further explain the factors under section 781(b)(3) of the Act in accordance with the *Remand Order*.[4] Accordingly, in these final results of redetermination, we find that action is appropriate to prevent evasion of the *Order* under section 781(b)(1)(E) of the Act and, as a result, we continue to make an affirmative determination of circumvention.

## II. BACKGROUND

In the *Final Determination*, Commerce determined that CWP completed in Vietnam using Korea-origin hot-rolled steel (HRS) and subsequently exported from Vietnam to the United States is circumventing the *Order* on a country-wide basis.[5] As a result, in accordance with section 781(b) of the Act, Commerce determined that the merchandise subject to the circumvention inquiry should be included within the scope of the *Order*.[6] Commerce determined, in relevant part, that an action is appropriate to prevent evasion of the *Order*, pursuant to section 781(b)(1)(E) of Act. Specifically, in determining whether to include merchandise completed in Vietnam within the scope of the *Order*, Commerce considered additional factors under section 781(b)(3) of the Act, *i.e.*, the patterns of trade, including sourcing patterns, the affiliation between Korean HRS or CWP producers and SeAH VINA, and

---

[3] *Id.* at 27-28.
[4] *Id.*
[5] *See Final Determination*, 88 FR at 77271.
[6] *Id.*

whether imports into Vietnam of Korea-origin HRS have increased after the initiation of the investigation which resulted in the issuance of the *Order*.[7]

Concerning the patterns of trade, including sourcing patterns, we first compared publicly available U.S. import statistics of CWP between the periods 2012-2016 and 2017-2021, *i.e.*, the period of inquiry.  The data show that the quantity of CWP exported from Korea to the United States increased more than the quantity of CWP exported from Vietnam.[8]  We also found that the quantity of Vietnamese imports of HRS from Korea decreased more than the cumulative HRS exports from Korea to the rest of the world (excluding Vietnam) from the 2012-2016 period to 2017-2021.[9]

We then analyzed patterns of trade with respect to SeAH VINA during 2017-2021 and found that, although the data do not show that there is a definitive increase in the quantity of HRS imported from Korea, the data show that there was a subsequent increase in the quantity of CWP produced from HRS imported from Korea and exported to the United States.[10]  Based on this analysis, we found that the patterns of trade and sourcing of HRS are not dispositive with respect to either an affirmative or a negative circumvention determination, *i.e.*, "the evidence with respect to these factors is mixed and inconclusive."[11]

Concerning affiliation, we found that SeAH VINA is not affiliated with any Korean HRS producer or supplier.[12]  In summary, we found that the results of our analysis of factors under section 781(b)(3) of the Act (*i.e.*, patterns of trade, affiliation, and imports of HRS from Korea)

---

[7] *See Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea:  Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 FR 21989 (April 12, 2023) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM) at 18-22.
[8] *See Preliminary Determination* PDM at 19.
[9] *Id*.
[10] *Id*.
[11] *Id*. at 19-20.
[12] *Id*. at 21.

were mixed and that none of these factors were dispositive in our circumvention analysis.[13]

Commerce ultimately found that "the totality of factors in this inquiry warrant an affirmative

finding of circumvention of the *Order*."[14]

## III.    REMAND ORDER

In the *Remand Order*, the Court found that "Congress's addition of subsection (b)(1)(E)

to section {781}(b) indicates that it intended for the determination of whether action is

appropriate with respect to merchandise completed or assembled in other foreign countries to

require something more than evaluating the factors in subsection (b)(1)(A)-(D)."[15]  The Court

found that Commerce "failed to explain how factors that are 'mixed' {under subsection (b)(3)}

enabled the agency to reach the conclusion that action was appropriate."[16]  Specifically, the

Court reasoned, Commerce's assertion in the *Final Determination* that the (b)(3) factors did not

detract from a finding that an action is appropriate assumes that action was found to be

appropriate on some other grounds, but Commerce did not identify any other grounds beyond the

factors that it was already required to find pursuant to section 781(b)(1)(A)-(D) of the Act.[17]  The

Court found that, "{b}ecause section {781}(b)(1)(E) must be construed to have some operative

effect… Commerce must reconsider or further explain its basis for the affirmative circumvention

finding."[18]  Specifically, the Court stated, "{t}o the extent that Commerce has in fact relied upon

'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action

is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other'

factors are and identify the substantial evidence that supports its finding."[19]  The Court also

---

[13] *Id*. at 23.
[14] *Id*.
[15] *See Remand Order* at 22.
[16] *Id*. at 27.
[17] *Id*.
[18] *Id*.
[19] *Id*. at 27-28.

observed that subsection 781(b)(3)(C) requires consideration of "whether imports into the foreign country of the merchandise {from the country subject to the order} have increased after the initiation of the investigation which resulted in the issuance of such order or finding."[20]  The Court found that, "{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used – {reconcile} the statutory requirements with its consideration of the 2012-2016 versus 2017-2021 periods, as well as changes within the latter period, *i.e.*, 2017-2021."[21]

## IV.    FINAL RESULTS OF REDETERMINATION

In evaluating whether an action is appropriate under section 781(b)(1)(E) of the Act, Commerce determined that its analysis would be enhanced by additional information provided by interested parties in the Draft Remand.  Thus, on February 6, 2026, Commerce reopened the record and issued a letter to interested parties, requesting information, previously absent from the record, demonstrating other grounds (apart from those under section 781(b)(1)(A)–(D) of the Act), that warrant action to prevent evasion of the O*rder*.[22]  Commerce received no additional information.  On March 9, 2026, Commerce placed on the record entry data obtained from the U.S. Customs and Border Protection (CBP) covering the periods 2017 through 2021 and 2025, and publicly available U.S. import data sourced from the U.S. International Trade Commission (USITC) for 2025 for the Harmonized Tariff Schedule of the United States subheadings under which imports of CWP primarily entered the United States.[23]  On March 13, 2026, the domestic interested parties[24] and SeAH VINA submitted factual information to rebut, clarify, or correct

---

[20] *Id*. at 27, n.21.
[21] *Id*.
[22] *See* Commerce's Letter, "Request for Information," dated February 6, 2026.
[23] *See* Memorandum, "U.S. Customs and Border Protection Entry Data," dated March 9, 2026.
[24] The domestic interested parties are comprised of Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC.

the information submitted on March 9, 2026.[25]  Specifically, the domestic interested parties submitted data showing the quantity of HRS exported from Korea to Vietnam for the 2012-2016 and 2017-2021 periods.  SeAH VINA submitted its quantity of CWP exported to the United States for the years 2022 through 2025.

In light of the Court's *Remand Order*, and absent any new information, as requested from interested parties, demonstrating other grounds, apart from those under section 781(b)(1)(A)-(D) of the Act that warrant action to prevent evasion of the *Order*, Commerce further evaluated its consideration of factors under section 781(b)(3) of the Act.  Commerce finds that, based on its further evaluation of factors under section 781(b)(3) of the Act, discussed below, and absent any information to the contrary, an action is appropriate to prevent evasion of the *Order*, pursuant to section 781(b)(1)(E) of Act.

On March 31, 2026, we released the Draft Results to interested parties for comment.[26] On April 14, 2026, we received comments from domestic interested parties[27] and SeAH Vina.[28] We have responded to those comments below.

In its comments on the Draft Remand, SeAH VINA disagreed with Commerce's analysis, primarily the use of post inquiry-period data.  The domestic interested parties supported Commerce's decision in the Draft Remand.  Based on our review of these comments, we continue to find that the facts on the record support a finding that the section 781(b)(3)(A) requirements are met.

---

[25] *See* Domestic Interested Parties' Letter, "Submission of New Factual Information," dated March 13, 2026; *see also* SeAH VINA's Letter, "Submission of Factual Information Relating to Imports," dated March 13, 2026.
[26] See Draft Results of Redetermination Pursuant to Court Remand, *SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025), dated March 31, 2026 (Draft Results).
[27] *See* Domestic Interested Parties' Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand in CIT Court No. 23-00256, Slip Op. 25-157," dated April 14, 2026 (Domestic Interested Parties' Comments).
[28] *See* SeAH VINA's Letter, "Comments on Draft Remand Redetermination," dated April 14, 2026 (SeAH VINA's Comments).

Factors Under Section 781(b)(3) of the Act

With respect to section 781(b)(3)(A) of the Act, aggregated data for the 2012-2016 and 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent from the 2012-2016 period to the 2017-2021 period, *i.e.*, from 281,799 metric tons (MTs) to 304,987 MTs.[29]  Additionally, a comparison of the 2012-2016 period to the 2017-2021 period shows that the quantity of U.S. imports of CWP from Vietnam in relation to the total quantity of U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent.[30] Further, SeAH VINA's export sales of CWP produced from Korea-origin HRS to the United States increased severalfold from 2017 to 2021.[31]

The above patterns of trade under section 781(b)(3)(A) of the Act demonstrate circumvention of the *Order*  because:  (1) aggregate import data show a significant increase in the quantity of U.S. imports of CWP from Vietnam from the 2012-2016 period to the 2017-2021 period; (2) aggregate import data show a significant increase in the share of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world from the 2012-2016 period to the 2017-2021 period; and (3) SeAH VINA's CWP exports to the United States produced from HRS imported from Korea increased significantly from 2017 to 2021. These significant increases indicate that Korea-origin HRS is likely to have been made into CWP not in Korea but in Vietnam and then exported to the United States to evade the *Order*.

---

[29] *See Preliminary Determination* PDM at 19.

[30] *See* Domestic Interested Parties' Letter, "Response to Supplemental Questionnaire," dated June 28, 2022 (CIRC Inquiry Request Supplement), at Exhibit Supp-3.

[31] *See* Memorandum, "Preliminary Analysis Memorandum for SeAH Steel VINA Corporation," dated April 6, 2023, at 6.  Commerce is withholding specific data for which SeAH VINA claimed business proprietary treatment.  For specific details involving business proprietary information (BPI), *see* Memorandum, "Business Proprietary Information Considered in Final Results of Redetermination," dated concurrently with these final results of redetermination (BPI Memorandum).

With respect to section 781(b)(3)(B) of the Act, Commerce found that:  1) SeAH VINA is not affiliated with any of its HRS suppliers or any Korean producers of HRS; 2) there are no facts (*e.g.*, close supplier relationships) that suggest control of SeAH VINA by the Korean HRS producers or suppliers with regards to CWP production in Vietnam; 3) there is no evidence to indicate that the Korean CWP or Korean HRS producers had arrangements with SeAH VINA which would allow them to export HRS to Vietnam for processing into CWP for export to the United States and avoid the discipline of the *Order*; and 4) SeAH VINA's purchases of HRS were not made directly from Korean HRS producers but through unaffiliated traders/resellers.[32] While there is no evidence that SeAH VINA is affiliated with any company located in Korea that produces or exports HRS, Commerce nevertheless does not find this factor alone to be dispositive.

While affiliation can contribute towards a determination of circumvention and the need to take action to prevent evasion of the *Order*, the lack of affiliation does not weigh against a finding that a determination of circumvention is appropriate if other factors pursuant to section 781(b)(3) of the Act demonstrate otherwise.  Commerce has previously made a finding that a determination of circumvention is appropriate even when no evidence of affiliation was found.[33] An affirmative affiliation finding under section 781(b)(3)(B) of the Act naturally supports finding that it is appropriate to make an affirmative determination of circumvention as it speaks to the level of cooperation and planning between two companies that potentially share common goals concerning sales, profit, personnel, management, production planning, *etc*.  However, an

---

[32] *See Preliminary Determination* PDM at 21-22.

[33] *See Circular Welded Carbon Quality Steel Pipe From the People's Republic of China:  Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 FR 4871 (February 3, 2026), and accompanying IDM at Comment 4; *see also Certain Corrosion-Resistant Steel Products from the People's Republic of China:  Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 FR 23895 (May 23, 2018), and accompanying IDM at Comment 12.

8

affirmative finding with regard to the factors under section 781(b)(3) of the Act, and certainly an affirmative finding with regard to all of the other such factors, does not preclude Commerce from finding that it is appropriate to make an affirmative determination of circumvention to prevent evasion of the *Order* if there is no finding of affiliation.  In such a situation a finding of no affiliation is considered as neither helpful nor hurtful (*i.e.*, neutral).  Two companies that do not share common goals concerning sales, profit, personnel, management, production planning, *etc.* are not precluded from engaging in circumvention, either knowingly or unknowingly, which is fueled by a commercial desire to avoid duties and thus, increase sales and profits.  Accordingly, while affiliation is a factor to be investigated and weighed, we do not consider it to be dispositive as to the question of whether an affirmative determination of circumvention is appropriate to avoid evasion of the *Order* without taking into consideration other factors.

Time Periods Used in Evaluating the Patterns of Trade, Including Sourcing Patterns

For this redetermination, Commerce continues to rely on the comparison of the 2012-2016 to 2017-2021 periods, as it did in the underlying circumvention inquiry.  Commerce published the *Order* in 1992.  Section 781(b)(3)(C) of the Act stipulates that Commerce account, *inter alia*, "whether imports into the foreign country of the merchandise described in paragraph (1)(b) have increased *after the initiation of the investigation which resulted in the issuance of such order or finding*."  It has been Commerce's practice to interpret this statutory provision as providing it with discretion to select the comparison period at any time after the initiation of the investigation.  For example, in *Diamond Sawblades from China 2019*, Commerce conducted two circumvention determinations.[34]  Commerce published the diamond sawblades China AD order

---

[34] *See Diamond Sawblades and Parts Thereof from the People's Republic of China:  Preliminary Affirmative Determination of Circumvention*, 83 FR 57425 (November 15, 2018), and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China:  Final Determination of Anti-*

in 2009 but in the first of these 2019 circumvention determinations, Commerce used the annual

data between 2014-2016.  In the second of these circumvention determinations Commerce used

the periods January-October 2017 and January-October 2018.  In *OCTG from China 2021*, the

antidumping duty and countervailing duty orders were published in 2010 and Commerce

compared the 2014-2016 period to the 2017-2019 period.[35]   A restrictive interpretation of this

statutory provision is impracticable and does not serve the circumvention inquiry requestor, *e.g.*,

the domestic interested parties, because foreign companies can commence circumvention at any

time after the initiation of an investigation and the circumvention inquiry requestor should be

able to propose the comparison periods accordingly.  Here in particular, aligning the comparison

period to the time of the initiation of the investigation, and requesting data going back as far as

the 1990's, considering the age of this order, is impractical, as the companies subject to the

circumvention inquiry are not required to maintain such data for taxation and financial reporting

purposes.

## V.    INTERESTED PARTY COMMENTS

*Domestic Interested Parties' Comments*

The following is a verbatim summary of arguments submitted by the domestic interested parties.

For further details, *see* Domestic Interested Parties' Comments at 2-3.

> Domestic Interested Parties agree with and support the draft remand
> redeterminations that Commerce has issued in these proceedings.  The draft remand
> redeterminations comply with the remand order by identifying substantial evidence
> that supports Commerce's findings that action is appropriate to prevent evasion of

---

*Circumvention Inquiry*, 84 FR 33920 (July 16, 2019); and *Diamond Sawblades and Parts Thereof from the People's Republic of China:  Preliminary Affirmative Determination of Circumvention*, 84 FR 58130 (October 30, 2019), and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti-Circumvention Inquiry*, 85 FR 9737 (February 20, 2020) (collectively, *Diamond Sawblades from China 2019*).

[35] *See Oil Country Tubular Goods from the People's Republic of China:  Preliminary Affirmative Determinations of Circumvention*, 86 FR 43627 (August 10, 2021), and accompanying PDM, unchanged in *Oil Country Tubular Goods from the People's Republic of China:  Final Affirmative Determinations of Circumvention*, 86 FR 67443 (November 26, 2021) (*OCTG from China 2021*).

the antidumping duty orders on circular welded pipe { } from Korea, China, and India pursuant to Section 781(b)(1)(E) of the {Act}. Commerce should continue to reach affirmative determinations of circumvention in its final remand redeterminations in these proceedings.

*SeAH VINA's Comments*

The following is a verbatim summary of arguments submitted by SeAH VINA. We requested that interested parties limit their public executive summary of each issue to no more than 450 words, not including citations. Therefore, because the public executive summary in SeAH VINA's comments exceeds this word limit we have compressed the comment summary herein. For further details, *see* SeAH VINA's Comments at 4-11 (internal citations omitted).

The Draft Redetermination fails to comply with the Court's remand instruction to identify "other factors" under {section 781(b)(1)(E) of the Act} that are genuinely distinct from the criteria already required under subsections (A) through (D). Although {Commerce} reopened the record, it failed to find new evidence of such factors, relying instead on a mere recharacterization of the existing pattern-of-trade and affiliation data. This approach ignores the Court's finding that subsection (E) must have a unique operative effect, as evidenced by its deliberate inclusion in foreign-country circumvention cases but exclusion from domestic completion cases. Ultimately, {Commerce} has still not identified the "other factors" it previously claimed were necessary to support its affirmative determination. The Draft Redetermination compounds the deficiency further by omitting {the section 781(b)(3)(C)} analysis entirely, which requires the analysis of whether imports of {HRS} from Korea to Vietnam have increased after the initiation of the investigation that resulted in the antidumping order on CWP from Korea.

{Commerce} placed CWP entry data from the {CBP} covering {2017-2021} and 2025, as well as publicly available USITC import data for 2025 on the record. The Draft Redetermination relied on the 2025 public data to establish that Vietnam's share of U.S. CWP imports had risen from 8.8 percent to 18.43 percent from the inquiry period to 2025, which {Commerce} treated as central evidence for its {section 781(b)(3)(A)} finding. The Draft Redetermination also relied on SeAH VINA's annual average of CWP U.S. exports from 2022 through 2025, which constituted an increase from the inquiry period, as additional evidence of circumvention. This reliance is improper. The inquiry period that led to the affirmative circumvention decision in this case only covered {2017-2021}. Any information pertaining to the time period following the inquiry period is irrelevant to {Commerce's} circumvention decision. The 2022-25 data should play no role in the final remand redetermination.

11

Even if the 2025 data were considered, it contradicts {Commerce's} circumvention theory. The 2025 USITC data shows Vietnam's share of U.S. CWP imports at 18.43 percent compared to 8.8 percent during {2017- 2021}. This growth is particularly difficult to reconcile with a duty-evasion narrative in this case because the total CWP imports to the United States from Vietnam actually decreased from 2017 to 2021. Evasion-dependent exports do not contract during the alleged evasion period and then expand substantially after the evasion mechanism is closed. The growth following {Commerce's} imposition of anticircumvention measures reflects independent competitive factors unrelated to Korean HRS or the Korea antidumping order. If anything, the consistent rise in Vietnam's share of U.S. CWP imports from the 2012-2016 base period to the 2017-2021 inquiry period as well as in 2025 demonstrates a sustained trajectory of market growth driven by factors independent of ….

**Commerce's Position:** We reviewed the comments submitted for the final results of redetermination and, upon further consideration of those comments and the facts present on the record, we continue to find that action is appropriate to prevent evasion of the *Orders* pursuant to section 781(b)(1)(E) of the Act and, as a result, we continue to make an affirmative determination of circumvention.

As a preliminary matter, we disagree with SeAH VINA that Commerce's Draft Results "fails to comply with the Court's remand instruction to identify 'other factors' under {section 781}(b)(1)(E) that are genuinely distinct from the criteria already required under subsections (A) through (D)." Commerce's re-examination of the section 781(b)(3) factors was in accordance with the CIT's remand order. SeAH VINA's arguments misunderstand the CIT's opinion and the statute. Section 781(b)(3) of the Act states:

> In determining whether to include merchandise assembled or completed in a foreign country in a countervailing duty order or an antidumping duty order or finding under {section 781(b)(1)}, the administering authority shall take into account such factors as:
>
> (A)  the pattern of trade, including sourcing patterns,
> (B)  whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is affiliated with the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and

12

> (C) whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

Additionally, the SAA[36] states:

> {B}efore deciding to include imported parts within the scope of an antidumping or countervailing duty order, Commerce will consider: (1) changes in the pattern of trade; (2) whether the producer of the finished product subject to the order is related to the assembler in the United States (or the third country); and (3) whether imports of parts from the country subject to the order into the United States (or the third country) have increased after the initiation of the investigation resulting in the issuance of the order.[37]

Therefore, Commerce is following the statute in considering the factors listed in section 781(b)(3). The Court's analysis that section 781(b)(1)(E) must have some operative effect does not preclude Commerce from using the section 781(b)(3) factors to determine whether action is appropriate to prevent evasion of the *Order*.[38] The Court required that "*{t}o the extent* that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding."[39] Here, Commerce analyzes and relies upon the section 781(b)(3) factors, which are not part of section 781(b)(1)(A)–(D), to determine whether action is appropriate to prevent evasion of the *Order*. Although Commerce found these factors mixed in the *Final Determination*, the Court permit Commerce to reconsider its basis for the affirmative circumvention finding and noted that "{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used."[40] We have

---

[36] *See* Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, vol. 1 (1994) (SAA).
[37] Id. at 894.
[38] *See* Remand Order at 27-28.
[39] Id. (emphasis added).
[40] *See* Remand Order at 27-28, FN 21.

included an explanation of the time periods we used for this analysis below.  Therefore, Commerce's re-examination and reconsideration of the section 781(b)(3) factors are in compliance with the CIT's *Remand Order*.

In the Draft Results, in our analysis of factors under section 781(b)(3) of the Act Commerce considered 1) the quantity of U.S. imports of CWP from Vietnam in relation to the total quantity of U.S. imports of CWP from the world using U.S. import data for 2025; and 2) the quantity of SeAH VINA's exports of CWP to the United States for the 2022-2025 period.[41]  We have considered SeAH VINA's comments on our Draft Results and agree that the Draft Result improperly relied on the import data subsequent to the inquiry period, *i.e.*, 2017-2021.  The data in question reflect a time period outside the inquiry period on which Commerce's initiation of this circumvention proceeding was predicated,[42] and on which Commerce relied to make its findings in the *Final Determination*.  Thus, we have not relied on the following data for these final results of redetermination:  1) U.S. import data for 2025; 2) CBP entry data for 2025; and 3) SeAH VINA's 2022-2025 data on CWP exports to the United States.

When we consider data only from the inquiry period and the comparison period, our conclusion from the Draft Results remains unchanged.  Specifically, with respect to section 781(b)(3)(A) of the Act, aggregated data for the 2012-2016 and 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent from the 2012-2016

---

[41] *See* Draft Results at 6-7.

[42] *See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India; Certain Circular Welded Carbon Steel Pipes and Tubes from Taiwan; Certain Circular Welded Non-Alloy Steel Pipe from Taiwan; Light-Walled Rectangular Pipe and Tube from the People's Republic of China; Light-Walled Rectangular Pipe and Tube from the Republic of Korea; Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan:  Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders*, 87 FR 47711 (August 4, 2022), and accompanying Memorandum, "Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Initiation of Circumvention Inquiry on the Antidumping Duty Order," dated July 28, 2022.

period to the 2017-2021 period. Additionally, comparisons of the 2012-2016 to the 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam in relation to the quantity of U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent. Most importantly, SeAH VINA's export sales of CWP produced from Korea-origin HRS to the United States increased substantially during the inquiry period.[43] Thus, we continue to find that these facts support a finding that the 781(b)(3)(A) requirements are met.

With respect to section 781(b)(3)(C) of the Act, the cumulative quantity of HRS exports from Korea to Vietnam decreased from 4,251,271 MT to 3,330,643 MT (*i.e.*, a decrease of 21.7 percent) between 2012-2016 and 2017-2021, while the cumulative quantity of HRS exports from Korea to the rest of the world decreased from 30,238,901 MT to 28,580,241 MT (*i.e.*, a decrease of 5.5 percent) between these periods.[44] Consequently, Vietnam's share of total Korean HRS exports decreased from 12.33 percent to 10.44 percent.[45] SeAH VINA's quantity of HRS imported from Korea increased from 2017 to 2018, then decreased from 2018 to 2019, then increased from 2019 to 2020, and then dropped precipitously from 2020 to 2021.[46] In these final results of redetermination, we find that the statutory factor under section 781(b)(3)(C) of the Act is not met because:  1) there is a substantial decrease in the quantity of HRS exported from Korea to Vietnam between 2012-2016 and 2017-2021 periods; and 2) SeAH VINA does not show a discernible increase in the quantity of HRS it imported from Korea during the inquiry period. However, our finding that the statutory factor under section 781(b)(3)(C) was not met here does not change our finding that action is appropriate to prevent evasion of the *Order* pursuant to

[43] *See* Preliminary Analysis Memorandum at 6-7. Commerce is withholding specific data for which SeAH VINA claimed business proprietary treatment. For specific details, *see* BPI Memorandum.
[44] *See Preliminary Determination* PDM at 19.
[45] *See* CIRC Inquiry Request Supplement at Exhibit Supp-1.
[46] *See* Preliminary Analysis Memorandum at 6. Commerce is withholding specific data for which SeAH VINA claimed business proprietary treatment. For specific details, *see* BPI Memorandum.

15

section 781(b)(1)(E) of the Act.  This is because Commerce does not find this factor alone to be dispositive, particularly in light of our finding under the 781(b)(3)(A) factor.

Given the strength of the data supporting our finding under the 781(b)(3)(A) factor, we continue to find that action is appropriate to prevent evasion of the *Order*, even if other 781(b)(3) factors are not met or are neutral.  Although the statute instructs Commerce to consider all of the factors under 781(b)(3) when reaching a determination, nothing in the statute indicates that all factors must be affirmative to substantiate an affirmative finding under 781(b)(1)(E) of the Act.[47] Thus, our findings that there is no affiliation under 781(b)(3)(B), a factor we found to be neutral, and no increase under 781(b)(3)(C) are not sufficiently dispositive to overcome the substantial increase shown under 781(b)(3)(A) or to change our circumvention determination.

In accordance with the Court's *Remand Order*, Commerce has, as discussed above, revised certain aspects of its analysis.

4/30/2026

X  *Chris / Abbott*

Signed by: CHRISTOPHER ABBOTT
Christopher Abbott
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

---

[47] *See* sections 781(b)(1)(E) and 781(b)(3) of the Act; *see also Circular Welded Carbon Quality Steel Pipe from the People's Republic of China:  Final Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders*, dated January 28, 2026, at Comment 4 (finding that although affiliation is one of the factors Commerce must consider in section 781(b)(3) of the Act, it is not dispositive.)