UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE MARK A. BARNETT, JUDGE

| | |
|---|---|
| SEAH STEEL VINA CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>*and*<br><br>BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; NUCOR TUBULAR PRODUCTS INC.,<br><br>*Defendant-Intervenors* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Court No. 23-256<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMMENTS OF SEAH STEEL VINA CORPORATION
ON FINAL REDETERMINATION ON REMAND

WINTON & CHAPMAN PLLC
1100 13th Street, N.W., Suite 825
Washington, D.C. 20005
(202) 774-5500

Attorneys for SeAH Steel VINA Corporation

June 26, 2026

Table of Contents

Page

INTRODUCTION ................................................................................................................ 2

ARGUMENT ..................................................................................................................... 3

    A.    Commerce's Recharacterization of Its Section 1677j(b)(3) Analysis
        Does Not Satisfy Section 1677j(b)(1)(E) ............................................................. 3

    B.    Commerce's Section 1677j(b)(3) Reconsideration Does Not Comply
        with the Court's Remand Instructions .................................................................. 5

        1.    Commerce Failed to Adequately Explain Its Selection of
            Comparison Periods ................................................................................. 5

        2.    Commerce Ignored the Within-Period Annual Data that
            Contradicts a Circumvention Theory ...................................................... 7

        3.    Commerce's Section 1677j(b)(3)(C) Analysis Compels a
            Negative Finding ..................................................................................... 8

        4.    The Aggregate Five-Year Comparison Cannot Bear the Weight
            Commerce Places on It .......................................................................... 10

    C.    Commerce's Treatment of the Affiliation Factor Cannot Compensate
        for the Failures in Its Other Analyses ............................................................... 11

CONCLUSION ................................................................................................................. 12

Table of Authorities

Page

CASES

*Al Ghurair Iron & Steel LLC v. United States*,
   65 F.4th 1351 (Fed. Cir. 2023)...................................................................................... 6

*Diamond Sawblades Mfrs. Coal. v. United States*,
   299 F.Supp.3d 1374 (Ct. Int'l Trade 2018)................................................................. 6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ..................................................................................................... 6, 7

STATUTES

19 U.S.C. § 1677j(b)(1).............................................................................................. *passim*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE MARK A. BARNETT, JUDGE

|  |  |
|---|---|
| SEAH STEEL VINA CORPORATION, | ) |
| *Plaintiff,* | ) |
| v. | ) |
| UNITED STATES, | ) |
| *Defendant,* | ) |
| *and* | ) Court No. 23-256 |
| BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; NUCOR TUBULAR PRODUCTS INC., | ) |
| *Defendant-Intervenors* | ) |

COMMENTS OF SEAH STEEL VINA CORPORATION
ON FINAL REDETERMINATION ON REMAND

These comments are submitted on behalf of SeAH Steel VINA Corporation ("SeAH VINA") to comment on the final redetermination by the U.S. Department of Commerce ("Commerce") dated April 30, 2026, ECF No. 76, addressing the December 16, 2025, decision by this Court in *SeAH Steel VINA Corporation v. United States,* Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025) ("Remand Order"), concerning Commerce's final determination in the circumvention inquiry of the antidumping order on Certain Circular Welded Non-Alloy Steel Pipe ("CWP") from Korea.[1]

---

[1] The Department's April 30 redetermination is hereinafter referred to as the "Redetermination."

INTRODUCTION

Commerce's Redetermination does not comply with the Court's Remand Order.  The Court remanded Commerce's affirmative circumvention determination because Commerce "failed to explain how factors that are 'mixed' enabled the agency to reach a conclusion that action was appropriate" under section 781(b)(1)(E) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677j(b)(1)(E).[2]  The Court instructed Commerce to "reconsider or further explain its basis for the affirmative circumvention finding," and specified that, if Commerce had relied upon "other" factors distinct from those in section 1677j(b)(1)(A)-(D), it must identify those factors and the substantial evidence supporting them.  Alternatively, to the extent Commerce reconsidered its section 1677j(b)(3) analysis, the Court instructed Commerce to explain the basis for the time periods used, reconciling the statutory requirements with the 2012-2016 versus 2017-2021 comparison periods and explaining changes within the 2017-2021 inquiry period.[3]

The Redetermination does not identify "other factors" under section 1677j(b)(1)(E) that are genuinely distinct from the criteria already required under subsections (A) through (D).  Although Commerce reopened the record, it failed to find new evidence of such factors, relying instead on a mere recharacterization of the existing pattern-of-trade and affiliation data.  This approach ignores the Court's finding that subsection (E) must have a unique operative effect, as evidenced by its deliberate inclusion in third-country circumvention cases but exclusion from domestic completion cases.[4]  Ultimately,

---

[2] *See* Remand Order, at 27.

[3] *See id.* at 27-28, n.21.

[4] *See id.* at 22, 27-28.

Commerce still has not identified the "other factors" it previously claimed were necessary to support its affirmative determination.

To the extent that Commerce purported to reconsider its (b)(3) analysis, it did not comply with the Court's specific instruction to explain the basis for the time periods that it used and failed to reconcile its affirmative decision with the changes that directly contradict the evasion narrative within the inquiry period during 2017-2021.  Moreover, Commerce's revised (b)(3)(C) analysis yields a result that compels a negative finding regardless of which comparison periods are used:  Korea-origin hot-rolled steel ("HRS") exports to Vietnam declined 21.7 percent even under Commerce's own chosen comparison of the 2012-2016 and 2017-2021 periods.[5]

ARGUMENT

A.    *Commerce's Recharacterization of Its Section 1677j(b)(3)*
       *Analysis Does Not Satisfy Section 1677j(b)(1)(E)*

The Court found that section 1677j(b)(1)(E) "must be construed to have some operative effect" beyond the factors already required under section 1677j(b)(1)(A)-(D).[6] The Court grounded this conclusion in the statutory structure:  section 1677j(b)(1)(E) appears in the third-country completion circumvention provision but is absent from the parallel domestic completion circumvention provision in section 1677j(a)(1), which otherwise lists the same factors (A) through (D).  Congress's deliberate addition of factor

---

[5] *See* Redetermination at 15.

[6] *See* Remand Order, at 27.

(E) only to the third-country provision signals that it was intended to require something more than satisfying the mandatory (A)-(D) criteria.[7]

Rather than identifying any "other" factors distinct from those in section 1677j(b)(1)(A)-(D), Commerce forewent that path altogether and instead recharacterized its section 1677j(b)(3) analysis as sufficient to support its affirmative finding under section 1677j(b)(1)(E). This approach fails for two reasons.

First, the Court already found that Commerce's reliance on section 1677j(b)(3) factors that were "mixed and inconclusive" was insufficient to support an affirmative finding under section 1677j(b)(1)(E).[8] Commerce's Redetermination does not cure this deficiency. It simply reweighs the same section 1677j(b)(3) factors and does not identify a separate basis to support its section 1677j(b)(1)(E) finding.

Second, Commerce identified no new evidence to support a finding under section 1677j(b)(1)(E). In this regard, Commerce reopened the record on remand specifically to gather information to support a finding that "action is appropriate under section 781(b)(1)(E) of the Act… apart from those under section 781(b)(1)(A)-(D)."[9] Commerce, however, received no new information when it reopened the record.[10] Commerce of its own accord placed on the record *post-inquiry-period* data, including 2025 U.S. International Trade Commission ("USITC") import statistics and U.S. Customs and Border Protection ("CBP") entry data, to which both SeAH VINA and the domestic interested

---

[7] *See id.* at 22, 27.

[8] *See id.* at 27.

[9] Redetermination at 5.

[10] *See id.*

parties submitted rebuttal information.[11]  Commerce relied on that post-inquiry data in the draft remand redetermination.  But, after SeAH VINA objected, agreed in the final redetermination that such data was outside the inquiry period and removed it.[12]

The final redetermination is, therefore, left with nothing beyond a reweighing of the same section 1677j(b)(3) factors that were before Commerce in the original determination and found lacking by this Court.  A more detailed version of the same analysis the Court found deficient remains deficient.

    B.   *Commerce's Section 1677j(b)(3) Reconsideration Does Not Comply with the Court's Remand Instructions*

        1.   *Commerce Failed to Adequately Explain Its Selection of Comparison Periods*

The Court's remand order instructed Commerce to "explain the basis for the time periods that it used" and to reconcile its period selection with the statutory requirements of section 1677j(b)(3)(C), which requires consideration of whether imports of HRS from Korea into Vietnam increased "after the initiation of the investigation which resulted in the issuance of" the antidumping order on CWP from Korea.[13]  The Court noted that Commerce had acknowledged that the antidumping order on CWP from Korea "dates back to 1992" but had not reconciled this with its choice to compare the 2012-2016 period against the 2017-2021 period.[14]

---

[11] *See id.*

[12] *See id.* at 14.

[13] *See* Remand Order at 27-28, n.21.

[14] *See id.*

Commerce's explanation on remand is essentially that going back to the 1990s is impractical.[15]  Commerce's practicality argument does not answer the question the Court actually raised.  The Court did not instruct Commerce to use periods anchored to 1992.  It instructed Commerce to explain the basis for its period selection and to reconcile that basis with the statutory language.  Commerce has not done so.

Specifically, Commerce has not explained why 2012 rather than any other year is the appropriate starting point for the base period, or why 2016 is the appropriate cutoff for the base period.  By failing to tether its choice to an objective, identifiable principle, Commerce essentially asserts that it may choose any base period it desires, at any time, without constraint.  Such an approach does not satisfy the requirement that an agency "articulate a satisfactory explanation for its action," including a "rational connection between the facts found and the choice made."[16]  Indeed, the U.S. Court of Appeals for the Federal Circuit upheld Commerce's period selection in *Al Ghurair Iron & Steel LLC v. United States*, specifically because Commerce provided a reasoned explanation that allowed the court to evaluate its logic.  There, Commerce explained that the chosen period allowed it to analyze whether trade patterns changed in reaction to the antidumping and countervailing duty investigations, identified when parties learned they could potentially face additional duties, and demonstrated consistency with prior determinations.[17]

---

[15] *See* Redetermination at 9-10.

[16] *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Diamond Sawblades Mfrs. Coal. v. United States*, 299 F.Supp.3d 1374, 1382 (Ct. Int'l Trade 2018).

[17] *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1358-59 (Fed. Cir. 2023).

Here, Commerce offers no comparable principled explanation for why 2012 is the appropriate baseline starting point, or why 2016 is the appropriate cutoff for the base period. Without such an explanation, the Court cannot determine whether Commerce's chosen periods accurately capture the relevant trade patterns or simply produce a favorable comparison. The Court's remand instruction on this point remains unsatisfied.[18]

### 2. Commerce Ignored the Within-Period Annual Data that Contradicts a Circumvention Theory

The Court's remand order instructed Commerce, to the extent it reconsidered its section 1677j(b)(3) analysis, to "explain the basis for the time periods that it used" and to reconcile the statutory requirements "with its consideration of the 2012-2016 versus 2017-2021 periods, *as well as changes within the latter period, i.e., 2017-2021*."[19] The Court had already observed in its analysis of the original determination that Commerce's within-period data for the 2017-2021 inquiry period showed declining trade flows that did not straightforwardly support an evasion narrative.[20]

Commerce's final remand redetermination does not comply with this instruction. Commerce continues to anchor its section 1677j(b)(3)(A) finding on a countrywide basis almost entirely on the aggregate comparison of two five-year periods: U.S. imports of CWP from Vietnam increased 8.2 percent from the 2012-2016 period to the 2017-2021 period, and Vietnam's share of total U.S. CWP imports rose from 7.9 percent to 8.8

---

[18] *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 ("The reviewing court should not attempt itself to make up for such deficiencies: we may not supply a reasoned basis for the agency's action that the agency itself has not given.").

[19] *See* Remand Order at 27-28, n.21 (emphasis added).

[20] *See id.* at 24 ("{W}ithin that 2017 to 2021 period, imports of CWP products into the United States from Vietnam and Korea both decreased.").

percent.[21]  Commerce does not meaningfully engage with what happened within the 2017-2021 inquiry period except cursorily noting that SeAH VINA's export of CWP produced from Korea-origin HRS to the United States increased "severalfold" from 2017 to 2021.[22]

However, the within-period countrywide data tells a story directly contrary to Commerce's evasion theory:  U.S. imports of CWP from Vietnam decreased annually throughout the entire 2017-2021 inquiry period.[23]  A circumvention scheme premised on diverting Korea-origin HRS to Vietnam for processing and re-export to the United States does not produce consistently declining export volumes during the very years in which the alleged evasion is occurring.  Commerce offers no coherent economic explanation for this pattern.  Instead, it relies on aggregate five-year averages while ignoring a within-period trend that directly undermines its theory.

> 3.    *Commerce's Section 1677j(b)(3)(C) Analysis Compels a Negative Finding*

The Remand Order specifically highlighted section 1677j(b)(3)(C), which requires consideration of whether imports of HRS from the subject country into Vietnam increased after the initiation of the investigation resulting in the antidumping order on CWP from Korea, as part of the time-period reconciliation Commerce was instructed to perform.[24]

---

[21] *See* Redetermination at 7.

[22] *See id.*

[23] *See* Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty Order ("Korea Prelim"), April 6, 2023, at 19 (Public Record ("PR") 142).  Imports of CWP from Vietnam into the United States from 2017 to 2021 in quantity of metric ton were:  89,240 (2017); 67,581 (2018); 59,763 (2019); 44,847 (2020); 43,556 (2021).  *See id.*

[24] *See* Remand Order at 27-28, n.21.

The Court further noted that Commerce had acknowledged in its preliminary decision memorandum that the Order "dates back to 1992," but had not reconciled this with its choice to compare 2012-2016 against 2017-2021.[25]

Commerce's draft remand redetermination omitted the section 1677j(b)(3)(C) analysis entirely, a deficiency SeAH VINA specifically flagged in its comments on the Draft Remand.[26]  Commerce's section 1677j(b)(3)(C) analysis yields a result that compels a negative finding:  Korea-origin HRS exports to Vietnam declined 21.7 percent even under Commerce's own chosen comparison of the 2012-2016 and 2017-2021 periods.[27]  During the same period, Korea-origin HRS exports to the rest of the world decreased by only 5.5 percent.[28]  Vietnam's share of total Korea-origin HRS exports consequently declined from 12.33 percent to 10.44 percent.[29]  In the final redetermination, Commerce conceded that the section 1677j(b)(3)(C) factor was not met.[30]

Section 1677j(b)(3)(C) is the most probative statutory factor for evaluating third-country circumvention.  The core theory of a country-wide circumvention case is that producers in the subject country are channeling their inputs at increased levels through the third country to avoid duties.  A 21.7 percent decline in Korea-origin HRS exports to Vietnam, at a rate four times faster than the global decline in Korean HRS exports, is the

---

[25] *See id.*

[26] *See* Redetermination at 11.

[27] *See id.* at 15.

[28] *See id.*

[29] *See id.*

[30] *See id.*

precise opposite of that theory.  Commerce offers no explanation for why such a substantial contraction in input flows is consistent with an active circumvention scheme.

Commerce's response is to declare the conceded section 1677j(b)(3)(C) failure does not change its conclusion that action is appropriate to prevent evasion in light of its section 1677j(b)(3)(A) finding.  But that framing inverts the proper analysis.[31]  The section 1677j(b)(3)(C) factor is not a tiebreaker to be set aside when inconvenient.  It is a statutory consideration that speaks directly to the central theory of third-country circumvention. Nothing in the statute supports the proposition that a single affirmative factor under section 1677j(b)(3) can carry an affirmative determination when the most probative factor is not met, particularly where, as discussed above, the section 1677j(b)(3)(A) finding is itself based on aggregate metrics contradicted by the within-period annual data.

### 4.    The Aggregate Five-Year Comparison Cannot Bear the Weight Commerce Places on It

Even setting aside the within-period data, the aggregate metrics Commerce relies upon are thin.  An 8.2 percent increase in U.S. import volumes of CWP from Vietnam and a 0.9 percentage point increase in Vietnam's share of U.S. imports of CWP from the world, comparing five-year averages, do not constitute the kind of significant, targeted increase in trade flows that characterizes circumvention.  These figures are consistent with Vietnam's general growth as a CWP exporter over time, driven by factors entirely unrelated to the antidumping order on CWP from Korea.  Commerce does not analyze or rule out these alternative explanations.

---

[31] *See id.* at 15-16.

Moreover, Commerce's reliance on SeAH VINA's CWP exports to the United States produced from Korea-origin HRS as an additional basis for its section 1677j(b)(3)(A) finding does not cure these deficiencies. While Commerce points to an increase in those exports over the full 2017-2021 period, the annual within-period data do not show a consistent upward trajectory, and Commerce does not explain how fluctuating company-level export figures, viewed in conjunction with declining aggregate Vietnamese import volumes, support a systematic evasion finding.[32]

### C. Commerce's Treatment of the Affiliation Factor Cannot Compensate for the Failures in Its Other Analyses

Commerce correctly found that SeAH VINA is not affiliated with any Korean HRS producer or supplier.[33] The absence of affiliation undercuts the evasion theory, as affiliated companies are far more likely to coordinate the kind of deliberate input diversion that circumvention requires.

Even assuming that the lack of affiliation between SeAH VINA and a Korean HRS producer or supplier should serve as a "neutral" factor as Commerce characterizes it, the Redetermination still cannot stand. A neutral affiliation finding under section 1677j(b)(3)(B) can only be treated as consistent with an affirmative determination if the remaining section 1677j(b)(3) factors provide substantial affirmative support. Here, they do not. The section 1677j(b)(3)(C) factor compels a negative finding. The section

---

[32] Data on the record shows that SeAH VINA's exports of CWP made from Korea-origin HRS to the United States increased from 2017 to 2018, then decreased from 2018 to 2019 before increasing from 2019 to 2021. *See* SeAH VINA's October 7, 2022, Initial Questionnaire Response ("Initial Response") at Appendix 10 (PR-64, Confidential Record ("CR") 20).

[33] *See* Redetermination at 8.

1677j(b)(3)(A) finding is grounded in aggregate metrics that are contradicted by the within-period from 2017 through 2021.  A neutral factor cannot compensate for the failure of the only affirmative analytical pillar Commerce relies upon.

CONCLUSION

Commerce's Redetermination fails to comply with the specific requirements the Court set out in its Remand Order.  Rather than identifying any "other factors" distinct from those in section 1677j(b)(1)(A)-(D), Commerce forewent that path entirely and recharacterized its section 1677j(b)(3) analysis as sufficient to support its affirmative finding, without identifying any basis for the section 1677j(b)(1)(E) finding that is distinct from what the Court already found insufficient.  Its section 1677j(b)(3)(C) analysis, performed only after SeAH VINA raised this deficiency in its comments on the draft remand redetermination, yields an unambiguous result that points against circumvention.  And its section 1677j(b)(3)(A) analysis continues to rely on aggregate five-year averages while ignoring the within-period annual data, showing declining U.S. imports of CWP from Vietnam throughout 2017-2021.

For the foregoing reasons, we respectfully request that the Court remand this matter to Commerce once more for disposition in a manner consistent with the judgment of this Court.

- 12 -

Respectfully submitted,

/s/ Jeffrey M. Winton
Jeffrey M. Winton
Amrietha Nellan
Vi N. Mai
Rachel Hauser

WINTON AND CHAPMAN PLLC
1100 13th Street, N.W., Suite 825
Washington, D.C. 20005
(202) 774-5500

Attorneys for SeAH Steel VINA Corporation

June 26, 2026

- 13 -

<u>Certificate of Compliance</u>

Pursuant to the Court's "Standard Chambers Procedures," I, Jeffrey M. Winton, hereby certify that the word count function of the word-processing system used to prepare the foregoing brief indicates that the brief contains 2,753 words including headings, footnotes, and quotations, but not including the cover, caption, table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature block.

/s/Jeffrey M. Winton

June 26, 2026