PUBLIC VERSION

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

|  |  |  |
|---|---|---|
| SEAH STEEL VINA CORPORATION, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | Court No. 23-256 |
| *Defendant,* | ) | |
| | ) | **PUBLIC VERSION** |
| *and* | ) | |
| | ) | Business proprietary information |
| BULL MOOSE TUBE COMPANY; | ) | of SeAH Steel VINA Corp. |
| MARUICHI AMERICAN CORPORATION; | ) | removed from brackets on page 3. |
| WHEATLAND TUBE COMPANY; THE | ) | |
| UNITED STEEL, PAPER AND FORESTRY, | ) | |
| RUBBER, MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTRIAL AND SERVICE | ) | |
| WORKERS INTERNATIONAL UNION, | ) | |
| AFL-CIO, CLC; NUCOR TUBULAR | ) | |
| PRODUCTS INC., | ) | |
| | ) | |
| *Defendant-Intervenors.* | ) | |
| | ) | |

## DEFENDANT-INTERVENORS' COMMENTS
## IN SUPPORT OF FINAL REDETERMINATION ON REMAND

Roger B. Schagrin
Jeffrey D. Gerrish
Nicholas C. Phillips
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
*Counsel to Bull Moose Tube Company;
Maruichi American Corporation; Wheatland
Tube Company; The United Steel, Paper and
Forestry, Rubber, Manufacturing, Energy,
Allied Industrial and Service Workers
International Union, AFL-CIO, CLC*

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Theodore P. Brackemyre, Esq.
Kimberly A. Reynolds, Esq.
Paul A. Devamithran, Esq.
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
*Counsel to Nucor Tubular Products Inc.*

August 10, 2026

PUBLIC VERSION

**TABLE OF CONTENTS**

I.   FACTUAL BACKGROUND ................................................................................................ 1

II.  ARGUMENT ................................................................................................................... 6

    A.   Commerce Complied with the Remand Order by Identifying "Other" Factors that
        Supported its Affirmative Circumvention Determination ................................................. 6

    B.   Commerce Complied with the Remand Order by Explaining its Choice of Time Periods  8

    C.   Commerce's Section 1677j(b)(3)(C) Analysis Supports an Affirmative
        Determination…………………………………………………………………………10

    D.   SeAH VINA's Remaining Arguments Are Unpersuasive…………………………..12

III. CONCLUSION ................................................................................................................. 13

PUBLIC VERSION

# TABLE OF AUTHORITIES

**Cases**

*ABB, Inc. v. United States*, 273 F. Supp. 3d 1186 (Ct. Int'l Trade 2017), *aff'd*, 920 F.3d 811 (Fed. Cir. 2019) .................................................................................................................. 7

*Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351 (Fed. Cir. 2023).................... 8, 9, 12

*Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ................................................................................................. 8, 9, 12

*Deacero S.A.P.I. de C.V. v. United States*, 2026 WL 1670099 (Ct. Int'l Trade 2026) ............ 9, 12

*NTN Bearing Corp. of America v. United States*, 132 F. Supp. 2d 1102 (Ct. Int'l Trade 2001), *aff'd*, 295 F.3d 1263 (Fed. Cir. 2002) ....................................................................................... 7

*SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (Court of Int'l Trade Dec. 16, 2025).................................................................................*passim*

*Timken Co. v. United States*, 968 F. Supp. 3d 1279 (Ct. Int'l Trade 2014), *aff'd*, 589 F. App'x 995 (Fed. Cir. 2015)................................................................................. 8

*U.K. Carbon and Graphite Co., Ltd. v. United States*, 931 F. Supp. 2d 1322 (Ct. Int'l Trade 2013)............................................................................................... 11

**Statutes**

19 U.S.C. §1677j(b)(1) ..............................................................................................*passim*
19 U.S.C. §1677j(b)(3) ..............................................................................................*passim*

**Administrative Determinations**

*Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,270 (Dep't Commerce Nov. 9, 2023)....................................................................................... 1

*Circular Welded Carbon Steel Standard Pipes and Tubes From India,: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*; 88 Fed. Reg. 77,279 (Dep't Commerce Nov. 9, 2023)....................................................................................... 1

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China,: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*; 88 Fed. Reg. 77,287 (Dep't Commerce Nov. 9, 2023)............................................................................... 2

On behalf of Defendant-Intervenors Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Nucor Tubular Products Inc. ("Defendant-Intervenors"), we hereby submit comments in support of the final redetermination on remand issued by the U.S. Department of Commerce's ("Commerce") pursuant to this Court's decision in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (Court of Int'l Trade Dec. 16, 2025) ("Remand Order"). In the Remand Order, this Court instructed Commerce to reconsider its final determination reached in *Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,270 (Dep't Commerce Nov. 9, 2023) ("Korea Original Final Determination") and the accompanying Issues and Decision Memorandum ("IDM"). On remand, Commerce reconsidered its affirmative determination of circumvention and continued to find that an affirmative determination was appropriate to prevent evasion of the antidumping order on Korea (the "*Order*"). *See* Final Results of Redetermination Pursuant to Court Remand, *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea* (May 1, 2026) ("Korea Remand Redetermination"). For the reasons described below, Commerce's Korea Remand Redetermination complies with the Court's Remand Order and is supported by substantial evidence. This Court should therefore affirm the Korea Remand Redetermination.

## I.    FACTUAL BACKGROUND

This Court's Remand Order directed Commerce to reconsider its circumvention finding in the Korea Original Final Determination as well as its findings in two other parallel circumvention inquiries: *Circular Welded Carbon Steel Standard Pipes and Tubes From India*,

PUBLIC VERSION

88 Fed. Reg. 77,279 (Dep't Commerce Nov. 9, 2023) ("India Original Final Determination") and

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China*, 88 Fed. Reg.

77,287 (Dep't Commerce Nov. 9, 2023) ("China Original Final Determination"). The

circumvention proceedings for Korea, India, and China concerned hot-rolled steel ("HRS") from

these three countries that had been exported to Vietnam to be finished into circular welded steel

pipe ("CWP") that was then exported to the United States.

In conducting circumvention inquiries involving merchandise completed or assembled in

third countries under 19 U.S.C. §1677j(b), the statute provides that merchandise must satisfy

four factors identified at §1677j(b)(1)(A)-(D) before Commerce may include such merchandise

within the scope of an antidumping or countervailing duty order. In addition, pursuant to

§1677j(b)(3)(1)(E), Commerce must determine that "action is appropriate under this paragraph to

prevent evasion of such order or finding."

As part of the inquiry into whether action is appropriate under §1677j(b)(3)(1)(E), the

statute provides for Commerce to "take into account" certain factors. Specifically, for the

circumvention inquiries on CWP from Korea, India, and China, this provision required

Commerce to take into account "the pattern of trade, including sourcing patterns," whether there

was evidence of affiliation between HRS suppliers in Korea, India, and China and CWP

producers in Vietnam, and "whether imports into {Vietnam} of {HRS} have increased after

initiation of the investigation which resulted in the issuance of {the antidumping order}." 19

U.S.C. §1677j(b)(3)(A), (B), (C). In its original circumvention determinations, Commerce

concluded that the so-called (b)(3) factors were "mixed and inconclusive" for all countries but

"did not detract from a finding that an action is appropriate" pursuant to §1677j(b)(3)(1)(E).

IDM at 35.

PUBLIC VERSION

In its Remand Order, the Court found that "{t}he assertion that the (b)(3) factors did not detract from a finding that an action is appropriate assumes that action was found to be appropriate on some other grounds. However, Commerce did not identify any other grounds beyond the factors that it was already required to find pursuant to section 1677j(b)(1)(A)-(D)." Remand Order at 27. Because §1677j(b)(3)(1)(E) must have operative effect, the Court instructed Commerce to further explain its affirmative determination by identifying what factors other than the §1677j (b)(1)(A)-(D) factors supported its determination that action is appropriate pursuant to §1677j (b)(1)(E). Remand Order at 27-28.

In the Korea Remand Redetermination, Commerce explained that it considered the (b)(3) factors and found that "patterns of trade show that U.S. imports of certain circular welded nonalloy steel pipe (CWP) from {Vietnam} have increased….Accordingly…we find that action is appropriate to prevent evasion of the *Order* pursuant to section 781(b)(1)(E) of the Act{.}" Korea Remand Redetermination at 2. Commerce additionally examined the patterns of trade with respect to SeAH VINA and found that there was an "increase in the quantity of CWP produced from HRS imported from Korea and exported to the United States." *Id.* at 3. Indeed, the record shows that the following occurred:

- Vietnamese exports of CWP to the United States increased by 8.2 percent between the comparison period (2012-2016) and the inquiry period (2017-2021), from 281,799 metric tons ("MT") to 304,987 MT;

- The share of U.S. imports of CWP from Vietnam in relation to the share of U.S. imports of CWP from all countries increased from 7.9 percent to 8.8 percent between the comparison period and the inquiry period;

- SeAH VINA's export sales of CWP produced from Korea-origin HRS to the United States increased by [    ] percent between 2017 and 2021, from [      ] MT to [      ] MT.

3

*See* Korea Remand Redetermination at 7 (citing Commerce's preliminary determination of circumvention and Memorandum re: Business Proprietary Information Considered in Final Results of Remand (Apr. 30, 2026)).

Commerce determined that this evidence satisfied §1677j (b)(3)(A), concerning the pattern of trade, because:

> (1) aggregate import data show a significant increase in the quantity of U.S. imports of CWP from Vietnam from the 2012-2016 period to the 2017-2021 period; (2) aggregate import data show a significant increase in the share of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world from the 2012-2016 period to the 2017-2021 period; and (3) SeAH VINA's CWP exports to the United States produced from HRS imported from Korea increased significantly from 2017 to 2021. These significant increases indicate that Korea-origin HRS is likely to have been made into CWP not in Korea but in Vietnam and then exported to the United States to evade the *Order*.

Korea Remand Redetermination at 7. Concerning evidence of affiliation between HRS suppliers in Korea and CWP producers in Vietnam pursuant to §1677j (b)(3)(B), Commerce found no such evidence on the record but found that "the lack of affiliation does not weigh against a finding that a determination of circumvention is appropriate if other factors pursuant to section 781(b)(3) of the Act demonstrate otherwise," citing to previous affirmative circumvention determinations in which no evidence of affiliation was found. Korea Remand Redetermination at 8-9.

Concerning evidence of an increase in imports of HRS from Korea into Vietnam pursuant to §1677j (b)(3)(C), Commerce found that this factor was not met because (1) there was a decrease in the quantity of HRS exported from Korea to Vietnam between the comparison and inquiry periods and (2) SeAH VINA did not increase the quantity of HRS it imported from Korea during the inquiry period. *Id.* at 15. However, Commerce noted that this factor alone was not dispositive in light of its finding that the pattern of trade evidence supports an affirmative circumvention determination. *Id.* at 15-16. Commerce explained that "{a}lthough the statute

4

instructs Commerce to consider all of the factors under 781(b)(3) when reaching a determination, nothing in the statute indicates that all factors must be affirmative to substantiate an affirmative finding under 781(b)(1)(E) of the Act." *Id.* at 16.

In its Remand Order, the Court also instructed Commerce that "to the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used." Remand Order at 28 n. 21. In particular, the Court noted that §1677j (b)(3)(C) requires consideration of whether imports of HRS into Vietnam have increased after initiation of the investigation that resulted in the issuance of the *Order*, which dates back to 1992. *Id.* The Court found that "Commerce has not reconciled these statements and the statutory requirements with its consideration of the 2012-2016 versus 2017-2021 periods, as well as changes within the latter period, i.e. 2017-2021, for each of the three countries." *Id.*

In the Korea Remand Redetermination, Commerce explained its choice of time periods used in evaluating the (b)(3) factors. *See* Korea Remand Redetermination at 9-10. Commerce noted that §1677j (b)(3)(C) requires consideration of whether imports of HRS into Vietnam "have increased *after the initiation of the investigation which resulted in the issuance of such order or finding*" and explained that it has been its practice, which has been upheld by the courts, to interpret this provision as providing Commerce with discretion to select the comparison period "at any time after the initiation of the investigation." *Id.* at 9 (emphasis in original). Commerce found that a restrictive interpretation of this statutory provision – *i.e.*, one that would require a comparison of import data prior to 1992, when the *Order* was issued, and import data for the period after 1992 – was impracticable. *Id.* at 10. Commerce identified two reasons for this. First, foreign companies can commence circumvention at any time after the initiation of an investigation and therefore domestic interested parties should be able to propose comparison

periods that capture when they believe circumvention began. *Id.* Second, for longstanding orders, such as the *Order* at issue here, aligning the comparison period with the period prior to initiation of the investigation that gave rise to the order would require data going back to the 1990s, and "companies subject to the circumvention inquiry are not required to maintain such data{.}" *Id.*

## II.    ARGUMENT

### A.    Commerce Complied with the Remand Order by Identifying "Other" Factors that Supported its Affirmative Circumvention Determination

The operative instruction in the Remand Order was that "{t}o the extent that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)-(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding." Remand Order at 27-28. In the Korea Remand Redetermination, Commerce has both identified such "other" factors and supported its identification of these distinct factors with substantial evidence. Commerce found that the pattern of trade under §1677j (b)(3)(A) supported a circumvention determination because between the comparison and inquiry periods, Vietnamese exports of CWP to the United States increased by 8.2 percent and U.S. imports of CWP from Vietnam in relation to the total quantity of U.S. imports of CWP from the world increased from 7.9 to 8.8 percent. Korea Remand Redetermination at 7. Furthermore, Commerce found that SeAH VINA's own exports of CWP made with Korean HRS to the United States increased "severalfold" between 2017 and 2021. *Id*.

SeAH VINA's arguments to the contrary are unavailing. SeAH VINA claims that the Korea Remand Redetermination does not actually identify "'other factors'…that are genuinely distinct from the criteria already required under subsections (A) through (D)," which purportedly "ignores the Court's finding that subsection (E) must have a unique operative effect{.}"

Comments of SeAH Steel VINA Corporation on Final Redetermination on Remand, Ct. No. 23-256 (June 26, 2026), ECF No. 85 ("SeAH VINA Comments") at 2. SeAH VINA claims that Commerce merely "recharacterized its section 1677j(b)(3) analysis" and "simply reweighs the same section 1677j(b)(3) factors{.}" *Id.* at 4. Furthermore, according to SeAH VINA, Commerce "identified no new evidence to support a finding under section 1677j(b)(1)(E)." *Id.*

These arguments lack merit. Although it is axiomatic that *courts* may not reweigh the evidence considered by Commerce, that is because weighing the evidence is *Commerce's* job. This Court remanded Commerce's determination "for *reconsideration or further explanation* consistent with this opinion." Remand Order at 28 (emphasis added). The Remand Order therefore directly contemplated that Commerce may "recharacterize" or "reweigh" the evidence and its decision. Reconsidering the existing record evidence on remand and providing a more fulsome explanation of that evidence to support Commerce's decision is in fact a paradigmatic exercise of agency discretion. *See ABB, Inc. v. United States*, 273 F. Supp. 3d 1186, 1199 n.14 (Ct. Int'l Trade 2017), *aff'd*, 920 F.3d 811 (Fed. Cir. 2019) ("Unless specifically directed by the court, Commerce has broad discretion to fully consider the issues remanded."). Further, whether Commerce re-opens the record to consider new evidence, or merely reconsiders the existing record, is also a matter within the agency's discretion. *See NTN Bearing Corp. of America v. United States*, 132 F. Supp. 2d 1102, 1107 (Ct. Int'l Trade 2001), *aff'd*, 295 F.3d 1263 (Fed. Cir. 2002) ("Any decision to expand the administrative record upon remand is well within {Commerce's} discretion, absent express language from the Court barring such action.").

Of course, when reconsidering the record evidence, Commerce did not "ignore{} the Court's finding that subsection (E) must have a unique operative effect." SeAH VINA Comments at 2. The evidence that Commerce cited to support its decision on remand – the

7

pattern of trade evidence – is not part of any statutory inquiry identified by §1677j(b)(1)(A)-(D). It is located in a separate part of the statute, at §1677j(b)(3). Commerce therefore satisfied the Court's request for "factors that are distinct from factors (b)(1)(A)-(D)" and supported its finding that an affirmative circumvention determination is appropriate under §1677j(b)(1)(E), granting that provision operative effect.

### B. Commerce Complied with the Remand Order by Explaining Its Choice of Time Periods

SeAH VINA claims that Commerce failed to follow the Court's instruction to explain the basis for the time periods it used and reconcile them with the language of §1677j(b)(3)(C), which requires consideration of whether imports of HRS from Korea into Vietnam increased "after the initiation of the investigation" that led to the *Order*. SeAH VINA Comments at 5. SeAH VINA argues that although Commerce discussed the impracticality of comparing data from before and after an order that was issued in 1992, it did not provide a "principled explanation for why 2012 is the appropriate baseline starting point, or why 2016 is the appropriate cutoff for the base period." *Id.* at 7.

However, as an initial matter, "the statute does not identify any particular time period at all for Commerce to consider" in circumvention inquiries. *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1358-59 (Fed. Cir. 2023) (internal quotation removed). Further, "{b}ased on the absence of a designated methodology, Commerce has the discretion to decide on its own method of analysis." *Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357, 1368 (Ct. Int'l Trade 2021), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023) (citing *Timken Co. v. United States*, 968 F. Supp. 3d 1279, 1286 n.7 (Ct. Int'l Trade 2014), *aff'd*, 589 F. App'x 995 (Fed. Cir. 2015)). Here, Commerce simply selected a comparison period of equal length and immediately preceding the inquiry period of 2017-2021, which is the period in which the

PUBLIC VERSION

domestic interested parties alleged circumvention took place. Commerce's selection of an equal-length comparison period is a well-established practice that has been repeatedly upheld by the courts. *See, e.g.*, *Deacero S.A.P.I. de C.V. v. United States*, 2026 WL 1670099 at \*18 (Ct. Int'l Trade 2026) ("Commerce acted reasonably by choosing its inquiry period based on when petitioners alleged circumvention to have begun and by selecting a comparison period of equal length."); *Al Ghurair I*, 536 F. Supp. 3d at 1379 (upholding Commerce's practice of "compar{ing} trade data using periods of time identical in length and bifurcated by the initiation of the CORE investigations.")

It is true that, unlike in *Al Ghurair* and certain other circumvention determinations, Commerce's comparison and inquiry periods here were not "bifurcated by the initiation" of the investigation that led to the *Order*. Accordingly, the Court called Commerce's attention to the statutory language at §1677j(b)(3)(C) regarding import levels "after the initiation of the investigation," as well as *Al Ghurair*'s comparison of "the periods before and after it initiated the investigations that led to the *original* AD/CVD orders." Remand Order at 27-28 n.21 (emphasis in original). The Court further noted that Commerce acknowledged that here, the *Order* dates to 1992 and instructed Commerce to "explain the basis for the time periods that it used" in that context. *Id.* Commerce did just that. It explained first that the statutory language referring to the period "after the initiation of the investigation" should not be interpreted to mean *directly* after because circumvention can begin at any time following the issuance of an order. Korea Remand Redetermination at 10. It further explained that because companies subject to the circumvention inquiry are not required to maintain data going back to the 1990's, comparing data before and after the initiation of the investigation would be impracticable. *Id.* Commerce therefore complied with the Court's directive in full.

9

SeAH VINA also argues that Commerce "does not meaningfully engage with what happened within the 2017-2021 inquiry period" – except for "cursorily noting that SeAH VINA's export of CWP produced from Korea-origin HRS to the United States increased 'severalfold' from 2017 to 2021." SeAH VINA Comments at 8. SeAH VINA's framing is telling. Commerce did indeed engage with the data within the 2017-2021 period and repeatedly (not cursorily) noted that such data showed a significant growth in SeAH VINA's exports of CWP made with Korean HRS to the United States. *See* Korea Remand Redetermination at 7, 14-15. SeAH VINA simply wants the Court to instruct Commerce to weigh the within-period evidence differently and assign more significance to the within-period decline in Vietnam's exports of CWP to the United States. SeAH VINA Comments at 8. Instead, Commerce found it to be "most important{}" that "SeAH VINA's export sales of CWP produced from Korea-origin HRS to the United States increased substantially during the inquiry period." Korea Remand Redetermination at 15. SeAH VINA ultimately believes that within-period data should be decisive when it is helpful to SeAH VINA, but not when it is unhelpful. As explained above, weighing the record evidence is a paradigmatic exercise of agency discretion, and Commerce provided a reasonable explanation for its decision.

## C. Commerce's Section 1677j(b)(3)(C) Analysis Supports an Affirmative Determination

SeAH VINA claims that "Commerce's section 1677j(b)(3)(C) analysis yields a result that compels a negative finding" because Korean exports of HRS to Vietnam declined by more between the comparison and inquiry periods than did Korea exports of HRS to the rest of the world. SeAH VINA Comments at 9. SeAH VINA acknowledges that "Commerce conceded that the section 1677j(b)(3)(C) factor was not met" but argues that this provision "is the most

10

probative statutory factor for evaluating third-country circumvention" and that it must be satisfied. *Id.* at 10.

SeAH VINA's argument is completely bereft of legal authority and is contradicted by the plain language of the statute. Subsection (b)(3)(C) is one of three factors that Commerce is instructed to "take into account" in conducting its circumvention analysis. 19 U.S.C. §1677j(b)(3). If Congress intended for this factor to be dispositive, it would have included it in §1677j(b)(1), which identifies mandatory factors that Commerce must satisfy before it may make an affirmative circumvention determination. Because Congress did not do so, Commerce is not obligated to satisfy §1677j (b)(3)(C) as a mandatory condition for an affirmative circumvention finding. *See U.K. Carbon and Graphite Co., Ltd. v. United States*, 931 F. Supp. 2d 1322, 1330 (Ct. Int'l Trade 2013) ("None of the factors listed under…19 U.S.C. §1677j(b)(3) is controlling."). Indeed, that conclusion is supported by the Remand Order itself, which refers to the §1677j (b)(1)(A)-(E) factors as the "so-called mandatory factors" that are "required for an affirmative circumvention finding." Remand Order at 6. Here, Commerce did not ignore the inquiry under §1677j (b)(3)(C) but rather fulsomely considered the factor and found that it was not met. However, Commerce noted that this factor alone was not dispositive in light of its finding that the pattern of trade evidence supports an affirmative circumvention determination. Korea Remand Redetermination at 15-16. Commerce explained that "{a}lthough the statute instructs Commerce to consider all of the factors under 781(b)(3) when reaching a determination, nothing in the statute indicates that all factors must be affirmative to substantiate an affirmative finding under 781(b)(1)(E) of the Act." *Id.* at 16. Commerce therefore fulfilled its statutory obligation to "take into account" whether imports of Korean HRS into Vietnam increased.

### D.  SeAH VINA's Remaining Arguments Are Unpersuasive

SeAH VINA attacks Commerce's remand redetermination on the basis of methodological choices that were not discussed in the Court's Remand Order. Besides being beyond the scope of what the Court asked Commerce to reconsider, these attacks fail on their own merits. First, SeAH VINA faults Commerce for not "rul{ing} out…alternative explanations" for the growth in Vietnam's exports to the United States, such as "Vietnam's general growth as a pipe and tube exporter over time{.}" SeAH VINA Comments at 10. However, "the statute does not require Commerce to evaluate…the reason for a change in trade patterns." *Deacero*, 2026 WL 1670099 at *18 (citing *Al Ghurair I* and *Al Ghurair II*). Further, the statute "does not mandate the consideration of any specific data in Commerce's evaluation of the pattern of trade." *Al Ghurair I*, 536 F. Supp. 3d at 1380. Indeed, the plaintiff in *Al Ghurair* made a similar argument, rejected by the court, that the pattern of trade merely reflected the "natural upward progression" of its business. *Al Ghurair I*, 536 F. Supp. 3d at 1379. Commerce is therefore under no obligation to eliminate every other possible explanation for a pattern of trade that is consistent with circumvention.

Second, SeAH VINA faults Commerce's "reliance" on the within-period increase in SeAH VINA's exports of CWP made with Korean HRS to the United States. SeAH VINA Comments at 11. SeAH VINA claims that "the annual within-period data do not show a consistent upward trajectory, and Commerce does not explain how fluctuating company-level export figures, viewed in conjunction with declining aggregate Vietnamese import volumes, support a systematic evasion finding." *Id.* This is yet another request for the Court to reweigh the evidence. The fact that SeAH VINA's exports of CWP made with Korean HRS did not increase in every individual year of the inquiry period does not bar Commerce from assigning more

weight to the fact that in aggregate, such exports increased "severalfold." *See* Korea Remand Redetermination at 7, 15. The same is true for the volume of U.S. imports of CWP from Vietnam, which increased by 8.2 percent in aggregate. *See id.* at 14. Commerce was entitled to weigh these trends and find that they "support a finding that the 781(b)(3)(A) requirements are met." *Id.* at 15. That determination is reasonable and should be upheld.

## III.    CONCLUSION

For these reasons, Defendant-Intervenors respectfully request that the Court sustain the Korea Remand Redetermination issued by Commerce.

<div style="margin-left:40%">

Respectfully submitted,

*/s/* Jeffrey D. Gerrish
Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.
Nicholas C. Phillips, Esq.*
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
*Counsel to Bull Moose Tube Company; Maruichi American Corporation; Wheatland Tube Company; The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

*Only admitted in New York. Practice limited to matters before federal courts and agencies.

*/s/* Robert E. DeFrancesco, III
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Theodore P. Brackemyre, Esq.
Kimberly A. Reynolds, Esq.
Paul A. Devamithran, Esq.
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
*Counsel to Nucor Tubular Products Inc.*

</div>

13

PUBLIC VERSION

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Comments in Support of Final Redetermination on Remand contains 3,769 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in this Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

Dated:  August 10, 2026                                     /s/ Jeffrey D. Gerrish
                                                                    Jeffrey D. Gerrish