**THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
| SEAH STEEL VINA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 23-00256 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BULL MOOSE TUBE COMPANY, *et al.*, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |

**ORDER**

Upon consideration of plaintiffs' comments regarding the remand redetermination,

defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained

AND final judgment is entered in favor of the United States.


Date:_____                              _____
    New York, NY                                                    Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |  |
|---|---|---|
| SEAH STEEL VINA CORPORATION, | ) | |
|  | ) | Ct No. 23-00256 |
| Plaintiff, | ) | |
|  | ) | PUBLIC VERSION BPI |
| v. | ) | omitted at pages 11-12, |
|  | ) | 18-19 |
|  | ) | |
| UNITED STATES, | ) | |
|  | ) | |
| Defendant, | ) | |
|  | ) | |
| and | ) | |
|  | ) | |
| BULL MOOSE TUBE COMPANY, *et al.*, | ) | |
|  | ) | |
| Defendant-Intervenors. | ) | |
|  | ) | |

**DEFENDANT'S RESPONSE TO COMMENTS ON THE REMAND
REDETERMINATION**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:
ALYSON FINLEY
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230

TATE N. WALKER
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 37-0163
Email: tate.walker@usdoj.gov

2

August 10, 2026                                                    *Attorneys for Defendant*

**TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................2

I.      Commerce's Final Results ....................................................................................2

II.     Remand Order.......................................................................................................3

III.    Remand Redetermination.....................................................................................4

ARGUMENT ....................................................................................................................7

I.      Standard of Review..............................................................................................7

II.     Legal Framework .................................................................................................8

III.    Commerce's Remand Redetermination Is Lawful and Supported by Substantial Evidence ....................................................................................................................9

        A.      Commerce's Section 1677j(b)(3) Analysis Satisfies Section 1677j(b)(1)(E) and the Court's Remand Order ...............................................................................9

        B.      Commerce's Section 1677j(b)(3) Reconsideration Complies with the Court's Remand Instructions in Regards to Comparison Periods ......................................12

             1.      Commerce Adequately Explained Its Selection of Comparison Periods...12

             2.      Commerce Properly Considered The Within-Period Annual Data in Its 1677j(b)(3) Analysis .................................................................................15

        C.      Commerce Properly Determined that its Section 1677j(b)(3)(C) Analysis Does Not Sufficiently Outweigh the Substantial Evidence Indicating Circumvention under Section 1677j(b)(3)(A) ............................................................................... 16

        D.      Commerce Properly Considered Aggregate Five-Year Comparison Metrics As An Additional Basis for Its 1677j(b)(3)(A) Finding.................................................. 18

        E.      Commerce Correctly Analyzed and Weighed the Affiliation Factor Under 1677j(b)(3)(B)..............................................................................................20

CONCLUSION...................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Al Ghurair Iron & Steel LLC v. United States*,
65 F.4th 1351 (Fed. Cir. 2023) ............................................................................ 12, 17

*Al Ghurair Iron & Steel LLC v. United States*,
536 F. Supp. 3d 1357 (Ct. Int'l. Trade 2021) ............................................................ 16

*Amanda Foods (Vietnam) Ltd. v. United States*,
774 F. Supp. 2d 1286 (Ct. Int'l Trade 2011) ............................................................... 7

*Bethlehem Steel Corp. v. United States*,
223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ............................................................... 7

*Coalition of Am. Flange Producers v. United States*,
448 F. Supp. 3d 1340 (Ct. Intl. Trade 2020) ............................................................. 10

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) ............................................................................................. 7

*Consolo v. Federal Maritime Commission*,
383 U.S. 607 (1966) ........................................................................................... 12

*Deacero S.A.P.I. de C.V. v. United States*,
No. 24-00212, 2026 WL 1670099 (Ct. Int'l. Trade May 26, 2026) ........................................ 15

*Hanon Sys. Ala. Corp. v. United States*,
794 F. Supp. 3d 1348 (Ct. Int'l Trade 2025) ............................................................. 15

*Inland Steel Indus., Inc. v. United States*,
188 F.3d 1349 (Fed. Cir. 1999) ............................................................................ 12

*Mitsubishi Materials Corp. v. United States*,
820 F. Supp. 608 (Ct. Int'l Trade 1993) .................................................................. 12

*Mosaic Co. v. United States*,
160 F.4th 1340 (Fed. Cir. 2025) ............................................................................. 7

*Nippon Steel Corp. v. United States*,
458 F.3d 1345 (Fed. Cir. 2006) .............................................................................. 7

*NTN Bearing Corp. of Am. v. United States*,
747 F. Supp. 726 (Ct. Int'l Trade 1990) ............................................................... 13, 14

*SeAH Steel VINA Corp. v. United States*,
815 F. Supp. 3d 1369 (Ct. Int'l Trade 2025) ............................................................... 1

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., CO,*
  605 U.S. 168 (2025) ............................................................................................. 7

*SolarWorld Ams., Inc. v. United States,*
  910 F.3d 1216 (Fed. Cir. 2018) ........................................................................... 7

**Statutes**

19 U.S.C. § 1677(b)(1)(B) ........................................................................................ 8

19 U.S.C. § 1677j(b) ................................................................................................. 7

19 U.S.C. § 1677j(b)(1)(A) ...................................................................................... 7

19 U.S.C. § 1677j(b)(1)(B) ............................................................................. 8, 9, 10

19 U.S.C. § 1677j(b)(1)(E) ............................................................................. passim

19 U.S.C. § 1677j(b)(2) ........................................................................................... 17

19 U.S.C. § 1677j(b)(3) ................................................................................... passim

19 U.S.C. § 1677j(b)(3)(C) ............................................................................... 13, 15

**Regulations**

19 C.F.R. § 351.225(h) ..................................................................................... 17, 19, 20

**Other Authorities**

*Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea),
  Mexico, and Venezuela, and Amendment to Final Determination of Sales at Less Than Fair
  Value: Certain Circular Welded Non-Allow Steel Pipe from Korea*, 57 Fed. Reg. 49,453 (Dep't
  of Commerce Nov. 2, 1992) ............................................................................................. 2

*Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Affirmative Preliminary
  Determination of Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing
  Duty Orders*, 84 Fed. Reg. 32,875 (Dep't of Commerce July 10, 2019). .............................. 8, 14

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain
  Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon
  Steel Standard Pipes and Tubes from India: Initiation of Circumvention Inquiries on the
  Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 47,711 (Dep't of Commerce Aug.
  4, 2022) (P.R. 26). ............................................................................................. 2

*Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Affirmative
  Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,270 (Dep't
  of Commerce Nov. 9, 2023) ............................................................................................. 2, 3

iii

*Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 83 Fed. Reg. 57,425 (Dep't of Commerce Nov. 15, 2018). ................................................................................................................... 14

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 ............................................ 17

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |
|---|---|
| SEAH STEEL VINA CORPORATION, ) | |
| ) | Court No. 23-00256 |
| Plaintiff, ) | |
| ) | PUBLIC VERSION BPI |
| v. ) | Omitted at pages 11-12, |
| ) | 18-19 |
| UNITED STATES, ) | |
| Defendant, ) | |
| and ) | |
| BULL MOOSE TUBE COMPANY, *et al.*, ) | |
| Defendant-Intervenors. ) | |

## DEFENDANT'S RESPONSE IN SUPPORT
## OF THE REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments of

plaintiff SeAH Steel Vina Corporation (SeAH), (SeAH Comments) (ECF No. 85), concerning

the Department of Commerce's final results of the redetermination filed in accordance with this

Court's order in *SeAH Steel VINA Corp. v. United States*, 815 F. Supp. 3d 1369 (Ct. Int'l Trade

2025) (ECF No. 76) (remand order), which remanded to Commerce the final determination in the

circumvention inquiry of the antidumping duty order on certain welded carbon steel standard

pipes and tubes (CWP) from Korea.  *See Certain Circular Welded Non-Alloy Steel Pipe From

the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping*

*Duty Order*, 88 Fed. Reg. 77,270 (Dep't of Commerce Nov. 9, 2023) (P.R. 211)[1] and

accompanying Issue and Decision Memorandum (IDM) (P.R. 210).  As discussed below, we

respectfully request that the Court sustain the final results of Commerce's remand

redetermination because it complies with the Court's remand order, is supported by substantial

evidence, and is in accordance with law.  *See* Final Results of Redetermination Pursuant to Court

Remand, Apr. 30, 2026, ECF No. 80 (Remand Results) (P.R.R. 2).  Accordingly, the Court

should sustain Commerce's remand results and enter judgment for the United States.

**BACKGROUND**

**I.      Commerce's Final Results**

In 1992, Commerce published an antidumping duty order on CWP from Korea.  *Certain*

*Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and*

*Venezuela, and Amendment to Final Determination of Sales at Less Than Fair Value: Certain*

*Circular Welded Non-Alloy Steel Pipe from Korea,* 57 Fed. Reg. 49,453 (Dep't of Commerce

Nov. 2, 1992) (*Order*).  Defendant-Intervenors alleged circumvention of the *Order* during the

period 2017-2021.  Circumvention Inquiry Request (May 17, 2022) (P.R. 1, C.R. 1).  Commerce

initiated a circumvention inquiry to determine whether imported CWP completed in Vietnam

from Korea-origin hot rolled steel (HRS) circumvented the *Order*.  *Circular Welded Carbon*

*Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy*

*Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes*

*from India: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty*

*Orders,* 87 Fed. Reg. 47,711 (Dep't of Commerce Aug. 4, 2022) (P.R. 26).  Commerce selected

---

[1]  Record citations of P.R./C.R. designate citation to the initially filed administrative record index filed on February 14, 2024.  ECF No. 28.  Record citations of P.R.R./C.R.R. designate citations to the remand record index filed on May 11, 2026.  ECF No. 81.

SeAH as a mandatory respondent based upon U.S. Customs and Border Protection (CBP) data of CWP from Vietnam during the period of inquiry, January 1, 2017, through December 31, 2021. Respondent Selection Memorandum, (P.R. 35, C.R. 13).

In its preliminary determination, Commerce found circumvention. *Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 21,989 (Dep't of Commerce Apr. 12, 2023) (Preliminary Determination), (P.R. 152) and accompanying PDM, (P.R. 148). In the final determination, Commerce continued to find circumvention. Commerce found that the factors under 19 U.S.C. § 1677j(b)(3) were mixed, however the factors did not detract from finding that action was appropriate to prevent evasion of the *Order* pursuant to § 1677j(b)(1)(E). IDM at 35.

## II.    Remand Order

On December 16, 2025, this Court remanded Commerce's final determination. Although the Court sustained Commerce's affirmative findings concerning the factors under § 1677j(b)(1)(A-D), the Court remanded the final determination for Commerce to identify and explain what other factors, besides those under § 1677j(b)(1)(A)-(D), supported its affirmative finding under § 1677j(b)(1)(E). *See* Remand Order at 27-28. Specifically, the Court found that "{Commerce's} assertion that the (b)(3) factors did not detract from a finding that an action is appropriate, assumes that the action was found to be appropriate on some other grounds {besides those enumerated under section 1677(b)(1)(A)-(D)}," and that "{b}ecause section 1677j(b)(1)(E) must be construed to have some operative effect," Commerce must reconsider or further explain its basis for the affirmative circumvention finding. *Id*. Additionally, the Court instructed that "{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors," that Commerce

3

should explain the basis for the time periods used and reconcile the statutory requirements with its consideration of the 2012-2016 versus 2017-2021 periods, as well as changes within the latter period, *i.e.*, 2017-2021. Remand Order at 27 n.21. Moreover, the Court emphasized that § 1677j(b)(3)(C) requires consideration of "whether imports into the foreign country of merchandise {from the country subject to the order} have increased after the initiation of the investigation which resulted in the issuance of such order or finding." *Id*.

### III.    Remand Redetermination

On remand, Commerce reopened the record to permit parties to place information regarding other grounds apart from those under 19 U.S.C. § 1677j(b)(1)(A)-(D) that are relevant to determine whether an action is warranted to prevent evasion of the *Order*. Feb. 6, 2026 Letter (P.R.R. 10). No party submitted information in response. On March 9, 2026, Commerce placed on the record CBP entry data for SeAH from 2017-2021 and data from 2025, and publicly available U.S. International Trade Commission (USITC) import data for 2025. U.S. Customs and Border Protection Entry Data (Mar. 9, 2026) (Commerce's Entry Data), (P.R.R. 8-9, C.R.R. 5-11). On March 13, 2026, in response to the data placed on the record on March 9, 2026, defendant-intervenors submitted data showing the quantity of HRS exported from Korea to Vietnam for the 2012-2016 and 2017-2021 periods, and SeAH submitted its quantity of CWP exported to the United States for the years 2022-2025. Defendant-Intervenor's New Factual Information (Mar. 13, 2026), (P.R.R. 6) at pdf. pp. 19-21; SeAH New Factual Information (Mar. 13, 2026), (P.R.R. 7, C.R.R. 4).

On March 31, 2026, Commerce issued draft results of redetermination in which it re-evaluated the § 1677j(b)(3) factors and found that action was appropriate to prevent evasion of the *Order*, pursuant to 19 U.S.C. § 1677j(b)(1)(E), relying on the existing data on the record and

4

the new factual data submitted in the remand proceeding. *See* Draft Redetermination, (P.R.R. 5, C.R.R. 3) at 6. Commerce invited comments from interested parties. *Id.* at 10. On April 14, 2026, interested parties filed comments on the draft redetermination. Defendant-intervenor agreed with Commerce's draft remand redetermination. Defendant Intervenor's Draft Redetermination Comments (Apr. 14, 2026), (P.R.R. 3). However, SeAH disagreed with Commerce's findings and argued that Commerce is bound by the period of inquiry and should not consider data post-2021. SeAH Draft Redetermination Comments (Apr. 14, 2026), (P.R.R. 4, C.R.R. 2).

On April 30, 2026, Commerce filed the Remand Results. Commerce addressed interested parties' comments and determined that it would be improper for Commerce to rely upon the USITC import data for 2025, CBP data for 2025, and SeAH's 2022-2025 data on CWP exports to the United States. Remand Results at 14. Commerce reevaluated the rest of the data on the record and further explained which factors, besides those under 19 U.S.C. § 1677j(b)(1)(A)-(D) of the Tariff Act of 1930, as amended (the Act), support an affirmative finding under § 1677j(b)(1)(E). Commerce did this due to the absence of "any new information, as requested from interested parties, demonstrating other grounds, apart from those under section {1677j}(b)(1)(A)-(D)} of the {U.S. code} that warrant action to prevent evasion{.}" *Id.* at 6.

Commerce confirmed that record evidence regarding patterns of trade show that U.S. imports of CWP from Vietnam have increased. Remand Results at 7, 14-15. In examining § 1677j(b)(3)(C), Commerce found on reexamination that the cumulative quantity of HRS exports from Korea to Vietnam from all companies decreased from 21.7 percent between the comparison period to the inquiry period, while the cumulative quantity of HRS exports from Korea to the rest of the world decreased 5.5 percent from the comparison period to the inquiry

5

period. *See id*. at 15. Thus, Commerce found that Vietnam's share of total Korean HRS exports decreased from 12.33 percent to 10.44 percent. *See id*. Analyzing changes within the 2017-2021 inquiry period, Commerce found that SeAH's quantity of HRS imported from Korea increased from 2017 to 2018, then decreased from 2018 to 2019, then increased from 2019 to 2020, and then dropped precipitously from 2020 to 2021. *See id*. Accordingly, because the quantity of HRS imported from Korea fluctuated during the inquiry period, showing both increases and decreases in different years, Commerce analyzed data across and within the period of inquiry and found that the § 1677j(b)(3)(C) factor was not met. *See id*. However, Commerce continued to find that action is appropriate to prevent evasion of the *Order* under § 1677j(B)(1)(E). *See id.*

Commerce considered evidence under all § 1677j(b)(3) factors, including those that detracted from its conclusion, but determined that on the totality of the case-specific record before it, the evidence under those factors was not sufficiently dispositive to overcome the evidence of substantial increase shown under § 1677j(b)(3)(A). *Id*. at 16. With respect to § 1677j(b)(3)(B), Commerce did not find record evidence showing that SeAH is affiliated with any company located in Korea that produces or exports HRS. *See id*. at 8-9.

Commerce also further explained that the selection of the time periods analyzed for the § 1677j(b)(3) factors is within its discretion, and why adopting an overly restrictive view of § 1677j(b)(3)(C) would impractically limit Commerce's ability to select appropriate time periods of inquiry and comparison based on timing of the alleged circumvention activity, which can occur even years after an underlying investigation is initiated. *See id*. at 10.

6

**ARGUMENT**

### I.    Standard of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002). Accordingly, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade 2011) (citation modified). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The substantial evidence standard is a "high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted). "Commerce's finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence." *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018) (citation modified).

Moreover, "'when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard.'" *Mosaic Co. v. United States*, 160 F.4th 1340, 1346 (Fed. Cir. 2025) (quoting *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, *CO*, 605 U.S. 168, 179-80 (2025)).

### II.    Legal Framework

To prevent circumvention of antidumping and countervailing duty orders, the statute permits Commerce to include within the scope of an order merchandise completed in a foreign country other than the order country if certain criteria are met. 19 U.S.C. § 1677j(b). This Court

7

has previously sustained Commerce's findings that the criteria under 19 U.S.C. § 1677j(b)(1)(A) – (D) have been met.  As such, relevant here is the remaining criteria under 19 U.S.C. § 1677j(b)(1)(E), which are additional, non-exhaustive, discretionary factors to consider in weighing whether to find circumvention.  Commerce thus will "take into account such factors as"

> (A) the pattern of trade, including sourcing patterns,
>
> (B) whether the manufacturer or exporter of the merchandise  . . . described in {19 U.S.C. § 1677j(b)(1)(B)} is affiliated with the person who uses the merchandise described in {19 U.S.C. § 1677j(b)(1)(B)} to assemble or to complete in the foreign country the merchandise that is subsequently imported into the United States; and
>
> (C) whether imports into the foreign country of the merchandise described in {19 U.S.C. § 1677(b)(1)(B)} have increased after the initiation of the investigation that resulted in the issuance of such order.

19 U.S.C. § 1677j(b)(3) (citation modified).

In line with this congressional mandate, Commerce has a long-standing practice of not allowing one single factor in its analysis to be controlling.  *See* PDM at 20.  Commerce bases its determination on the totality of the circumstances.  *See, e.g., Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Affirmative Preliminary Determination of Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders*, 84 Fed. Reg. 32,875 (Dep't of Commerce July 10, 2019), and accompanying Preliminary Issues and Decision Memo at 20; unchanged in *Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Affirmative Final Determinations of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 84 Fed. Reg. 70,934 (Dep't of Commerce Dec. 26, 2019), and accompanying Issues and Decision Memorandum at 69-70.

III.    **Commerce's Remand Redetermination Is Lawful and Supported by Substantial Evidence**

Commerce's remand results are lawful and supported by substantial evidence.  Consistent with this Court's remand order, Commerce re-examined the record, explained the basis for the time periods used for its analysis, and identified substantial evidence supporting its affirmative finding under the § 1677j(b)(3) factors, which bolstered its affirmative analysis under 1677j(b)(1)(A)-(D).  Commerce explained that while not all (b)(3) factors were met, not all (b)(3) factors were required to support an affirmative finding.  Moreover, as we further explain below, substantial evidence showing a significant increase in SeAH's exports supported Commerce's conclusion based upon the totality of the circumstances that action is appropriate to prevent evasion of the *Order* pursuant to § 1677j(b)(1)(E).

A.    **Commerce's Section 1677j(b)(3) Analysis Satisfies Section 1677j(b)(1)(E) and the Court's Remand Order**

Commerce reexamined the old and new record evidence to determine whether action is appropriate to prevent evasion in line with the Court's instruction to "reconsider or further explain its basis for the affirmative circumvention finding" in light of the operative effect of § 1677j(b)(1)(E) and to identify what factors beyond § 1677j(b)(1)(A)-(D) support its finding. *See* Remand Order at 27-28.  With no new factual information being submitted by the parties beyond those under § 1677j(b)(1)(A)-(D), Commerce chose to "further explain" by relying on the factors in 19 U.S.C. § 1677j(b)(3), which are distinct from factors in 19 U.S.C. § 1677j(b)(1)(A)-(D), to determine whether action is appropriate to prevent evasion of the Order. *Id.*; *see also* Remand Results at 6, 14.

SeAH argues, without merit, that Commerce's reliance on the factors in 19 U.S.C. § 1677j(b)(3) "fails" to satisfy 19 U.S.C. § 1677j(b)(1)(E) for two reasons.  SeAH Comments at

9

4.  First, SeAH argues that the Court "already found that Commerce's reliance on section 1677j(b)(3) factors that were 'mixed and inclusive' was insufficient to support an affirmative finding under section 1677j(b)(1)(E)." *Id.*  Second, SeAH argues that Commerce "identified no new evidence to support a finding under § 1677j(b)(1)(E)." *Id.*

As to SeAH's first argument, SeAH fails to acknowledge that the § 1677j(b)(3) factors, which the statute expressly requires Commerce to consider, are *by definition* third country circumvention factors beyond those set out in 1677j(b)(1)(A-D).  SeAH's argument essentially reads § 1677j(b)(3) requirements out of the statute, by proposing an additional unwritten requirement to the statute.

Further, SeAH implies that § 1677j(b)(1)(E) having an operative effect precludes Commerce from reexamining record evidence in light of the § 1677j(b)(3) factors to determine whether action is appropriate to prevent evasion in this case.  But this Court explicitly recognized in its Remand Order that Commerce could comply with its remand by reweighing the (b)(3) factors.  *See* Remand Order at 27-28 n.21 ("To the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used").

Commerce did so here and was not required to look for factors beyond those set out in § 1677j(b)(3), once it complied with the Court's instructions and identified the substantial evidence on this record that substantiates its affirmative finding of third-country circumvention. If SeAH desired another result, it should have submitted new information about other grounds beyond those found in § 1677j(b)(1)(A)-(D) that Commerce could have considered.  Remand Results at 6.  SeAH "bear{s} the burden of developing an adequate record" and there is no "requirement that Commerce seek out additional information where an interested party has not

10

made a showing that additional information is required." *Coalition of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340, 1357 (Ct. Intl. Trade 2020).

Second, it is incorrect that Commerce "identified no new evidence" as Commerce reopened the record and placed on the record entry data obtained from U.S. Customs and Border Protection (CBP) for SeAH covering the periods 2017-2021 and as well as from 2025, and publicly available U.S. International Trade Commission (USITC) import data for 2025, for the Harmonized Tariff Schedule of the United States subheadings under which imports of CWP primarily entered the United States. SeAH Comments at 4; Remand Results at 5-6, 14. As SeAH notes, Commerce agreed to not rely on post-inquiry period data after 2021, but it is not true that Commerce "identified no new evidence" as Commerce still placed on the record and considered the CBP entry data from 2017-21. CWP Data (March 9, 2026), (C.R.R. 7-10); SeAH Comments at 5; Remand Results at 5, 14. Commerce reconsidered the record evidence from the inquiry period and the 2012-2016 comparison period and properly evaluated that evidence against the factors set out in § 1677j(b)(3).

Regarding patterns of trade data evaluated under § 1677j(b)(3)(A), Commerce explained that aggregated data for the 2012-2016 and 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent from the comparison period to the inquiry period. *See* Remand Results at 7, 14. Additionally, Commerce found that the quantity of U.S. imports of CWP from Vietnam in relation to the quantity of U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent. *See id.* at 7, 14-15. Commerce then analyzed SeAH's export sales from Vietnam of CWP produced from Korea-origin HRS to the United States and identified record evidence demonstrating that those sales increased substantially, (by [    ] percent) during the inquiry period. *See id.* at 7, 15 (citing Preliminary Analysis

11

Memorandum for SeAH, (Dep't of Commerce April 6, 2023) (Prelim. Analysis Memo) (P.R. 149, C.R. 98) at 6; Business Proprietary Information Considered in Final Results of Redetermination, (Dep't of Commerce April 30, 2026) (C.R.R. 1) (BPI Memo)).

While Commerce acknowledged that the factors under § 1677j(b)(3)(B) and 1677j(b)(3)(C) were not met on this particular record before it, Commerce also took into account the substantial record evidence from SeAH indicating circumvention under 1677j(b)(3)(A) and concluded that the staggering [      ] percent increase in SeaH's export sales of CWP produced from Korea-origin HRS to the United States across the period of inquiry was remarkable enough that it could not be overcome by Commerce's negative findings on other factors. *See* Remand Results at 7 (citing BPI Memo at 1). Even if SeAH would balance this evidence differently than Commerce, "drawing two inconsistent conclusions from the evidence does not prevent {Commerce's} finding from being supported by substantial evidence." *See Mitsubishi Materials Corp. v. United States*, 820 F. Supp. 608, 613 (Ct. Int'l Trade 1993) (citing *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966)). SeAH suggests that this Court should substitute its judgment for that of the agency by reweighing the evidence supporting Commerce's § 1677j(b)(3) analysis to reach a different result, but the substantial evidence standard does not permit this approach. *See Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1359 (Fed. Cir. 2023) (*Al Ghurair II*) (citing *Inland Steel Indus., Inc. v. United States*, 188 F.3d 1349, 1359 (Fed. Cir. 1999)).

### B.    Commerce's Section 1677j(b)(3) Reconsideration Complies with the Court's Remand Instructions Regarding Comparison Periods

#### 1.    Commerce Adequately Explained Its Selection of Comparison Periods

SeAH claims that Commerce did not follow the Court's instruction to explain the basis for its selection of a comparison time period and reconcile that basis with the statutory language,

12

but Commerce explained in its remand results that it properly exercised its discretion in line with § 1677j(b)(3)(C) to select a comparison time period "after the initiation of the investigation which resulted in the issuance of such order or finding." *See* Remand Results at 9 (citing 19 U.S.C. § 1677j(b)(3)(C)). SeAH relies on *Al Ghurair II* to argue that Commerce did not articulate a satisfactory explanation for its selection of the 2012-2016 comparison period. *See* SeAH Comments at 6-7 (Commerce did not explain "why 2012 is the appropriate baseline starting point, or why 2016 is the appropriate cutoff for the base period") (citing *Al Ghurair II* at 1358-1359). But here, as in *Al Ghurair*, Commerce identified an appropriate comparison time frame based on the requirements of § 1677j(b)(3) and the record before it, which included Defendant-intervenor's 2022 Circumvention Inquiry Request alleging circumvention activity in 2017-2021, compared to the prior five-year period (2012-2016). *See* Circumvention Inquiry Request at 10. The Federal Circuit's decision is silent on what is required of Commerce in selecting the inquiry period. On the contrary, *Al Ghurair II* highlights that the statute, 19 U.S.C. § 1677j(b)(3), "does not identify any particular time periods at all for Commerce to consider." *Al Ghurair II* at 1358-59. As this Court has long held, "absent a showing of unreasonableness on the part of the agency, its choice of methodology shall be sustained." *NTN Bearing Corp. of Am. v. United States,* 747 F. Supp. 726, 736 (Ct. Int'l Trade 1990). SeAH has not shown, and indeed cannot show, that Commerce's methodological choice of time period is unreasonable, despite its unsupported arguments as to Commerce's alleged arbitrary choice of time periods. SeAH Comments at 6.

Here, Commerce identified from the record before it evidence supporting the selection of a five-year period of inquiry for the third-country circumvention investigation (2017-2021), and then properly exercised its discretion to select what it determined was the most recent five-year

13

comparison time period (2012-2016) in line with its reasonable interpretation of section 1677j(b)(3). *See* Remand Results at 9-10. Commerce explained that using a period of time originating to when the Order was first issued in 1992 was inappropriate because "companies subject to circumvention inquiry are not required to maintain such data for taxation and financial reporting purposes." *Id.* at 10. Further, Commerce explained that it must take a flexible approach in defining any time period, in accordance with the statute, because "foreign companies can commence circumvention at any time after the initiation of an investigation and the circumvention inquiry requester should be able to propose the comparison periods accordingly." *Id.* Commerce thus relied upon its precedent in a symmetrical time period immediate before the years under inquiry for the comparison period. *Id.* at 9-10 (citing *Oil Country Tubular Goods from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 86 Fed. Reg. 43,627 (Dep't of Commerce Aug. 10, 2021), and accompanying PDM; *Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 83 Fed. Reg. 57,425 (Dep't of Commerce Nov. 15, 2018), and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti Circumvention Inquiry*, 84 Fed. Reg. 33,920 (Dep't of Commerce July 16, 2019); and *Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 84 Fed. Reg. 58,130 (Dep't of Commerce Oct. 30, 2019), and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti-Circumvention Inquiry*, 85 Fed. Reg. 9,737 (Dep't of Commerce Feb. 20, 2020)). In line with its cited precedent, it is reasonably discernable that

14

Commerce selected the previous five-year period to the period of inquiry because that choice permitted Commerce to reasonably analyze whether circumvention was occurring.

Commerce's reasoning has been upheld by this Court. *See Deacero S.A.P.I. de C.V. v. United States*, No. 24-00212, 2026 WL 1670099, at *18 (Ct. Int'l. Trade May 26, 2026) (explaining that "Commerce provided a reasonable basis for its selected timeframe explaining that '{d}efined periods of inquiry and comparison based around when circumvention was most likely to occur allow Commerce to efficiently conduct a circumvention inquiry and evaluate the activity that is alleged to constitute circumvention.'") (citation omitted). This Court has previously sustained Commerce's use of a five-year period for analyzing patterns of trade. *See Hanon Sys. Ala. Corp. v. United States*, 794 F. Supp. 3d 1348, 1366 (Ct. Int'l Trade 2025) (sustaining the use of a symmetrical five-year pre-initiation period (July 2012 through March 2017) and post-initiation period (April 2017 through December 2021)). SeAH has not proposed any alternative comparison period for Commerce's consideration. *See* SeAH Comments at 6. Nor did SeAH articulate any inconsistency of Commerce's reasonable choice of a five-year comparison time period with the statute or record evidence. Commerce's explanation is reasonable and aligns with the Court's Remand Order.

### 2. Commerce Properly Considered The Within-Period Annual Data in Its § 1677j(b)(3) Analysis

This Court instructed Commerce to consider "'whether imports into the foreign country of the merchandise {from the country subject to the order} have increased after the initiation of the investigation which resulted in the issuance of such order or finding.' 19 U.S.C. § 1677j(b)(3)(C)." Remand Order at 27-28 n.21. Per the Court's remand instruction, Commerce provided "analysis detailing changes in the latter period, *i.e.,* 2017-2021" when analyzing the time period it selected in line with § 1677j(b)(3)(C). *See* Remand Results at 15.

15

SeAH nevertheless argues that Commerce's final remand redetermination does not comply with the Court's instruction because Commerce based its section 1677j(b)(3)(A) patterns of trade analysis on a comparison of changes between the aggregate 2012-2016 comparison period and the 2017-2021 period of inquiry for this circumvention investigation. *See* SeAH Comments at 7-8. This is incorrect because the Court's instruction in footnote 21 was made in the context of referencing section 1677j(b)(3)(C), and Commerce is not required by statute to further disaggregate its analysis for the section 1677j(b)(3)(A) factor. *See* Remand Order at 27-28 n.21. And this Court has recognized that "Section 1677j(b)(3)(A) does not mandate the use of a specific time period to analyze the pattern of trade." *See Al Ghurair Iron & Steel LLC v. United States,* 536 F. Supp. 3d 1357, 1380 (Ct. Int'l. Trade 2021) (*Al Ghurair I*).

Commerce provided a year-by-year analysis of changes during the 2017-2021 period of inquiry for § 1677j(b)(3)(C) in its remand results, finding that "SeAH VINA's quantity of HRS imported from Korea increased from 2017 to 2018, then decreased from 2018 to 2019, then increased from 2019 to 2020, and then dropped precipitously from 2020 to 2021." *See* Remand Results at 15. Commerce complied with this Court's remand order by engaging in a within-period analysis but ultimately reasoned that a negative finding under the section 1677j(b)(3)(C) factor was not enough to overcome the substantial evidence supporting Commerce's affirmative patterns of trade finding under § 1677j(b)(3)(A). *See* Remand Results at 15-16. Thus, SeAH's claim that Commerce "ignored the within-period annual data that contradicts a circumvention theory" is without merit. SeAH Comments at 7.

C.    **Commerce Properly Determined that its Section 1677j(b)(3)(C) Analysis Does Not Sufficiently Outweigh the Substantial Evidence Indicating Circumvention under Section 1677j(b)(3)(A).**

16

SeAH next claims that Commerce's section 1677j(b)(3)(C) analysis "compels a negative finding" on third-country circumvention. *See* SeAH Comments at 8. But this argument stands on SeAH's unsupported assumptions that "Section 1677j(b)(3)(C) is the most probative statutory factor for evaluating third-country circumvention," and that it is not possible under the statute for "a single affirmative factor under section 1677j(b)(3) {to} carry an affirmative determination when the most probative factor is not met." *See* SeAH Comments at 9-10. This argument misconstrues section 1677j(b)(3), as the factors are not hierarchical, and overstates the weight that Commerce is required to give the section 1677j(b)(3)(C) factor.

The statute does not require Commerce to weigh the section 1677j(b)(3)**(C)** factor more heavily than the other (b)(3) factors. Although the statute instructs Commerce to *consider* all of the factors under § 1677j(b)(3) when reaching a determination, nothing in the statute indicates that all factors must be affirmative to substantiate an affirmative finding under section 1677j(b)(1)(E) of the Act. *See* Remand Results at 16 (citing 19 U.S.C. §§ 1677j(b)(1)(E), 1677j(b)(3)).[2] To the contrary, the statute contemplates that Commerce consider and weigh evidence relating to all factors based on the record before it.[3] Commerce explained that its negative finding on § 1677j(b)(3)(C) did not change its finding that action is appropriate to prevent evasion of the Order pursuant to § 1677j(b)(1)(E) "because Commerce does not find {its

---

[2] Nor does it necessarily follow that § 1677j(b)(2) and 1677j(b)(3) factors must be examined in a vacuum. *See Al Ghurair II*, 65 F.4th at 1358-62 (analyzing § 1677j(b)(2) and 1677j(b)(3) factors together to determine whether the factors "evidence{} circumvention."). Considering that Congress intended for Commerce to consider the "particular circumvention scenario," Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (SAA), at 893 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, in evaluating the minor or insignificant factors, it would be bizarre for Congress to have arbitrarily limited the information Commerce could consider in its determination.

[3] Indeed, no single factor controls even under 19 U.S.C. § 1677j(b)(2). *See* 19 C.F.R. § 351.225(h); SAA at 893.

17

negative finding under § 1677j(b)(3)(C)} to be dispositive, particularly in light of {its} finding under the {§ 1677j(b)(3)(A)} factor." *See id*. at 15-16.

SeAH implies that Commerce treated the section 1677j(b)(3)(C) factor as "a tiebreaker to be set aside when inconvenient." *See* SeAH Comments at 10. But that is not what Commerce did. Rather, Commerce appropriately weighed the evidence, including the evidence that showed the [    ] percent increase in SeaH's export sales of CWP produced from Korea-origin HRS to the United States across the period of inquiry, and provided this Court with a reasonably discernable path to its conclusion that action is appropriate to prevent evasion of the Order. Although some of the record evidence analyzed may fairly detract from an affirmative finding of third-country circumvention, the totality of the record here supports an affirmative circumvention finding. This is because Commerce's analysis of factors under §§ 1677j(b)(1)(A)-(D), when combined with "the strength of the data supporting {Commerce's} finding under the {patterns of trade factor}" led Commerce to properly find that action is appropriate to prevent evasion of the *Order* under section 1677j(b)(1)(E). Thus, Commerce properly considered the record evidence detracting from an affirmative finding on § 1677j(b)(3)(C) but still properly determined that its findings under the § 1677j(b)(3)(C) factor did not sufficiently outweigh the substantial company-specific evidence indicating circumvention under section 1677j(b)(3)(A).

### D.    Commerce Properly Considered Aggregate Five-Year Comparison Metrics as An Additional Basis for Its 1677j(b)(3)(A) Finding.

SeAH claims that "{e}ven setting aside the within-period data, the aggregate metrics Commerce relies upon are thin." *See* SeAH Comments at 10. But SeAH's argument that an 8.2 percent increase in U.S. import volumes of CWP from Vietnam and a 0.9 percent increase in Vietnam's share of U.S. imports of CWP from the world "do not constitute the kind of significant, targeted increase in trade flows that characterizes circumvention" misses the point.

18

*Id*.  On remand, Commerce reviewed the record as a whole and analyzed the country-wide and company-specific data to evaulate the section 1677j(b)(3)(A) patterns of trade factor.  *See* Remand Results at 7.  Evaluating these data together, Commerce found that record evidence demonstrated circumvention of the Order because: (1) the aggregate import data show a significant increase in the quantity of U.S. imports of CWP from Vietnam from the 2012-2016 period to the 2017-2021 period; (2) the aggregate import data show a significant increase in the share of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world from the 2012-2016 period to the 2017-2021 period; and (3) SeAH's CWP exports to the United States produced from HRS imported from Korea increased significantly from 2017 to 2021.  *See id*.  Although SeAH's arguments suggest that Commerce should have placed less weight upon the [    ] percent increase in SeAH's CWP exports to the United States produced from Korea-origin HRS and attributed more significance to "Vietnam's general growth as a CWP exporter over time," Commerce explained why it would have been unreasonable for it to do so on this record.[4]  SeAH Comments at 10; Remand Results at 7, 16.  Commerce explained that "{t}hese significant increases indicate that Korea-origin HRS is likely to have been made into CWP not in Korea but in Vietnam and then exported to the United States to evade the *Order*."  *See* Remand Results at 7.  SeAH points to general fluctuations within the period of inquiry but fails to demonstrate that Commerce was required to attribute more weight to fluctuations within the 2017-2021 inquiry period or to evidence concerning import volumes than it did to the significant increase in SeAH's exports that Commerce observed from 2017-2021. *See* SeAH Comments at 11.

---

[4] In making this argument in its administrative remand comments, SeAH relies on 2025 import data that it also told Commerce *not* to consider on this review, leaving Commerce then with an unsupported allegation of fact when Commerce acceded to the parties' argument as to the time period.  *See* SeAH Draft Redetermination Comments at 8-9.

### E.    Commerce Correctly Analyzed and Weighed the Affiliation Factor Under 1677j(b)(3)(B)

SeAH does not challenge Commerce's finding of non-affiliation on this record, but it improperly concludes that Commerce's finding under § 1677j(b)(3)(B) "undercuts the evasion theory." *See* SeAH Comments at 11.  SeAH further argues without support that "{t}he section 1677j(b)(3)(C) factor compels a negative finding." *See id*.  Although affiliation is a relevant factor that Commerce considers, neither the presence nor absence of affiliation fully resolves the issue of whether circumvention is occurring.  As Commerce explained in its remand results, "while affiliation is a factor to be investigated and weighed, we do not consider it to be dispositive as to the question of whether an affirmative determination of circumvention is appropriate to avoid evasion of the *Order* without taking into consideration other factors." Remand Results at 9.  Here, Commerce considered its negative or neutral finding of affiliation under section 1677j(b)(3)(B) in light of the substantial record evidence supporting its finding that third-country circumvention is likely based on the patterns of trade it evaluated under § 1677j(b)(3)(A) and concluded that its finding of non-affiliation under § 1677j(b)(3)(B) was not "sufficiently dispositive to overcome the substantial increase shown under {§ 1677j(b)(3)(A)} or to change {its} circumvention determination. *See* Remand Results at 8, 16.  In accordance with 19 U.S.C. § 1677j(b)(3), "Commerce reaches its determination regarding circumvention based on the totality of the evidence as it applies to all the factors." IDM at 38; *see also* Remand Results at 8-9.  SeAH advocates for this Court to reach a different result on this record by attributing different weight to each of the section 1677j(b)(3) factors, but SeAH fails to demonstrate that Commerce's affirmative circumvention determination was not supported by substantial evidence.

**CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
</table>

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

Of Counsel:

ALYSON FINLEY
Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
United States Department of Commerce

August 10, 2026

s/ Tate Walker
TATE WALKER
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-0163

*Attorneys for Defendant*

21

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 5,839 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).


                        s/ Tate N. Walker
                        TATE N. WALKER