UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE MARK A. BARNETT, JUDGE

SEAH STEEL VINA CORPORATION,

*Plaintiff,*

v.

UNITED STATES,

*Defendant,*

*and*

BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; NUCOR TUBULAR PRODUCTS INC.,

*Defendant-Intervenors*

PUBLIC VERSION

Court No. 23-256

JOINT REMAND APPENDIX

August 24, 2026

*SeAH Steel VINA Corp. v. United States*, Court No. 23-256
PUBLIC JOINT REMAND APPENDIX

Table of Contents


| Tab. No. | Document | Date | P.R./ P.R.R. | C.R./ C.R.R. | Pages Included |
|---|---|---|---|---|---|
| 1 | Circumvention Inquiry Request | 17-May-22 | P.R. 1 | C.R. 1 | Pg. 1, 10-11 |
| 2 | DIPs' Response to Supplemental Questionnaire | 28-Jun-22 | P.R. 18-20 | C.R. 6-7, 9 | Cover Page, Exhs. Supp-1, Supp-3 |
| 3 | Response of SeAH Steel VINA Corporation to the Department's September 6 Initial Questionnaire | 7-Oct-22 | P.R.67-68 (63-64)[1] | C.R.18, 20 | Cover Page, Appx. 10 |
| 4 | Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty Order (PDM) | 6-Apr-23 | P.R. 148 (142) | | Pg. 1, 18-22 |
| 5 | Circumvention Inquiry on the Antidumping Duty Order on Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Analysis Memorandum for SeAH Steel VINA Corporation | 6-Apr-23 | P.R. 149 | C.R. 98 | Pg. 1, 6-7 |


[1] In response to its request for the administrative record, the Department of Commerce provided SeAH VINA with the record and accompanying "CRI Reports" indexing the released files. These reports should have corresponded directly to the record index filed with this Court. However, while preparing this joint remand appendix, the parties discovered that the record released to SeAH VINA did not contain data files. Consequently, the CRI reports relied upon by SeAH VINA when preparing its remand comments do not match the court-filed record index. The P.R. and C.R. numbers in the table of contents above reflect the official record index filed with this Court. Where SeAH VINA's record citations differ from the official record index filed with this Court, those citations are provided in parentheses for the Court's reference.

| | | | | | |
|---|---|---|---|---|---|
| 6 | Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order, 88 Fed. Reg. 77,270 | 9-Nov-23 | P.R. 211 | | All |
| 7 | Issues and Decision Memorandum for the Final Affirmative Determination of Circumvention of the Antidumping Duty Order on Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea (IDM) | 2-Nov-23 | P.R. 210 | | Pg. 1, 35-38 |
| 8 | Request for Information | 6-Feb-26 | P.R.R. 10 | | All |
| 9 | DIPs' Submission of New Factual Information | 13-Mar-26 | P.R.R. 6 | | All |
| 10 | Draft Remand Redetermination | 31-Mar-26 | P.R.R. 5 | C.R.R. 3 | All |
| 11 | Defendant-Intervenor's Draft Redetermination Comments | 14-Apr-26 | P.R.R. 4 | | All |
| 12 | SeAH Comments on Draft Remand Redetermination | 14-Apr-26 | P.R.R. 4 | C.R.R. 2 | All |
| 13 | Final Results of Redetermination Pursuant to Court Remand | 30-Apr-26 | P.R.R. 2 | | All |
| 14 | Business Proprietary Information Considered in Final Results of Redetermination | 30-Apr-26 | P.R.R. 1 | C.R.R. 1 | All |

TAB-1

Circumvention Inquiry Request
P.R. 1; C.R. 1

DOC Case No. A-580-809

Total No. of pages: 435

§781(b) Circumvention Inquiry
(Completion or Assembly in 3rd Country)

AD/CVD Operations Office I

**PUBLIC VERSION**
Business Proprietary Information Contained in Brackets Removed from Pages 18, 34, and 35, the Table of Exhibits, and Exhibits 8, 12, 13, 15, and 21.

May 17, 2022

**VIA ACCESS**
The Honorable Gina M. Raimondo
Secretary of Commerce
Attention: Enforcement and Compliance
APO/Dockets Unit, Room 18022
U.S. Department of Commerce
14th Street and Constitution Avenue, N.W.
Washington, D.C. 20230

Re: ***Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea – Request for Circumvention Inquiry***

Dear Secretary Raimondo:

On behalf of Bull Moose Tube Company ("Bull Moose"), Maruichi American Corporation ("Maruichi American"), Nucor Tubular Products Inc. ("Nucor Tubular"), Wheatland Tube Company ("Wheatland"), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (the "USW") (collectively, "Domestic Interested Parties"), we hereby request that the Department of Commerce ("Commerce") initiate a country-wide circumvention inquiry under Section 781(b) of the Tariff Act of 1930, as amended (the "Act") (19 U.S.C. § 1677j(b)), and 19

processing of HRS in Vietnam that seriously undermined the relief provided under the AD and CVD orders in question.

Yet, exports of HRS from Korea to Vietnam have remained substantial in the five-year period after the start of Commerce's investigations of circumvention concerning U.S. imports of corrosion-resistant steel products and cold-rolled steel products from Vietnam (2017-2021)[18] when compared to the prior five-year period (2012-2016). In fact, exports of Korean HRS surged from 577,806 metric tons ("MT") in 2018 to 720,981 MT in 2019 and 736,176 MT in 2020 before declining to 560,316 MT in 2021.[19] Moreover, shipment manifest data indicates that a significant volume of HRS from Korea was imported into Vietnam in 2020 and 2021 by companies that export CWP from Vietnam to the United States (*e.g.*, SeAH Vina and the Hoa Phat Group).[20] Vietnamese companies also increased their shipments of CWP to the United States by 8.2 percent during the period of 2017-2021.[21] Thus, after Commerce started investigating the circumvention of other AD and CVD orders involving the processing of HRS

[18] As discussed more fully below, the 2017-2021 period is also the five-year period immediately following the conclusion of the last investigation into imports of CWP from Vietnam.

[19] **Exhibit 7** (Korean Exports of HRS in Coils). Commerce initiated the circumvention inquiries concerning imports of cold-rolled steel and corrosion-resistant steel products from Vietnam manufactured using HRS from China on November 4, 2016. *See Certain Cold-Rolled Steel Flat Products from the People's Republic of China: Initiation of Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders,* 81 Fed. Reg. 81,057 (Dep't Commerce November 17, 2016) (*Initiation Notice*); *Certain Corrosion-Resistant Steel Products from the People's Republic of China: Initiation of Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders,* 81 Fed. Reg. 79,454 (Dep't Commerce November 14, 2016) (*Initiation Notice*). Commerce initiated the circumvention inquiries concerning imports of corrosion-resistant steel products from Vietnam manufactured using HRS from Taiwan and Korea on July 27, 2018. *See Certain Corrosion-Resistant Steel Products from the Republic of Korea and Taiwan: Initiation of Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders,* 83 Fed. Reg. 37,785 (Dep't Commerce August 2, 2018) (*Initiation Notice*).

[20] **Exhibit 8** (Vietnamese Imports of HRS from Korea by Consignee and Shipper (2020 - 2021) (showing imports of Korean-origin HRS by Cong Ty Tnhh Thep Seah Vietnam, Cong Ty Tnhh Mot Thanh Vien Ong Thep Hoa Phat Binh Duong and Chi Nhanh Cong Ty Tnhh Ong Thep Hoa Phat).

[21] **Exhibit 9** (U.S. Imports of CWP).

into certain downstream steel products in Vietnam, it appears that Vietnamese companies pivoted their HRS processing operations to other steel products like CWP for export to the U.S. market. The information reasonably available to the Domestic Interested Parties indicates that the circumvention practices found during Commerce's examination of Vietnamese companies' HRS processing operations with respect to corrosion-resistant steel products and cold-rolled steel products are similarly undermining the Korea CWP Order.

### D. The Lack of AD Duties for CWP from Vietnam Has Led to Significant Circumvention of the Korean CWP Order

In 2016, Commerce calculated AD rates as high as 113.18 percent in the final stage of its investigation of imports of CWP from Vietnam.[22] However, following the ITC's negative injury determination on negligibility grounds, no AD order was imposed on CWP exports from Vietnam.[23] This has created – at the same time that Commerce was investigating the Vietnamese steel industry's processing of imports of HRS into other steel products for export to the United States – a significant opportunity for Korean CWP producers and exporters to circumvent the Korea CWP order.

The lack of an AD order on imports of CWP from Vietnam has led to a substantial increase in U.S. imports of CWP from Vietnam in the five years following the 2016 investigation. Indeed, U.S. imports of CWP from Vietnam increased by 8.2 percent during the five-year period of 2017-2021 as compared to the previous five-year period of 2012-2016. During this same period, exports of HRS from Korea into Vietnam rose from 577,806 MT in 2018 to 720,981 MT in 2019 and 736,176 MT in 2020. Although Korean HRS exports declined

---

22 *Circular Welded Carbon-Quality Steel Pipe From the Socialist Republic of Vietnam: Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 75,042, 75,043 (October 28, 2016).

23 *See Circular Welded Carbon-Quality Steel Pipe from Oman, Pakistan, the United Arab Emirates, and Vietnam*, 81 Fed. Reg. 91,199 (December 16, 2016).

TAB-2

DIPs' Response to Supplemental Questionnaire
P.R. 18-20; C.R. 6-7, 9

DOC Case No. A-580-809

Total Pages: 39

§78l(b) Circumvention Inquiry
(Completion or Assembly in 3rd Country)

AD/CVD Operations Office I

**PUBLIC VERSION**
Business Proprietary Information Removed from Exhibit Supp. 2.

June 28, 2022

**VIA ACCESS**
The Honorable Gina M. Raimondo
Secretary of Commerce
Attention: Enforcement and Compliance
APO/Dockets Unit, Room 18022
U.S. Department of Commerce
14th Street and Constitution Avenue, N.W.
Washington, D.C. 20230

Re: ***Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea – Response to Supplemental Questionnaire***

Dear Secretary Raimondo:

On behalf of Bull Moose Tube Company ("Bull Moose"), Maruichi American Corporation ("Maruichi American"), Nucor Tubular Products Inc. ("Nucor Tubular"), Wheatland Tube Company ("Wheatland"), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (the "USW") (collectively, "Domestic Interested Parties"), we provide the following response to the supplemental questionnaire issued by the Department of Commerce ("Commerce") with respect to the Domestic Interested Parties' request for a circumvention

# EXHIBIT SUPP. 1

**Korean Exports of HRS in Coils**

| Source | Total Quantity 2012-2016 | Total Quantity 2017-2021 | % Change | Monthly Average 2012-2016 | Monthly Average 2017-2021 | % Change |
|---|---|---|---|---|---|---|
| | Quantity (Metric Tons) | | | | | |
| Vietnam | 4,251,271 | 3,330,643 | -21.7% | 70,855 | 55,511 | -21.7% |
| All Others | 30,238,901 | 28,580,241 | -5.5% | 503,982 | 476,337 | -5.5% |
| World Total | 34,490,172 | 31,910,884 | -7.5% | 574,836 | 531,848 | -7.5% |

Source: Global Trade Atlas (GTA) for hot-rolled sheet and strip in coils for HTS numbers 720810, 720825, 720826, 720827, 720836, 720837, 720838, 720839, 721114, 721119, 722530, 722599 and 722691.

| 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|---|
| Quantity (Metric Tons) | | | | | | | | | |
| 870,815 | 800,977 | 745,732 | 898,804 | 934,942 | 735,454 | 577,806 | 720,891 | 736,176 | 560,316 |
| 5,502,755 | 4,589,810 | 5,784,013 | 7,502,718 | 6,859,605 | 5,482,535 | 5,468,826 | 6,311,294 | 6,151,293 | 5,166,292 |
| 6,373,570 | 5,390,787 | 6,529,745 | 8,401,522 | 7,794,547 | 6,217,989 | 6,046,633 | 7,032,186 | 6,887,469 | 5,726,608 |

# EXHIBIT SUPP. 3

**U.S. Imports of CWP**

| Partner Country | Total Quantity 2012-16 | Total Quantity 2017-2021 | % Change | Monthly Average 2012-16 | Monthly Average 2017-2021 | % Change | Share of Total 2012-16 | Share of Total 2017-2021 |
|---|---|---|---|---|---|---|---|---|
| | Quantity (MTs) | | | | | | | |
| Korea | 277,580 | 389,957 | 40.5% | 4,626 | 6,499 | 40.5% | 7.8% | 11.3% |
| Vietnam | 281,799 | 304,987 | 8.2% | 4,697 | 5,083 | 8.2% | 7.9% | 8.8% |
| All others | 2,990,589 | 2,768,617 | -7.4% | 49,843 | 46,144 | -7.4% | 84.2% | 79.9% |
| World Total | 3,549,968 | 3,463,561 | -2.4% | 59,166 | 57,726 | -2.4% | 100.0% | 100.0% |

Note: Data shown above are U.S. imports for domestic consumption.
Source: ITC Dataweb for HTS numbers 7306.30.1000, 7306.30.5025, 7306.30.5032, 7306.30.5040, 7306.30.5055, 7306.30.5085, and 7306.30.5090.

| 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|---|
| Quantity (MTs) | | | | | | | | | |
| 51,265 | 51,516 | 39,866 | 55,737 | 79,196 | 145,415 | 68,451 | 65,160 | 54,630 | 56,301 |
| 38,243 | 59,371 | 54,927 | 75,653 | 53,604 | 89,240 | 67,581 | 59,763 | 44,847 | 43,556 |
| 626,022 | 519,391 | 553,151 | 700,190 | 591,835 | 769,880 | 627,870 | 467,892 | 435,003 | 467,973 |
| 715,530 | 630,279 | 647,943 | 831,580 | 724,635 | 1,004,534 | 763,902 | 592,815 | 534,480 | 567,830 |

TAB-3

Response of SeAH Steel VINA Corporation to the
Department's September 6 Initial Questionnaire
P.R. 67-68 (63-64); C.R. 18, 20

Barcode:4293394-02 A-580-809 CIRC - Anti Circumvention Inquiry - CWP Completed in Vietnam with Korea Origin HRS

Case No. A-580-809
Total Pages: 647
Circumvention Inquiry
(CWP Completed in Vietnam with Korean HRS)
AD/CVD Enforcement Office I
Proprietary Information Removed from Narrative and Appendices 1-2, 4-19, 21-39
Public Version

In the Matter of:

CIRCUMVENTION INQUIRY OF CERTAIN CIRCULAR WELDED NON-ALLOY STEEL PIPE FROM THE REPUBLIC OF KOREA - CWP COMPLETED IN VIETNAM WITH KOREAN HRS

**Public Version**

RESPONSE OF
SEAH STEEL VINA CORPORATION TO THE DEPARTMENT'S
SEPTEMBER 6 INITIAL QUESTIONNAIRE

VOLUME I

NARRATIVE RESPONSE AND APPENDICES 1 AND 2, AND 4 THROUGH 39

WINTON & CHAPMAN PLLC
1900 L Street, N.W. Suite 611
Washington, D.C. 20036
(202) 774-5500

Counsel for SeAH Steel VINA Corporation

October 7, 2022

Filed By: vmai@jmwinton.com, Filed Date: 10/7/22 11:12 AM, Submission Status: Approved

Appendix 10

SeAH VINA's Yearly HRS Purchases and CWP Sold

SeAH Steel VINA Corp.

Yearly Totals for the Quantity of HRS Purchased and Subject Pipes and Tubes Sold from January 1, 2017 through December 31, 2021

[

| YEAR | HRS Purchased (MT) | HRS Imported from Korea (MT) | Exports of Pipe and tube (MT) | Pipe and tube Exports to the U.S. (MT) | Pipe and tube exported to the U.S. produced from HRS imported from Korea (MT) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

]

TAB-4

Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea:
Preliminary Decision Memorandum for the Circumvention Inquiry
on the Antidumping Duty Order (PDM)
P.R. 148 (142)

Barcode:4363486-02 A-580-809 CIRC - Anti Circumvention Inquiry - CWP Completed in Vietnam with Korea Origin HRS

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-580-809
Circumvention Inquiry
CWP Completed in Vietnam with Korea Origin HRS
**Public Document**
E&C/OI: Team

April 6, 2023

**MEMORANDUM TO:** Abdelali Elouaradia
Deputy Assistant Secretary
for Enforcement and Compliance

**FROM:** James Maeder
Deputy Assistant Secretary
for Antidumping and Countervailing Duty Operations

**SUBJECT:** Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty Order

## I. SUMMARY

The U.S. Department of Commerce (Commerce) preliminarily determines that imports of certain circular welded non-alloy steel pipe (CWP) completed in the Socialist Republic of Vietnam (Vietnam) using hot-rolled steel (HRS) produced in the Republic of Korea (Korea) (inquiry merchandise) are circumventing the antidumping duty (AD) order on CWP from Korea.[1]

## II. BACKGROUND

On May 17, 2022, Commerce received an allegation from domestic interested parties[2] alleging circumvention of the *Order*.[3] On August 4, 2022, Commerce initiated a circumvention inquiry pursuant to section 781(b) of the Tariff Act of 1930, as amended (the Act), to determine whether certain imports of CWP completed in Vietnam using HRS manufactured in Korea are

[1] *See Notice of Antidumping Duty Orders: Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and Venezuela, and Amendment to Final Determination of Sales at Less Than Fair Value: Certain Circular Welded Non-Alloy Steel Pipe from Korea*, 57 FR 49453 (November 2, 1992) (*Order*).
[2] The domestic interested parties are Bull Moose Tube Company, Maruichi American Corporation, Nucor Tubular Products Inc., Wheatland Tube Company, and the United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC.
[3] *See* Domestic Interested Parties' Letter, "Request for Circumvention Inquiry," dated May 17, 2022 (Circumvention Allegation); and "Response to Supplemental Questionnaire," dated June 21, 2022 (Circumvention Allegation Supplement).

Filed By: Dmitry Vladimirov, Filed Date: 4/7/23 1:35 PM, Submission Status: Approved

performed in Vietnam represents a small proportion of the value of the merchandise imported into the United States.[110]

Based on our analysis of the five factors identified in section 781(b)(2) of the Act, as described above, we find that these factors weigh toward finding that the process of assembly or completion in Vietnam is minor or insignificant. Therefore, considering all five factors identified and addressed above, based on the totality of the circumstances, we preliminarily find that the process of assembly or completion in Vietnam is minor or insignificant pursuant to section 781(b)(1)(C) of the Act.

***781(b)(1)(D): Whether the Value of the Merchandise Produced in the Foreign Country Is a Significant Portion of the Total Value of the Merchandise Exported to the United States***

Under section 781(b)(1)(D) of the Act, in order to find circumvention, the value of the merchandise produced in the foreign country to which an AD and/or CVD order applies must be a significant portion of the total value of the merchandise exported to the United States.

For SeAH VINA, to ascertain the value of the merchandise produced in the foreign country, *i.e.*, HRS from Korea, we used the reported market economy HRS purchases from unaffiliated Korean suppliers in our analysis. We compared the weighted-average per-unit Korean HRS purchase value to the average value of the merchandise produced from Korean HRS in Vietnam and exported to the United States.[111] Based on our analysis of the record evidence, we find that the value of the Korean-origin HRS constitutes a significant portion of the value of the CWP made by SeAH VINA in Vietnam from Korean-origin HRS and exported to the United States.

**Other Factors to Consider**

Section 781(b)(3) of the Act directs Commerce to consider additional factors in determining whether to include merchandise assembled or completed in a foreign country within the scope of an order, such as:

> (A) the pattern of trade, including sourcing patterns; (B) whether the manufacturer or exporter of the merchandise … is affiliated with the person who uses the merchandise … to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States; and (C) whether imports into the foreign country of the merchandise … have increased after the initiation of the investigation which resulted in the issuance of such order.

---

[110] This analysis is consistent with the *SDGE from China Preliminary Circumvention Determination*, unchanged in *SDGE from China Final Circumvention Determination*.
[111] *See* SeAH VINA's Preliminary Analysis Memorandum for details of our calculations, which involve information for which SeAH VINA claimed business proprietary treatment.

(1) Pattern of Trade and Sourcing Patterns (781(b)(3)(A))

We analyzed patterns of trade by comparing publicly available U.S. import statistics of CWP from the periods 2012-2016 to 2017-2021 (*i.e.*, the period of inquiry). A comparison of the U.S. import data for the two five-year periods indicates that the cumulative quantity of U.S. imports of CWP from Vietnam during each period increased from 281,798 MT to 304,987 MT (*i.e.*, an increase of 8.2 percent or 23,189 MT).[112] Similarly, the cumulative quantity of U.S. imports of CWP from Korea increased during this period, from 277,580 MT in 2012-2016 to 389,957 MT in 2017-2021 (*i.e.*, an increase of 40.5 percent or 112,377 MT).[113]

| U.S. Imports of CWP (MT) | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | **2012** | **2013** | **2014** | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | **2021** |
| **Korea** | 51,265 | 51,516 | 39,866 | 55,737 | 79,196 | 145,415 | 68,451 | 65,160 | 54,630 | 56,301 |
| **Vietnam** | 38,243 | 59,371 | 54,927 | 75,653 | 53,604 | 89,240 | 67,581 | 59,763 | 44,847 | 43,556 |

With respect to Vietnamese imports of HRS from Korea, the cumulative quantity decreased from 4,251,271 MT to 3,330,643 MT (*i.e.*, a decrease of 21.7 percent or 920,627 MT) from the periods 2012-2016 to 2017-2021, while cumulative HRS exports from Korea to the rest of the world (excluding Vietnam) decreased by 5.5 percent (*i.e.*, 30,238,901 MT to 28,580,241 MT) for the same periods.[114]

In this instance, the available data show exports of CWP from Vietnam increased to the United States and that the quantity of CWP exported from Korea to the United States also increased over the same period. Meanwhile, Vietnam's sourcing of HRS from Korea decreased during the period of inquiry.

We also analyzed patterns of trade with respect to SeAH VINA from 2017-2021. SeAH VINA provided quantity and value information of: (1) its purchases of HRS from Korea, Vietnam, and third countries;[115] (2) its production of CWP;[116] and (3) its entries and sales of CWP to the United States, for the period of inquiry.[117] Due to the business proprietary nature of this information and for further details, *see* SeAH VINA's Preliminary Analysis Memorandum. SeAH VINA's data do not show that there is a definitive increase in the quantity of HRS imported from Korea. However, the data show that there was a subsequent increase in the quantity of CWP exports to the United States produced from HRS imported from Korea.

Based on the information on the record, we find that the patterns of trade examined are not dispositive with respect to either an affirmative or a negative circumvention determination.

---

112 *See* Circumvention Allegation Supplement at Exhibit Supp.-1 (relying on data from ITC Dataweb).
113 *Id*. at Exhibit Supp. 2.
114 *Id*. at Exhibit Supp. 1.
115 *See* SeAH VINA's IQR at Appendices 9-A, 9-B, 9-C, and 10.
116 *See* SeAH VINA's SQR at Appendices S-18 and S-19.
117 *See* SeAH VINA's SQR at Appendices S-15-1, S-15-2, S-16, S-17-1, and S-17-2.

We note that in *Cold-Rolled Steel from Korea*, the patterns of trade were not supportive of an affirmative finding of circumvention. In *Cold-Rolled Steel from Korea*, we stated:

> While the pattern of trade and export levels of {cold-rolled steel (CRS)} from Vietnam to the United States show a decline between the comparison and base periods, we nonetheless find that the export levels have not dwindled to insignificant levels. Moreover, while the Act directs that Commerce take into account the factors enumerated under 781(b)(3) of the Act, Commerce finds these factors to be non-dispositive. While taking into account 781(b)(3)(A) and 781(b)(3)(C), we preliminary find that the totality of the circumstances present here (*i.e.*, the factors we analyzed under 781(b)(1), 781(b)(2), and 781(b)(3)(B) of the Act), indicate that there was circumvention of the CRS Orders as a result of Korean-origin HRS being processed into CRS in Vietnam.[118]

In this circumvention inquiry, the preponderance of evidence supports an affirmative finding. Given that Commerce has a long-standing practice of not allowing one single factor of our analysis to be controlling, Commerce finds that, in this instance, placing more weight on the patterns of trade is not appropriate when other factors support an affirmative determination.

It is also important to note that in the recent *Circular Welded Pipe from India* inquiry, Commerce stated:

> We also disagree that our determination in this case establishes a new requirement that a certain pattern of trade must be established for an affirmative circumvention finding. Circumvention inquiries are, by their nature, fact-specific inquiries. Thus, Commerce's circumvention determinations are based on the totality of circumstances and our consideration of the facts in each individual case.[119]

Consistent with the statutory requirements, we considered the 781(b)(3) factors in this inquiry, and whether imports of HRS into Vietnam have increased after initiation of the investigation that resulted in the issuance of the *Order*, which dates back to 1992. Based on the data available on the current inquiry records we find that the evidence with respect to these factors is mixed and inconclusive.

---

[118] *See Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Affirmative Preliminary Determination of Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders*, 84 FR 32875 (July 10, 2019), and accompanying PDM at 20, unchanged in *Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Affirmative Final Determinations of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 84 FR 70934 (December 26, 2019), and accompanying IDM at 69-70 (collectively, *Cold-Rolled Steel from Korea*).

[119] *See Certain Welded Carbon Steel Standard Pipes and Tubes from India: Final Negative Determinations of Circumvention of the Antidumping Duty Order*, 88 FR 12917 (March 1, 2023), and accompanying IDM at 9-10.

(2) Affiliation (781(b)(3)(B))

SeAH VINA is a subsidiary of SSI, which is a subsidiary of SSHC, a publicly traded Korean company.[120] SSI also owns 50 percent of the shares of Vietnam Steel Pipe Corp. (Vinapipe), which is another Vietnamese producer of welded-pipe products.[121] The remaining 50 percent of the shares of Vinapipe are owned by Vietnam Steel Corporation, which is a Vietnamese corporation that is wholly-owned by the government of Vietnam.[122] SeAH Steel is a subsidiary of SSHC; SeAH Steel produces CWP in Korea, but it does not produce HRS, primary iron and steel, or other steel inputs used in the production of CWP.[123] Furthermore, SeAH VINA does not purchase HRS or any other steel inputs from SeAH Steel.[124] Neither SeAH VINA nor Vinapipe had any sales to the United States during the inquiry period of CWP produced by Vinapipe.[125] Conversely, Vinapipe did not have any sales to the United States during the inquiry period of CWP produced by SeAH VINA.[126] Furthermore, Vinapipe did not produce any CWP that was certified to meet the specifications (*i.e.*, ASTM A53 or ASTM A500) of the CWP that SeAH VINA exported to the United States.[127] SeAH VINA's affiliates Pusan Pipe America, Inc. (PPA) and State Pipe & Supply, Inc. (State Pipe) were involved in the sales of CWP produced by SeAH VINA.[128] Additionally, neither PPA nor State Pipe have production facilities that produce CWP.[129] Neither SSI nor SSHC have production facilities that produce HRS, primary iron and steel, or other intermediate steel inputs used in the production of CWP.[130] Moreover, neither SSHC nor SSI have subsidiaries or affiliates that produce HRS, primary iron and steel, or other inputs used in the production of CWP.[131] Finally, SeAH VINA itself is not affiliated with any companies or facilities that produce HRS, primary iron and steel, or other steel inputs used in the production of CWP.[132]

SeAH VINA is not affiliated with any of its HRS suppliers or any Korean producers of HRS.[133] Further, there are no facts (*e.g.*, close supplier relationships) that suggest control of SeAH VINA by the Korean HRS producers or suppliers with regards to CWP production in Vietnam.[134] Additionally, we found no evidence to indicate that the Korean CWP or Korean HRS producers had arrangements with SeAH VINA which would allow them to export HRS to Vietnam for processing into pipe and tube for export to the United States and avoid the discipline of the *Order*.

---

[120] *See* SeAH VINA's IQR at 3-5 and Appendix 1-A; *see also* SeAH VINA's SQR at Appendix S-2.
[121] *Id*. at 5-6.
[122] *Id*.
[123] *Id*. at 9.
[124] *Id*. at 61-62
[125] *Id*. at 6; *see also* SeAH VINA's SQR at 4.
[126] S*ee* SeAH VINA's SQR at 4.
[127] *See* SeAH VINA's IQR at 6.
[128] *Id*. at 4.
[129] *Id*. at 10.
[130] *Id*. at 16.
[131] *Id*.
[132] *See* SeAH VINA's SQR at 25.
[133] *Id*. at 13 and Appendix S-9.
[134] *Id.* at 2 and Appendix S-1.



Filed By: Dmitry Vladimirov, Filed Date: 4/7/23 1:35 PM, Submission Status: Approved

Further, SeAH VINA's purchases of HRS were not made directly from Korean HRS producers but through unaffiliated traders/resellers.[135]

(3) Increased Imports of HRS (781(B)(3)(C))

As noted above, we considered publicly available data provided by the domestic interested parties and the company-specific data provided by SeAH VINA. The publicly available information demonstrates that Korea produces a large amount of HRS which is sold around the world.[136] As indicated above, HRS imports from Korea to Vietnam decreased from 4,251,271 MT to 3,330,643 MT (*i.e.*, a decrease of 21.7 percent or 920,627 MT) from the 2012-2016 to the 2017-2021 periods.

Furthermore, the data provided by the domestic interested parties indicate that the share of total exports of Korean-origin HRS to Vietnam, in terms of quantity, in relation to total exports of Korean HRS to all countries, decreased for the 2017-2021 period compared to the 2012-2016 period from 12.3 percent to 10.4 percent.[137] A comparison of the same periods shows that the share of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent.[138]

## IX. SUMMARY OF ANALYSIS

As discussed above, to make an affirmative determination of circumvention, Commerce must consider the elements under section 781(b)(1) of the Act, taking into account the minor or insignificant criteria listed in section 781(b)(2) of the Act. In addition, section 781(b)(3) of the Act instructs Commerce to consider, in determining whether to include merchandise assembled or completed in a foreign country within the scope of an order, factors such as the pattern of trade, affiliation, and whether imports into the foreign country of the merchandise described in section 781(b)(1)(B) of the Act have increased after the initiation of the investigation.

Pursuant to sections 781(b)(1)(A) and (B) of the Act, Commerce preliminarily finds that the inquiry merchandise imported into the United States is within the same class or kind of merchandise as the class or kind of merchandise subject to the *Order* and that this merchandise is being assembled and completed, in part, from parts and components produced in Korea, the country with respect to which the applicable *Order* applies.

Pursuant to section 781(b)(1)(C) of the Act, Commerce preliminarily finds the process of completion of CWP in Vietnam compared to the production of HRS in Korea to be minor and insignificant.

In accordance with section 781(b)(1)(D) of the Act, Commerce preliminarily finds that, for

---

[135] *Id*. at 13 and Appendix S-9.
[136] *See* Circumvention Allegation at Exhibit 7.
[137] *See* Circumvention Allegation Supplement at Exhibit Supp. 2.
[138] *Id*. at Exhibit Supp. 1.

TAB-5

Circumvention Inquiry on the Antidumping Duty Order on
Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea:
Preliminary Analysis Memorandum for SeAH Steel VINA Corporation
P.R. 149; C.R. 98

Barcode:4363726-01 A-580-809 CIRC - Anti Circumvention Inquiry - CWP Completed in Vietnam with Korea Origin HRS

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-580-809
Circumvention Inquiry
CWP Completed in Vietnam with Korea Origin HRS
**PUBLIC VERSION**
E&C/OI: AG

April 6, 2023

MEMORANDUM TO: The File

THROUGH: Minoo Hatten
Program Manager
AD/CVD Operations, Office I

FROM: Andre Gziryan
Senior International Trade Compliance Analyst
AD/CVD Operations, Office I

SUBJECT: Circumvention Inquiry on the Antidumping Duty Order on Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Analysis Memorandum for SeAH Steel VINA Corporation

---

## I. Preliminary Determination

The U.S. Department of Commerce (Commerce) preliminarily determines, pursuant to section 781(b) of the Tariff Act of 1930, as amended (the Act), that imports of certain circular welded non-alloy steel pipe (CWP) from the Socialist Republic of Vietnam (Vietnam) are circumventing the antidumping duty (AD) *Order* on CWP from the Republic of Korea (Korea).[1] Because Commerce's findings regarding certain statutory factors identified in section 781(b) of the Act are based on business proprietary information provided by SeAH Steel VINA Corporation (SeAH VINA), this memorandum provides a more detailed analysis of these factors below.

---

[1] *See* Memorandum, "Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty Order," dated concurrently with this memorandum (Preliminary Decision Memorandum); *see also Notice of Antidumping Duty Orders: Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and Venezuela, and Amendment to Final Determination of Sales at Less Than Fair Value: Certain Circular Welded Non-Alloy Steel Pipe from Korea*, 57 FR 49453 (November 2, 1992) (*Order*).

Filed By: Andre Gziryan, Filed Date: 4/10/23 11:17 AM, Submission Status: Approved

INTERNATIONAL TRADE ADMINISTRATION

obtained from all sources decreased from [ ] MTs in 2017 to [ ] MTs in 2021, and the quantity of HRS imported from Korea decreased from [ ] MTs in 2017 to [ ] MTs in 2021.[31] The share, by quantity, of HRS imported from Korea increased from [ ] percent in 2017 to [ ] percent in 2021.[32]

While the quantity of CWP exports to the United States produced from HRS imported from Korea increased from [ ] MTs in 2017 to [ ] MTs in 2021, the total quantity of SeAH VINA's Vietnamese export sales of CWP to the United States declined from [ ] MTs in 2017 to [ ] MTs in 2021.[33] While the quantity of U.S. imports of CWP from Korea decreased from 145,415 MTs in 2017 to 56,301 MTs in 2021, a decrease of 61.28 percent, the quantity of U.S. imports of CWP from Vietnam also decreased from 89,240 MTs in 2017 to 43,556 MTs in 2021, a decrease of 51.19 percent.[34]

The data shows that [ ] Korean HRS is being used to create SeAH VINA's products, including CWP. The table below shows [ ] in all markets with regards to CWP sales from Vietnam using Korean HRS during the period of inquiry:[35]

| | All Markets (Domestic + Third Countries) | | United States | |
|---|---|---|---|---|
| Year | Quantity (MT) | Value Amount (USD) | Quantity (MT) | Value Amount (USD) |
| [ ] | [ ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] | [ ] |
| Total* | [ ] | [ ] | [ ] | [ ] |

*Table shows quantities and values of CWP using only Korean HRS.

As shown in the table below,[36] Korean HRS purchases remained [ ] during the period of inquiry.

---

31 *Id*.
32 *Id*.
33 *See* SQR at Appendix S-22.
34 *See* Domestic Interested Parties' Letter, "Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea – Response to Supplemental Questionnaire," dated June 28, 2022, at Exhibit Supp. 3.
35 *Id*.
36 *Id*. at Appendices 33-B and 34.

| Year | Domestic and Third Country Sales (MT) | U.S. Sales (MT) | Korean HRS (MT) | All Other HRS (MT) |
|---|---|---|---|---|
| [ ] | [ ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] | [ ] |
| Total | [ ] | [ ] | [ ] | [ ] |

TAB-6

Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea:
Final Affirmative Determination of Circumvention of the Antidumping Duty Order,
88 Fed. Reg. 77,270
P.R. 211

Barcode:4457171-03 A-580-809 CIRC - Anti Circumvention Inquiry - CWP Completed in Vietnam with Korea Origin HRS


B. I have direct personal knowledge of the facts regarding the production and exportation of the light-walled welded rectangular pipe and tube (LWRPT) for which sales are identified below. ''Direct personal knowledge'' refers to facts the certifying party is expected to have in its own records. For example, an exporter should have direct personal knowledge of the producer's identity and location;

C. The LWRPT covered by this certification was shipped to {NAME OF PARTY IN THE UNITED STATES TO WHOM MERCHANDISE WAS FIRST SHIPPED}, located at {U.S. ADDRESS TO WHICH MERCHANDISE WAS SHIPPED};

D. The LWRPT covered by this certification does not contain HRS produced in the Republic of Korea (Korea);

E. This certification applies to the following sales to {NAME OF U.S. CUSTOMER}, located at {ADDRESS OF U.S. CUSTOMER} (repeat this block as many times as necessary):

Foreign Seller's Invoice # to U.S. Customer:
Foreign Seller's Invoice to U.S. Customer Line item #:
Producer Name:
Producer's Address:
Producer's Invoice # to Foreign Seller: (*If the foreign seller and the producer are the same party, put NA here.*)
Name of Producer of HRS: State ''N/A'' if the producer did not use HRS in the production of the LWRPT.
Location (Country) of Producer of HRS: State ''N/A'' if the producer did not use HRS in the production of LWRPT.

F. The LWRPT covered by this certification was shipped to {NAME OF U.S. PARTY TO WHOM MERCHANDISE WAS SHIPPED}, located at {U.S. ADDRESS TO WHICH MERCHANDISE WAS SHIPPED};

G. I understand that {NAME OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES} is required to maintain a copy of this certification and sufficient documentation supporting this certification (*i.e.,* documents maintained in the normal course of business, or documents obtained by the certifying party, for example, product data sheets, mill test reports, productions records, invoices, *etc.*) until the later of: (1) the date that is five years after the latest date of the entries covered by the certification; or (2) the date that is three years after the conclusion of any litigation in the United States courts regarding such entries;

H. I understand that {NAME OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES} is required to provide the U.S. importer with a copy of this certification and is required to provide U.S. Customs and Border Protection (CBP) and/or the U.S. Department of Commerce (Commerce) with this certification, and any supporting documents, upon request of either agency;

I. I understand that the claims made herein, and the substantiating documentation, are subject to verification by CBP and/or Commerce;

J. I understand that failure to maintain the required certification and supporting documentation, or failure to substantiate the claims made herein, or not allowing CBP and/or Commerce to verify the claims made herein, may result in a *de facto* determination that all sales to which this certification applies are within the scope of the antidumping duty order on LWRPT from Korea. I understand that such a finding will result in:

(i) suspension of all unliquidated entries (and entries for which liquidation has not become final) for which these requirements were not met;

(ii) the importer being required to post the cash deposits determined by Commerce; and

(iii) the seller/exporter no longer being allowed to participate in the certification process.

K. I understand that agents of the seller/exporter, such as freight forwarding companies or brokers, are not permitted to make this certification.

L. This certification was completed and signed, and a copy of the certification was provided to the importer, on, or prior to, the date of shipment if the shipment date is more than 14 days after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**. If the shipment date is on or before the 14th day after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**, this certification was completed and signed, and a copy of the certification was provided to the importer, by no later than 45 days after publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**; and

M. I am aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. government.

Signature
{NAME OF COMPANY OFFICIAL}
{TITLE OF COMPANY OFFICIAL}
{DATE}

[FR Doc. 2023–24795 Filed 11–8–23; 8:45 am]

BILLING CODE 3510–DS–P

## DEPARTMENT OF COMMERCE

## International Trade Administration

**[A–580–809]**

## Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** The U.S. Department of Commerce (Commerce) determines that imports of certain circular welded non-alloy steel pipe (CWP), completed in the Socialist Republic of Vietnam (Vietnam) using hot-rolled steel (HRS) produced in the Republic of Korea (Korea), are circumventing the antidumping duty (AD) order on CWP from Korea.

**DATES:** Applicable November 9, 2023.

**FOR FURTHER INFORMATION CONTACT:** Andre Gziryan, AD/CVD Operations, Office I, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–2201.

**SUPPLEMENTARY INFORMATION:**

### Background

On November 2, 1992, Commerce published in the **Federal Register** the AD order on CWP from Korea.[1] On August 4, 2022, Commerce initiated a country-wide circumvention inquiry to determine whether certain imports of CWP completed in Vietnam using HRS produced in Korea are circumventing the *Order.*[2] On April 12, 2023, Commerce published in the **Federal Register** its *Preliminary Determination* that imports of CWP completed in Vietnam using HRS produced in Korea are circumventing the *Order.*[3] On May 15, 2023, Commerce extended the deadline for the final determination of this circumvention inquiry to August 4, 2023.[4] On July 20, 2023, Commerce further extended the deadline for the final determination to November 2, 2023.[5] For a summary of events that occurred since Commerce published the *Preliminary Determination,* as well as a full discussion of the issues raised by parties for consideration in the final determination, *see* the Issues and Decision Memorandum.[6] The Issues and

[1] *See Notice of Antidumping Duty Orders: Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and Venezuela, and Amendment to Final Determination of Sales at Less Than Fair Value: Certain Circular Welded Non-Alloy Steel Pipe from Korea,* 57 FR 49453 (November 2, 1992) (*Order* or *Korea Order*).

[2] *See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India; Certain Circular Welded Carbon Steel Pipes and Tubes from Taiwan; Certain Circular Welded Non-Alloy Steel Pipe from Taiwan; Light-Walled Rectangular Pipe and Tube from the People's Republic of China; Light-Walled Rectangular Pipe and Tube from the Republic of Korea; Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders,* 87 FR 47711 (August 4, 2022).

[3] *See Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order,* 88 FR 21989 (April 12, 2023) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM).

[4] *See* Memorandum, ''Extension of Deadline for Issuing Final Determinations in Circumvention Inquiries,'' dated May 15, 2023.

[5] *See* Memorandum, ''Extension of Deadline for Issuing Final Determinations in Circumvention Inquiries,'' dated July 20, 2023.

[6] *See* Memorandum, ''Issues and Decision Memorandum for the Final Affirmative

Filed By: Katrina Dyer, Filed Date: 11/9/23 12:10 PM, Submission Status: Approved

Decision Memorandum is a public document and is on file electronically via Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System (ACCESS). ACCESS is available to registered users at *https://access.trade.gov.* In addition, a complete version of the Issues and Decision Memorandum can be accessed directly at *https://access.trade.gov/public/FRNoticesListLayout.aspx.*

**Scope of the Order**

The products covered by the *Order* include certain welded carbon steel standard CWP with an outside diameter of 0.375 inch or more but not over 16 inches. For a full description of the scope of the *Order, see* the Issues and Decision Memorandum.

**Merchandise Subject to the Circumvention Inquiry**

This circumvention inquiry covers CWP completed in Vietnam using Korea-origin HRS and subsequently exported from Vietnam to the United States (inquiry merchandise).

**Methodology**

Commerce is conducting this circumvention inquiry in accordance with section 781(b) of the Tariff Act of 1930, as amended (the Act), and 19 CFR 351.226. *See Preliminary Determination* PDM for a full description of the methodology.[7] We have continued to apply this methodology, without exception, and incorporate by reference this description of the methodology, for our final determination.[8]

**Determination of No Shipments**

Based on the information provided by Vietnam Haiphong Hongyuan Machinery Manufactory Co., Ltd. (Vietnam Haiphong) in this circumvention inquiry, Commerce continues to find, as it did in the *Preliminary Determination,* that Vietnam Haiphong had no shipments of inquiry merchandise to the United States during the period of inquiry, January 1, 2017, through December 31, 2021.[9]

**Analysis of Comments Received**

All issues raised in the case and rebuttal briefs by parties in these inquiries are addressed in the Issues and Decision Memorandum. A list of the issues raised is attached to this notice at Appendix I.

Based on our analysis of the comments received from interested parties, we did not revise the *Preliminary Determination,* except for revisions to the certification language (*see* Appendix II), which we have modified in response to comments to allow parties to also use the certifications when their shipments of CWP were not produced using HRS.

**Final Circumvention Determination**

As detailed in the Issues and Decision Memorandum, Commerce determines that CWP completed in Vietnam using Korea-origin HRS and subsequently exported from Vietnam to the United States is circumventing the *Order* on a country-wide basis. As a result, in accordance with section 781(b) of the Act, we determine that the inquiry merchandise should be included within the scope of the *Order. See* the ''Suspension of Liquidation and Cash Deposit Requirements'' section, below, for details regarding suspension of liquidation and cash deposit requirements. *See* the ''Certifications'' and ''Certification Requirements for Vietnam'' sections, below, for details regarding the use of certifications.

**Suspension of Liquidation and Cash Deposit Requirements**

Based on the affirmative country-wide determination of circumvention for Korea, in accordance with 19 CFR 351.226(l)(3), we will direct U.S. Customs and Border Protection (CBP) to suspend liquidation and require a cash deposit of estimated duties on unliquidated entries of CWP completed in Vietnam using Korea-origin HRS, that were entered, or withdrawn from warehouse, for consumption on or after August 4, 2022, the date of publication of the initiation of this circumvention inquiry in the **Federal Register**.

CWP produced in Vietnam from HRS that is not of Korean origin is not subject to this inquiry. Therefore, cash deposits are not required for such merchandise under the *Korea Order.* However, Commerce finds that CWP completed in Vietnam using the People's Republic of China (China)-origin HRS is circumventing the AD and countervailing duty (CVD) orders on CWP from China, and certain welded carbon steel standard pipes and tubes (pipe and tube) from India completed in Vietnam using India-origin HRS are circumventing the AD order on pipe and tube from India.[10] Imports of such merchandise are subject to certification requirements, and cash deposits may be required.

If an importer imports CWP from Vietnam and claims that the CWP was not produced from Korea-origin HRS, or alternately, claims that the CWP was produced using an input other the HRS, the importer and exporter are required to meet the certification and documentation requirements described in the ''Certifications'' and ''Certification Requirements for Vietnam'' sections below in order to not be subject to the *Korea Order* cash deposit requirements.

*See* Appendix II for the revised importer and exporter certifications, which we have modified in response to comments to allow parties to also use the certifications when their shipments of CWP were not produced using HRS.

Where no certification is provided for an entry, and AD/CVD orders from three countries (China, India, or Korea) potentially apply to that entry, Commerce intends to instruct CBP to suspend the entry and collect cash deposits at the rates applicable to the AD and CVD orders on CWP from China (*i.e.,* the AD cash deposit rate established for the China-wide entity (85.55 percent) and the CVD cash deposit rate established for all-others (39.01 percent)) under the following third country CBP case numbers: A–552–009–000 and C–552–009–000.[11] This is to prevent evasion, given that the AD/CVD cash deposit rates established for CWP from China are higher than the AD cash deposit rates established for pipe and tube from India and CWP from Korea.

Where a certification is provided for the AD/CVD orders on CWP from China (stating that the merchandise was not produced using China-origin HRS or was produced using an input other than HRS), but no other certification is provided, then Commerce intends to

Determination of Circumvention of the Antidumping Duty Order on Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea,'' dated concurrently with, and hereby adopted by, this notice (Issues and Decision Memorandum).

[7] *See Preliminary Determination* PDM at 5–23.

[8] *See* Issues and Decision Memorandum at 4.

[9] *See Preliminary Determination* PDM at 12; *see also* Issues and Decision Memorandum at Comments 2 and 3.

[10] *See* the unpublished **Federal Register** notices, ''*Certain Circular Welded Non-Alloy Steel Pipe from the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping and Countervailing Duty Orders,*'' and ''*Certain Welded Carbon Steel Standard Pipes and Tubes from India: Final Affirmative Determination of Circumvention of the Antidumping Duty Order,*'' dated concurrently with this notice.

[11] *See Notice of Antidumping Duty Order: Circular Welded Carbon Quality Steel Pipe from the People's Republic of China,* 73 FR 42547 (July 22, 2008); and *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order,* 73 FR 42545 (July 22, 2008).

instruct CBP to suspend the entry and collect cash deposits at the rate applicable to the AD order on pipe and tube from India (*i.e.,* the AD cash deposit rate established for all-others (7.08 percent)) under the following third country case number: A–552–012–000.[12] This is to prevent evasion, given that the AD cash deposit rate established for pipe and tube from India is higher than the AD cash deposit rate established for CWP from Korea.

To enter inquiry merchandise (CWP produced in Vietnam using Korea-origin HRS) parties must provide certifications for the AD/CVD orders on CWP from China (stating that the merchandise was not produced using China-origin HRS) and for the AD order on pipe and tube from India (stating that the merchandise was not produced using India-origin HRS). Commerce established the following third country CBP case number in the Automated Commercial Environment (ACE) for entries of CWP produced in Vietnam using Korea-origin HRS: A–552–011–000. Commerce also established the following company-specific third-country CBP case number for SeAH Vina, for which Commerce made an affirmative determination of circumvention, for entries of CWP produced in Vietnam using Korea-origin HRS: A–552–011–001. The cash deposit rate will be the Korea AD all-others rate (*i.e.,* 4.80 percent).[13]

These suspension of liquidation instructions will remain in effect until further notice.

**Certified Entries**

Entries for which the importer and exporter have met the certification requirements described below and in Appendix II to this notice will not be subject to suspension of liquidation, or the cash deposit requirements described above. Failure to comply with the applicable requisite certification requirements may result in the merchandise being subject to AD and CVD duties.

**Certifications**

To administer the country-wide affirmative determination of circumvention for Vietnam, Commerce established importer and exporter certifications which allow companies to certify that specific entries of CWP from Vietnam are not subject to suspension of liquidation or the collection of cash deposits pursuant to this country-wide affirmative determination of circumvention because the merchandise was not made with Korea-origin HRS or was made with an input other than HRS (*see* Appendix II to this notice).

Importers and exporters that claim that the entry of CWP is not subject to suspension of liquidation or the collection of cash deposits because the merchandise was not made with Korea-origin HRS or was made with an input other than HRS must complete the applicable certification and meet the certification and documentation requirements described below, as well as the requirements identified in the applicable certification.

**Certification Requirements for Vietnam**

Importers are required to complete and maintain the applicable importer certification, and maintain a copy of the applicable exporter certification, and retain all supporting documentation for both certifications. With the exception of the entries described below, the importer certification must be completed, signed, and dated by the time the entry summary is filed for the relevant entry. The importer, or the importer's agent, must submit both the importer's certification and the exporter's certification to CBP as part of the entry process by uploading them into the document imaging system (DIS) in ACE. Where the importer uses a broker to facilitate the entry process, the importer should obtain the entry summary number from the broker. Agents of the importer, such as a broker, however, are not permitted to certify on behalf of the importer.

Exporters are required to complete and maintain the applicable exporter certification and provide the importer with a copy of that certification and all supporting documentation (*e.g.,* invoice, purchase order, production records, *etc.*). With the exception of the entries described below, the exporter certification must be completed, signed, and dated by the time of shipment of the relevant entries. The exporter certification should be completed by the party selling the CWP that was manufactured in Vietnam to the United States.

Additionally, the claims made in the certifications and any supporting documentation are subject to verification by Commerce and/or CBP. Importers and exporters are required to maintain the certifications and supporting documentation until the later of: (1) the date that is five years after the latest entry date of the entries covered by the certification; or (2) the date that is three years after the conclusion of any litigation in United States courts regarding such entries.

For all CWP from Vietnam that was entered, or withdrawn from warehouse, for consumption during the period August 4, 2022 (the date of initiation of this circumvention inquiry), through the date of publication of the *Preliminary Determination* in the **Federal Register**, where the entry has not been liquidated (and entries for which liquidation has not become final), the relevant certification should already be complete and signed.

For unliquidated entries (and entries for which liquidation has not become final) of CWP that were declared as non-AD type entries (*e.g.,* type 01) and entered, or withdrawn from warehouse, for consumption in the United States during the period August 4, 2022 (the date of initiation of these circumvention inquiries), through the date of publication of the *Preliminary Determination* in the **Federal Register**, for which none of the above certifications may be made, importers must file a Post Summary Correction with CBP, in accordance with CBP's regulations, regarding conversion of such entries from non-AD type entries to AD type entries (*e.g.,* type 01 to type 03). Importers should report those AD type entries using the third country CBP case numbers identified in the "Suspension of Liquidation and Cash Deposit Requirements" section, above. The importer should post cash deposits on those entries consistent with the regulations governing post summary corrections that require payment of additional duties, including AD/CVD duties.

If it is determined that an importer or exporter has not met the certification and related documentation requirements for certain entries, Commerce intends to instruct CBP to suspend, pursuant to this country-wide affirmative determination of circumvention and the *Order,*[14] all unliquidated entries for which these requirements were not met and require the importer to post applicable cash deposits equal to the rates noted above.

**Opportunity To Request an Administrative Review**

Each year during the anniversary month of the publication of an AD or CVD order, finding, or suspended investigation, an interested party, as defined in section 771(9) of the Act, may request, in accordance with 19 CFR 351.213, that Commerce conduct an administrative review of that AD or CVD order, finding, or suspended investigation. An interested party who would like Commerce to conduct an

[12] *See Antidumping Duty Order; Certain Welded Carbon Steel Standard Pipes and Tubes from India,* 51 FR 17384 (May 12, 1986).

[13] *See Korea Order.*

[14] *See Order.*

administrative review should wait until Commerce announces via the **Federal Register** the next opportunity to request a review during the anniversary month of the publication of the AD order to submit such requests. The anniversary month for this *Order* is November.

## Administrative Protective Order

This notice will serve as the only reminder to all parties subject to administrative protective order (APO) of their responsibility concerning the destruction of proprietary information disclosed under APO in accordance with 19 CFR 351.305(a)(3). Timely written notification of the return or destruction of APO materials or conversion to judicial protective order is hereby requested. Failure to comply with the regulations and the terms of an APO is a sanctionable violation.

## Notification to Interested Parties

This determination is issued and published in accordance with section 781(b) of the Act and 19 CFR 351.226(g)(2).

Dated: November 2, 2023.

**Abdelali Elouaradia,**

*Deputy Assistant Secretary for Enforcement and Compliance.*

## Appendix I

### List of Topics Discussed in the Issues and Decision Memorandum

I. Summary
II. Background
III. Scope of the *Order*
IV. Merchandise Subject to the Circumvention Inquiry
V. Period of Circumvention Inquiry
VI. Changes from the *Preliminary Determination*
VII. Discussion of the Issues
Comment 1: Conflict Regarding the Timing of Certification Requirements
Comment 2: Clarification in the Certification and Cash Deposit Instructions Concerning the Inclusion of HRS Further Processed in Vietnam Through a Cold-Rolling or Galvanizing Process
Comment 3: Certification Requirements for Vietnam Haiphong
Comment 4: Whether Commerce Is Bound by its Previous Determination That SeAH VINA's Exports of Pipe Produced Using Imported HRS Are Products of Vietnam
Comment 5: Whether Commerce May Impose Antidumping or Countervailing Duties in the Absence of Evidence of Injurious Dumping or Subsidies on SeAH VINA's Pipe Exports
Comment 6: Whether the Production of Pipe from Imported HRS Constitutes "Assembly or Completion" within the Meaning of the Statute
Comment 7: Whether the Process of Completion of Pipe in Vietnam Is Minor or Insignificant
Comment 8: Whether Commerce Properly Considered the Lack of Affiliations
Comment 9: Whether Commerce Properly Considered the Pattern of Trade and Sourcing
VIII. Recommendation

## Appendix II

1. Certifications

### Importer Certification

I hereby certify that:

A. My name is {IMPORTING COMPANY OFFICIAL'S NAME} and I am an official of {IMPORTING COMPANY}, located at {ADDRESS OF IMPORTING COMPANY};

B. I have direct personal knowledge of the facts regarding the importation into the Customs territory of the United States of certain circular welded non-alloy steel pipe (CWP) produced in Vietnam that entered under entry summary number(s), identified below, and are covered by this certification. "Direct personal knowledge" refers to facts the certifying party is expected to have in its own records. For example, the importer should have direct personal knowledge of the importation of CWP, including the exporter's and/or foreign seller's identity and location;

C. If the importer is acting on behalf of the first U.S. customer, include the following sentence as paragraph C of this certification:

The CWP covered by this certification was imported by {IMPORTING COMPANY} on behalf of {U.S. CUSTOMER}, located at {ADDRESS OF U.S. CUSTOMER};

If the importer is not acting on behalf of the first U.S. customer, include the following sentence as paragraph C of this certification:

{NAME OF IMPORTING COMPANY} is not acting on behalf of the first U.S. customer.

D. The CWP covered by this certification was shipped to {NAME OF PARTY IN THE UNITED STATES TO WHOM THE MERCHANDISE WAS FIRST SHIPPED}, located at {U.S. ADDRESS TO WHICH MERCHANDISE WAS SHIPPED}.

E. I have personal knowledge of the facts regarding the production of the imported products covered by this certification. "Personal knowledge" includes facts obtained from another party, (*e.g.,* correspondence received by the importer (or exporter) from the producer regarding the source of hot-rolled steel (HRS) or an input other than HRS used to produce the imported CWP);

F. This certification applies to the following entries (repeat this block as many times as necessary):

Entry Summary #:
Entry Summary Line Item #:
Foreign Seller:
Foreign Seller's Address:
Foreign Seller's Invoice #:
Foreign Seller's Invoice Line Item #:
Country of Origin of HRS: State "N/A" for "Country of Origin of HRS" if the CWP covered by this certification was produced using inputs other than HRS.
Producer:
Producer's Address:

G. The CWP covered by this certification does not contain HRS produced in Korea;

H. I understand that {IMPORTING COMPANY} is required to maintain a copy of this certification and sufficient documentation supporting this certification (*i.e.,* documents maintained in the normal course of business, or documents obtained by the certifying party, for example, certificates of origin, product data sheets, mill test reports, productions records, invoices, *etc.*) until the later of: (1) the date that is five years after the date of the latest entry covered by the certification; or (2) the date that is three years after the conclusion of any litigation in the United States courts regarding such entries;

I. I understand that {IMPORTING COMPANY} is required to maintain a copy of the exporter's certification (attesting to the production and/or exportation of the imported merchandise identified above), and any supporting documentation provided to the importer by the exporter, until the later of: (1) the date that is five years after the date of the latest entry covered by the certification; or (2) the date that is three years after the conclusion of any litigation in United States courts regarding such entries;

J. I understand that {IMPORTING COMPANY} is required to submit a copy of the importer and exporter certifications as part of the entry summary by uploading them into the document imaging system (DIS) in ACE, and to provide U.S. Customs and Border Protection (CBP) and/or the U.S. Department of Commerce (Commerce) with the importer certification, and any supporting documentation, and a copy of the exporter's certification, and any supporting documentation provided to the importer by the exporter, upon request of either agency;

K. I understand that the claims made herein, and the substantiating documentation, are subject to verification by CBP and/or Commerce;

L. I understand that failure to maintain the required certification and supporting documentation, or failure to substantiate the claims made herein, or not allowing CBP and/or Commerce to verify the claims made herein, may result in a *de facto* determination that all entries to which this certification applies are within the scope of the antidumping duty (AD) order on CWP from Korea. I understand that such finding will result in:

(i) suspension of liquidation of all unliquidated entries (and entries for which liquidation has not become final) for which these requirements were not met;

(ii) the importer being required to post the cash deposits determined by Commerce; and

(iii) the importer no longer being allowed to participate in the certification process.

M. I understand that agents of the importer, such as brokers, are not permitted to make this certification;

N. This certification was completed and signed on, or prior to, the date of the entry summary if the entry date is more than 14 days after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**. If the entry date is on or before the 14th day after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**, this certification was completed and signed by no later than 45

days after publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**.

O. I am aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. government.

Signature
{NAME OF COMPANY OFFICIAL}
{TITLE OF COMPANY OFFICIAL}
{DATE}

**Exporter Certification**

The party that made the sale to the United States should fill out the exporter certification.

I hereby certify that:

A. My name is {COMPANY OFFICIAL'S NAME} and I am an official of {NAME OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES}; located at {ADDRESS OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES};

B. I have direct personal knowledge of the facts regarding the production and exportation of the certain circular welded non-alloy steel pipe (CWP) for which sales are identified below. ''Direct personal knowledge'' refers to facts the certifying party is expected to have in its own records. For example, an exporter should have direct personal knowledge of the producer's identity and location;

C. The CWP covered by this certification was shipped to {NAME OF PARTY IN THE UNITED STATES TO WHOM MERCHANDISE WAS FIRST SHIPPED}, located at {U.S. ADDRESS TO WHICH MERCHANDISE WAS SHIPPED};

D. The CWP covered by this certification does not contain HRS produced in Korea;

E. This certification applies to the following sales to {NAME OF U.S. CUSTOMER}, located at {ADDRESS OF U.S. CUSTOMER} (repeat this block as many times as necessary):

Foreign Seller's Invoice # to U.S. Customer:

Foreign Seller's Invoice to U.S. Customer Line item #:

Producer Name:

Producer's Address:

Producer's Invoice # to Foreign Seller: (*If the foreign seller and the producer are the same party, put NA here.*)

Name of Producer of HRS: State ''N/A'' if the producer did not use HRS in the production of CWP.

Location (Country) of Producer of HRS: State ''N/A'' if the producer did not use HRS in the production of CWP.

F. The CWP covered by this certification was shipped to {NAME OF U.S. PARTY TO WHOM MERCHANDISE WAS SHIPPED}, located at {U.S. ADDRESS TO WHICH MERCHANDISE WAS SHIPPED};

G. I understand that {NAME OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES} is required to maintain a copy of this certification and sufficient documentation supporting this certification (*i.e.,* documents maintained in the normal course of business, or documents obtained by the certifying party, for example, product data sheets, mill test reports, productions records, invoices, *etc.*) until the later of: (1) the date that is five years after the latest date of the entries covered by the certification; or (2) the date that is three years after the conclusion of any litigation in the United States courts regarding such entries;

H. I understand that {NAME OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES} is required to provide the U.S. importer with a copy of this certification and is required to provide U.S. Customs and Border Protection (CBP) and/or the U.S. Department of Commerce (Commerce) with this certification, and any supporting documents, upon request of either agency;

I. I understand that the claims made herein, and the substantiating documentation, are subject to verification by CBP and/or Commerce;

J. I understand that failure to maintain the required certification and supporting documentation, or failure to substantiate the claims made herein, or not allowing CBP and/or Commerce to verify the claims made herein, may result in a *de facto* determination that all sales to which this certification applies are within the scope of the antidumping duty order on CWP from Korea. I understand that such a finding will result in:

(i) suspension of all unliquidated entries (and entries for which liquidation has not become final) for which these requirements were not met;

(ii) the importer being required to post the cash deposits determined by Commerce; and

(iii) the seller/exporter no longer being allowed to participate in the certification process.

K. I understand that agents of the seller/exporter, such as freight forwarding companies or brokers, are not permitted to make this certification.

L. This certification was completed and signed, and a copy of the certification was provided to the importer, on, or prior to, the date of shipment if the shipment date is more than 14 days after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**. If the shipment date is on or before the 14th day after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**, this certification was completed and signed, and a copy of the certification was provided to the importer, by no later than 45 days after publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**; and

M. I am aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. government.

Signature
{NAME OF COMPANY OFFICIAL}
{TITLE OF COMPANY OFFICIAL}
{DATE}

[FR Doc. 2023–24802 Filed 11–8–23; 8:45 am]

**BILLING CODE 3510–DS–P**

## DEPARTMENT OF COMMERCE

### International Trade Administration

**[A–583–803]**

## Light-Walled Welded Rectangular Carbon Steel Tubing From Taiwan: Final Affirmative Determination of Circumvention of the Antidumping Duty Order

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** The U.S. Department of Commerce (Commerce) determines that imports of light-walled welded rectangular carbon steel tubing (LWR tubing) from Taiwan, completed in the Socialist Republic of Vietnam (Vietnam) using hot-rolled steel (HRS) produced in Taiwan, are circumventing the antidumping duty (AD) order on LWR tubing from Taiwan.

**DATES:** Applicable November 9, 2023.

**FOR FURTHER INFORMATION CONTACT:** Bryan Hansen or Christopher Williams, AD/CVD Operations, Office I, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–3683 or (202) 482–5166, respectively.

**SUPPLEMENTARY INFORMATION:**

### Background

On March 27, 1989, Commerce published in the **Federal Register** the AD order on LWR tubing from Taiwan.[1] On August 4, 2022, Commerce initiated a country-wide circumvention inquiry to determine whether certain imports of LWR tubing completed in Vietnam using HRS produced in Taiwan are circumventing the *Order*.[2] On April 12, 2023, Commerce published in the **Federal Register** its *Preliminary Determination* that imports of LWR Tubing completed in Vietnam using HRS produced in Taiwan are

[1] *See Antidumping Duty Order; Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan,* 54 FR 12467 (March 27, 1989) (*Order* or *Taiwan Order*).

[2] *See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India; Certain Circular Welded Carbon Steel Pipes and Tubes from Taiwan; Certain Circular Welded Non-Alloy Steel Pipe from Taiwan; Light-Walled Rectangular Pipe and Tube from the People's Republic of China; Light-Walled Rectangular Pipe and Tube from the Republic of Korea; Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders,* 87 FR 47711 (August 4, 2022).

TAB-7

Issues and Decision Memorandum for the Final Affirmative Determination of Circumvention of the Antidumping Duty Order on Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea (IDM)
P.R. 210

Barcode:4457171-02 A-580-809 CIRC - Anti Circumvention Inquiry - CWP Completed in Vietnam with Korea Origin HRS

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-580-809
Circumvention Inquiry
CWP Completed in Vietnam with Korea Origin HRS
**Public Document**
E&C/OI: Team

November 2, 2023

**MEMORANDUM TO:** Abdelali Elouaradia
Deputy Assistant Secretary
for Enforcement and Compliance

**FROM:** James Maeder
Deputy Assistant Secretary
for Antidumping and Countervailing Duty Operations

**SUBJECT:** Issues and Decision Memorandum for the Final Affirmative Determination of Circumvention of the Antidumping Duty Order on Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea

---

## I. SUMMARY

We analyzed the case and rebuttal briefs of interested parties in the circumvention inquiry of the AD *CWP Korea Order*.[1] We did not modify our conclusions from the *Preliminary Determination*, in which we found that certain U.S. imports of CWP completed or assembled in Vietnam using HRS manufactured in Korea are circumventing the *CWP Korea Order*, on a country-wide basis, pursuant to section 781(b) of the Act. We recommend that you approve the positions described in the "Discussion of the Issues" section of this memorandum.

Below is the complete list of the issues for which we received comments from interested parties:

Comment 1: Conflict Regarding the Timing of Certification Requirements
Comment 2: Clarification in the Certification and Cash Deposit Instructions Concerning the Inclusion of HRS Further Processed in Vietnam Through a Cold-Rolling or Galvanizing Process
Comment 3: Certification Requirements for Vietnam Haiphong
Comment 4: Whether Commerce Is Bound by its Previous Determination That SeAH VINA's Exports of Pipe Produced Using Imported HRS Are Products of Vietnam
Comment 5: Whether Commerce May Impose Antidumping or Countervailing Duties in the Absence of Evidence of Injurious Dumping or Subsidies on SeAH VINA's Pipe Exports

[1] Appendices I, II, and III attached to this memorandum identify, respectively, the acronyms and abbreviations, court and case citations, and proceeding documents.

Filed By: Andre Gziryan, Filed Date: 11/3/23 12:06 PM, Submission Status: Approved
INTERNATIONAL TRADE ADMINISTRATION

> (A) the pattern of trade, including sourcing patterns,
>
> (B) whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is affiliated with the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and
>
> (C) whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the initiation of the investigation which resulted in the issuance of such order or finding.[167]

Additionally, the SAA states:

> {B}efore deciding to include imported parts within the scope of an antidumping or countervailing duty order, Commerce *will* consider: (1) changes in the pattern of trade; (2) whether the producer of the finished product subject to the order is related to the assembler in the United States (or the third country); and (3) whether imports of parts from the country subject to the order into the United States (or the third country) have increased after the initiation of the investigation resulting in the issuance of the order.[168]

Thus, in determining whether to include in the order pipe completed or assembled in Vietnam, we followed the directive of the statute to consider the factors under section 781(b)(3) of the Act. In considering the pattern of trade, affiliation, and imports of HRS from the subject country, as directed by section 781(b)(3) of the Act, we determined that these factors are mixed, but none of them are dispositive in our circumvention analysis.[169] In reaching the *Preliminary Determination*, we determined that the totality of factors in this inquiry warrant an affirmative finding of circumvention of the order, and, upon taking into consideration section 781(b)(3) of the Act, we preliminarily determined that action is appropriate to prevent evasion of the order, pursuant to section 781(b)(1)(E) of the Act.[170]

Accordingly, notwithstanding Commerce's finding, pursuant to section 781(b)(3)(B) of the Act, that SeAH VINA is not affiliated with any company located in the subject country that produces HRC, Commerce nevertheless determined, based on the totality of factors in this inquiry (including the lack of affiliation), that an affirmative finding of circumvention of the order is warranted. In other words, we determined based on the record in this inquiry that a lack of affiliation under section 781(b)(3)(B) of the Act, in itself, does not outweigh our determination that the statutory criteria under sections 781(b)(1)(A)-(D) of the Act have been satisfied, and the remaining elements under section 781(b)(3) of the Act otherwise did not detract from a finding that an action is appropriate pursuant to section 781(b)(1)(E) of the Act. This determination is

---

[167] *See* section 781(b)(3) of the Act.
[168] *See* SAA at 894 (emphasis added).
[169] *See Preliminary Determination* PDM at 22-23.
[170] *Id*. at 23.

consistent with our practice.[171] Informative to this discussion, in *Al Ghurair CAFC*, the Federal Circuit found harmless Commerce's failure to explain its value-added analysis under section 781(b)(2) of the Act, because Commerce's "finding of circumvention involved a multi-factor test and was supported by many findings other than its calculation of {the respondent's} value added."[172]

Commerce generally considers circumvention to be more likely to occur when the manufacturer of the input in the subject country is affiliated with the entity in the third country that performs the completion or assembly of the final product from such an input.[173] However, the presence of such affiliation is not a prerequisite for an affirmative finding of circumvention.[174] Commerce previously found circumvention when the producer of an input in the subject country and the entity in the third country that performs the completion or assembly using said input were not affiliated.[175] Similarly, with respect to the argument that there is no evidence that HRC producers in the subject country had special arrangements with SeAH VINA, we find that absence of such arrangements is not dispositive in this inquiry. Accordingly, Commerce finds that a lack of affiliation in this circumvention inquiry does not, by itself, preclude an affirmative determination of circumvention.

**Comment 9: Whether Commerce Properly Considered the Pattern of Trade and Sourcing**

*SeAH VINA's Arguments*

- The record evidence demonstrates that SeAH VINA's total exports of pipe to the United States fell over the five-year period considered by Commerce.[176]
- Such patterns of trade cannot support a finding that pipe from Vietnam is circumventing the order.[177]
- The evidence demonstrates that SeAH VINA purchases HRS in a competitive market from suppliers based on price and availability. The fluctuations in SeAH VINA's purchases of HRC from different countries should not obscure the fundamental point.[178]
- There is no basis for finding that SeAH VINA engaged in circumvention to increase its exports to the United States. Commerce's affirmative circumvention finding cannot be sustained and must be reversed in the final determination.[179]

*Domestic Interested Parties' Rebuttal Arguments*

- SeAH VINA neglects the country-wide nature of this inquiry and the overwhelming evidence supporting an affirmative determination, based on the totality of the

---

[171] *See*, *e.g.*, *CORE from China (Vietnam) – Final* IDM at Comment 12.
[172] *See Al Ghurair CAFC*, 65 F.4th at 1363.
[173] *See*, *e.g.*, *Tissue Paper from China (Vietnam) – Prelim*, unchanged in *Tissue Paper from China (Vietnam) – Final*).
[174] *See*, *e.g.*, *CORE from China (Vietnam) – Final* IDM at Comment 12.
[175] *See*, *e.g.*, *CORE from China (UAE) – Prelim* PDM at 24, unchanged in *CORE from China (UAE) – Final*.
[176] *See* SeAH VINA's Second Case Brief at 23.
[177] *Id*.
[178] *Id*. at 23-24
[179] *Id*. at 24.

circumstances and the consideration of all of the statutory factors that Commerce must evaluate.[180]

- Such patterns are neither dispositive of whether circumvention is occurring, nor do they dictate a particular result particularly where, as here, other factors clearly support an affirmative determination.[181]
- While Commerce must consider the statutory "other factors" including patterns of trade and sourcing patterns in making its circumvention determination, "a clear changing pattern of trade" is not a pre-requisite for an affirmative circumvention determination under the statute.[182]
- Commerce has made affirmative circumvention determinations even where the patterns of trade or sourcing showed a mixed or declining trend. For example, in the 2019 circumvention inquiry for the AD and CVD orders on CRS from Korea, Commerce made an affirmative finding of circumvention where shipments to the United States of CRS finished in Vietnam and shipments of the Korean-origin HRS substrate to Vietnam both declined in the period during which circumvention was alleged to have occurred.[183]
- In the *CRS from Korea (Vietnam) – Prelim*, Commerce found that these declining trends did not detract from the overall circumvention finding, stating that "while the pattern of trade and export levels of CRS from Vietnam to the United States show a decline between the comparison and base periods, we nonetheless find that the export levels have not dwindled to insignificant levels. Moreover, while the Act directs that Commerce take into account the factors enumerated under 781(b)(3) of the Act, Commerce finds these factors to be non-dispositive."[184]
- Similarly, in *CORE from Taiwan (Vietnam) – Prelim*, unchanged in *CORE from Taiwan (Vietnam) – Final*, Commerce found circumvention with a mixed pattern of trade and sourcing. Company-specific data were also mixed, showing one company's imports of HRS substrate to have increased and the others to have decreased.[185]
- As in the CRS and CORE circumvention cases discussed above, circumvention may not always manifest itself clearly and definitively in the trade pattern and sourcing data, particularly where the input is used in many manufacturing processes or where demand for the product subject to the order has shifted.[186]
- The relevant patterns of trade and sourcing data discussed in the allegation support a finding of circumvention on a country-wide basis. Regardless, the evidence relevant to the other statutory factors clearly supports a finding of circumvention.[187]

**Commerce's Position:** With respect to SeAH VINA's argument that the patterns of trade cannot support a finding that pipe from Vietnam is circumventing the order, our conclusion regarding the patterns of trade remains unchanged from the *Preliminary Determination*.

---

[180] *See* Domestic Interested Parties' Second Rebuttal Brief at 19.
[181] *Id*.
[182] *Id*. (citing Section 781(b)(3) of the Act).
[183] *Id*. at 20 (citing *CRS from Korea (Vietnam) - Prelim* PDM at 19; and *CRS from Korea (Vietnam) - Final* IDM at 10).
[184] *Id*. at 20 (citing *CRS from Korea (Vietnam) - Prelim* PDM at 20).
[185] *Id*. at 20-21 (citing *CORE from Taiwan (Vietnam) - Prelim* PDM at 19-21; and *CORE from Taiwan (Vietnam) – Final* IDM at 9-10).
[186] *Id*. at 21.
[187] *Id*.

Specifically, we continue to find that the quantity of SeAH VINA's pipe exports to the United States declined from 2017 to 2021.[188] While the pattern of trade and export levels of pipe to the United States show a decline during the inquiry period, we nonetheless find that the export levels are not insignificant.[189] We disagree with SeAH VINA over the implications of this conclusion. Specifically, we do not agree this factor alone is dispositive and makes it impossible to make a finding that pipe from Vietnam is circumventing the order. Section 781(b)(3) of the Act only requires that the administering authority "take into account" certain factors, and patterns of trade are only one such factor that Commerce considers in a circumvention determination.[190] As we stated in the *Preliminary Determination* with respect to the factors in section 781(b)(3) of the Act (of which patterns of trade is one factor), "given that Commerce has a long-standing practice of not allowing one single factor of our analysis to be controlling, Commerce finds that in this instance, placing more weight on the patterns of trade is not appropriate when other factors support an affirmative determination."[191] With regards to SeAH VINA's fluctuations of HRS purchases from the subject country, similar fluctuations observed in *CORE from Taiwan (Vietnam) - Prelim* did not detract from the totality of evidence considerations which supported an affirmative circumvention determination.[192]

Commerce reaches its determination regarding circumvention based on the totality of the evidence as it applies to all the factors, including patterns of trade.[193] Commerce notes that in *CRS from Korea (Vietnam) - Prelim*, CRS exported from Vietnam to the United States showed a decline between the comparison and base periods, a pattern that mirrors the facts in this inquiry.[194] Nevertheless, the totality of the circumstances in that case indicated that circumvention of the CRS order was occurring, an affirmative finding that was maintained in *CRS from Korea (Vietnam) - Final*.[195] Here, based upon our analysis of all statutory factors under section 781(b) of the Act, including the patterns of trade, we find the totality of the evidence indicates that inquiry merchandise is circumventing the order.

---

[188] *See* Memorandum, "Circumvention Inquiry on the Antidumping Duty Order on Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Analysis Memorandum for SeAH Steel VINA Corporation," dated April 6, 2023, at 6.
[189] *Id*.
[190] *See CRS from Korea (Vietnam) - Final* IDM at 69-70.
[191] *See Preliminary Determination* PDM at 20.
[192] *See CORE from Taiwan (Vietnam) – Prelim* PDM at 21, unchanged in *CORE from Taiwan (Vietnam) – Final*.
[193] *See CORE from China (Vietnam) – Final* IDM at Comment 12.
[194] *See CRS from Korea (Vietnam) - Prelim* PDM at 20.
[195] *See CRS from Korea (Vietnam) - Final* IDM at 70.

TAB-8

Request for Information
P.R.R. 10

Barcode: 4877216-01 A-580-809 REM - Remand Slip Op. 25-157

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-580-809
Remand
Slip Op. 25-157
**Public Document**
E&C/OI: DV

February 06, 2026

TO ALL INTERESTED PARTIES:

This concerns the remand order of the U.S. Court of International Trade (CIT or the Court) in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025) (*Remand Order*) in connection with *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 FR 77270 (November 9, 2023) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

In the *Remand Order*, the Court remanded the *Final Determination* to the U.S. Department of Commerce (Commerce) to reconsider or further explain its basis for its affirmative circumvention finding.[1] The Court found that Commerce "failed to explain how factors that are 'mixed' {under subsection (b)(3) of the Tariff Act of 1930, as amended (the Act)} enabled the agency to reach the conclusion that action was appropriate {to prevent evasion, pursuant to section 781(b)(1)(E) of the Act}."[2] The Court explained that "Commerce did not identify any other grounds beyond the factors that it was already required to find pursuant to section 1677j(b)(1)(A)–(D)."[3]

In light of the Court's finding, Commerce determines that it is necessary to re-open the record and solicit certain new factual information. Specifically, Commerce is inviting interested parties to provide new factual information, previously absent from the record, demonstrating other grounds (apart from those under section 781(b)(1)(A)–(D) of the Act), that warrant action to prevent evasion of the order in question.

All submissions of factual information must provide a detailed narrative of exactly what information is contained in the submission and why it should be considered. Interested parties must submit this information **no later than 5:00 p.m. Eastern Time (ET), February 13, 2026**. Parties will then have 3 business days to submit information to rebut, clarify, or correct any new information placed on the record by interested parties in response to the above. There will be no surrebuttal comment opportunity.

[1] *See Remand Order* at 21-28.
[2] *Id*. at 27.
[3] *Id*.

Filed By: dmitry vladimirov, Filed Date: 2/6/26 5:10 PM, Submission Status: Approved

If you have any questions, please contact Dmitry Vladimirov at Dmitry Vladimirov@trade.gov.
Sincerely,

Yang Jin Chun
Program Manager
AD/CVD Operations, Office I
Enforcement and Compliance



Filed By: dmitry vladimirov, Filed Date: 2/6/26 5:10 PM, Submission Status: Approved

TAB-9

DIPs' Submission of New Factual Information
P.R.R. 6

Barcode: 4894779-01 A-580-809 REM - Remand Slip Op. 25-157

SCHAGRIN ASSOCIATES

900 SEVENTH STREET, N.W. - SUITE 500 - WASHINGTON, D.C. 20001
P: (202) 223-1704 E: JGERRISH@SCHAGRINASSOCIATES.COM F: (202) 429-2522

March 13, 2026

DOC Case No. A-570-910, C-570-911,
A-533-502, A-580-809
Remand
Slip Op. 25-157
Total Pages: 21
AD/CVD Enforcement Office I

**PUBLIC DOCUMENT**

The Honorable Howard Lutnick
Secretary of Commerce
Attention: Enforcement and Compliance
APO/Dockets Unit, Room 18022
U.S. Department of Commerce
14th Street and Constitution Avenue, N.W.
Washington, D.C. 20230

**Re:** ***Circumvention Inquiry on Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India:* Submission of New Factual Information**

Dear Secretary Lutnick:

On behalf of Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (collectively, "Domestic Interested Parties"), we hereby submit factual information to rebut, clarify, or correct the U.S. Customs and Border Protection ("CBP") entry data and U.S. International Trade Commission ("USITC") import data that the U.S. Department of Commerce ("Commerce")

Filed By: rschagrin@schagrinassociates.com, Filed Date: 3/13/26 3:59 PM, Submission Status: Approved

Barcode: 4894779-01 A-580-809 REM - Remand Slip Op. 25-157

placed on the record of the above-referenced remand proceeding.[1] This information is timely submitted pursuant to the memoranda issued by Commerce on March 9, 2026.[2]

The factual information attached hereto as Exhibit 1 clarifies the CBP and USITC data placed on the record by Commerce regarding U.S. imports of circular-welded steel pipe ("CWP") because it shows that the three countries subject to antidumping and countervailing duty orders on CWP at issue here – *i.e.*, China, India, and Korea – were exporting volumes of hot-rolled steel substrate to Vietnam that were substantial and significantly higher than their exports to other markets. In fact, for China and India, Vietnam was their largest export destination for hot-rolled steel by far during the 2017 to 2021 period. Korea also shipped significant volumes of hot-rolled steel to Vietnam during this period, and Vietnam was its third largest export destination. The requests for circumvention inquiry filed in these proceedings provided information showing that CWP producers in Vietnam on a country-wide basis imported large quantities of hot-rolled steel from the subject countries to make their CWP.[3]

*          *          *

[1] *See* Commerce Memorandum re: *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: U.S. Customs and Border Protection Entry Data* (Mar. 9, 2026); Commerce Memorandum re: *Certain Welded Carbon Steel Standard Pipes and Tubes from India: U.S. Customs and Border Protection Entry Data* (Mar. 9, 2026); Commerce Memorandum re: *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: U.S. Customs and Border Protection Entry Data* (Mar. 9, 2026).

[2] *See id.*

[3] *See* Request for Circumvention Inquiry, *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China* (May 17, 2022) at 16-20; Request for Circumvention Inquiry, *Certain Welded Carbon Steel Standard Pipes and Tubes from India* (May 17, 2022) at 9 and Exhibits 8 and 9; Request for Circumvention Inquiry, *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea* (May 17, 2022) at 10 and Exhibit 8.



Filed By: rschagrin@schagrinassociates.com, Filed Date: 3/13/26 3:59 PM, Submission Status: Approved

Please contact the undersigned if you have any questions.

*/s/* Jeffrey D. Gerrish
Roger B. Schagrin
Jeffrey D. Gerrish
Nicholas C. Phillips*
**SCHAGRIN ASSOCIATES**
900 7th St. NW
Washington, DC 20001
(202) 223-1700 (telephone)
(202) 429-2522 (fax)

*Counsel for Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

*Only admitted in New York. Practice limited to federal courts and agencies.



Filed By: rschagrin@schagrinassociates.com, Filed Date: 3/13/26 3:59 PM, Submission Status: Approved

**Counsel Certification**

I, Jeffrey D. Gerrish, counsel to Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, certify that I have prepared or otherwise supervised the preparation of the attached *Submission of New Factual Information* pursuant to the remand proceeding for Slip Op. 25-157 regarding the circumvention inquiries in *Circular Welded Carbon-Quality Steel Pipe from the People's Republic of China* (Case Nos. A-570-910, C-570-911), *Certain Welded Carbon Steel Standard Pipes and Tubes from India* (Case No. A-533-502), and *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea* (Case No. A-580-809).

In my capacity as counsel of this submission, I certify that the information contained in this submission is accurate and complete to the best of my knowledge. I am aware that U.S. law (including, but not limited to, 18 U.S.C. § 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. Government. In addition, I am aware that, even if this submission may be withdrawn from the record of the AD/CVD proceeding, the Department may preserve this submission, including a business proprietary submission, for purposes of determining the accuracy of this certification. I certify that a copy of this signed certification will be filed with this submission to the U.S. Department of Commerce.

Signature:

Date: 3/13/2026

**COMPANY CERTIFICATION**

I, Kevin Kelly, currently employed by Wheatland Tube Company, certify that I prepared or otherwise supervised the preparation of the attached *Submission of New Factual Information* pursuant to the remand proceeding for Slip Op. 25-157 regarding the circumvention inquiries in *Circular Welded Carbon-Quality Steel Pipe from the People's Republic of China* (Case Nos. A-570-910, C-570-911), *Certain Welded Carbon Steel Standard Pipes and Tubes from India* (Case No. A-533-502), and *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea* (Case No. A-580-809).

I certify that the public information and any business proprietary information of Wheatland Tube Company contained in this submission is accurate and complete to the best of my knowledge. I am aware that the information contained in this submission may be subject to verification or corroboration (as appropriate) by the U.S. Department of Commerce. I am also aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. Government. In addition, I am aware that, even if this submission may be withdrawn from the record of the *AD/CVD* proceeding, the U.S. Department of Commerce may preserve this submission, including a business proprietary submission, for purposes of determining the accuracy of this certification. I certify that a copy of this signed certification will be filed with this submission to the U.S. Department of Commerce.

Signature: Kevin Kelly

Date: March 13, 2026

**COMPANY CERTIFICATION**

I, Andrew Annakin, currently employed by Bull Moose Tube Company, certify that I prepared or otherwise supervised the preparation of the attached *Submission of New Factual Information* pursuant to the remand proceeding for Slip Op. 25-157 regarding the circumvention inquiries in *Circular Welded Carbon-Quality Steel Pipe from the People's Republic of China* (Case Nos. A-570-910, C-570-911), *Certain Welded Carbon Steel Standard Pipes and Tubes from India* (Case No. A-533-502), and *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea* (Case No. A-580-809).

I certify that the public information and any business proprietary information of Bull Moose Tube Company contained in this submission is accurate and complete to the best of my knowledge. I am aware that the information contained in this submission may be subject to verification or corroboration (as appropriate) by the U.S. Department of Commerce. I am also aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. Government. In addition, I am aware that, even if this submission may be withdrawn from the record of the *AD/CVD* proceeding, the U.S. Department of Commerce may preserve this submission, including a business proprietary submission, for purposes of determining the accuracy of this certification. I certify that a copy of this signed certification will be filed with this submission to the U.S. Department of Commerce.

Signature: ______________________________________________

Date: ________March 13, 2026______________________________

**COMPANY CERTIFICATION**

I, Brian Saunders, currently employed by Maruichi American Corporation, certify that I prepared or otherwise supervised the preparation of the attached *Submission of New Factual Information* pursuant to the remand proceeding for Slip Op. 25-157 regarding the circumvention inquiries in *Circular Welded Carbon-Quality Steel Pipe from the People's Republic of China* (Case Nos. A-570-910, C-570-911), *Certain Welded Carbon Steel Standard Pipes and Tubes from India* (Case No. A-533-502), and *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea* (Case No. A-580-809).

I certify that the public information and any business proprietary information of Maruichi American Corporation contained in this submission is accurate and complete to the best of my knowledge. I am aware that the information contained in this submission may be subject to verification or corroboration (as appropriate) by the U.S. Department of Commerce. I am also aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. Government. In addition, I am aware that, even if this submission may be withdrawn from the record of the *AD/CVD* proceeding, the U.S. Department of Commerce may preserve this submission, including a business proprietary submission, for purposes of determining the accuracy of this certification. I certify that a copy of this signed certification will be filed with this submission to the U.S. Department of Commerce.

Signature: [signature]

Date: 3/13/26

# CERTIFICATE OF SERVICE

**Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India**
**A-570-910, C-570-911, A-533-502, A-580-809**
**Remand – Slip Op. 25-157**

I, Steve Satchell, hereby certify that copies of the attached *public document* were served today, March 13, 2026, via ACCESS electronic service:

Robert E DeFrancesco III, Esq.
**Wiley Rein LLP**
2050 M Street, NW
Washington, DC 20036
rdefrancesco@wiley.law

Jeffrey M. Winton, Esq.
**Winton & Chapman PLLC**
1100 13th Street NW
Suite 825
Washington, DC 20005
jwinton@jmwinton.com
service@jmwinton.com

Jonathan M. Freed, Esq.
**Trade Pacific PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003
jfreed@tradepacificlaw.com

John M. Gurley, Esq.
**ArentFox Schiff LLP**
1717 K Street
Washington DC 20006
john.gurley@afslaw.com

Nguyen Ha Anh
**Hoa Phat Steel Pipe Co.Ltd.**
39 Nguyen Dinh Chieu Street, Le Dai Hanh Ward,
Hai Ba Trung District, Ha Noi, Vietnam
nguyenhaanh@hoaphat.com.vn

Thang Huy Nguyen
**Chinh Dai Steel Technology Ltd.**
KM 5, 385TH ROAD, LAC DAO COMMUNE, VAN LAM DISTRICT, HUNG YEN PROVINCE, VIETNAM
legal@chinhdaisteel.com

Giang Le
**GHConsults LLC**
Level 11, Vinafor Building, 127 Lo Duc Street, Hanoi, Vietnam
giangls@ghconsults.vn

/s/ *Steve Satchell*
Steve Satchell, *Paralegal*
SCHAGRIN ASSOCIATES

Exhibit 1

**China Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Vietnam | 813,250 | 1,183,320 | 2,613,040 | 3,245,057 | 4,202,538 | 12,057,205 | 23.56% | 3,262,019 | 3,009,760 | 1,889,021 | 1,451,006 | 2,615,269 | 12,227,075 | 26.28% |
| Korea, South | 2,028,770 | 1,943,226 | 2,878,269 | 3,023,012 | 3,028,369 | 12,901,646 | 25.21% | 3,067,886 | 1,499,607 | 1,709,551 | 856,121 | 1,471,245 | 8,604,411 | 18.49% |
| Pakistan | 136,146 | 286,924 | 567,016 | 1,017,066 | 1,273,969 | 3,281,121 | 6.41% | 1,142,761 | 866,922 | 541,332 | 591,248 | 726,063 | 3,868,328 | 8.31% |
| Saudi Arabia | 117,178 | 89,205 | 569,262 | 312,611 | 500,588 | 1,588,844 | 3.11% | 540,177 | 489,972 | 671,456 | 642,265 | 535,459 | 2,879,329 | 6.19% |
| Indonesia | 22,152 | 28,457 | 54,685 | 158,877 | 336,915 | 601,086 | 1.17% | 489,839 | 519,598 | 556,033 | 196,328 | 290,945 | 2,052,743 | 4.41% |
| Bangladesh | 15,647 | 20,218 | 11,879 | 40,743 | 174,000 | 262,487 | 0.51% | 280,690 | 442,225 | 198,761 | 136,783 | 298,638 | 1,357,097 | 2.92% |
| India | 430,464 | 365,269 | 673,382 | 1,062,765 | 714,551 | 3,246,433 | 6.34% | 412,572 | 227,647 | 403,040 | 169,909 | 46,131 | 1,259,298 | 2.71% |
| Thailand | 652,949 | 262,910 | 269,550 | 225,127 | 221,298 | 1,631,833 | 3.19% | 177,900 | 203,597 | 265,455 | 246,900 | 345,253 | 1,239,105 | 2.66% |
| Chile | 56,855 | 161,992 | 359,331 | 199,655 | 201,689 | 979,522 | 1.91% | 302,552 | 354,613 | 155,858 | 112,830 | 266,365 | 1,192,218 | 2.56% |
| Kenya | 807 | 2,399 | 1,974 | 21,132 | 80,411 | 106,722 | 0.21% | 138,719 | 158,714 | 117,868 | 268,392 | 430,460 | 1,114,153 | 2.39% |
| Nigeria | 1,097 | 38,550 | 15,380 | 46,477 | 82,083 | 183,586 | 0.36% | 111,726 | 240,385 | 246,173 | 240,734 | 214,193 | 1,053,210 | 2.26% |
| Philippines | 205,208 | 270,096 | 368,145 | 173,281 | 211,787 | 1,228,517 | 2.40% | 297,658 | 264,614 | 151,979 | 62,397 | 107,262 | 883,910 | 1.90% |
| United Arab Emirates | 18,265 | 49,554 | 207,176 | 284,515 | 209,249 | 768,758 | 1.50% | 165,847 | 112,801 | 86,841 | 100,554 | 240,106 | 706,149 | 1.52% |
| Ecuador | 56,197 | 107,498 | 153,644 | 80,894 | 60,931 | 459,165 | 0.90% | 92,280 | 122,970 | 110,927 | 84,958 | 211,328 | 622,462 | 1.34% |
| Malaysia | 69,745 | 69,166 | 127,413 | 178,882 | 219,543 | 664,749 | 1.30% | 134,678 | 140,786 | 86,697 | 51,314 | 142,018 | 555,493 | 1.19% |
| Türkiye/Turkey | 30,904 | 35,950 | 310,913 | 485,807 | 241,959 | 1,105,533 | 2.16% | 132,021 | 1,964 | 3,514 | 6,319 | 345,332 | 489,150 | 1.05% |
| Peru | 62,555 | 51,109 | 91,901 | 41,000 | 48,131 | 294,696 | 0.58% | 71,229 | 105,130 | 40,455 | 54,992 | 202,936 | 474,741 | 1.02% |
| Tanzania | 614 | 1,032 | 814 | 3,255 | 22,166 | 27,882 | 0.05% | 35,341 | 65,313 | 61,397 | 121,153 | 171,019 | 454,224 | 0.98% |
| Sudan | 1,135 | 5,380 | 2,183 | 12,774 | 81,767 | 103,239 | 0.20% | 96,360 | 57,770 | 74,042 | 126,403 | 61,276 | 415,851 | 0.89% |
| Algeria | 304 | 1,520 | 10,490 | 29,748 | 34,410 | 76,472 | 0.15% | 68,810 | 101,509 | 110,234 | 39,631 | 66,044 | 386,228 | 0.83% |
| Guatemala | 20,947 | 66,034 | 85,048 | 74,665 | 35,004 | 281,698 | 0.55% | 55,369 | 88,705 | 71,196 | 74,511 | 94,684 | 384,465 | 0.83% |
| Iran | 10,178 | 12,228 | 140,029 | 772,656 | 429,742 | 1,364,832 | 2.67% | 260,225 | 115,175 | 1,931 | 412 | 1,063 | 378,806 | 0.81% |
| Djibouti | 530 | 89 | 1,129 | 36,328 | 47,606 | 85,682 | 0.17% | 63,327 | 41,129 | 74,695 | 113,012 | 59,589 | 351,753 | 0.76% |
| Japan | 88,775 | 65,812 | 124,565 | 73,292 | 55,630 | 408,075 | 0.80% | 40,071 | 48,007 | 79,884 | 39,332 | 134,191 | 341,486 | 0.73% |
| Oman | 20,138 | 6,712 | 79,151 | 65,271 | 71,583 | 242,855 | 0.47% | 65,662 | 58,230 | 66,377 | 44,467 | 55,688 | 290,424 | 0.62% |
| Mexico | 59,513 | 29,044 | 204,444 | 72,952 | 68,641 | 434,595 | 0.85% | 101,177 | 90,631 | 30,119 | 3,135 | 61,222 | 286,284 | 0.62% |
| Colombia | 15,101 | 16,686 | 85,404 | 24,047 | 19,815 | 161,052 | 0.31% | 30,184 | 39,063 | 33,640 | 33,843 | 134,790 | 271,521 | 0.58% |
| Brazil | 37,227 | 64,434 | 253,698 | 136,493 | 67,748 | 559,599 | 1.09% | 13,743 | 29,217 | 15,847 | 7,012 | 164,928 | 230,748 | 0.50% |
| Kuwait | 13,339 | 27,261 | 16,017 | 22,808 | 20,575 | 99,999 | 0.20% | 20,408 | 87,616 | 33,269 | 18,295 | 24,072 | 183,661 | 0.39% |
| South Africa | 11,042 | 131,572 | 209,613 | 374,048 | 262,294 | 988,570 | 1.93% | 51,315 | 9,186 | 3,826 | 7,636 | 78,982 | 150,947 | 0.32% |
| Egypt | 77 | 234 | 100,064 | 138,875 | 108,067 | 347,317 | 0.68% | 84,569 | 1,356 | 1,031 | 23,242 | 22,398 | 132,595 | 0.28% |
| Qatar | 290 | 72 | 302 | 1,134 | 49 | 1,847 | 0.00% | 984 | 10,734 | 32,188 | 55,341 | 27,886 | 127,134 | 0.27% |
| Cote d Ivoire | 29 | 711 | 1,583 | 2,493 | 25,512 | 30,329 | 0.06% | 18,596 | 10,860 | 31,906 | 38,800 | 19,469 | 119,632 | 0.26% |
| Angola | 1,015 | 4,491 | 4,211 | 2,939 | 18,849 | 31,506 | 0.06% | 17,856 | 16,794 | 27,222 | 19,818 | 13,227 | 94,918 | 0.20% |
| United States | 20,842 | 22,107 | 26,442 | 24,803 | 16,489 | 110,682 | 0.22% | 26,109 | 25,048 | 15,886 | 8,330 | 17,956 | 93,328 | 0.20% |
| Dominican Republic | 176 | 543 | 6,866 | 4,902 | 4,983 | 17,470 | 0.03% | 10,044 | 15,628 | 14,209 | 9,852 | 42,188 | 91,921 | 0.20% |
| Myanmar | 1,385 | 2,135 | 11,723 | 10,683 | 15,142 | 41,068 | 0.08% | 6,370 | 23,854 | 19,839 | 16,013 | 19,104 | 85,180 | 0.18% |
| Costa Rica | 675 | 289 | 2,041 | 2,373 | 14,247 | 19,625 | 0.04% | 13,966 | 17,319 | 16,473 | 11,836 | 17,986 | 77,579 | 0.17% |
| Honduras | 1,761 | 3,902 | 16,493 | 7,924 | 2,399 | 32,480 | 0.06% | 8,478 | 8,880 | 17,273 | 23,449 | 18,854 | 76,934 | 0.17% |
| Australia | 6,495 | 11,056 | 9,513 | 10,801 | 17,707 | 55,571 | 0.11% | 11,581 | 13,725 | 10,084 | 11,263 | 16,580 | 63,233 | 0.14% |
| Tunisia | 0 | 3 | 7 | 11,571 | 730 | 12,312 | 0.02% | 10 | 7,933 | 1 | 0 | 54,895 | 62,838 | 0.14% |
| Taiwan | 5,769 | 10,891 | 14,694 | 11,482 | 19,689 | 62,524 | 0.12% | 17,185 | 5,775 | 5,643 | 3,981 | 29,734 | 62,318 | 0.13% |
| Singapore | 23,491 | 23,462 | 69,089 | 5,476 | 9,180 | 130,698 | 0.26% | 13,357 | 18,629 | 14,874 | 5,523 | 7,013 | 59,396 | 0.13% |
| Brunei Darussalam | 23 | 9 | 109 | 641 | 310 | 1,093 | 0.00% | 1,755 | 30,721 | 23,155 | 2,269 | 223 | 58,123 | 0.12% |
| Yemen | 414 | 6,144 | 7,034 | 2,346 | 6,521 | 22,460 | 0.04% | 17,830 | 13,023 | 7,414 | 8,077 | 2,374 | 48,718 | 0.10% |
| Mozambique | 5,040 | 1,687 | 5,995 | 3,155 | 3,173 | 19,050 | 0.04% | 9,795 | 10,918 | 4,566 | 2,921 | 18,919 | 47,120 | 0.10% |
| Cameroon | 278 | 676 | 1,175 | 1,486 | 5,099 | 8,714 | 0.02% | 3,986 | 3,491 | 8,582 | 11,575 | 11,338 | 38,973 | 0.08% |

**China Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Italy | 74,461 | 23,477 | 266,401 | 942,872 | 429,279 | 1,736,491 | 3.39% | 858 | 1,593 | 1,108 | 2,810 | 29,203 | 35,573 | 0.08% |
| Ghana | 272 | 1,674 | 1,751 | 3,049 | 7,139 | 13,885 | 0.03% | 3,068 | 6,277 | 5,257 | 11,012 | 8,856 | 34,470 | 0.07% |
| Jordan | 2,212 | 1,444 | 26,353 | 19,541 | 28,607 | 78,157 | 0.15% | 11,046 | 1,482 | 5,244 | 10,752 | 4,610 | 33,134 | 0.07% |
| Uzbekistan | 76 | 22 | 68 | 605 | 291 | 1,063 | 0.00% | 48 | 403 | 1,793 | 1,180 | 29,116 | 32,541 | 0.07% |
| Lebanon | 219 | 95 | 12,563 | 22 | 8,969 | 21,868 | 0.04% | 9,446 | 6,229 | 324 | 1,299 | 6,162 | 23,460 | 0.05% |
| Togo | 6 | 216 | 409 | 4,067 | 2,703 | 7,401 | 0.01% | 1,879 | 6,452 | 7,129 | 2,486 | 3,174 | 21,120 | 0.05% |
| Hong Kong | 5,863 | 8,265 | 6,912 | 9,400 | 6,824 | 37,264 | 0.07% | 5,108 | 6,751 | 2,414 | 2,821 | 3,605 | 20,700 | 0.04% |
| Morocco | 4 | 0 | 0 | 12,516 | 125 | 12,645 | 0.02% | 7,611 | 10,228 | 38 | 985 | 22 | 18,884 | 0.04% |
| Benin | 7 | 468 | 783 | 694 | 1,847 | 3,798 | 0.01% | 1,677 | 2,258 | 8,059 | 2,458 | 3,467 | 17,919 | 0.04% |
| Israel | 8,598 | 799 | 11,971 | 24,929 | 6,242 | 52,538 | 0.10% | 13,957 | 619 | 54 | 137 | 2,678 | 17,445 | 0.04% |
| Senegal | 225 | 258 | 192 | 458 | 1,059 | 2,191 | 0.00% | 2,184 | 96 | 1,484 | 11,974 | 1,411 | 17,149 | 0.04% |
| El Salvador | 733 | 805 | 2,957 | 2,433 | 1,461 | 8,388 | 0.02% | 1,828 | 9,774 | 1,519 | 1,775 | 2,205 | 17,102 | 0.04% |
| Ethiopia | 2,096 | 970 | 6,420 | 5,305 | 16,184 | 30,974 | 0.06% | 7,624 | 584 | 2,642 | 1,468 | 2,747 | 15,065 | 0.03% |
| Iraq | 251 | 3,792 | 41 | 1,887 | 2,225 | 8,196 | 0.02% | 4,796 | 5 | 718 | 5,605 | 3,277 | 14,402 | 0.03% |
| Sri Lanka | 2,045 | 1,546 | 2,280 | 1,162 | 1,487 | 8,520 | 0.02% | 1,825 | 444 | 320 | 9,894 | 1,192 | 13,675 | 0.03% |
| Germany | 2,617 | 1,774 | 1,753 | 2,024 | 1,419 | 9,587 | 0.02% | 1,870 | 2,168 | 2,275 | 2,068 | 4,127 | 12,508 | 0.03% |
| Namibia | 559 | 474 | 1,125 | 583 | 653 | 3,395 | 0.01% | 1,104 | 1,959 | 4,363 | 2,211 | 2,323 | 11,961 | 0.03% |
| Uruguay | 0 | 9 | 66 | 91 | 80 | 246 | 0.00% | 38 | 181 | 1 | 19 | 9,280 | 9,519 | 0.02% |
| Belgium | 36,897 | 11,891 | 93,128 | 150,855 | 49,580 | 342,352 | 0.67% | 5,223 | 1,179 | 340 | 276 | 1,814 | 8,832 | 0.02% |
| Greece | 16,797 | 240 | 0 | 21,413 | 75 | 38,526 | 0.08% | 7,996 | 534 | 1 | 0 | 0 | 8,530 | 0.02% |
| Paraguay | 2,717 | 1,679 | 6,428 | 11,842 | 7,117 | 29,783 | 0.06% | 1,061 | 10 | 484 | 25 | 6,323 | 7,901 | 0.02% |
| Mongolia | 1,444 | 1,357 | 1,143 | 1,159 | 1,201 | 6,303 | 0.01% | 808 | 1,000 | 2,221 | 1,836 | 1,628 | 7,494 | 0.02% |
| Argentina | 17 | 26 | 30 | 109 | 9 | 190 | 0.00% | 40 | 21 | 3,111 | 1,257 | 2,587 | 7,016 | 0.02% |
| Cambodia | 123 | 109 | 119 | 196 | 613 | 1,160 | 0.00% | 377 | 991 | 2,944 | 1,932 | 428 | 6,672 | 0.01% |
| Canada | 1,279 | 1,087 | 638 | 1,777 | 566 | 5,347 | 0.01% | 956 | 1,314 | 1,191 | 695 | 1,630 | 5,787 | 0.01% |
| New Zealand | 131 | 4 | 836 | 870 | 1,465 | 3,306 | 0.01% | 1,618 | 1,475 | 1,068 | 382 | 923 | 5,466 | 0.01% |
| Nicaragua | 1 | 20 | 1,844 | 992 | 1,367 | 4,223 | 0.01% | 1,473 | 2,275 | 67 | 1,017 | 184 | 5,017 | 0.01% |
| Bolivia | 108 | 2 | 48 | 9 | 66 | 233 | 0.00% | 578 | 2,071 | 287 | 963 | 349 | 4,248 | 0.01% |
| Papua New Guinea | 1,481 | 1,181 | 1,123 | 1,294 | 728 | 5,808 | 0.01% | 836 | 798 | 646 | 1,065 | 836 | 4,181 | 0.01% |
| Netherlands | 645 | 1,116 | 1,615 | 711 | 670 | 4,758 | 0.01% | 960 | 938 | 719 | 366 | 615 | 3,598 | 0.01% |
| Congo, Dem. Rep. | 400 | 747 | 1,611 | 1,549 | 463 | 4,771 | 0.01% | 138 | 770 | 872 | 442 | 744 | 2,966 | 0.01% |
| Laos | 7 | 32 | 89 | 185 | 112 | 425 | 0.00% | 351 | 840 | 887 | 261 | 97 | 2,437 | 0.01% |
| Poland | 315 | 248 | 326 | 474 | 975 | 2,337 | 0.00% | 461 | 267 | 653 | 564 | 343 | 2,288 | 0.00% |
| Cuba | 4,995 | 2,002 | 1,369 | 905 | 4,084 | 13,355 | 0.03% | 1,424 | 6 | 311 | 263 | 113 | 2,117 | 0.00% |
| Haiti | 0 | 0 | 81 | 0 | 0 | 81 | 0.00% | 0 | 57 | 1,979 | 65 | 2 | 2,103 | 0.00% |
| Guinea | 9 | 441 | 53 | 27 | 90 | 620 | 0.00% | 231 | 109 | 325 | 136 | 744 | 1,545 | 0.00% |
| Sierra Leone | 138 | 496 | 339 | 669 | 438 | 2,079 | 0.00% | 526 | 370 | 284 | 164 | 145 | 1,490 | 0.00% |
| Fiji | 185 | 185 | 300 | 338 | 422 | 1,430 | 0.00% | 537 | 371 | 160 | 254 | 57 | 1,379 | 0.00% |
| Kazakhstan | 776 | 2,141 | 152 | 3,066 | 1,068 | 7,204 | 0.01% | 144 | 844 | 275 | 10 | 90 | 1,364 | 0.00% |
| Madagascar | 157 | 163 | 336 | 262 | 292 | 1,210 | 0.00% | 323 | 227 | 261 | 216 | 298 | 1,326 | 0.00% |
| Mauritania | 24 | 47 | 213 | 189 | 180 | 654 | 0.00% | 228 | 144 | 312 | 376 | 234 | 1,295 | 0.00% |
| Korea, North | 1,410 | 1,550 | 2,408 | 1,690 | 6,573 | 13,630 | 0.03% | 1,167 | 5 | 0 | 0 | 0 | 1,173 | 0.00% |
| Russia | 315 | 836 | 1,176 | 390 | 238 | 2,955 | 0.01% | 196 | 134 | 215 | 154 | 359 | 1,057 | 0.00% |
| Venezuela | 41,935 | 37,542 | 91,234 | 5,001 | 1,473 | 177,185 | 0.35% | 438 | 167 | 41 | 300 | 72 | 1,018 | 0.00% |
| Zambia | 31 | 440 | 135 | 370 | 31 | 1,006 | 0.00% | 193 | 34 | 81 | 64 | 605 | 979 | 0.00% |
| Panama | 306 | 13 | 251 | 593 | 353 | 1,516 | 0.00% | 184 | 52 | 363 | 164 | 105 | 868 | 0.00% |
| Hungary | 0 | 0 | 290 | 76 | 61 | 427 | 0.00% | 94 | 74 | 15 | 255 | 374 | 813 | 0.00% |

**China Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Spain | 57,242 | 23,729 | 158,229 | 271,643 | 89,570 | 600,413 | 1.17% | 73 | 222 | 258 | 49 | 190 | 793 | 0.00% |
| Burkina Faso | 0 | 0 | 71 | 0 | 0 | 71 | 0.00% | 0 | 0 | 3 | 565 | 220 | 789 | 0.00% |
| Zimbabwe | 35 | 77 | 823 | 1,710 | 816 | 3,461 | 0.01% | 55 | 188 | 122 | 98 | 150 | 613 | 0.00% |
| Kyrgyzstan | 29 | 88 | 107 | 0 | 86 | 311 | 0.00% | 326 | 237 | 16 | 6 | 16 | 600 | 0.00% |
| Macau | 2,331 | 113 | 83 | 100 | 2,444 | 5,071 | 0.01% | 111 | 238 | 79 | 38 | 131 | 597 | 0.00% |
| Somalia | 0 | 2 | 0 | 2 | 65 | 69 | 0.00% | 217 | 46 | 67 | 186 | 62 | 578 | 0.00% |
| Eritrea | 904 | 0 | 11 | 15 | 1 | 931 | 0.00% | 45 | 27 | 457 | 7 | 7 | 543 | 0.00% |
| Sweden | 523 | 163 | 14 | 4 | 1 | 704 | 0.00% | 36 | 4 | 12 | 184 | 306 | 542 | 0.00% |
| Georgia | 351 | 0 | 51 | 68 | 32 | 501 | 0.00% | 0 | 0 | 504 | 2 | 0 | 506 | 0.00% |
| Maldives | 35 | 10 | 0 | 129 | 977 | 1,150 | 0.00% | 331 | 68 | 47 | 32 | 13 | 490 | 0.00% |
| Mauritius | 60 | 0 | 74 | 32 | 5 | 172 | 0.00% | 123 | 78 | 124 | 55 | 98 | 479 | 0.00% |
| Portugal | 127,808 | 36,679 | 125,805 | 158,609 | 22,566 | 471,466 | 0.92% | 0 | 2 | 0 | 3 | 451 | 456 | 0.00% |
| Guyana | 3 | 67 | 367 | 699 | 196 | 1,332 | 0.00% | 123 | 0 | 30 | 7 | 267 | 427 | 0.00% |
| Uganda | 6 | 2 | 35 | 186 | 288 | 517 | 0.00% | 20 | 18 | 138 | 180 | 34 | 390 | 0.00% |
| United Kingdom | 57,429 | 23,956 | 92,287 | 39,940 | 1,261 | 214,873 | 0.42% | 62 | 22 | 50 | 42 | 208 | 383 | 0.00% |
| Congo | 217 | 141 | 315 | 284 | 436 | 1,393 | 0.00% | 79 | 42 | 110 | 116 | 33 | 379 | 0.00% |
| Ukraine | 79 | 123 | 44 | 112 | 131 | 488 | 0.00% | 33 | 104 | 97 | 36 | 108 | 378 | 0.00% |
| Tajikistan | 29 | 83 | 688 | 365 | 146 | 1,310 | 0.00% | 6 | 27 | 86 | 30 | 227 | 376 | 0.00% |
| Syria | 66 | 38 | 22 | 261 | 2 | 389 | 0.00% | 11 | 45 | 67 | 244 | 0 | 367 | 0.00% |
| Solomon Islands | 0 | 15 | 29 | 55 | 97 | 195 | 0.00% | 129 | 91 | 42 | 63 | 37 | 361 | 0.00% |
| Liberia | 137 | 401 | 273 | 174 | 12 | 997 | 0.00% | 162 | 123 | 0 | 40 | 1 | 326 | 0.00% |
| Gabon | 317 | 0 | 282 | 109 | 396 | 1,105 | 0.00% | 55 | 29 | 51 | 51 | 129 | 315 | 0.00% |
| East Timor | 0 | 0 | 104 | 9 | 17 | 130 | 0.00% | 59 | 37 | 37 | 31 | 126 | 291 | 0.00% |
| Czech Republic | 0 | 98 | 95 | 3 | 1 | 198 | 0.00% | 77 | 116 | 0 | 27 | 58 | 278 | 0.00% |
| Suriname | 0 | 16 | 30 | 106 | 24 | 177 | 0.00% | 11 | 77 | 73 | 55 | 15 | 231 | 0.00% |
| France | 39 | 3 | 124 | 85 | 8 | 259 | 0.00% | 53 | 117 | 19 | 9 | 22 | 220 | 0.00% |
| Equatorial Guinea | 135 | 670 | 338 | 41 | 0 | 1,183 | 0.00% | 117 | 2 | 5 | 85 | 7 | 217 | 0.00% |
| Gambia | 156 | 105 | 75 | 53 | 150 | 539 | 0.00% | 87 | 0 | 67 | 29 | 24 | 206 | 0.00% |
| Mali | 10 | 0 | 0 | 0 | 441 | 451 | 0.00% | 36 | 113 | 21 | 18 | 2 | 190 | 0.00% |
| Azerbaijan | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 2 | 86 | 0 | 101 | 0 | 188 | 0.00% |
| Chad | 53 | 87 | 14 | 0 | 5 | 160 | 0.00% | 71 | 45 | 8 | 51 | 13 | 187 | 0.00% |
| Malawi | 10 | 2 | 15 | 30 | 0 | 56 | 0.00% | 60 | 10 | 94 | 0 | 0 | 163 | 0.00% |
| Bulgaria | 759 | 1,063 | 0 | 3 | 1 | 1,826 | 0.00% | 0 | 0 | 0 | 71 | 55 | 126 | 0.00% |
| Trinidad & Tobago | 41 | 50 | 61 | 191 | 108 | 451 | 0.00% | 118 | 0 | 6 | 0 | 0 | 124 | 0.00% |
| Rwanda | 101 | 10 | 30 | 12 | 15 | 168 | 0.00% | 21 | 1 | 3 | 0 | 95 | 121 | 0.00% |
| Samoa | 22 | 14 | 2 | 1 | 12 | 52 | 0.00% | 20 | 4 | 57 | 13 | 25 | 119 | 0.00% |
| Croatia | 445 | 4 | 0 | 0 | 0 | 449 | 0.00% | 39 | 4 | 2 | 0 | 71 | 117 | 0.00% |
| Jamaica | 4 | 181 | 45 | 46 | 158 | 435 | 0.00% | 89 | 2 | 11 | 2 | 0 | 105 | 0.00% |
| Ireland | 0 | 0 | 0 | 0 | 0 | 1 | 0.00% | 0 | 104 | 0 | 0 | 0 | 104 | 0.00% |
| Turkmenistan | 28 | 4 | 15 | 14 | 4 | 65 | 0.00% | 0 | 0 | 0 | 54 | 43 | 98 | 0.00% |
| Libya | 30 | 225 | 25 | 0 | 0 | 280 | 0.00% | 0 | 1 | 0 | 25 | 52 | 77 | 0.00% |
| Dominica | 0 | 15 | 1 | 0 | 0 | 16 | 0.00% | 68 | 0 | 0 | 0 | 0 | 68 | 0.00% |
| New Caledonia | 159 | 25 | 0 | 2 | 10 | 195 | 0.00% | 3 | 0 | 0 | 0 | 60 | 63 | 0.00% |
| Lithuania | 0 | 0 | 0 | 5 | 9 | 15 | 0.00% | 11 | 20 | 21 | 1 | 4 | 58 | 0.00% |
| Slovenia | 27 | 1 | 18 | 21 | 23 | 90 | 0.00% | 26 | 8 | 0 | 9 | 14 | 57 | 0.00% |
| Cape Verde | 6 | 0 | 0 | 2 | 36 | 44 | 0.00% | 9 | 25 | 1 | 11 | 10 | 56 | 0.00% |
| Finland | 15 | 0 | 0 | 0 | 0 | 16 | 0.00% | 0 | 0 | 0 | 47 | 0 | 47 | 0.00% |

**China Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Norway | 11 | 9 | 121 | 469 | 12 | 622 | 0.00% | 16 | 0 | 12 | 15 | 2 | 46 | 0.00% |
| Mayotte | 0 | 27 | 0 | 0 | 29 | 56 | 0.00% | 0 | 0 | 43 | 0 | 0 | 43 | 0.00% |
| Belarus | 0 | 0 | 130 | 0 | 1 | 131 | 0.00% | 0 | 9 | 1 | 17 | 14 | 41 | 0.00% |
| Switzerland | 0 | 0 | 1 | 3 | 4 | 8 | 0.00% | 31 | 0 | 0 | 0 | 8 | 40 | 0.00% |
| Slovakia | 0 | 0 | 0 | 10 | 0 | 10 | 0.00% | 18 | 0 | 13 | 0 | 7 | 37 | 0.00% |
| Armenia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 7 | 0 | 0 | 8 | 22 | 37 | 0.00% |
| Other Oceania, N.E.S. | 0 | 0 | 0 | 0 | 6 | 6 | 0.00% | 0 | 0 | 17 | 15 | 5 | 36 | 0.00% |
| Netherlands Antilles | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 35 | 0 | 0 | 35 | 0.00% |
| Niger | 0 | 51 | 27 | 23 | 2 | 102 | 0.00% | 0 | 0 | 13 | 0 | 23 | 35 | 0.00% |
| Guinea-Bissau | 0 | 0 | 0 | 20 | 0 | 20 | 0.00% | 0 | 0 | 33 | 0 | 0 | 33 | 0.00% |
| Romania | 0 | 0 | 0 | 0 | 4 | 4 | 0.00% | 2 | 8 | 18 | 0 | 0 | 28 | 0.00% |
| Comoros | 0 | 0 | 0 | 0 | 34 | 34 | 0.00% | 18 | 2 | 0 | 4 | 1 | 25 | 0.00% |
| French Polynesia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 6 | 13 | 4 | 23 | 0.00% |
| St. Lucia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 22 | 0 | 22 | 0.00% |
| Latvia | 0 | 0 | 0 | 5 | 0 | 5 | 0.00% | 0 | 0 | 6 | 13 | 0 | 19 | 0.00% |
| Bahrain | 121 | 51 | 200 | 99 | 51 | 521 | 0.00% | 0 | 5 | 10 | 2 | 1 | 18 | 0.00% |
| Vanuatu | 4 | 0 | 2 | 17 | 3 | 26 | 0.00% | 0 | 12 | 4 | 1 | 1 | 18 | 0.00% |
| Afghanistan | 14 | 0 | 0 | 0 | 9 | 23 | 0.00% | 0 | 3 | 14 | 0 | 0 | 17 | 0.00% |
| Nepal | 31 | 12 | 11 | 0 | 0 | 54 | 0.00% | 2 | 0 | 1 | 3 | 10 | 16 | 0.00% |
| South Sudan | 32 | 4 | 43 | 89 | 0 | 168 | 0.00% | 0 | 6 | 8 | 1 | 0 | 15 | 0.00% |
| Sao Tome & Principe | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 6 | 7 | 0 | 13 | 0.00% |
| Malta | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 12 | 0 | 0 | 13 | 0.00% |
| Grenada | 0 | 0 | 17 | 0 | 0 | 17 | 0.00% | 0 | 0 | 11 | 0 | 0 | 11 | 0.00% |
| Austria | 0 | 0 | 0 | 1 | 10 | 11 | 0.00% | 6 | 0 | 0 | 0 | 0 | 7 | 0.00% |
| Antigua & Barbuda | 0 | 106 | 0 | 0 | 0 | 106 | 0.00% | 0 | 6 | 0 | 0 | 0 | 7 | 0.00% |
| Botswana | 26 | 0 | 0 | 1 | 0 | 26 | 0.00% | 2 | 0 | 4 | 0 | 0 | 6 | 0.00% |
| Tonga | 0 | 0 | 2 | 16 | 0 | 18 | 0.00% | 0 | 0 | 0 | 2 | 4 | 6 | 0.00% |
| Seychelles | 12 | 1 | 29 | 3 | 6 | 51 | 0.00% | 0 | 3 | 2 | 0 | 0 | 5 | 0.00% |
| Belize | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 4 | 0 | 0 | 0 | 0 | 4 | 0.00% |
| Serbia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 1 | 0 | 2 | 0 | 0 | 3 | 0.00% |
| Micronesia (Federated States of) | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 3 | 0 | 0 | 0 | 3 | 0.00% |
| Bahamas | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 3 | 0 | 0 | 0 | 0 | 3 | 0.00% |
| Cyprus | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 1 | 0 | 0 | 2 | 2 | 0.00% |
| Moldova | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 2 | 0 | 0 | 0 | 2 | 0.00% |
| Lesotho | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 2 | 2 | 0.00% |
| Sint Maarten | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 1 | 0 | 0 | 0 | 1 | 0.00% |
| Montenegro | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 1 | 0 | 1 | 0.00% |
| St. Kitts & Nevis | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 1 | 0 | 0 | 0 | 1 | 0.00% |
| French Guiana | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 1 | 1 | 0.00% |
| Wallis & Futuna Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 1 | 0 | 1 | 0.00% |
| Central African Republic | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 1 | 0.00% |
| Denmark | 0 | 1 | 5 | 0 | 0 | 6 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Marshall Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Barbados | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Puerto Rico (U.S.) | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Iceland | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Eswatini | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |

Barcode: 4894779-01 A-580-809 REM - Remand Slip Op. 25-157

**China Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Western Sahara | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Gibraltar | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Luxembourg | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Reunion | 61 | 0 | 0 | 1 | 0 | 62 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Martinique | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Melilla | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Curacao | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Estonia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Guadeloupe | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Cook Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Monaco | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Liechtenstein | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| North Macedonia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Albania | 0 | 0 | 1 | 0 | 0 | 1 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Burundi | 0 | 1 | 0 | 5 | 55 | 60 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| **Grand Total** | **5,527,630** | **5,682,265** | **11,693,439** | **14,252,854** | **14,010,818** | **51,167,005** | **100.00%** | **12,092,632** | **9,904,574** | **8,209,682** | **6,241,439** | **10,079,342** | **46,527,668** | **100.00%** |

Source: Global Trade Atlas (GTA) for hot-rolled sheet and strip in coils covered under HTS codes 720810, 720825, 720826, 720827, 720836, 720837, 720828, 721114, 721119, 722530, 722599, 722691.

Filed By: rschagrin@schagrinassociates.com, Filed Date: 3/13/26 3:59 PM, Submission Status: Approved

Barcode: 4894779-01 A-580-809 REM - Remand Slip Op. 25-157

**India Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Vietnam | 32,400 | 555,362 | 225,672 | 38,121 | 365,633 | 1,217,189 | 13.44% | 1,561,602 | 465,291 | 2,324,884 | 2,348,549 | 1,579,896 | 8,280,222 | 33.05% |
| Italy | 58,603 | 234,456 | 378,533 | 94,702 | 209,526 | 975,820 | 10.77% | 813,230 | 419,314 | 763,252 | 501,597 | 798,209 | 3,295,603 | 13.15% |
| United Arab Emirates | 266,391 | 202,328 | 355,480 | 148,458 | 138,877 | 1,111,533 | 12.27% | 635,380 | 409,378 | 580,032 | 685,087 | 685,869 | 2,995,746 | 11.96% |
| China | 123 | 4,849 | 117 | 6 | 111 | 5,205 | 0.06% | 496 | 9 | 58,619 | 1,974,698 | 12 | 2,033,834 | 8.12% |
| Nepal | 72,644 | 112,690 | 139,036 | 182,556 | 292,280 | 799,207 | 8.82% | 294,253 | 383,103 | 424,676 | 397,588 | 497,828 | 1,997,449 | 7.97% |
| Malaysia | 23,522 | 65,058 | 30,580 | 42,995 | 169,382 | 331,537 | 3.66% | 465,871 | 199,288 | 197,886 | 43,115 | 55,231 | 961,392 | 3.84% |
| Belgium | 232,469 | 173,995 | 40,439 | 32,402 | 190,776 | 670,081 | 7.40% | 284,248 | 162,605 | 47,277 | 76,963 | 303,268 | 874,360 | 3.49% |
| Türkiye/Turkey | 0 | 0 | 1 | 0 | 64,565 | 64,566 | 0.71% | 72,106 | 94,168 | 17,826 | 177 | 480,705 | 664,982 | 2.65% |
| Spain | 186,726 | 171,029 | 51,582 | 39,768 | 85,630 | 534,735 | 5.90% | 163,427 | 112,385 | 101,603 | 97,678 | 160,565 | 635,658 | 2.54% |
| Oman | 84,504 | 25,301 | 2,560 | 39,651 | 8,236 | 160,253 | 1.77% | 98,672 | 26,115 | 133,995 | 65,802 | 81,872 | 406,456 | 1.62% |
| Saudi Arabia | 126,923 | 83,772 | 32,360 | 14,999 | 5,264 | 263,317 | 2.91% | 83,968 | 60,932 | 67,690 | 87,708 | 96,827 | 397,125 | 1.58% |
| South Africa | 15,964 | 99,420 | 23,907 | 52 | 4 | 139,346 | 1.54% | 87,335 | 0 | 21 | 1,076 | 288,968 | 377,401 | 1.51% |
| Bangladesh | 19,165 | 61,855 | 75,121 | 41,410 | 59,548 | 257,100 | 2.84% | 99,280 | 34,417 | 74,178 | 47,426 | 76,074 | 331,377 | 1.32% |
| Taiwan | 62,653 | 101,506 | 106,018 | 0 | 61 | 270,237 | 2.98% | 13,075 | 20 | 172,044 | 54,621 | 28,806 | 268,567 | 1.07% |
| Korea, South | 132 | 22,940 | 23 | 115 | 76 | 23,286 | 0.26% | 14,016 | 63,470 | 10,252 | 666 | 118,532 | 206,936 | 0.83% |
| Thailand | 194,896 | 452,969 | 118,626 | 10,926 | 40,221 | 817,637 | 9.03% | 26,399 | 38,207 | 42,726 | 44,613 | 10,765 | 162,710 | 0.65% |
| Switzerland | 4 | 0 | 3 | 0 | 0 | 7 | 0.00% | 1,999 | 1 | 0 | 3 | 146,242 | 148,246 | 0.59% |
| United Kingdom | 17,193 | 75,616 | 64,249 | 0 | 12,815 | 169,873 | 1.88% | 32,670 | 15,124 | 9 | 41,031 | 56,104 | 144,938 | 0.58% |
| Portugal | 13,251 | 28,206 | 12,677 | 1,808 | 60,225 | 116,167 | 1.28% | 35,887 | 2,550 | 25,907 | 21,264 | 27,034 | 112,642 | 0.45% |
| Indonesia | 348 | 5,315 | 102 | 12,471 | 14,500 | 32,735 | 0.36% | 40,269 | 8,170 | 33,475 | 2,854 | 10,794 | 95,562 | 0.38% |
| Egypt | 0 | 32,910 | 13 | 71 | 0 | 32,994 | 0.36% | 37,125 | 1 | 4 | 6 | 47,501 | 84,637 | 0.34% |
| Nigeria | 83 | 19 | 1,889 | 2,094 | 8,227 | 12,312 | 0.14% | 19,568 | 29,518 | 252 | 276 | 10,833 | 60,447 | 0.24% |
| Singapore | 31,042 | 10,270 | 4 | 13 | 4 | 41,333 | 0.46% | 0 | 28 | 13 | 11 | 54,864 | 54,916 | 0.22% |
| Jordan | 6,598 | 9 | 4 | 13 | 13 | 6,636 | 0.07% | 10 | 42 | 13,899 | 10,026 | 12,500 | 36,477 | 0.15% |
| Tunisia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 36 | 0 | 0 | 33,777 | 33,813 | 0.13% |
| Kenya | 51,655 | 108,454 | 29,581 | 20,742 | 7,114 | 217,546 | 2.40% | 140 | 291 | 452 | 1,382 | 29,626 | 31,891 | 0.13% |
| Sri Lanka | 10,878 | 10,746 | 13,689 | 438 | 4,006 | 39,757 | 0.44% | 11,916 | 6,697 | 2,128 | 2,068 | 5,875 | 28,684 | 0.11% |
| Australia | 368 | 354 | 164 | 249 | 167 | 1,302 | 0.01% | 69 | 48 | 83 | 49 | 25,160 | 25,408 | 0.10% |
| Djibouti | 9,911 | 0 | 7,649 | 0 | 0 | 17,560 | 0.19% | 4 | 0 | 23,788 | 12 | 269 | 24,073 | 0.10% |
| France | 19,756 | 4,385 | 589 | 7,415 | 7,092 | 39,237 | 0.43% | 1 | 6,206 | 5,519 | 5,681 | 4,443 | 21,850 | 0.09% |
| Bulgaria | 0 | 0 | 0 | 304 | 101 | 405 | 0.00% | 231 | 318 | 0 | 0 | 19,413 | 19,962 | 0.08% |
| Mexico | 0 | 11 | 0 | 8,116 | 15,641 | 23,768 | 0.26% | 0 | 0 | 453 | 0 | 18,474 | 18,927 | 0.08% |
| Romania | 2,505 | 0 | 0 | 0 | 339 | 2,844 | 0.03% | 561 | 776 | 0 | 0 | 16,915 | 18,252 | 0.07% |
| Brazil | 2,096 | 278 | 4,994 | 13 | 0 | 7,382 | 0.08% | 7,263 | 4,700 | 4,042 | 0 | 3 | 16,009 | 0.06% |
| Poland | 0 | 0 | 16 | 0 | 946 | 962 | 0.01% | 6,625 | 0 | 1 | 0 | 9,289 | 15,915 | 0.06% |
| Bhutan | 1,645 | 524 | 3,473 | 1,761 | 925 | 8,329 | 0.09% | 2,017 | 2,504 | 4,184 | 2,775 | 2,200 | 13,680 | 0.05% |
| Japan | 209 | 167 | 203 | 102 | 21 | 702 | 0.01% | 17 | 28 | 21 | 8 | 11,693 | 11,767 | 0.05% |
| Germany | 16,190 | 130 | 10,096 | 50 | 95 | 26,562 | 0.29% | 0 | 2 | 95 | 186 | 11,106 | 11,388 | 0.05% |
| Philippines | 84 | 207 | 2,260 | 277 | 81 | 2,908 | 0.03% | 5,640 | 8 | 5,352 | 4 | 29 | 11,033 | 0.04% |
| Libya | 23 | 0 | 0 | 0 | 0 | 23 | 0.00% | 9,798 | 1 | 24 | 9 | 0 | 9,832 | 0.04% |
| Peru | 0 | 0 | 198 | 0 | 133 | 331 | 0.00% | 0 | 0 | 0 | 6 | 9,454 | 9,460 | 0.04% |
| Morocco | 0 | 6 | 0 | 0 | 0 | 6 | 0.00% | 0 | 0 | 10 | 9,213 | 0 | 9,223 | 0.04% |
| Ireland | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 3,720 | 4,213 | 0 | 0 | 356 | 8,290 | 0.03% |
| Qatar | 1 | 5,414 | 270 | 3 | 24 | 5,712 | 0.06% | 246 | 245 | 722 | 1,615 | 4,836 | 7,664 | 0.03% |
| United States | 1,431 | 2,878 | 3,878 | 10,803 | 3 | 18,994 | 0.21% | 1,095 | 2,834 | 54 | 19 | 2,956 | 6,957 | 0.03% |
| Ethiopia | 3,023 | 82 | 682 | 9,893 | 2,898 | 16,578 | 0.18% | 2,042 | 1,865 | 1,644 | 212 | 716 | 6,480 | 0.03% |

Filed By: rschagrin@schagrinassociates.com, Filed Date: 3/13/26 3:59 PM, Submission Status: Approved

Barcode: 4894779-01 A-580-809 REM - Remand Slip Op. 25-157

**India Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Guatemala | 0 | 4 | 0 | 0 | 464 | 468 | 0.01% | 0 | 0 | 2 | 0 | 6,430 | 6,432 | 0.03% |
| Tanzania | 35,037 | 70,561 | 15,516 | 8,238 | 0 | 129,352 | 1.43% | 67 | 421 | 76 | 4,135 | 1,220 | 5,918 | 0.02% |
| Algeria | 0 | 0 | 0 | 0 | 46 | 46 | 0.00% | 3 | 0 | 2 | 4,973 | 0 | 4,978 | 0.02% |
| Greece | 0 | 0 | 0 | 3,747 | 0 | 3,747 | 0.04% | 873 | 0 | 0 | 0 | 3,877 | 4,750 | 0.02% |
| Iran | 15 | 36,396 | 99,191 | 82,195 | 5,101 | 222,898 | 2.46% | 4,026 | 72 | 15 | 16 | 0 | 4,129 | 0.02% |
| Kuwait | 7,290 | 709 | 376 | 374 | 970 | 9,718 | 0.11% | 1,923 | 63 | 170 | 243 | 893 | 3,291 | 0.01% |
| Sudan | 8,368 | 4,161 | 3,294 | 3,492 | 1,369 | 20,685 | 0.23% | 1,036 | 445 | 768 | 727 | 307 | 3,282 | 0.01% |
| Paraguay | 0 | 0 | 0 | 0 | 5,021 | 5,021 | 0.06% | 523 | 0 | 0 | 2,244 | 0 | 2,767 | 0.01% |
| Angola | 130 | 92 | 4 | 240 | 63 | 528 | 0.01% | 97 | 201 | 1,620 | 187 | 472 | 2,577 | 0.01% |
| Uganda | 519 | 274 | 11,546 | 9,438 | 56 | 21,834 | 0.24% | 223 | 33 | 532 | 1,120 | 423 | 2,330 | 0.01% |
| Ghana | 326 | 126 | 68 | 358 | 3 | 881 | 0.01% | 54 | 490 | 705 | 478 | 521 | 2,247 | 0.01% |
| Zambia | 24 | 6 | 1,032 | 4,512 | 16 | 5,591 | 0.06% | 197 | 544 | 372 | 154 | 852 | 2,119 | 0.01% |
| Liberia | 65 | 0 | 1,828 | 3 | 0 | 1,896 | 0.02% | 924 | 1 | 550 | 499 | 115 | 2,089 | 0.01% |
| Guinea | 0 | 31 | 6 | 4 | 0 | 42 | 0.00% | 120 | 168 | 377 | 223 | 939 | 1,828 | 0.01% |
| Cote d Ivoire | 11 | 0 | 21 | 3 | 598 | 633 | 0.01% | 36 | 38 | 100 | 1,159 | 165 | 1,498 | 0.01% |
| Chile | 0 | 0 | 108 | 0 | 259 | 367 | 0.00% | 488 | 871 | 0 | 0 | 1 | 1,360 | 0.01% |
| Yemen | 3,270 | 8,685 | 4,941 | 1,529 | 538 | 18,963 | 0.21% | 497 | 9 | 27 | 0 | 757 | 1,291 | 0.01% |
| Maldives | 71 | 79 | 104 | 139 | 440 | 834 | 0.01% | 328 | 140 | 388 | 114 | 248 | 1,218 | 0.00% |
| Mauritius | 62 | 1 | 45 | 3 | 0 | 111 | 0.00% | 0 | 239 | 764 | 170 | 28 | 1,202 | 0.00% |
| Congo, Dem. Rep. | 1 | 79 | 13 | 37 | 4 | 133 | 0.00% | 101 | 83 | 97 | 268 | 465 | 1,015 | 0.00% |
| Haiti | 0 | 0 | 168 | 0 | 0 | 168 | 0.00% | 510 | 208 | 2 | 134 | 0 | 854 | 0.00% |
| Togo | 240 | 4 | 0 | 0 | 8 | 252 | 0.00% | 56 | 27 | 146 | 315 | 167 | 710 | 0.00% |
| Mozambique | 16,408 | 8,788 | 169 | 30 | 13 | 25,409 | 0.28% | 86 | 151 | 44 | 143 | 214 | 637 | 0.00% |
| Senegal | 37 | 504 | 41 | 0 | 124 | 706 | 0.01% | 103 | 103 | 75 | 24 | 258 | 563 | 0.00% |
| Rwanda | 58 | 20 | 10 | 43 | 18 | 148 | 0.00% | 28 | 109 | 106 | 184 | 110 | 535 | 0.00% |
| Ecuador | 0 | 1,671 | 509 | 0 | 0 | 2,180 | 0.02% | 523 | 0 | 0 | 0 | 0 | 523 | 0.00% |
| Israel | 195 | 65 | 167 | 0 | 1,595 | 2,022 | 0.02% | 2 | 222 | 99 | 86 | 79 | 488 | 0.00% |
| Sierra Leone | 13 | 6 | 1 | 0 | 28 | 48 | 0.00% | 241 | 14 | 7 | 0 | 160 | 422 | 0.00% |
| Madagascar | 0 | 108 | 0 | 0 | 107 | 215 | 0.00% | 59 | 87 | 174 | 46 | 52 | 417 | 0.00% |
| Bahrain | 159 | 1,270 | 375 | 51 | 75 | 1,930 | 0.02% | 258 | 25 | 30 | 15 | 79 | 408 | 0.00% |
| Reunion | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 397 | 10 | 0 | 0 | 0 | 407 | 0.00% |
| Burkina Faso | 0 | 0 | 0 | 292 | 139 | 431 | 0.00% | 30 | 138 | 60 | 56 | 57 | 341 | 0.00% |
| Venezuela | 131 | 55 | 0 | 0 | 0 | 186 | 0.00% | 0 | 0 | 150 | 188 | 0 | 338 | 0.00% |
| Colombia | 67 | 1,743 | 476 | 6 | 0 | 2,292 | 0.03% | 0 | 0 | 128 | 178 | 0 | 306 | 0.00% |
| Gabon | 23 | 0 | 0 | 0 | 14 | 37 | 0.00% | 11 | 19 | 252 | 2 | 21 | 304 | 0.00% |
| Costa Rica | 0 | 0 | 0 | 50 | 255 | 305 | 0.00% | 0 | 0 | 0 | 264 | 9 | 273 | 0.00% |
| Mali | 0 | 2 | 0 | 0 | 0 | 2 | 0.00% | 0 | 0 | 0 | 50 | 218 | 268 | 0.00% |
| Iraq | 0 | 13,920 | 66 | 0 | 198 | 14,184 | 0.16% | 0 | 260 | 0 | 1 | 0 | 261 | 0.00% |
| Sweden | 0 | 0 | 0 | 0 | 730 | 730 | 0.01% | 234 | 0 | 0 | 0 | 0 | 235 | 0.00% |
| Zimbabwe | 53 | 50 | 17 | 1 | 3 | 124 | 0.00% | 1 | 93 | 50 | 9 | 80 | 233 | 0.00% |
| Malawi | 8 | 0 | 1 | 2 | 0 | 11 | 0.00% | 0 | 13 | 64 | 55 | 55 | 188 | 0.00% |
| Trinidad & Tobago | 0 | 0 | 109 | 4 | 613 | 726 | 0.01% | 186 | 0 | 0 | 0 | 0 | 186 | 0.00% |
| Denmark | 0 | 0 | 1 | 25 | 98 | 124 | 0.00% | 176 | 0 | 1 | 4 | 3 | 184 | 0.00% |
| Gambia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 52 | 28 | 2 | 0 | 87 | 169 | 0.00% |
| Burundi | 0 | 0 | 0 | 12 | 0 | 12 | 0.00% | 8 | 13 | 33 | 72 | 32 | 158 | 0.00% |
| Grenada | 0 | 0 | 0 | 111 | 24 | 135 | 0.00% | 0 | 158 | 0 | 0 | 0 | 158 | 0.00% |

Filed By: rschagrin@schagrinassociates.com, Filed Date: 3/13/26 3:59 PM, Submission Status: Approved

Barcode: 4894779-01 A-580-809 REM - Remand Slip Op. 25-157

**India Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Guadeloupe | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 153 | 0 | 0 | 0 | 0 | 153 | 0.00% |
| Martinique | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 129 | 0 | 0 | 0 | 0 | 129 | 0.00% |
| Myanmar | 69 | 0 | 760 | 1 | 167 | 997 | 0.01% | 2 | 20 | 2 | 91 | 9 | 124 | 0.00% |
| Canada | 5,673 | 6,012 | 34,660 | 0 | 0 | 46,345 | 0.51% | 0 | 0 | 32 | 26 | 60 | 119 | 0.00% |
| Mauritania | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 1 | 5 | 1 | 23 | 55 | 85 | 0.00% |
| Benin | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 67 | 10 | 0 | 6 | 84 | 0.00% |
| Laos | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 76 | 0 | 0 | 0 | 0 | 76 | 0.00% |
| Jamaica | 0 | 0 | 0 | 1 | 47 | 48 | 0.00% | 76 | 0 | 0 | 0 | 0 | 76 | 0.00% |
| Seychelles | 16 | 12 | 6 | 10 | 19 | 63 | 0.00% | 7 | 45 | 6 | 2 | 7 | 67 | 0.00% |
| Uzbekistan | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 64 | 0 | 64 | 0.00% |
| Netherlands | 0 | 0 | 2 | 10 | 0 | 12 | 0.00% | 26 | 0 | 8 | 16 | 11 | 61 | 0.00% |
| Cameroon | 54 | 0 | 7 | 5 | 2 | 68 | 0.00% | 4 | 45 | 3 | 5 | 0 | 57 | 0.00% |
| New Zealand | 0 | 20 | 0 | 0 | 0 | 20 | 0.00% | 0 | 0 | 29 | 24 | 1 | 54 | 0.00% |
| Congo | 17 | 404 | 9 | 38 | 8 | 476 | 0.01% | 5 | 4 | 0 | 15 | 24 | 48 | 0.00% |
| Guyana | 130 | 1,305 | 748 | 507 | 129 | 2,819 | 0.03% | 0 | 0 | 0 | 0 | 38 | 38 | 0.00% |
| Dominican Republic | 0 | 568 | 255 | 54 | 200 | 1,077 | 0.01% | 25 | 0 | 0 | 0 | 0 | 25 | 0.00% |
| Comoros | 1 | 0 | 0 | 0 | 0 | 1 | 0.00% | 0 | 7 | 3 | 0 | 9 | 19 | 0.00% |
| Papua New Guinea | 30 | 0 | 0 | 0 | 0 | 30 | 0.00% | 13 | 1 | 0 | 0 | 0 | 14 | 0.00% |
| Russia | 0 | 1 | 0 | 0 | 0 | 1 | 0.00% | 3 | 0 | 10 | 0 | 1 | 13 | 0.00% |
| Georgia | 15 | 0 | 1 | 0 | 0 | 16 | 0.00% | 0 | 0 | 1 | 0 | 9 | 10 | 0.00% |
| Fiji | 0 | 0 | 0 | 0 | 3 | 3 | 0.00% | 0 | 0 | 7 | 1 | 0 | 8 | 0.00% |
| Unidentified Countries | 21,068 | 7 | 2 | 0 | 0 | 21,077 | 0.23% | 0 | 0 | 8 | 0 | 0 | 8 | 0.00% |
| Northern Mariana Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 5 | 0 | 0 | 0 | 0 | 5 | 0.00% |
| Albania | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 3 | 0 | 3 | 0.00% |
| Somalia | 0 | 0 | 0 | 0 | 27 | 27 | 0.00% | 1 | 1 | 0 | 0 | 0 | 2 | 0.00% |
| Austria | 0 | 1 | 0 | 30 | 44 | 75 | 0.00% | 0 | 0 | 0 | 2 | 0 | 2 | 0.00% |
| Botswana | 0 | 0 | 123 | 0 | 41 | 164 | 0.00% | 0 | 1 | 0 | 1 | 0 | 2 | 0.00% |
| Bermuda | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 2 | 2 | 0.00% |
| Suriname | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 1 | 0 | 0 | 0 | 0 | 2 | 0.00% |
| Slovakia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 2 | 0 | 2 | 0.00% |
| Syria | 1,614 | 0 | 25 | 0 | 5 | 1,644 | 0.02% | 0 | 0 | 1 | 0 | 0 | 1 | 0.00% |
| St. Lucia | 0 | 0 | 0 | 0 | 26 | 26 | 0.00% | 0 | 0 | 1 | 0 | 0 | 1 | 0.00% |
| Finland | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 1 | 1 | 0.00% |
| Hong Kong | 11 | 10 | 0 | 0 | 0 | 21 | 0.00% | 0 | 0 | 0 | 0 | 0 | 1 | 0.00% |
| Equatorial Guinea | 135 | 28 | 0 | 0 | 0 | 163 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Guinea-Bissau | 0 | 0 | 1 | 0 | 0 | 1 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Dominica | 0 | 200 | 0 | 0 | 0 | 200 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Czech Republic | 0 | 0 | 0 | 0 | 91 | 91 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Marshall Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Kyrgyzstan | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Argentina | 0 | 0 | 14 | 0 | 0 | 14 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Norway | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Afghanistan | 0 | 23 | 1 | 0 | 0 | 24 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Namibia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Macedonia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| South Sudan | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |

Filed By: rschagrin@schagrinassociates.com, Filed Date: 3/13/26 3:59 PM, Submission Status: Approved

Barcode: 4894779-01 A-580-809 REM - Remand Slip Op. 25-157

**India Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| St. Vincent & the Grenadines | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Croatia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Hungary | 0 | 0 | 0 | 0 | 352 | 352 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Pakistan | 4 | 0 | 2 | 0 | 0 | 6 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Serbia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Barbados | 0 | 0 | 0 | 0 | 20 | 20 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Bosnia & Herzegovina | 0 | 0 | 0 | 10 | 0 | 10 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Brunei Darussalam | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Chad | 0 | 1 | 0 | 0 | 0 | 1 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Cyprus | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| El Salvador | 0 | 313 | 0 | 0 | 0 | 313 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Eswatini | 0 | 0 | 0 | 0 | 1 | 1 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| French Guiana | 0 | 0 | 395 | 0 | 0 | 395 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Guam | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Honduras | 0 | 745 | 173 | 0 | 45 | 963 | 0.01% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Korea, North | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Lithuania | 0 | 0 | 0 | 0 | 136 | 136 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Slovenia | 0 | 0 | 0 | 0 | 1,304 | 1,304 | 0.01% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Turkmenistan | 0 | 1 | 0 | 0 | 0 | 1 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Uruguay | 0 | 0 | 0 | 0 | 49 | 49 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Virgin Islands (British) | 0 | 0 | 0 | 2 | 0 | 2 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| **Grand Total** | **1,666,832** | **2,812,571** | **1,914,120** | **878,404** | **1,787,265** | **9,059,193** | **100.00%** | **4,947,278** | **2,560,603** | **5,147,201** | **6,544,883** | **5,855,519** | **25,055,483** | **100.00%** |

Source: Global Trade Atlas (GTA) for hot-rolled sheet and strip in coils covered under HTS codes 720810, 720825, 720826, 720827, 720836, 720837, 720828, 721114, 721119, 722530, 722599, 722691.

Filed By: rschagrin@schagrinassociates.com, Filed Date: 3/13/26 3:59 PM, Submission Status: Approved

**South Korea Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| India | 465,593 | 289,961 | 730,348 | 1,481,688 | 1,139,420 | 4,107,010 | 11.91% | 1,147,861 | 1,323,226 | 1,347,885 | 766,348 | 918,055 | 5,503,374 | 17.25% |
| Japan | 1,094,905 | 975,463 | 995,789 | 947,903 | 1,069,572 | 5,083,632 | 14.74% | 1,017,852 | 866,597 | 974,994 | 706,765 | 776,734 | 4,342,943 | 13.61% |
| Vietnam | 870,815 | 800,977 | 745,732 | 898,804 | 934,942 | 4,251,271 | 12.33% | 735,454 | 577,806 | 720,891 | 736,176 | 560,316 | 3,330,643 | 10.44% |
| China | 264,906 | 286,492 | 319,016 | 304,867 | 426,080 | 1,601,361 | 4.64% | 454,004 | 479,948 | 711,697 | 1,099,745 | 522,060 | 3,267,453 | 10.24% |
| United States | 898,232 | 744,174 | 1,243,521 | 1,204,473 | 915,862 | 5,006,262 | 14.52% | 271,014 | 520,118 | 376,748 | 469,932 | 546,021 | 2,183,833 | 6.84% |
| Indonesia | 796,612 | 677,694 | 658,866 | 499,991 | 442,408 | 3,075,572 | 8.92% | 541,111 | 356,084 | 481,770 | 358,780 | 263,681 | 2,001,426 | 6.27% |
| Thailand | 647,692 | 488,846 | 474,581 | 551,099 | 617,775 | 2,779,994 | 8.06% | 389,430 | 388,774 | 465,766 | 361,938 | 319,808 | 1,925,717 | 6.03% |
| Italy | 52,765 | 33,034 | 4,832 | 231,753 | 458,493 | 780,876 | 2.26% | 345,443 | 373,427 | 345,209 | 308,324 | 334,015 | 1,706,419 | 5.35% |
| Mexico | 168,698 | 145,234 | 239,074 | 294,273 | 238,968 | 1,086,247 | 3.15% | 289,060 | 265,468 | 348,939 | 244,542 | 344,537 | 1,492,546 | 4.68% |
| Malaysia | 86,173 | 105,533 | 93,554 | 184,431 | 188,104 | 657,795 | 1.91% | 183,810 | 180,702 | 346,802 | 280,622 | 131,879 | 1,123,815 | 3.52% |
| Türkiye/Turkey | 30,139 | 34,459 | 107,219 | 451,325 | 425,916 | 1,049,059 | 3.04% | 132,591 | 105,040 | 111,117 | 205,048 | 50,126 | 603,923 | 1.89% |
| Taiwan | 83,624 | 64,861 | 126,764 | 135,913 | 203,964 | 615,126 | 1.78% | 64,539 | 64,908 | 219,167 | 163,604 | 69,279 | 581,498 | 1.82% |
| Bangladesh | 153,541 | 124,811 | 129,248 | 168,205 | 162,239 | 738,044 | 2.14% | 117,396 | 107,013 | 104,044 | 137,180 | 50,460 | 516,094 | 1.62% |
| Oman | 9,281 | 52,248 | 52,678 | 33,244 | 98,740 | 246,191 | 0.71% | 68,685 | 103,193 | 109,779 | 90,037 | 92,593 | 464,288 | 1.45% |
| Saudi Arabia | 104,799 | 80,082 | 83,271 | 163,568 | 77,243 | 508,963 | 1.48% | 56,122 | 49,836 | 73,065 | 187,557 | 26,511 | 393,090 | 1.23% |
| Belgium | 5,614 | 1,850 | 6,079 | 16,741 | 25,752 | 56,035 | 0.16% | 60,108 | 32,745 | 29,975 | 27,851 | 89,115 | 239,793 | 0.75% |
| Canada | 39,727 | 32,373 | 78,219 | 53,939 | 38,410 | 242,669 | 0.70% | 30,588 | 33,973 | 9,646 | 12,584 | 145,568 | 232,358 | 0.73% |
| Pakistan | 53,446 | 38,885 | 5,306 | 3,822 | 16,074 | 117,532 | 0.34% | 16,348 | 7,456 | 11,951 | 153,492 | 28,978 | 218,225 | 0.68% |
| Kenya | 25,477 | 4,413 | 1,822 | 29,021 | 16,196 | 76,930 | 0.22% | 17,517 | 10,457 | 10,964 | 93,262 | 68,821 | 201,021 | 0.63% |
| United Kingdom | 1,861 | 186 | 85 | 11,903 | 15,306 | 29,340 | 0.09% | 16,594 | 25,786 | 22,476 | 15,512 | 76,402 | 156,771 | 0.49% |
| Slovenia | 16,150 | 26,070 | 21,395 | 22,644 | 28,328 | 114,586 | 0.33% | 28,762 | 27,845 | 29,379 | 24,849 | 44,168 | 155,002 | 0.49% |
| Spain | 20,058 | 10,084 | 3,155 | 18,678 | 36,541 | 88,517 | 0.26% | 27,836 | 22,626 | 7,884 | 25,371 | 57,518 | 141,235 | 0.44% |
| El Salvador | 0 | 3,352 | 2,177 | 375 | 1,103 | 7,007 | 0.02% | 2,100 | 2,640 | 5,572 | 41,776 | 83,612 | 135,701 | 0.43% |
| United Arab Emirates | 52,495 | 29,893 | 9,929 | 21,167 | 6,907 | 120,390 | 0.35% | 6,154 | 7,637 | 7,907 | 83,770 | 18,258 | 123,727 | 0.39% |
| Philippines | 29,579 | 18,880 | 10,314 | 42,240 | 14,573 | 115,585 | 0.34% | 32,333 | 17,545 | 9,247 | 19,200 | 23,899 | 102,224 | 0.32% |
| Kuwait | 14,850 | 4,389 | 20,775 | 33,239 | 5,593 | 78,847 | 0.23% | 2,158 | 24,415 | 44,964 | 17,356 | 86 | 88,980 | 0.28% |
| Chile | 845 | 2,719 | 3,031 | 2,308 | 3,637 | 12,540 | 0.04% | 0 | 455 | 9,914 | 68,629 | 5,193 | 84,190 | 0.26% |
| Colombia | 17,977 | 10,677 | 12,448 | 6,895 | 16,408 | 64,404 | 0.19% | 15,336 | 12,438 | 14,237 | 25,344 | 9,958 | 77,314 | 0.24% |
| Greece | 0 | 4,341 | 0 | 30,448 | 79,956 | 114,745 | 0.33% | 37,668 | 15,262 | 11,348 | 3,490 | 9,298 | 77,066 | 0.24% |
| Nigeria | 14 | 15,719 | 21,798 | 6,133 | 5,668 | 49,333 | 0.14% | 0 | 58 | 23,001 | 28,681 | 4,496 | 56,236 | 0.18% |
| Iran | 218,708 | 165,465 | 211,939 | 419,798 | 18,692 | 1,034,602 | 3.00% | 46,871 | 5,295 | 0 | 0 | 12 | 52,178 | 0.16% |
| Ecuador | 3,775 | 60 | 135 | 2 | 0 | 3,972 | 0.01% | 0 | 247 | 181 | 24,556 | 26,476 | 51,460 | 0.16% |
| Brazil | 26,020 | 34,960 | 29,870 | 34,441 | 11,255 | 136,545 | 0.40% | 31,926 | 9,817 | 4,893 | 1,304 | 2,548 | 50,489 | 0.16% |
| Australia | 20,118 | 22,880 | 18,515 | 8,004 | 6,826 | 76,344 | 0.22% | 4,552 | 4,523 | 7,139 | 17,560 | 4,744 | 38,518 | 0.12% |
| Jordan | 148 | 223 | 0 | 66 | 0 | 437 | 0.00% | 0 | 0 | 0 | 15,562 | 10,361 | 25,923 | 0.08% |
| Myanmar | 5,222 | 557 | 0 | 48 | 78 | 5,904 | 0.02% | 292 | 0 | 7,206 | 18,100 | 0 | 25,597 | 0.08% |
| Portugal | 24,858 | 2,961 | 25,710 | 15,167 | 4,677 | 73,374 | 0.21% | 157 | 6,948 | 3,639 | 8,627 | 4,615 | 23,985 | 0.08% |
| Uzbekistan | 1,992 | 1,629 | 2,346 | 1,054 | 419 | 7,440 | 0.02% | 943 | 6,565 | 2,483 | 1,206 | 145 | 11,343 | 0.04% |
| South Africa | 0 | 34,890 | 5,733 | 6,235 | 143 | 47,002 | 0.14% | 182 | 85 | 136 | 9,866 | 259 | 10,527 | 0.03% |
| Morocco | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 2,610 | 7,864 | 0 | 10,475 | 0.03% |
| Egypt | 2 | 64 | 15,961 | 3,238 | 1,692 | 20,957 | 0.06% | 5,608 | 3,155 | 122 | 25 | 168 | 9,077 | 0.03% |
| Kazakhstan | 0 | 0 | 0 | 694 | 3,234 | 3,927 | 0.01% | 7,478 | 0 | 0 | 0 | 0 | 7,478 | 0.02% |
| Poland | 28 | 1 | 6 | 4 | 43 | 82 | 0.00% | 37 | 21 | 1,109 | 3,921 | 1,372 | 6,460 | 0.02% |
| Tanzania | 141 | 191 | 0 | 2,992 | 0 | 3,324 | 0.01% | 0 | 0 | 1,978 | 4,047 | 0 | 6,024 | 0.02% |
| Djibouti | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 5,312 | 0 | 5,312 | 0.02% |
| Hong Kong | 3,630 | 2,143 | 6,436 | 3,776 | 5,768 | 21,753 | 0.06% | 2,580 | 1,761 | 422 | 344 | 0 | 5,107 | 0.02% |
| Brunei Darussalam | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 841 | 0 | 3,952 | 0 | 0 | 4,793 | 0.02% |
| Honduras | 0 | 964 | 0 | 447 | 203 | 1,614 | 0.00% | 2,536 | 1,776 | 0 | 0 | 0 | 4,312 | 0.01% |
| Singapore | 14,668 | 10,807 | 8,032 | 10,379 | 4,223 | 48,109 | 0.14% | 2,715 | 841 | 606 | 1 | 1 | 4,164 | 0.01% |

Barcode: 4894779-01 A-580-809 REM - Remand Slip Op. 25-157

**South Korea Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peru | 11,273 | 617 | 341 | 5,903 | 1,666 | 19,800 | 0.06% | 161 | 0 | 2,830 | 1,146 | 0 | 4,138 | 0.01% |
| Costa Rica | 0 | 1,996 | 0 | 409 | 0 | 2,405 | 0.01% | 0 | 0 | 0 | 3,987 | 0 | 3,987 | 0.01% |
| Mozambique | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 3,971 | 0 | 3,971 | 0.01% |
| Russia | 775 | 515 | 749 | 834 | 751 | 3,624 | 0.01% | 479 | 406 | 1,089 | 733 | 1,106 | 3,812 | 0.01% |
| Ghana | 0 | 1 | 0 | 0 | 0 | 1 | 0.00% | 271 | 989 | 581 | 1,028 | 337 | 3,206 | 0.01% |
| Dominican Republic | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 3,142 | 59 | 0 | 3,200 | 0.01% |
| Luxembourg | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 2,419 | 2,419 | 0.01% |
| Argentina | 1,323 | 826 | 440 | 15,200 | 1,598 | 19,387 | 0.06% | 1,163 | 168 | 113 | 0 | 173 | 1,617 | 0.01% |
| Bahrain | 0 | 0 | 0 | 903 | 0 | 903 | 0.00% | 372 | 299 | 197 | 61 | 46 | 975 | 0.00% |
| Slovakia | 0 | 176 | 161 | 162 | 352 | 852 | 0.00% | 315 | 0 | 433 | 36 | 0 | 784 | 0.00% |
| Sweden | 0 | 0 | 16 | 201 | 179 | 396 | 0.00% | 0 | 156 | 498 | 0 | 0 | 654 | 0.00% |
| Panama | 0 | 0 | 280 | 0 | 0 | 280 | 0.00% | 0 | 0 | 217 | 236 | 0 | 453 | 0.00% |
| New Zealand | 4 | 57 | 470 | 128 | 73 | 733 | 0.00% | 284 | 0 | 25 | 0 | 0 | 309 | 0.00% |
| Guam | 0 | 0 | 0 | 157 | 82 | 239 | 0.00% | 165 | 0 | 12 | 62 | 0 | 240 | 0.00% |
| Norway | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 226 | 226 | 0.00% |
| Sri Lanka | 402 | 128 | 127 | 265 | 49 | 972 | 0.00% | 6 | 0 | 121 | 0 | 0 | 127 | 0.00% |
| Algeria | 31,528 | 0 | 1 | 132 | 2,171 | 33,832 | 0.10% | 4 | 0 | 95 | 0 | 14 | 114 | 0.00% |
| Bulgaria | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 96 | 0 | 0 | 0 | 0 | 96 | 0.00% |
| American Samoa | 0 | 0 | 0 | 0 | 2 | 2 | 0.00% | 1 | 0 | 0 | 44 | 43 | 88 | 0.00% |
| Iraq | 29 | 298 | 638 | 1 | 1 | 967 | 0.00% | 32 | 0 | 8 | 13 | 1 | 53 | 0.00% |
| Haiti | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 44 | 0 | 0 | 0 | 44 | 0.00% |
| Guatemala | 0 | 0 | 0 | 5,189 | 0 | 5,189 | 0.02% | 23 | 0 | 0 | 0 | 17 | 41 | 0.00% |
| Austria | 4 | 278 | 2 | 1 | 0 | 285 | 0.00% | 0 | 0 | 0 | 25 | 0 | 26 | 0.00% |
| Tunisia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 25 | 0 | 0 | 0 | 25 | 0.00% |
| Lebanon | 62 | 0 | 33 | 13,078 | 20,008 | 33,181 | 0.10% | 0 | 25 | 0 | 0 | 0 | 25 | 0.00% |
| France | 0 | 0 | 0 | 0 | 4 | 4 | 0.00% | 19 | 5 | 0 | 0 | 0 | 24 | 0.00% |
| Angola | 177 | 65 | 0 | 0 | 0 | 241 | 0.00% | 0 | 0 | 0 | 10 | 0 | 10 | 0.00% |
| Germany | 4 | 14 | 668 | 0 | 3 | 689 | 0.00% | 3 | 1 | 1 | 1 | 2 | 8 | 0.00% |
| Mali | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 7 | 0 | 0 | 7 | 0.00% |
| Cambodia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 1 | 0 | 2 | 0 | 4 | 7 | 0.00% |
| Northern Mariana Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 2 | 0 | 0 | 0 | 0 | 2 | 0.00% |
| Netherlands | 0 | 1 | 0 | 0 | 0 | 1 | 0.00% | 0 | 0 | 2 | 0 | 0 | 2 | 0.00% |
| Switzerland | 9 | 8 | 0 | 1 | 0 | 18 | 0.00% | 0 | 0 | 0 | 1 | 0 | 1 | 0.00% |
| Hungary | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 1 | 0 | 0 | 1 | 0.00% |
| Micronesia (Federated States of) | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Tuvalu | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Azerbaijan | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Cote d Ivoire | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Czech Republic | 68 | 83 | 0 | 0 | 3 | 154 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Denmark | 0 | 0 | 66 | 0 | 0 | 66 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Equatorial Guinea | 0 | 0 | 0 | 0 | 25 | 25 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Fiji | 0 | 75 | 0 | 0 | 0 | 75 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Israel | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Kyrgyzstan | 0 | 0 | 0 | 0 | 6 | 6 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Macau | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Malawi | 5 | 4 | 5 | 0 | 0 | 13 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Mongolia | 22 | 99 | 2 | 0 | 0 | 124 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| New Caledonia | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Nicaragua | 2 | 0 | 2 | 5 | 0 | 9 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |

Filed By: rschagrin@schagrinassociates.com, Filed Date: 3/13/26 3:59 PM, Submission Status: Approved

**South Korea Exports of Hot Rolled Products To All Countries**
**Quantity (MT)**

| Country | 2012 | 2013 | 2014 | 2015 | 2016 | 2012-2016 Total | Percent of Period Total | 2017 | 2018 | 2019 | 2020 | 2021 | 2017-2021 Total | Percent of Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Papua New Guinea | 0 | 0 | 0 | 21 | 53 | 74 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Qatar | 170 | 0 | 27 | 0 | 0 | 197 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Romania | 0 | 52 | 0 | 0 | 0 | 52 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Solomon Islands | 0 | 0 | 0 | 0 | 44 | 44 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Togo | 0 | 0 | 4 | 0 | 0 | 4 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Turkmenistan | 0 | 0 | 0 | 0 | 2 | 2 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Uganda | 0 | 0 | 0 | 1,500 | 0 | 1,500 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Uruguay | 37 | 0 | 1 | 0 | 44 | 82 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Venezuela | 0 | 0 | 0 | 0 | 1 | 1 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| Yemen | 2,497 | 0 | 0 | 0 | 0 | 2,497 | 0.01% | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| **Grand Total** | **6,373,570** | **5,390,787** | **6,529,745** | **8,401,522** | **7,794,547** | **34,490,172** | **100.00%** | **6,217,989** | **6,046,633** | **7,032,186** | **6,887,469** | **5,726,538** | **31,910,815** | **100.00%** |

Source: Global Trade Atlas (GTA) for hot-rolled sheet and strip in coils covered under HTS codes 720810, 720825, 720826, 720827, 720836, 720837, 720828, 721114, 721119, 722530, 722599, 722691.

TAB-10

Draft Remand Redetermination
P.R.R. 5; C.R.R. 3

A-580-809
Remand
Slip Op. 25-157
**Public Version**
E&C/OI: DV

**Draft Results of Redetermination Pursuant to Court Remand**
***Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea***
***SeAH Steel VINA Corporation v. United States*,**
**Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025)**

## A. SUMMARY

The U.S. Department of Commerce (Commerce) prepared these draft results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT or the Court) in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025) (*Remand Order*). These draft results of redetermination concern *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 FR 77270 (November 9, 2023) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

In the *Remand Order*, the Court remanded the *Final Determination* to Commerce to explain what other factors, besides those under section 781(b)(1)(A)-(D) of the Tariff Act of 1930, as amended (the Act), supported its affirmative finding under section 781(b)(1)(E) of the Act.[1]

On remand, we have reconsidered our determination in the *Final Determination* and continue to find that action is appropriate to prevent evasion of the *Order* pursuant to section 781(b)(1)(E) of the Act. In making this redetermination, pursuant to the Court's *Remand Order*,[2] we considered the factors under section 781(b)(3) of the Act and find that patterns of trade show

[1] *See Remand Order* at 21-28.
[2] *Id.* at 27-28.

that U.S. imports of CWP from Vietnam have increased. In making this determination, we accounted for and further explain the factors under section 781(b)(3) of the Act in accordance with the *Remand Order*.[3] Accordingly, in these draft results of redetermination, we find that action is appropriate to prevent evasion of the *Order* under section 781(b)(1)(E) of the Act and, as a result, we continue to make an affirmative determination of circumvention.

**B. BACKGROUND**

In the *Final Determination*, Commerce determined that certain circular welded non-alloy steel pipe (CWP) completed in Vietnam using Korea-origin hot-rolled steel (HRS) and subsequently exported from Vietnam to the United States is circumventing the *Order*[4] on a country-wide basis.[5] As a result, in accordance with section 781(b) of the Act, Commerce determined that the merchandise subject to the circumvention inquiry should be included within the scope of the *Order*.[6] Commerce determined, in relevant part, that an action is appropriate to prevent evasion of the *Order*, pursuant to section 781(b)(1)(E) of Act. Specifically, in determining whether to include merchandise completed in Vietnam within the scope of the *Order*, Commerce considered additional factors under section 781(b)(3) of the Act, *i.e.*, the patterns of trade, including sourcing patterns, the affiliation between Korean HRS or CWP producers and SeAH VINA, and whether imports into Vietnam of Korea-origin HRS have increased after the initiation of the investigation which resulted in the issuance of the *Order*.[7]

Concerning the patterns of trade, including sourcing patterns, we first compared publicly

[3] *Id*.
[4] *See Notice of Antidumping Duty Orders: Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and Venezuela, and Amendment to Final Determination of Sales at Less Than Fair Value: Certain Circular Welded Non-Alloy Steel Pipe from Korea*, 57 FR 49453 (November 2, 1992) (*Order*).
[5] *See Final Determination*, 88 FR at 77271.
[6] *Id*.
[7] *See Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 FR 21989 (April 12, 2023) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM) at 18-22.



Filed By: dmitry vladimirov, Filed Date: 3/31/26 1:15 PM, Submission Status: Approved

available U.S. import statistics of CWP between the periods 2012-2016 and 2017-2021 (*i.e.*, the period of inquiry). The data show that the quantity of CWP exported from Korea to the United States increased more than the quantity of CWP exported from Vietnam.[8] We also found that the quantity of Vietnamese imports of HRS from Korea decreased more than the cumulative HRS exports from Korea to the rest of the world (excluding Vietnam) from the 2012-2016 period to 2017-2021.[9]

We then analyzed patterns of trade with respect to SeAH VINA during 2017-2021 and found that, although the data do not show that there is a definitive increase in the quantity of HRS imported from Korea, the data show that there was a subsequent increase in the quantity of CWP produced from HRS imported from Korea and exported to the United States.[10] Based on this analysis, we found that the patterns of trade and sourcing of HRS are not dispositive with respect to either an affirmative or a negative circumvention determination, *i.e.*, "the evidence with respect to these factors is mixed and inconclusive."[11]

Concerning affiliation, we found that SeAH VINA is not affiliated with any Korean HRS producer or supplier.[12] In summary, we found that the results of our analysis of factors under section 781(b)(3) of the Act (*i.e.*, patterns of trade, affiliation, and imports of HRS from Korea) were mixed and that none of these factors were dispositive in our circumvention analysis.[13] Commerce ultimately found that "the totality of factors in this inquiry warrant an affirmative finding of circumvention of the *Order*."[14]

---

[8] *See Preliminary Determination* PDM at 19.
[9] *Id*.
[10] *Id*.
[11] *Id*. at 19-20.
[12] *Id*. at 21.
[13] *Id*. at 23.
[14] *Id*.



Filed By: dmitry vladimirov, Filed Date: 3/31/26 1:15 PM, Submission Status: Approved

## III. REMAND ORDER

In the *Remand Order*, the Court found that "Congress's addition of subsection (b)(1)(E) to section {781}(b) indicates that it intended for the determination of whether action is appropriate with respect to merchandise completed or assembled in other foreign countries to require something more than evaluating the factors in subsection (b)(1)(A)-(D)."[15] The Court found that Commerce "failed to explain how factors that are 'mixed' {under subsection (b)(3)} enabled the agency to reach the conclusion that action was appropriate."[16] Specifically, the Court reasoned, Commerce's assertion in the *Final Determination* that the (b)(3) factors did not detract from a finding that an action is appropriate assumes that action was found to be appropriate on some other grounds, but Commerce did not identify any other grounds beyond the factors that it was already required to find pursuant to section 781(b)(1)(A)-(D) of the Act.[17] The Court found that, "{b}ecause section {781}(b)(1)(E) must be construed to have some operative effect… Commerce must reconsider or further explain its basis for the affirmative circumvention finding."[18] Specifically, the Court stated, "{t}o the extent that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding."[19] The Court also observed that subsection 781(b)(3)(C) requires consideration of "whether imports into the foreign country of the merchandise {from the country subject to the order} have increased after the initiation of the investigation which resulted in the issuance of such order or finding."[20] The

[15] *See Remand Order* at 22.
[16] *Id*. at 27.
[17] *Id*.
[18] *Id*.
[19] *Id*. at 27-28.
[20] *Id*. at 27, n.21.



Filed By: dmitry vladimirov, Filed Date: 3/31/26 1:15 PM, Submission Status: Approved

Court found that, "{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used – {reconcile} the statutory requirements with its consideration of the 2012-2016 versus 2017-2021 periods, as well as changes within the latter period, i.e., 2017-2021."[21]

## IV. DRAFT RESULTS OF REDETERMINATION

In evaluating whether an action is appropriate under section 781(b)(1)(E) of the Act, Commerce determined that its analysis would be enhanced by the additional information provided by interested parties. Thus, on February 6, 2026, Commerce reopened the record and issued a letter to interested parties, requesting information, previously absent from the record, demonstrating other grounds (apart from those under section 781(b)(1)(A)–(D) of the Act), that warrant action to prevent evasion of the O*rder*.[22] Commerce received no additional information. On March 9, 2026, Commerce placed on the record entry data obtained from the U.S. Customs and Border Protection (CBP) covering the periods 2017 through 2021 and 2025, and publicly available U.S. International Trade Commission (USITC) import data for 2025 for the Harmonized Tariff Schedule of the United States subheadings under which imports of CWP primarily entered the United States.[23] On March 13, 2026, the domestic interested parties[24] and SeAH VINA submitted factual information to rebut, clarify, or correct the information submitted on March 9, 2026.[25] Specifically, the domestic interested parties submitted data showing the

[21] *Id*.
[22] *See* Commerce's Letter, "Request for Information," dated February 6, 2026.
[23] *See* Memorandum, "U.S. Customs and Border Protection Entry Data," dated March 9, 2026 (CBP and USITC Memo).
[24] The domestic interested parties are comprised of Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC.
[25] *See* Domestic Interested Parties' Letter, "Submission of New Factual Information," dated March 13, 2026; *see also* SeAH VINA's Letter, "Submission of Factual Information Relating to Imports," dated March 13, 2026 (SeAH VINA's RFI).



Filed By: dmitry vladimirov, Filed Date: 3/31/26 1:15 PM, Submission Status: Approved

quantity of HRS exported from Korea to Vietnam for the 2012-2016 and 2017-2021 periods. SeAH VINA submitted its quantity of CWP exported to the United States for the years 2022 through 2025.

In light of the Court's *Remand Order*, and absent any new information, as requested from interested parties, demonstrating other grounds, apart from those under section 781(b)(1)(A)-(D) of the Act that warrant action to prevent evasion of the *Order*, Commerce further evaluated its consideration of factor(s) under section 781(b)(3) of the Act. Commerce finds that, based on its further evaluation of factor(s) under section 781(b)(3) of the Act, discussed below, and absent any information to the contrary, an action is appropriate to prevent evasion of the *Order*, pursuant to section 781(b)(1)(E) of Act.

<u>Factors Under Section 781(b)(3) of the Act</u>

With respect to section 781(b)(3)(A) of the Act, a comparison of the 2012-2016 period to the 2017-2021 period shows that the quantity of U.S. imports of CWP from Vietnam in relation to the total quantity of U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent.[26] The quantity of U.S. imports of CWP from Vietnam in relation to the total quantity of U.S. imports of CWP from the world increased from 8.8 percent to 18.43 percent from the 2017-2021 period to 2025.[27] SeAH VINA had an average of [ ] metric tons per year (MT/year) of export sales of CWP to the United States during the period 2017 through 2021, and an average of [ ] MT/year of export sales of CWP to the United States during the period 2022 through 2025.[28] Thus, SeAH VINA's export sales of CWP to the United States increased by [ ]

[26] *See* Domestic Interested Parties' Letter, "Response to Supplemental Questionnaire," dated June 28, 2022 (CIRC Inquiry Request Supplement) at Exhibit Supp-3.
[27] *See* CBP and USITC Memo, USITC Data 2025.
[28] *See* SeAH VINA's Letter, "Response to the Department's November 28 Questionnaire," dated December 15, 2022, at Exhibit S-19; *see*, *also*, SeAH VINA's RFI at Attachment.



Filed By: dmitry vladimirov, Filed Date: 3/31/26 1:15 PM, Submission Status: Approved

Barcode: 4902975-01 A-580-809 REM - Remand Slip Op. 25-157

percent from the 2017-2021 period to the 2022-2025 period. Further, SeAH VINA's export sales of CWP produced from Korea-origin HRS to the United States increased from [ ] MTs in 2017 to [ ] MTs in 2021 (an increase of [ ] percent).[29]

The above patterns of trade under section 781(b)(3)(A) of the Act demonstrate circumvention of the *Order* because: (1) aggregate import data show a significant increase in the share of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world from the 2012-2016 period to the 2017-2021 period, and especially from the 2017-2021 period to 2025; (2) SeAH VINA's exports of CWP to the United States increased significantly from the 2017-2021 period to the 2022-2025 period; and (3) SeAH VINA's CWP exports to the United States produced from HRS imported from Korea increased [ ] from 2017 to 2021. These significant increases indicate that Korea-origin HRS is likely to have been made into CWP not in Korea but in Vietnam and then exported to the United States to evade the *Order*.

With respect to section 781(b)(3)(B) of the Act, Commerce found that: 1) SeAH VINA is not affiliated with any of its HRS suppliers or any Korean producers of HRS; 2) there are no facts (*e.g.*, close supplier relationships) that suggest control of SeAH VINA by the Korean HRS producers or suppliers with regards to CWP production in Vietnam; 3) there is no evidence to indicate that the Korean CWP or Korean HRS producers had arrangements with SeAH VINA which would allow them to export HRS to Vietnam for processing into CWP for export to the United States and avoid the discipline of the *Order*, and (4) SeAH VINA's purchases of HRS were not made directly from Korean HRS producers but through unaffiliated traders/resellers.[30]

---

[29] *See* Memorandum, "Preliminary Analysis Memorandum for SeAH Steel VINA Corporation," dated April 6, 2023, at 6.
[30] *See Preliminary Determination* PDM at 21-22.



Filed By: dmitry vladimirov, Filed Date: 3/31/26 1:15 PM, Submission Status: Approved

While there is no evidence that SeAH VINA is affiliated with any company located in Korea that produces or exports HRS, Commerce nevertheless does not find this factor alone to be dispositive.

While affiliation can contribute towards a determination of circumvention and the need to take action to prevent evasion of the *Order*, the lack of affiliation does not weigh against a finding that a determination of circumvention is appropriate if other factors pursuant to section 781(b)(3) of the Act demonstrate otherwise. Commerce has previously made a finding that a determination of circumvention is appropriate even when no evidence of affiliation was found.[31] An affirmative affiliation finding under section 781(b)(3)(B) of the Act naturally supports finding that it is appropriate to make an affirmative determination of circumvention as it speaks to the level of cooperation and planning between two companies that potentially share common goals concerning sales, profit, personnel, management, production planning, *etc*. However, an affirmative finding with regard to the factors under section 781(b)(3) of the Act, and certainly an affirmative finding with regard to all of the other such factors , does not preclude Commerce from finding that it is appropriate to make an affirmative determination of circumvention to prevent evasion of the *Order* if there is no finding of affiliation. In such a situation a finding of no affiliation is considered, as neither helpful nor hurtful (*i.e.*, neutral). Two companies that do not share common goals concerning sales, profit, personnel, management, production planning, *etc*. are not precluded from engaging in circumvention, either knowingly or unknowingly, which is fueled by a commercial desire to avoid duties and thus, increase sales and profits.

[31] *See Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 FR 4871 (February 3, 2026), and accompanying IDM at Comment 4; *see also Certain Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 FR 23895 (May 23, 2018), and accompanying IDM at Comment 12.



Filed By: dmitry vladimirov, Filed Date: 3/31/26 1:15 PM, Submission Status: Approved

Accordingly, while affiliation is a factor to be investigated and weighed, we do not consider it to be dispositive as to the question of whether an affirmative determination of circumvention is appropriate to avoid evasion of the *Order* without taking into consideration other factors.

*Time Periods Used in Evaluation the Patterns of Trade, Including Sourcing Patterns*

For this redetermination, Commerce continues to rely on the comparison of the 2012-2016 to 2017-2021 periods, as it did in the underlying circumvention inquiry. Commerce published the *Order* in 1992. Section 781(b)(3)(C) of the Act stipulates that Commerce account, *inter alia*, "whether imports into the foreign country of the merchandise described in paragraph (1)(b) have increased *after the initiation of the investigation which resulted in the issuance of such order or finding*." It has been Commerce's practice to interpret this statutory provision as providing it with discretion to select the comparison period at any time after the initiation of the investigation. For example, in *Diamond Sawblades from China 2019*, Commerce conducted two circumvention determinations.[32] Commerce published the diamond sawblades China AD order in 2009 but in the first of these 2019 circumvention determinations, Commerce used the annual data between 2014-2016. In the second of these circumvention determinations Commerce used the periods January-October 2017 and January-October 2018. In *OCTG from China 2021*, the AD and CVD orders were published in 2010 and Commerce compared the 2014-2016 period to the 2017-2019 period.[33] A restrictive interpretation of this statutory provision is impracticable

[32] *See Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 83 FR 57425 (November 15, 2018), and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti-Circumvention Inquiry*, 84 FR 33920 (July 16, 2019), and *Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 84 FR 58130 (October 30, 2019), and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti-Circumvention Inquiry*, 85 FR 9737 (February 20, 2020) (collectively, *Diamond Sawblades from China 2019*).

[33] *See Oil Country Tubular Goods from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention*, 86 FR 43627 (August 10, 2021), and accompanying PDM, unchanged in *Oil Country Tubular*



Filed By: dmitry vladimirov, Filed Date: 3/31/26 1:15 PM, Submission Status: Approved

Barcode: 4902975-01 A-580-809 REM - Remand Slip Op. 25-157

and does not serve the circumvention inquiry requestor, *e.g.*, the domestic interested parties, because foreign companies can commence circumvention at any time after the initiation of an investigation and the circumvention inquiry requestor should be able to propose the comparison periods accordingly. Here in particular, aligning the comparison period to the time of the initiation of the investigation, and requesting data going back as far as the 1990's, considering the age of this order, is impractical, as the companies subject to the circumvention inquiry are not required to maintain such data for taxation and financial reporting purposes.

In accordance with the Court's *Remand Order*, Commerce has, as discussed above, revised certain aspects of its analysis.

## V. COMMENTS ON DRAFT RESULTS OF REDETERMINATION

We invite interested parties to comment on these draft results of redetermination. Comments are due **no later than 5:00 pm, Eastern Time on April 14, 2026**. We request that interested parties provide at the beginning of their comments a public, executive summary for each issue raised in their submission.[34] Further, we request that interested parties limit their public executive summary of each issue to no more than 450 words, not including citations. We intend to use the public executive summaries as the basis of the comment summaries included in the final results of redetermination. We request that interested parties include footnotes for relevant citations in the public executive summary of each issue. Interested parties may not submit new factual information in their comments and should file their comments with Commerce using Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System (ACCESS) in accordance with 19 CFR 351.303. These

*Goods from the People's Republic of China: Final Affirmative Determinations of Circumvention*, 86 FR 67443 (November 26, 2021) (*OCTG from China 2021*).

[34] We use the term "issue" here to describe an argument that Commerce would normally address in a comment of the final remand redetermination.



Filed By: dmitry vladimirov, Filed Date: 3/31/26 1:15 PM, Submission Status: Approved

comments will be addressed in our final results of redetermination issued pursuant to the *Remand Order*.



Filed By: dmitry vladimirov, Filed Date: 3/31/26 1:15 PM, Submission Status: Approved

TAB-11

Defendant-Intervenor’s Draft Redetermination Comments
P.R.R. 3

SCHAGRIN ASSOCIATES

900 SEVENTH STREET, N.W. - SUITE 500 - WASHINGTON, D.C. 20001
P: (202) 223-1704 E: JGERRISH@SCHAGRINASSOCIATES.COM F: (202) 429-2522

April 14, 2026

DOC Case No. A-570-910, C-570-911,
A-533-502, A-580-809
Remand
Slip Op. 25-157
Total Pages: 6
AD/CVD Enforcement Office I

**PUBLIC DOCUMENT**

The Honorable Howard Lutnick
Secretary of Commerce
Attention: Enforcement and Compliance
APO/Dockets Unit, Room 18022
U.S. Department of Commerce
14th Street and Constitution Avenue, N.W.
Washington, D.C. 20230

**Re:** ***Circumvention Inquiry on Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India:*** **Comments on Draft Results of Redetermination Pursuant to Court Remand in CIT Court No. 23-00256, Slip Op. 25-157**

Dear Secretary Lutnick:

On behalf of Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (collectively, "Domestic Interested Parties"), we hereby submit comments in support of the draft results of redetermination pursuant to court remand issued by the U.S. Department of Commerce

("Commerce") in the above-referenced proceedings.[1] These comments do not contain any new factual information and are timely filed pursuant to the deadline established by Commerce.[2]

## I. EXECUTIVE SUMMARY

Domestic Interested Parties agree with and support the draft remand redeterminations that Commerce has issued in these proceedings. The draft remand redeterminations comply with the remand order by identifying substantial evidence that supports Commerce's findings that action is appropriate to prevent evasion of the antidumping duty orders on circular welded pipe ("CWP") from Korea, China, and India pursuant to Section 781(b)(1)(E) of the Tariff Act of 1930, as amended (the "Act"). Commerce should continue to reach affirmative determinations of circumvention in its final remand redeterminations in these proceedings.

## II. COMMERCE'S DRAFT REMAND REDETERMINATIONS FULLY COMPLY WITH THE REMAND ORDER

The draft remand redeterminations comply with the remand order issued by the U.S. Court of International Trade, which instructed that, "{t}o the extent that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)-(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding."[3] Commerce did so in each of the draft remand redeterminations.

---

[1] *See* Draft Results of Redetermination Pursuant to Court Remand: *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea, SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025), Dep't Commerce Mar. 31, 2026 (*"Korea Redetermination*"); Draft Results of Redetermination Pursuant to Court Remand: *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China, SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (CIT 2025), Dep't Commerce Mar. 31, 2026 ("*China Redetermination*"); Draft Results of Redetermination Pursuant to Court Remand: *Certain Circular Welded Carbon Steel Standard Pipes and Tubes from India, SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025), Dep't Commerce Mar. 31, 2026 ("*India Redetermination*").
[2] *See id.*
[3] *SeAH Steel VINA Corp. v. United States*, Ct. No. 23-256, Slip Op. 25-157, at 27-28 ("*SeAH v. United States*").



Filed By: rschagrin@schagrinassociates.com, Filed Date: 4/14/26 3:45 PM, Submission Status: Approved

Barcode: 4912319-01 A-580-809 REM - Remand Slip Op. 25-157



In the *Korea Redetermination*, Commerce further evaluated its consideration of factors under Section 781(b)(3) of the Act and found that action continued to be appropriate to prevent evasion of the antidumping duty order on CWP from Korea. In particular, Commerce considered the pattern of trade pursuant to Section 781(b)(3)(A) of the Act. Commerce found that the pattern of trade demonstrated circumvention because (1) aggregate import data show a significant increase in the share of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world from the 2012-2016 period to the 2017-2021 period and from the 2017-2021 period to 2025; (2) SeAH VINA's exports of CWP to the United States increased significantly from the 2017-2021 period to the 2022-2025 period; and (3) SeAH VINA's CWP exports to the United States produced from hot-rolled steel imported from Korea increased from 2017 to 2021.[4] Commerce properly found that this evidence supported a finding that action is appropriate to prevent evasion of the order pursuant to Section 781(b)(1)(E) of the Act and continued to support an affirmative determination of circumvention.

In the *China Redetermination*, Commerce performed a similar analysis. It found that the pattern of trade demonstrated circumvention because U.S. imports of CWP from Vietnam increased between the 2012-2016 period and the 2017-2021 period while U.S. imports of CWP from China decreased over that same period.[5] It also found that Vietnam's share of total CWP imports into the United States rose significantly over the relevant periods.[6] In addition, it found that SeAH VINA's trade practices indicated efforts to avoid duties imposed by the antidumping duty order on China.[7] Further, Commerce considered evidence pursuant to Section 781(b)(3)(C) of the Act, which provides that Commerce take into account whether imports of Chinese hot-

[4] Korea Redetermination at 7.
[5] China Redetermination at 7.
[6] *Id.*
[7] *Id.* at 8.



Filed By: rschagrin@schagrinassociates.com, Filed Date: 4/14/26 3:45 PM, Submission Status: Approved

rolled steel into Vietnam increased after the relevant investigation was initiated. Commerce found that the patterns of hot-rolled steel shipments from China to Vietnam demonstrated evasion of the order.[8] Based on this evidence, Commerce properly determined that action is necessary to prevent evasion of the order and that it should continue to reach an affirmative determination of circumvention.

Finally, in the *India Redetermination*, Commerce found that, in addition to the increase in U.S. imports of CWP from Vietnam, SeAH VINA's exports of pipe and tube to the United States increased significantly from the 2017-2021 period to the 2022-2025 period.[9] Additionally, Commerce considered evidence pursuant to Section 781(b)(3)(C) of the Act concerning imports of Indian hot-rolled steel into Vietnam after the investigation was initiated. Commerce found that imports of India-origin hot-rolled steel into Vietnam sharply increased from the 2012-2016 period to the 2017-2021 period.[10] SeAH VINA's data also showed a substantial increase in imports of Indian-origin hot-rolled steel during the inquiry period.[11] Once again, Commerce correctly found that this evidence supported the continued affirmative determination of circumvention.

## III. CONCLUSION

Based on the foregoing, Commerce fully complied with the remand order by providing substantial evidence under Sections 781(b)(3)(A) and 781(b)(3)(C) of the Act for the continued affirmative determinations of circumvention. Because this evidence concerned the patterns of trade and imports of hot-rolled steel into Vietnam, it is distinct from the factors enumerated under Section 781(b)(1)(A)-(D) of the Act and supports a finding that action is appropriate to

[8] *Id.* at 9-10.
[9] India Redetermination at 7.
[10] *Id.* at 9.
[11] *Id.*



Filed By: rschagrin@schagrinassociates.com, Filed Date: 4/14/26 3:45 PM, Submission Status: Approved

prevent evasion of the orders pursuant to Section 781(b)(1)(E) of the Act. Commerce should therefore make no modifications to its draft remand redeterminations and should continue to reach affirmative determinations of circumvention in its final remand redeterminations in these proceedings.

Respectfully submitted,

*/s/* Jeffrey D. Gerrish

Roger B. Schagrin
Jeffrey D. Gerrish
Nicholas C. Phillips*
**SCHAGRIN ASSOCIATES**
900 7th St. NW
Washington, DC 20001
(202) 223-1700 (telephone)
(202) 429-2522 (fax)

*Counsel for Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

*Only admitted in New York. Practice limited to federal courts and agencies.



Filed By: rschagrin@schagrinassociates.com, Filed Date: 4/14/26 3:45 PM, Submission Status: Approved

Barcode: 4912319-01 A-580-809 REM - Remand Slip Op. 25-157

# CERTIFICATE OF SERVICE

**Circumvention Inquiry on**
**Circular Welded Carbon Quality Steel Pipe from the People's Republic of China,**
**Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea, and**
**Certain Welded Carbon Steel Standard Pipes and Tubes from India**

**A-570-910, C-570-911,**
**A-533-502, A-580-809**
***Remand Slip Op. 25-157***

I, Karen Johnson, hereby certify that copies of the attached *public document* were served today, April 14, 2026, via ACCESS electronic service:

John M. Gurley, Esq.
**ArentFox Schiff LLP**
1717 K Street, NW
Washington DC 20006
john.gurley@afslaw.com

Jeffrey M. Winton, Esq.
**Winton & Chapman PLLC**
1100 13th Street, NW
Suite 825
Washington, DC 20005
jwinton@jmwinton.com

Nguyen Ha Anh
*Hoa Phat Steel Pipe Co Ltd*
*Hoa Phat Steel Pipe Co.Ltd – Vietnam*
39 Nguyen Dinh Chieu Street
Le Dai Hanh Ward, Hai Ba Trung District
Ha Noi, Vietnam
nguyenhaanh@hoaphat.com.vn

Giang Le
*Vietnam Steel Association*
**GHConsults LLC**
Level 11, Vinafor Building
127 Lo Duc Street, Hanoi, Vietnam
giangls@ghconsults.vn

Robert E. DeFrancesco III, Esq.
**Wiley Rein LLP**
2050 M Street, NW
Washington, DC 20036
rdefrancesco@wiley.law

Jonathan M. Freed, Esq.
**Trade Pacific PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003
jfreed@tradepacificlaw.com

Thang Huy Nguyen
*Representative of Chinh Dai Steel*
*Technology Company Limited*
Km 5, 385th Road
Lac Dao Commune, Van Lam District
Hung Yen Province, Vietnam
legal@chinhdaisteel.com

/s/ *Karen Johnson*
Karen Johnson, *Paralegal*
SCHAGRIN ASSOCIATES

Filed By: rschagrin@schagrinassociates.com, Filed Date: 4/14/26 3:45 PM, Submission Status: Approved

TAB-12

SeAH VINA Comments on Draft Remand Redetermination
P.R.R. 4; C.R.R. 2

Barcode: 4912141-01 A-580-809 REM - Remand Slip Op. 25-157

WINTON & CHAPMAN PLLC

JEFFREY M. WINTON
JWINTON@WINTON.LAW
+1.202.774.5503

April 14, 2026

Case No. A-580-809
Total Pages: 4 + Enclosure (14)
Remand: Slip Op. 25-157
Circumvention Inquiry
(CWP Completed in Vietnam with Korean HRS)
Office I
CBP's Proprietary Information Removed from Enclosure
Public Version

BY ELECTRONIC FILING

Secretary of Commerce
Attention: Enforcement and Compliance
APO/Dockets Unit, Room 18022
U.S. Department of Commerce
Constitution Ave. & 14th St., NW
Washington, DC 20230

**Public Version**

Re: Remand of the Circumvention Inquiry of the Antidumping Duty Order on Certain Circular Welded Non-Alloy Steel Pipe from Korea — Comments on Draft Remand Redetermination

Dear Secretary of Commerce,

We are writing on behalf of SeAH Steel VINA Corporation ("SeAH VINA") to comment on the Department's March 31 draft redetermination on remand to address the decision by the U.S. Court of International Trade ("CIT" or "the Court") in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (Dec. 16, 2025), regarding the circumvention inquiry of the antidumping duty order on Certain Circular Welded Non-Alloy Steel Pipe from Korea ("CWP from Korea").

1100 13TH ST. NW, SUITE 825, WASHINGTON, DC 20005
Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

We request confidential treatment for this submission, which contains information released to us under administrative protective order. The information for which proprietary treatment is requested has been bracketed ("[ ]") in this letter in the enclosed attachments. We agree to the release of this information under an appropriately-drawn administrative protective order and understand that a copy of the proprietary version of the submission will be made available to the parties granted access to proprietary information in this proceeding through the Department's ACCESS system. In accordance with the Department's regulations, we will submit the public version of this submission today under a separate cover.

Please do not hesitate to contact us if you have any questions.

Respectfully submitted,

/s/ Jeffrey M. Winton
Jeffrey M. Winton
Amrietha Nellan
Vi Mai
Rachel Hauser

Counsel to SeAH Steel VINA Corporation

U.S. DEPARTMENT OF COMMERCE
PUBLIC CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing submission is being served this 14th day of April, 2026, electronically via ACCESS[1], on the following parties:

John M. Gurley, Esq.
Arent Fox LLP
1717 K Street, NW
Washington, DC 20006-5344
john.gurley@arentfox.com

Roger B. Schagrin, Esq.
Schagrin Associates
900 7th Street, NW
Suite 500
Washington, DC 20001
rschagrin@schagrinassociates.com

Robert E DeFrancesco III, Esq.
Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036
202-719-7000
rdefrancesco@wiley.law

Jonathan M. Freed, Esq.
Trade Pacific PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003
2022233760
jfreed@tradepacificlaw.com

Nguyen Ha Anh
Hoa Phat Steel Pipe Co.Ltd – Vietnam 39 Nguyen Dinh Chieu Street
Le Dai Hanh Ward
Hai Ba Trung District, Ha Noi, Vietnam
nguyenhaanh@hoaphat.com.vn

Thang Huy Nguyen
Chinh Dai Steel Technology Company Limited
Km 5, 385th Road, Lac Dao Commune, Van Lam District,
Hung Yen Province, Vietnam
legal@chinhdaisteel.com

[1] *See* 19 C.F.R. § 351.303(f)(1)(i) ("Service of a public document or public version of a business proprietary document is effectuated on the persons on the public service list upon the electronic filing of the submission in ACCESS, unless it is filed manually in accordance with paragraph (b)(2) of this section, or ACCESS is unavailable.") (effective October 30, 2023).

Giang Le
GHConsults LLC
Level 11, Vinafor Building,
127 Lo Duc Street,
Hanoi, Vietnam
giangls@ghconsults.vn

/s/ Jeffrey M. Winton
Jeffrey M. Winton

Barcode: 4912141-01 A-580-809 REM - Remand Slip Op. 25-157

Case No. A-580-809
Total Pages: 14
Remand: Slip Op. 25-157
Circumvention Inquiry
(CWP Completed in Vietnam
with Korean HRS)
Office I
CBP's Business Proprietary
Information Removed from
Page 9
Public Version

In the Matter of:

CIRCUMVENTION INQUIRY OF THE ANTIDUMPING ORDER ON CERTAIN CIRCULAR WELDED NON-ALLOY STEEL PIPE FROM KOREA – REMAND PROCEEDING FOLLOWING THE CIT DECISION IN *SEAH STEEL VINA CORPORATION V. UNITED STATES*

**Public Version**

# COMMENTS OF SEAH STEEL VINA CORPORATION ON DRAFT REDETERMINATION ON REMAND IN COURT NO. 23-00256

WINTON & CHAPMAN PLLC
1100 13th Street, N.W., Suite 825
Washington, DC 20005
(202) 774-5500

Counsel to SeAH Steel VINA Corporation

April 14, 2026

Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

Barcode: 4912141-01 A-580-809 REM - Remand Slip Op. 25-157

Table of Contents

Page

EXECUTIVE SUMMARY ........ 2

A. The Department Failed to Identify Any "Other Factor" Under 19 U.S.C. § 1677j(b)(1)(E) Distinct from Those Already Required by 19 U.S.C. § 1677j(b)(1)(A)-(D) ........ 2

B. Any Import Data After the Inquiry Period is Irrelevant ........ 2

C. The Growth in CWP Exports from Vietnam to the U.S. After the Inquiry Period Undermines Any Finding of Circumvention ........ 3

D. The Department Failed to Analyze Korean HRS Imports to Vietnam ........ 4

ARGUMENT ........ 4

A. The Department Failed to Identify Any "Other Factor" Under 19 U.S.C. § 1677j(b)(1)(E) Distinct from Those Already Required by 19 U.S.C. § 1677j(b)(1)(A)-(D) ........ 4

B. Any Import Data After the Inquiry Period is Irrelevant ........ 6

1. The Department is Bound by the Established Period of Inquiry ........ 6

2. Post-Hoc Data Cannot Supply Missing Substantial Evidence ........ 7

3. The Use of 2022-2025 Data Violates Principles of Finality and Due Process ........ 7

C. The Growth in CWP Exports from Vietnam to the U.S. After the Inquiry Period Undermines Any Finding of Circumvention ........ 8

D. The Department Failed to Analyze Korean HRS Imports to Vietnam ........ 10

CONCLUSION ........ 11

Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

Barcode: 4912141-01 A-580-809 REM - Remand Slip Op. 25-157

Public Version

BEFORE THE
INTERNATIONAL TRADE ADMINISTRATION,
U.S. DEPARTMENT OF COMMERCE

| | |
|---|---|
| In the Matter of: | ) |
| CIRCUMVENTION INQUIRY OF THE ANTIDUMPING ORDER ON CERTAIN CIRCULAR WELDED NON-ALLOY STEEL PIPE FROM KOREA – REMAND PROCEEDING FOLLOWING THE CIT DECISION IN *SEAH STEEL VINA CORPORATION V. UNITED STATES* | ) |

COMMENTS OF SEAH STEEL VINA CORPORATION
ON DRAFT REDETERMINATION ON REMAND
IN COURT NO. 23-00256

These comments are submitted by SeAH Steel VINA Corporation ("SeAH VINA") to comment on the draft redetermination on remand issued by the Department on March 31 to address the decision by the U.S. Court of International Trade ("CIT" or "the Court") in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (Dec. 16, 2025) ("Remand Order"), regarding the circumvention inquiry of the antidumping order on Certain Circular Welded Non-Alloy Steel Pipe from Korea ("CWP from Korea").[1]

[1] The Department's March 31 draft redetermination is hereinafter referred to as the "Draft Redetermination."

Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

## EXECUTIVE SUMMARY

*A. The Department Failed to Identify Any "Other Factor" Under 19 U.S.C. § 1677j(b)(1)(E) Distinct from Those Already Required by 19 U.S.C. § 1677j(b)(1)(A)-(D)*

The Draft Redetermination fails to comply with the Court's remand instruction to identify "other factors" under 19 U.S.C. § 1677j(b)(1)(E) that are genuinely distinct from the criteria already required under subsections (A) through (D). Although the Department reopened the record, it failed to find new evidence of such factors, relying instead on a mere recharacterization of the existing pattern-of-trade and affiliation data. This approach ignores the Court's finding that subsection (E) must have a unique operative effect, as evidenced by its deliberate inclusion in foreign-country circumvention cases but exclusion from domestic completion cases.[2] Ultimately, the Department has still not identified the "other factors" it previously claimed were necessary to support its affirmative determination. The Draft Redetermination compounds the deficiency further by omitting the 19 U.S.C. § 1677j(b)(3)(C) analysis entirely, which requires the analysis of whether imports of Hot-Rolled Steel ("HRS") from Korea to Vietnam have increased after the initiation of the investigation that resulted in the antidumping order on CWP from Korea.[3]

*B. Any Import Data After the Inquiry Period is Irrelevant*

The Department placed CWP entry data from the U.S. Customs and Border Protection ("CBP") covering the period of 2017 through 2021 and 2025, as well as publicly available U.S. International Trade Commission ("USITC") import data for 2025 on the record. The Draft Redetermination relied on the 2025 public data to establish that Vietnam's share of

---

[2] *See* Remand Order, at 22, 27-28.

[3] *See* Draft Redetermination.



Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

Barcode: 4912141-01 A-580-809 REM - Remand Slip Op. 25-157



U.S. CWP imports had risen from 8.8 percent to 18.43 percent from the inquiry period to 2025, which the Department treated as central evidence for its 19 U.S.C. § 1677j(b)(3)(A) finding. The Draft Redetermination also relied on SeAH VINA's annual average of CWP U.S. exports from 2022 through 2025, which constituted an increase from the inquiry period, as additional evidence of circumvention.[4] This reliance is improper. The inquiry period that led to the affirmative circumvention decision in this case only covered the period from 2017 through 2021. Any information pertaining to the time period following the inquiry period is irrelevant to the Department's circumvention decision. The 2022-25 data should play no role in the final remand redetermination.[5]

*C. The Growth in CWP Exports from Vietnam to the U.S. After the Inquiry Period Undermines Any Finding of Circumvention*

Even if the 2025 data were considered, it contradicts the Department's circumvention theory. The 2025 USITC data shows Vietnam's share of U.S. CWP imports at 18.43 percent compared to 8.8 percent during the inquiry period from 2017 to 2021. This growth is particularly difficult to reconcile with a duty-evasion narrative in this case because the total CWP imports to the United States from Vietnam actually decreased from 2017 to 2021.[6] Evasion-dependent exports do not contract during the alleged evasion period and then expand substantially after the evasion mechanism is closed. The growth following the Department's imposition of anticircumvention measures reflects independent competitive factors unrelated to Korean HRS or the Korea antidumping order. If anything, the consistent rise in Vietnam's share of U.S. CWP imports from the 2012-2016 base period to

[4] *See id.*, at 6-7.

[5] *See id.*

[6] *See* Remand Order, at 24-25.



Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

the 2017-2021 inquiry period as well as in 2025 demonstrates a sustained trajectory of market growth driven by factors independent of any foreign input sources.[7]

*D. The Department Failed to Analyze Korean HRS Imports to Vietnam*

The Draft Redetermination analyzes only the pattern-of-trade and affiliation factors, but not whether Korean HRS imports to Vietnam increased after the initiation of the investigation resulting in the antidumping order on CWP from Korea.[8] The Department should consider this factor in its final remand redetermination. The underlying data shows that Korean HRS exports to Vietnam decreased by 21.7 percent from 4,251,271 metric tons during the 2012-2016 period to 3,330,643 metric tons during the 2017-2021 period. This data does not support an affirmative circumvention finding.

## ARGUMENT

*A. The Department Failed to Identify Any "Other Factor" Under 19 U.S.C. § 1677j(b)(1)(E) Distinct from Those Already Required by 19 U.S.C. § 1677j(b)(1)(A)-(D)*

The Court remanded the Department's affirmative circumvention determination in this proceeding with a specific instruction: because 19 U.S.C. § 1677j(b)(1)(E) must be "construed to have some operative effect," the Department must identify factors genuinely distinct from those it was already required to find under 19 U.S.C. § 1677j(b)(1)(A)-(D) and explain the substantial evidence supporting them.[9] The Draft Redetermination fails to satisfy this instruction.

---

[7] During the base period from 2012 through 2016, Vietnam's share of total U.S. CWP imports was 7.9 percent. *See* Domestic Interested Parties' Response to Circumvention Allegation Supplemental Questionnaire, Exh. Supp. 2, dated June 28, 2022.

[8] *See* 19 U.S.C. § 1677j(b)(3)(A)-(C).

[9] *See* Remand Order, at 27-28.



Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

On remand, the Department reopened the record to solicit additional information from interested parties, but received no new information.[10] The Department subsequently placed irrelevant import data covering the time period *after* the inquiry period on the record, on which it relied in the Draft Redetermination as additional evidence for the pattern-of-trade factor under 19 U.S.C. § 1677j(b)(3)(A).[11] The Department also recharacterized the absence of affiliation factor under 19 U.S.C. § 1677j(b)(3)(B) as "neutral." Neither constitutes a factor "distinct" from those required by the statute and under which the Department already analyzed in the original proceeding.

The Court's instruction is based on two grounds that the Department has failed to address. First, the Court observed that subsection 1677j(a)(1), which governs merchandise completed in the United States, mirrors subsection 1677j(b)(1) at issue here in listing the same factors (A) through (D) but does not include subsection (E). Congress's deliberate addition of factor (E), which requires a finding that "action is appropriate … to prevent evasion {of duties}," only to the foreign-country circumvention provision under subsection 1677j(b)(1) confirms it was intended to require something more.[12] Second, the Court expressly cited the Department's Final Memorandum as evidence that the Department itself acknowledged the existence of "other factors" upon which it relied to arrive at an affirmative circumvention determination without ever identifying what those factors

[10] *See* February 6, 2026, Letter to All Interested Parties.

[11] *See* Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: U.S. Customs and Border Protection Entry Data, dated March 9, 2026. In response to the data placed on the record by the Department, SeAH VINA submitted quantity information of the CWP it exported to the U.S. from 2022 to 2025. *See* SeAH VINA's Submission of Factual Information Relating to Imports, dated March 13, 2026.

[12] *See* Remand Order, at 27-28.



Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

Barcode: 4912141-01 A-580-809 REM - Remand Slip Op. 25-157



were.[13] The Draft Redetermination still does not identify them. In addition, the Draft Redetermination compounds the deficiency further by omitting the 19 U.S.C. § 1677j(b)(3)(C) analysis entirely, which requires the analysis of whether imports of HRS from Korea to Vietnam have increased after the initiation of the investigation that resulted in the antidumping order on CWP from Korea.[14] By failing to identify "other" factors to establish duty evasion as required by the statute and omitting the required analysis under § 1677j(b)(3)(C) entirely, the Department has failed to satisfy the explicit terms of the Remand Order.

*B. Any Import Data After the Inquiry Period is Irrelevant*

The Draft Redetermination relies on the USITC data for 2025 as well as SeAH VINA's U.S. CWP exports for 2022 to 2025 to justify its finding of circumvention.[15] This reliance is improper. Because this data postdates the established period of inquiry from 2017 through 2021 and the Final Determination, it cannot serve as substantial evidence to support the Department's decision.[16]

*1. The Department is Bound by the Established Period of Inquiry*

The inquiry period, in addition to the base period covering 2012 through 2016, serves as the essential temporal boundary for factual analysis in the Department's circumvention inquiry. The Department's affirmative circumvention decision was predicated on a record

---

[13] *See id.*

[14] *See infra* 10-11.

[15] *See* Draft Redetermination, at 6-7.

[16] *See Certain Circular Welded Non-Alloy Steel Pipe from Korea: Final Affirmative Determination of Circumvention of the Antidumping Order*, 88 Fed. Reg. 77270 (Nov. 9, 2023).



Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

covering 2012 through 2021. By introducing and relying upon data from 2022 to 2025, the Department has unilaterally expanded the scope of the circumvention inquiry without legal basis.

Evidence pertaining to Vietnam's share of U.S. CWP imports in 2025, or SeAH VINA's U.S. CWP export averages from 2022 to 2025, is chronologically irrelevant. Such data reflects market conditions and commercial decisions made long after the period at issue and cannot be used to characterize the nature of trade flows during the actual years under investigation.

2. *Post-Hoc Data Cannot Supply Missing Substantial Evidence*

The substantial evidence standard requires that an agency's determination be supported by the administrative record as it existed at the time of the decision. The Department may not use hindsight to "cure" an otherwise deficient record. If the Department's original circumvention finding was not supported by the 2017-2021 record, the Department cannot retroactively validate that finding by pointing to data from a subsequent time period. A determination must stand or fall on the evidence contemporaneous to the period of inquiry. To do otherwise would allow the Department to issue decisions based on speculation of future events, only to backfill the record years later.

3. *The Use of 2022-2025 Data Violates Principles of Finality and Due Process*

The introduction of 2022-2025 data in the Draft Redetermination creates a "moving target" for respondents. By shifting the evidentiary focus to 2022 through 2025, the Draft Redetermination undermines predictability and ignores intervening variables. Respondents cannot effectively defend their historical conduct if the Department is permitted to pivot to entirely different years of data whenever the original record proves insufficient. Furthermore, market shifts in 2022 to 2025 may be driven by myriad factors (*e.g.*, global



Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

logistics, changes in raw material costs, or unrelated trade policy) that have no bearing on whether circumvention occurred between 2017 and 2021.

In short, the 2022-2025 data must be disregarded. The Department's reliance on this post-inquiry period information constitutes an attempt to provide a *post-hoc* rationalization for a conclusion that the actual record of inquiry fails to support. The final remand redetermination must be based exclusively on the facts as they existed during the 2017-2021 period.

### *C. The Growth in CWP Exports from Vietnam to the U.S. After the Inquiry Period Undermines Any Finding of Circumvention*

The trade data post-2023 provides a clear rebuttal to the theory of circumvention. By definition, trade flows predicated on circumvention possess a fundamental structural vulnerability: once the evasion mechanism is neutralized by enforcement, the artificial competitive advantage vanishes and trade volumes must contract. Here, the circumvention orders were specifically calibrated to eliminate the purported advantage of routing CWP production through Vietnam using Korean HRS. Had this advantage actually existed, Vietnamese exports to the U.S. would have necessarily declined following the affirmative circumvention finding, which began the implementation of additional duties as the result of the preliminary determination in April 2023 on any CWP produced in Vietnam from Korean HRS.[17]

The 2025 USITC data, however, reveals a trend entirely opposed to the evasion hypothesis. Vietnam's share of U.S. CWP imports surged to 18.43 percent in 2025, which

[17] *See Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 21989 (April 12, 2023).



Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

represents a more than twofold increase over the 8.8 percent share during the 2017-2021 inquiry period. SeAH VINA's export volumes to the United States similarly increased from its 2017-2021 average to its 2022-2025 average. This data establishes a pattern that is the precise inverse of a duty-evasion scheme: Vietnam's and SeAH VINA's exports contracted during the alleged period of evasion (2017-2021) and expanded only after the alleged evasion channel was closed. Under any coherent economic theory, evasion-dependent trade does not wither during the period of "circumvention" only to flourish once prohibitive duties are applied.

In addition, the CBP data for 2025 confirms that [

].[18] **{CBP Data}** This evidence supports that the increase in Vietnam's share of U.S. CWP imports in 2025 was independent of Korean HRS and the Korea order.

To the extent that the Department considers this growth as evidence of ongoing non-compliance, such a claim is both speculative and irrelevant. Non-compliance is a matter of enforcement. It is not evidence that validates the underlying circumvention finding. The question before the Department on remand is whether the record supports an affirmative circumvention determination for the 2017-2021 period. Post-order market behavior cannot retroactively manufacture a basis for a finding that the contemporaneous data lacks. Ultimately, a theory that purports to explain away contradictory evidence as consistent

[18] *See* Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: U.S. Customs and Border Protection Entry Data, dated March 9, 2026.


Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

with circumvention regardless of the outcome is a theory rooted in conjecture, not substantial evidence.

*D. The Department Failed to Analyze Korean HRS Imports to Vietnam*

The Draft Redetermination did not address the factor required under 19 U.S.C. § 1677j(b)(3)(C). The Department is required to evaluate whether imports of HRS from Korea into Vietnam increased after the initiation of the investigation that resulted in the antidumping order on CWP from Korea in 1992.

The record evidence provides an unambiguous negative answer to the statutory inquiry. The data refutes any claim of increased input flows: Korean HRS exports to Vietnam plummeted from 4,251,271 metric tons during the 2012-2016 period to 3,330,643 metric tons during the 2017-2021 period, which is a substantial 21.7 percent decline.[19] During the same period, Korean HRS exports to the rest of the world fell by a mere 5.5 percent.[20] Vietnam's share of total Korean HRS exports consequently eroded from 12.33 percent to 10.44 percent.[21] These figures are the opposite of circumvention.

The theory of a third-country circumvention case is that subject-country producers are intentionally diverting inputs through a third country to bypass duties. A one-fifth contraction in input volume is fundamentally inconsistent with such a theory. If Vietnam were being utilized as a processing hub for Korean-origin HRS, these export volumes would have surged. Instead, they declined at a rate nearly four times faster than Korean

---

[19] *See* Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty Order, dated April 6, 2023, at 19 (hereinafter, "Preliminary Memorandum").

[20] *See id.*

[21] *See* Domestic Interested Parties' Response to Circumvention Allegation Supplemental Questionnaire, Exh. Supp. 1, dated June 28, 2022.



Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

exports to the rest of the global market. The Department's treatment of this evidence is both inconsistent and indefensible. While the Department acknowledged this adverse data in its "Background" section of the Draft Redetermination, it conspicuously failed to mention any of these data from its analysis.

In addition, direct U.S. imports of CWP from Korea increased by 40.5 percent from the base period to the inquiry period.[22] This is consistent with Korean producers supplying the U.S. market directly rather than routing production through Vietnam. The Department cannot fulfill the Court's remand instructions by cherry-picking favorable factors while ignoring those that sharply undermine its conclusion.

## CONCLUSION

The Draft Redetermination relies on a series of evidentiary gaps and logical inconsistencies. The Department has failed to meet the Court's mandate to identify distinct "other factors" and has ignored statutory criteria that directly undermine its theory. Whether based on the relevant inquiry period or the Department's own irrelevant post-inquiry data, the record proves the inverse of circumvention. Consequently, the Department must issue a negative final remand redetermination.

[22] *See* Preliminary Memorandum, at 19.



Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

Respectfully submitted,

/s/ Jeffrey M. Winton

Jeffrey M. Winton
Amrietha Nellan
Vi Mai
Rachel Hauser

Counsel to SeAH Steel VINA Corporation

April 14, 2026



Filed By: mordonez@jmwinton.com, Filed Date: 4/14/26 3:14 PM, Submission Status: Approved

TAB-13

Final Results of Redetermination Pursuant to Court Remand
P.R.R. 2

A-580-809
Remand
Slip Op. 25-157
**Public Document**
E&C/OI: DV

**Final Results of Redetermination Pursuant to Court Remand**
***Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea***
***SeAH Steel VINA Corporation v. United States*,**
**Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025)**

## I. SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT or the Court) in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025) (*Remand Order*). These final results of redetermination concern *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 FR 77270 (November 9, 2023) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

In the *Remand Order*, the Court remanded the *Final Determination* to Commerce to explain what other factors, besides those under section 781(b)(1)(A)-(D) of the Tariff Act of 1930, as amended (the Act), supported its affirmative finding under section 781(b)(1)(E) of the Act.[1]

On remand, we have reconsidered our determination in the *Final Determination* and continue to find that Commerce's affirmative determination of circumvention is appropriate to prevent evasion of the *Order*[2] pursuant to section 781(b)(1)(E) of the Act. In making this

[1] *See Remand Order* at 21-28.
[2] *See Notice of Antidumping Duty Orders: Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and Venezuela, and Amendment to Final Determination of Sales at Less Than Fair Value: Certain Circular Welded Non-Alloy Steel Pipe from Korea*, 57 FR 49453 (November 2, 1992) (*Order*).

Barcode: 4917567-01 A-580-809 REM - Remand Slip Op. 25-157

redetermination, pursuant to the Court's *Remand Order*,[3] we considered the factors under section 781(b)(3) of the Act and find that patterns of trade show that U.S. imports of certain circular welded nonalloy steel pipe (CWP) from the Socialist Republic of Vietnam (Vietnam) have increased. In making this determination, we accounted for and further explain the factors under section 781(b)(3) of the Act in accordance with the *Remand Order*.[4] Accordingly, in these final results of redetermination, we find that action is appropriate to prevent evasion of the *Order* under section 781(b)(1)(E) of the Act and, as a result, we continue to make an affirmative determination of circumvention.

## II. BACKGROUND

In the *Final Determination*, Commerce determined that CWP completed in Vietnam using Korea-origin hot-rolled steel (HRS) and subsequently exported from Vietnam to the United States is circumventing the *Order* on a country-wide basis.[5] As a result, in accordance with section 781(b) of the Act, Commerce determined that the merchandise subject to the circumvention inquiry should be included within the scope of the *Order*.[6] Commerce determined, in relevant part, that an action is appropriate to prevent evasion of the *Order*, pursuant to section 781(b)(1)(E) of Act. Specifically, in determining whether to include merchandise completed in Vietnam within the scope of the *Order*, Commerce considered additional factors under section 781(b)(3) of the Act, *i.e.*, the patterns of trade, including sourcing patterns, the affiliation between Korean HRS or CWP producers and SeAH VINA, and

[3] *Id.* at 27-28.
[4] *Id.*
[5] *See Final Determination*, 88 FR at 77271.
[6] *Id.*



Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

whether imports into Vietnam of Korea-origin HRS have increased after the initiation of the investigation which resulted in the issuance of the *Order*.[7]

Concerning the patterns of trade, including sourcing patterns, we first compared publicly available U.S. import statistics of CWP between the periods 2012-2016 and 2017-2021, *i.e.*, the period of inquiry. The data show that the quantity of CWP exported from Korea to the United States increased more than the quantity of CWP exported from Vietnam.[8] We also found that the quantity of Vietnamese imports of HRS from Korea decreased more than the cumulative HRS exports from Korea to the rest of the world (excluding Vietnam) from the 2012-2016 period to 2017-2021.[9]

We then analyzed patterns of trade with respect to SeAH VINA during 2017-2021 and found that, although the data do not show that there is a definitive increase in the quantity of HRS imported from Korea, the data show that there was a subsequent increase in the quantity of CWP produced from HRS imported from Korea and exported to the United States.[10] Based on this analysis, we found that the patterns of trade and sourcing of HRS are not dispositive with respect to either an affirmative or a negative circumvention determination, *i.e.*, "the evidence with respect to these factors is mixed and inconclusive."[11]

Concerning affiliation, we found that SeAH VINA is not affiliated with any Korean HRS producer or supplier.[12] In summary, we found that the results of our analysis of factors under section 781(b)(3) of the Act (*i.e.*, patterns of trade, affiliation, and imports of HRS from Korea)

[7] *See Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 FR 21989 (April 12, 2023) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM) at 18-22.
[8] *See Preliminary Determination* PDM at 19.
[9] *Id*.
[10] *Id*.
[11] *Id*. at 19-20.
[12] *Id*. at 21.

were mixed and that none of these factors were dispositive in our circumvention analysis.[13] Commerce ultimately found that "the totality of factors in this inquiry warrant an affirmative finding of circumvention of the *Order*."[14]

## III. REMAND ORDER

In the *Remand Order*, the Court found that "Congress's addition of subsection (b)(1)(E) to section {781}(b) indicates that it intended for the determination of whether action is appropriate with respect to merchandise completed or assembled in other foreign countries to require something more than evaluating the factors in subsection (b)(1)(A)-(D)."[15] The Court found that Commerce "failed to explain how factors that are 'mixed' {under subsection (b)(3)} enabled the agency to reach the conclusion that action was appropriate."[16] Specifically, the Court reasoned, Commerce's assertion in the *Final Determination* that the (b)(3) factors did not detract from a finding that an action is appropriate assumes that action was found to be appropriate on some other grounds, but Commerce did not identify any other grounds beyond the factors that it was already required to find pursuant to section 781(b)(1)(A)-(D) of the Act.[17] The Court found that, "{b}ecause section {781}(b)(1)(E) must be construed to have some operative effect… Commerce must reconsider or further explain its basis for the affirmative circumvention finding."[18] Specifically, the Court stated, "{t}o the extent that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding."[19] The Court also

[13] *Id*. at 23.
[14] *Id*.
[15] *See Remand Order* at 22.
[16] *Id*. at 27.
[17] *Id*.
[18] *Id*.
[19] *Id*. at 27-28.



Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

observed that subsection 781(b)(3)(C) requires consideration of "whether imports into the foreign country of the merchandise {from the country subject to the order} have increased after the initiation of the investigation which resulted in the issuance of such order or finding."[20] The Court found that, "{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used – {reconcile} the statutory requirements with its consideration of the 2012-2016 versus 2017-2021 periods, as well as changes within the latter period, *i.e.*, 2017-2021."[21]

## IV. FINAL RESULTS OF REDETERMINATION

In evaluating whether an action is appropriate under section 781(b)(1)(E) of the Act, Commerce determined that its analysis would be enhanced by additional information provided by interested parties in the Draft Remand. Thus, on February 6, 2026, Commerce reopened the record and issued a letter to interested parties, requesting information, previously absent from the record, demonstrating other grounds (apart from those under section 781(b)(1)(A)–(D) of the Act), that warrant action to prevent evasion of the O*rder*.[22] Commerce received no additional information. On March 9, 2026, Commerce placed on the record entry data obtained from the U.S. Customs and Border Protection (CBP) covering the periods 2017 through 2021 and 2025, and publicly available U.S. import data sourced from the U.S. International Trade Commission (USITC) for 2025 for the Harmonized Tariff Schedule of the United States subheadings under which imports of CWP primarily entered the United States.[23] On March 13, 2026, the domestic interested parties[24] and SeAH VINA submitted factual information to rebut, clarify, or correct

[20] *Id*. at 27, n.21.
[21] *Id*.
[22] *See* Commerce's Letter, "Request for Information," dated February 6, 2026.
[23] *See* Memorandum, "U.S. Customs and Border Protection Entry Data," dated March 9, 2026.
[24] The domestic interested parties are comprised of Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC.



Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

the information submitted on March 9, 2026.[25] Specifically, the domestic interested parties submitted data showing the quantity of HRS exported from Korea to Vietnam for the 2012-2016 and 2017-2021 periods. SeAH VINA submitted its quantity of CWP exported to the United States for the years 2022 through 2025.

In light of the Court's *Remand Order*, and absent any new information, as requested from interested parties, demonstrating other grounds, apart from those under section 781(b)(1)(A)-(D) of the Act that warrant action to prevent evasion of the *Order*, Commerce further evaluated its consideration of factors under section 781(b)(3) of the Act. Commerce finds that, based on its further evaluation of factors under section 781(b)(3) of the Act, discussed below, and absent any information to the contrary, an action is appropriate to prevent evasion of the *Order*, pursuant to section 781(b)(1)(E) of Act.

On March 31, 2026, we released the Draft Results to interested parties for comment.[26] On April 14, 2026, we received comments from domestic interested parties[27] and SeAH Vina.[28] We have responded to those comments below.

In its comments on the Draft Remand, SeAH VINA disagreed with Commerce's analysis, primarily the use of post inquiry-period data. The domestic interested parties supported Commerce's decision in the Draft Remand. Based on our review of these comments, we continue to find that the facts on the record support a finding that the section 781(b)(3)(A) requirements are met.

---

[25] *See* Domestic Interested Parties' Letter, "Submission of New Factual Information," dated March 13, 2026; *see also* SeAH VINA's Letter, "Submission of Factual Information Relating to Imports," dated March 13, 2026.
[26] See Draft Results of Redetermination Pursuant to Court Remand, *SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025), dated March 31, 2026 (Draft Results).
[27] *See* Domestic Interested Parties' Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand in CIT Court No. 23-00256, Slip Op. 25-157," dated April 14, 2026 (Domestic Interested Parties' Comments).
[28] *See* SeAH VINA's Letter, "Comments on Draft Remand Redetermination," dated April 14, 2026 (SeAH VINA's Comments).



Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

Factors Under Section 781(b)(3) of the Act

With respect to section 781(b)(3)(A) of the Act, aggregated data for the 2012-2016 and 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent from the 2012-2016 period to the 2017-2021 period, *i.e.*, from 281,799 metric tons (MTs) to 304,987 MTs.[29] Additionally, a comparison of the 2012-2016 period to the 2017-2021 period shows that the quantity of U.S. imports of CWP from Vietnam in relation to the total quantity of U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent.[30] Further, SeAH VINA's export sales of CWP produced from Korea-origin HRS to the United States increased severalfold from 2017 to 2021.[31]

The above patterns of trade under section 781(b)(3)(A) of the Act demonstrate circumvention of the *Order* because: (1) aggregate import data show a significant increase in the quantity of U.S. imports of CWP from Vietnam from the 2012-2016 period to the 2017-2021 period; (2) aggregate import data show a significant increase in the share of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world from the 2012-2016 period to the 2017-2021 period; and (3) SeAH VINA's CWP exports to the United States produced from HRS imported from Korea increased significantly from 2017 to 2021. These significant increases indicate that Korea-origin HRS is likely to have been made into CWP not in Korea but in Vietnam and then exported to the United States to evade the *Order*.

[29] *See Preliminary Determination* PDM at 19.

[30] *See* Domestic Interested Parties' Letter, "Response to Supplemental Questionnaire," dated June 28, 2022 (CIRC Inquiry Request Supplement), at Exhibit Supp-3.

[31] *See* Memorandum, "Preliminary Analysis Memorandum for SeAH Steel VINA Corporation," dated April 6, 2023, at 6. Commerce is withholding specific data for which SeAH VINA claimed business proprietary treatment. For specific details involving business proprietary information (BPI), *see* Memorandum, "Business Proprietary Information Considered in Final Results of Redetermination," dated concurrently with these final results of redetermination (BPI Memorandum).

With respect to section 781(b)(3)(B) of the Act, Commerce found that: 1) SeAH VINA is not affiliated with any of its HRS suppliers or any Korean producers of HRS; 2) there are no facts (*e.g.*, close supplier relationships) that suggest control of SeAH VINA by the Korean HRS producers or suppliers with regards to CWP production in Vietnam; 3) there is no evidence to indicate that the Korean CWP or Korean HRS producers had arrangements with SeAH VINA which would allow them to export HRS to Vietnam for processing into CWP for export to the United States and avoid the discipline of the *Order*; and 4) SeAH VINA's purchases of HRS were not made directly from Korean HRS producers but through unaffiliated traders/resellers.[32] While there is no evidence that SeAH VINA is affiliated with any company located in Korea that produces or exports HRS, Commerce nevertheless does not find this factor alone to be dispositive.

While affiliation can contribute towards a determination of circumvention and the need to take action to prevent evasion of the *Order*, the lack of affiliation does not weigh against a finding that a determination of circumvention is appropriate if other factors pursuant to section 781(b)(3) of the Act demonstrate otherwise. Commerce has previously made a finding that a determination of circumvention is appropriate even when no evidence of affiliation was found.[33] An affirmative affiliation finding under section 781(b)(3)(B) of the Act naturally supports finding that it is appropriate to make an affirmative determination of circumvention as it speaks to the level of cooperation and planning between two companies that potentially share common goals concerning sales, profit, personnel, management, production planning, *etc*. However, an

[32] *See Preliminary Determination* PDM at 21-22.
[33] *See Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 FR 4871 (February 3, 2026), and accompanying IDM at Comment 4; *see also Certain Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 FR 23895 (May 23, 2018), and accompanying IDM at Comment 12.


Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

Barcode: 4917567-01 A-580-809 REM - Remand Slip Op. 25-157

affirmative finding with regard to the factors under section 781(b)(3) of the Act, and certainly an affirmative finding with regard to all of the other such factors, does not preclude Commerce from finding that it is appropriate to make an affirmative determination of circumvention to prevent evasion of the *Order* if there is no finding of affiliation. In such a situation a finding of no affiliation is considered as neither helpful nor hurtful (*i.e.*, neutral). Two companies that do not share common goals concerning sales, profit, personnel, management, production planning, *etc.* are not precluded from engaging in circumvention, either knowingly or unknowingly, which is fueled by a commercial desire to avoid duties and thus, increase sales and profits. Accordingly, while affiliation is a factor to be investigated and weighed, we do not consider it to be dispositive as to the question of whether an affirmative determination of circumvention is appropriate to avoid evasion of the *Order* without taking into consideration other factors.

<u>Time Periods Used in Evaluating the Patterns of Trade, Including Sourcing Patterns</u>

For this redetermination, Commerce continues to rely on the comparison of the 2012-2016 to 2017-2021 periods, as it did in the underlying circumvention inquiry. Commerce published the *Order* in 1992. Section 781(b)(3)(C) of the Act stipulates that Commerce account, *inter alia*, "whether imports into the foreign country of the merchandise described in paragraph (1)(b) have increased *after the initiation of the investigation which resulted in the issuance of such order or finding*." It has been Commerce's practice to interpret this statutory provision as providing it with discretion to select the comparison period at any time after the initiation of the investigation. For example, in *Diamond Sawblades from China 2019*, Commerce conducted two circumvention determinations.[34] Commerce published the diamond sawblades China AD order

[34] *See Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 83 FR 57425 (November 15, 2018), and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti-*


Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

in 2009 but in the first of these 2019 circumvention determinations, Commerce used the annual data between 2014-2016. In the second of these circumvention determinations Commerce used the periods January-October 2017 and January-October 2018. In *OCTG from China 2021*, the antidumping duty and countervailing duty orders were published in 2010 and Commerce compared the 2014-2016 period to the 2017-2019 period.[35] A restrictive interpretation of this statutory provision is impracticable and does not serve the circumvention inquiry requestor, *e.g.*, the domestic interested parties, because foreign companies can commence circumvention at any time after the initiation of an investigation and the circumvention inquiry requestor should be able to propose the comparison periods accordingly. Here in particular, aligning the comparison period to the time of the initiation of the investigation, and requesting data going back as far as the 1990's, considering the age of this order, is impractical, as the companies subject to the circumvention inquiry are not required to maintain such data for taxation and financial reporting purposes.

## V. INTERESTED PARTY COMMENTS

*Domestic Interested Parties' Comments*

The following is a verbatim summary of arguments submitted by the domestic interested parties. For further details, *see* Domestic Interested Parties' Comments at 2-3.

> Domestic Interested Parties agree with and support the draft remand redeterminations that Commerce has issued in these proceedings. The draft remand redeterminations comply with the remand order by identifying substantial evidence that supports Commerce's findings that action is appropriate to prevent evasion of

*Circumvention Inquiry*, 84 FR 33920 (July 16, 2019); and *Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 84 FR 58130 (October 30, 2019), and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti-Circumvention Inquiry*, 85 FR 9737 (February 20, 2020) (collectively, *Diamond Sawblades from China 2019*).

[35] *See Oil Country Tubular Goods from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention*, 86 FR 43627 (August 10, 2021), and accompanying PDM, unchanged in *Oil Country Tubular Goods from the People's Republic of China: Final Affirmative Determinations of Circumvention*, 86 FR 67443 (November 26, 2021) (*OCTG from China 2021*).



Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

> the antidumping duty orders on circular welded pipe { } from Korea, China, and India pursuant to Section 781(b)(1)(E) of the {Act}. Commerce should continue to reach affirmative determinations of circumvention in its final remand redeterminations in these proceedings.

*SeAH VINA's Comments*

The following is a verbatim summary of arguments submitted by SeAH VINA. We requested that interested parties limit their public executive summary of each issue to no more than 450 words, not including citations. Therefore, because the public executive summary in SeAH VINA's comments exceeds this word limit we have compressed the comment summary herein. For further details, *see* SeAH VINA's Comments at 4-11 (internal citations omitted).

> The Draft Redetermination fails to comply with the Court's remand instruction to identify "other factors" under {section 781(b)(1)(E) of the Act} that are genuinely distinct from the criteria already required under subsections (A) through (D). Although {Commerce} reopened the record, it failed to find new evidence of such factors, relying instead on a mere recharacterization of the existing pattern-of-trade and affiliation data. This approach ignores the Court's finding that subsection (E) must have a unique operative effect, as evidenced by its deliberate inclusion in foreign-country circumvention cases but exclusion from domestic completion cases. Ultimately, {Commerce} has still not identified the "other factors" it previously claimed were necessary to support its affirmative determination. The Draft Redetermination compounds the deficiency further by omitting {the section 781(b)(3)(C)} analysis entirely, which requires the analysis of whether imports of {HRS} from Korea to Vietnam have increased after the initiation of the investigation that resulted in the antidumping order on CWP from Korea.
>
> {Commerce} placed CWP entry data from the {CBP} covering {2017-2021} and 2025, as well as publicly available USITC import data for 2025 on the record. The Draft Redetermination relied on the 2025 public data to establish that Vietnam's share of U.S. CWP imports had risen from 8.8 percent to 18.43 percent from the inquiry period to 2025, which {Commerce} treated as central evidence for its {section 781(b)(3)(A)} finding. The Draft Redetermination also relied on SeAH VINA's annual average of CWP U.S. exports from 2022 through 2025, which constituted an increase from the inquiry period, as additional evidence of circumvention. This reliance is improper. The inquiry period that led to the affirmative circumvention decision in this case only covered {2017-2021}. Any information pertaining to the time period following the inquiry period is irrelevant to {Commerce's} circumvention decision. The 2022-25 data should play no role in the final remand redetermination.



Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

> Even if the 2025 data were considered, it contradicts {Commerce's} circumvention theory. The 2025 USITC data shows Vietnam's share of U.S. CWP imports at 18.43 percent compared to 8.8 percent during {2017- 2021}. This growth is particularly difficult to reconcile with a duty-evasion narrative in this case because the total CWP imports to the United States from Vietnam actually decreased from 2017 to 2021. Evasion-dependent exports do not contract during the alleged evasion period and then expand substantially after the evasion mechanism is closed. The growth following {Commerce's} imposition of anticircumvention measures reflects independent competitive factors unrelated to Korean HRS or the Korea antidumping order. If anything, the consistent rise in Vietnam's share of U.S. CWP imports from the 2012-2016 base period to the 2017-2021 inquiry period as well as in 2025 demonstrates a sustained trajectory of market growth driven by factors independent of ….

**Commerce's Position:** We reviewed the comments submitted for the final results of redetermination and, upon further consideration of those comments and the facts present on the record, we continue to find that action is appropriate to prevent evasion of the *Orders* pursuant to section 781(b)(1)(E) of the Act and, as a result, we continue to make an affirmative determination of circumvention.

As a preliminary matter, we disagree with SeAH VINA that Commerce's Draft Results "fails to comply with the Court's remand instruction to identify 'other factors' under {section 781}(b)(1)(E) that are genuinely distinct from the criteria already required under subsections (A) through (D)." Commerce's re-examination of the section 781(b)(3) factors was in accordance with the CIT's remand order. SeAH VINA's arguments misunderstand the CIT's opinion and the statute. Section 781(b)(3) of the Act states:

> In determining whether to include merchandise assembled or completed in a foreign country in a countervailing duty order or an antidumping duty order or finding under {section 781(b)(1)}, the administering authority shall take into account such factors as:
>
> (A) the pattern of trade, including sourcing patterns,
> (B) whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is affiliated with the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and



Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

Barcode: 4917567-01 A-580-809 REM - Remand Slip Op. 25-157

> (C) whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

Additionally, the SAA[36] states:

> {B}efore deciding to include imported parts within the scope of an antidumping or countervailing duty order, Commerce will consider: (1) changes in the pattern of trade; (2) whether the producer of the finished product subject to the order is related to the assembler in the United States (or the third country); and (3) whether imports of parts from the country subject to the order into the United States (or the third country) have increased after the initiation of the investigation resulting in the issuance of the order.[37]

Therefore, Commerce is following the statute in considering the factors listed in section 781(b)(3). The Court's analysis that section 781(b)(1)(E) must have some operative effect does not preclude Commerce from using the section 781(b)(3) factors to determine whether action is appropriate to prevent evasion of the *Order*.[38] The Court required that "*{t}o the extent* that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding."[39] Here, Commerce analyzes and relies upon the section 781(b)(3) factors, which are not part of section 781(b)(1)(A)–(D), to determine whether action is appropriate to prevent evasion of the *Order*. Although Commerce found these factors mixed in the *Final Determination*, the Court permit Commerce to reconsider its basis for the affirmative circumvention finding and noted that "{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used."[40] We have

---

[36] *See* Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, vol. 1 (1994) (SAA).
[37] Id. at 894.
[38] *See* Remand Order at 27-28.
[39] Id. (emphasis added).
[40] *See* Remand Order at 27-28, FN 21.



Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

included an explanation of the time periods we used for this analysis below. Therefore, Commerce's re-examination and reconsideration of the section 781(b)(3) factors are in compliance with the CIT's *Remand Order*.

In the Draft Results, in our analysis of factors under section 781(b)(3) of the Act Commerce considered 1) the quantity of U.S. imports of CWP from Vietnam in relation to the total quantity of U.S. imports of CWP from the world using U.S. import data for 2025; and 2) the quantity of SeAH VINA's exports of CWP to the United States for the 2022-2025 period.[41] We have considered SeAH VINA's comments on our Draft Results and agree that the Draft Result improperly relied on the import data subsequent to the inquiry period, *i.e.*, 2017-2021. The data in question reflect a time period outside the inquiry period on which Commerce's initiation of this circumvention proceeding was predicated,[42] and on which Commerce relied to make its findings in the *Final Determination*. Thus, we have not relied on the following data for these final results of redetermination: 1) U.S. import data for 2025; 2) CBP entry data for 2025; and 3) SeAH VINA's 2022-2025 data on CWP exports to the United States.

When we consider data only from the inquiry period and the comparison period, our conclusion from the Draft Results remains unchanged. Specifically, with respect to section 781(b)(3)(A) of the Act, aggregated data for the 2012-2016 and 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent from the 2012-2016

[41] *See* Draft Results at 6-7.
[42] *See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India; Certain Circular Welded Carbon Steel Pipes and Tubes from Taiwan; Certain Circular Welded Non-Alloy Steel Pipe from Taiwan; Light-Walled Rectangular Pipe and Tube from the People's Republic of China; Light-Walled Rectangular Pipe and Tube from the Republic of Korea; Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders*, 87 FR 47711 (August 4, 2022), and accompanying Memorandum, "Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Initiation of Circumvention Inquiry on the Antidumping Duty Order," dated July 28, 2022.



Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

period to the 2017-2021 period. Additionally, comparisons of the 2012-2016 to the 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam in relation to the quantity of U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent. Most importantly, SeAH VINA's export sales of CWP produced from Korea-origin HRS to the United States increased substantially during the inquiry period.[43] Thus, we continue to find that these facts support a finding that the 781(b)(3)(A) requirements are met.

With respect to section 781(b)(3)(C) of the Act, the cumulative quantity of HRS exports from Korea to Vietnam decreased from 4,251,271 MT to 3,330,643 MT (*i.e.*, a decrease of 21.7 percent) between 2012-2016 and 2017-2021, while the cumulative quantity of HRS exports from Korea to the rest of the world decreased from 30,238,901 MT to 28,580,241 MT (*i.e.*, a decrease of 5.5 percent) between these periods.[44] Consequently, Vietnam's share of total Korean HRS exports decreased from 12.33 percent to 10.44 percent.[45] SeAH VINA's quantity of HRS imported from Korea increased from 2017 to 2018, then decreased from 2018 to 2019, then increased from 2019 to 2020, and then dropped precipitously from 2020 to 2021.[46] In these final results of redetermination, we find that the statutory factor under section 781(b)(3)(C) of the Act is not met because: 1) there is a substantial decrease in the quantity of HRS exported from Korea to Vietnam between 2012-2016 and 2017-2021 periods; and 2) SeAH VINA does not show a discernible increase in the quantity of HRS it imported from Korea during the inquiry period. However, our finding that the statutory factor under section 781(b)(3)(C) was not met here does not change our finding that action is appropriate to prevent evasion of the *Order* pursuant to

---

[43] *See* Preliminary Analysis Memorandum at 6-7. Commerce is withholding specific data for which SeAH VINA claimed business proprietary treatment. For specific details, *see* BPI Memorandum.
[44] *See Preliminary Determination* PDM at 19.
[45] *See* CIRC Inquiry Request Supplement at Exhibit Supp-1.
[46] *See* Preliminary Analysis Memorandum at 6. Commerce is withholding specific data for which SeAH VINA claimed business proprietary treatment. For specific details, *see* BPI Memorandum.



Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

section 781(b)(1)(E) of the Act. This is because Commerce does not find this factor alone to be dispositive, particularly in light of our finding under the 781(b)(3)(A) factor.

Given the strength of the data supporting our finding under the 781(b)(3)(A) factor, we continue to find that action is appropriate to prevent evasion of the *Order*, even if other 781(b)(3) factors are not met or are neutral. Although the statute instructs Commerce to consider all of the factors under 781(b)(3) when reaching a determination, nothing in the statute indicates that all factors must be affirmative to substantiate an affirmative finding under 781(b)(1)(E) of the Act.[47] Thus, our findings that there is no affiliation under 781(b)(3)(B), a factor we found to be neutral, and no increase under 781(b)(3)(C) are not sufficiently dispositive to overcome the substantial increase shown under 781(b)(3)(A) or to change our circumvention determination.

In accordance with the Court's *Remand Order*, Commerce has, as discussed above, revised certain aspects of its analysis.

4/30/2026

X

Signed by: CHRISTOPHER ABBOTT
Christopher Abbott
Deputy Assistant Secretary
for Policy and Negotiations,
performing the non-exclusive functions and duties
of the Assistant Secretary for Enforcement and Compliance

[47] *See* sections 781(b)(1)(E) and 781(b)(3) of the Act; *see also Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Final Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders*, dated January 28, 2026, at Comment 4 (finding that although affiliation is one of the factors Commerce must consider in section 781(b)(3) of the Act, it is not dispositive.)



Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:25 AM, Submission Status: Approved

TAB-14

Business Proprietary Information Considered in Final Results of Redetermination
P.R.R. 1; C.R.R. 1

Barcode: 4917569-01 A-580-809 REM - Remand Slip Op. 25-157

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-580-809
Remand: Slip Op. 25-157
**Public Version**
E&C/OI: DV

April 30, 2026

MEMORANDUM TO: The File

THROUGH: Yang Jin Chun
Program Manager
AD/CVD Operations, Office I

FROM: Dmitry Vladimirov
Senior International Trade Compliance Analyst
AD/CVD Operations, Office I

SUBJECT: Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Business Proprietary Information Considered in Final Results of Redetermination

---

The following business proprietary information was considered in Final Results of Redetermination Pursuant to Court Remand, Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea, *SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (CIT December 16, 2025), dated April 30, 2026.

> Page 7: SeAH VINA's export sales of CWP produced from Korea-origin HRS to the United States increased from [ ] MTs in 2017 to [ ] MTs in 2021 (an increase of [ ] percent);
>
> Page 15: SeAH VINA's quantity of HRS imported from Korea increased from [ ] MTs in 2017 to [ ] MTs in 2018, then decreased from [ ] MTs in 2018 to [ ] MT in 2019, then increased from [ ] MT in 2019 to [ ] MT in 2020, and then dropped precipitously from [ ] MT in 2020 to [ ] MT in 2021.

INTERNATIONAL TRADE ADMINISTRATION

Filed By: Dmitry Vladimirov, Filed Date: 5/1/26 9:27 AM, Submission Status: Approved